UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JAMES TRINKA,

*Plaintiff,*

v.

DENIS McDONOUGH,
Secretary of Veterans Affairs, *et al.*,

*Defendants*.

Civil Action No. 21-2904 (RC)

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ iii

BACKGROUND ........ 1

A. The Secretary's Authority to Remove Senior Executives ........ 1

B. VA's Procedures for Disciplining Senior Executives ........ 3

C. Trinka's Investigation ........ 4

D. Trinka's Removal From Federal Service ........ 6

ARGUMENT ........ 9

I. Trinka Was Not Entitled to Transcripts or Recordings of the Interviews ........ 11

A. Due Process Principles Did Not Entitle Trinka to a Recording of His Interview ........ 12

B. Section 713 Did Not Entitle Trinka to a Recording of His Interview ........ 17

C. Letter No. 006-17-1 Did Not Entitle Trinka to a Recording of His Interview ........ 20

II. Trinka Was Not Entitled to Cross-Examine Adverse Witnesses ........ 20

III. Trinka Was Not Entitled To Discovery ........ 22

IV. Trinka's Seven-Day Reply Period Did Not Violate Due Process Principles ........ 23

V. The Secretary Did Not Improperly Rely On Ex Parte Communications ........ 24

VI. The Secretary Did Not Apply Substantial Evidence Review In Removing Trinka ........ 25

VII. Section 713 Does Not Have Impermissible Retroactive Effect ........ 26

VIII. Trinka's Removal Accorded With Law And Required Procedures ........ 30

IX. Substantial Evidence Supported Trinka's Removal ........ 31

CONCLUSION ........ 33

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 23, 31

*ASSE Int'l, Inc. v. Kerry*,
803 F.3d 1059 (9th Cir. 2015) .......... 12, 16

*Banks v. FAA*,
687 F.2d 92 (5th Cir. 1982) .......... 16

*BMW of N. Am., Inc. v. Gore*,
517 U.S. 559 (1996) .......... 22, 27

*Brenner v. Dep't of Veterans Affairs*,
990 F.3d 1313 (Fed. Cir. 2021) .......... 30

*Charleston Area Med. Ctr. v. Burwell*,
216 F. Supp. 3d 18 (D.D.C. 2016) .......... 19

*Cleveland Bd. of Educ. v. Loudermill*,
470 U.S. 532 (1985) .......... 10, 12, 22, 23

*Crowell v. Benson*,
285 U.S. 22 (1932) .......... 25

*DHSC, LLC v. NLRB*,
944 F.3d 934 (D.C. Cir. 2019) .......... 10

*Durham Sch. Servs., LP v. NLRB*,
821 F.3d 52 (D.C. Cir. 2016) .......... 18

*Dutton v. Evans*,
400 U.S. 74 (1970) .......... 22

*Fred Meyer Stores, Inc. v. NLRB*,
865 F.3d 630 (D.C. Cir. 2017) .......... 10, 32

*Garza v. Dep't of Justice*,
5 F. App'x 894 (Fed. Cir. 2001) .......... 24

*Gen. Elec. Co. v. Jackson*,
595 F. Supp. 2d 8 (D.D.C. 2009) .......... 20

**Cases (cont.)**

*Gonzalez v. Freeman*,
334 F.2d 570 (D.C. Cir. 1964) .......... 9

*Greene v. McElroy*,
360 U.S. 474 (1959) .......... 17

*Grunewald v. Jarvis*,
924 F. Supp. 2d 355 (D.D.C. 2013) .......... 19

*Hall v. Ford*,
856 F.2d 255 (D.C. Cir. 1988) .......... 15

*Haneke v. Sec'y of Health, Ed. & Welfare*,
535 F.2d 1291 (D.C. Cir. 1976) .......... 23

*Harrington v. Dep't of Veterans Affairs*,
981 F.3d 1356 (Fed. Cir. 2020) .......... 30

*Harrison v. Bowen*,
815 F.2d 1505 (D.C. Cir. 1987) .......... 21

*Helman v. Dep't of Veterans Affairs*,
856 F.3d 920 (Fed. Cir. 2017) .......... 2

*Hicks v. Comm'r of Social Security*,
909 F.3d 786 (6th Cir. 2018) .......... 16

*Hi-Tech Furnace Sys., Inc. v. FCC*,
224 F.3d 781 (D.C. Cir. 2000) .......... 23

*Honeywell Int'l, Inc. v. EPA*,
372 F.3d 441 (D.C. Cir. 2004) .......... 33

*Houston Fed'n of Teachers, Local 2415 v. Houston Indep. Sch. Dist.*,
251 F. Supp. 3d 1168 (S.D. Tex. 2017) .......... 16

*Jicarilla Apache Nation v. Dep't of the Interior*,
613 F.3d 1112 (D.C. Cir. 2010) .......... 19

*Jones v. Kirchner*,
835 F.3d 74 (D.C. Cir. 2016) .......... 31

*Koretoff v. Vilsack*,
707 F.3d 394 (D.C. Cir. 2013) .......... 15, 17, 27

**Cases (cont.)**

*Lacson v. DHS*,
726 F.3d 170 (D.C. Cir. 2013) .......... 32, 33

*Landgraf v. USI Film Prod.*,
511 U.S. 244 (1994) .......... 29

*Matthews v. Eldridge*,
424 U.S. 319 (1976) .......... 9, 10, 12

*McClelland v. Andrus*,
606 F.2d 1278 (D.C. Cir. 1979) .......... 23

*McLafferty v. Wilkie*,
No. 20-1772 (Fed. Cir. Aug. 31, 2020) .......... 11

*Milkovich v. Lorain Journal*,
497 U.S. 1 (1990) .......... 14

*Miller, Inc. v. Babcock & Wilcox Can.*,
210 F.3d 1 (1st Cir. 2000) .......... 32

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
463 U.S. 29 (1983) .......... 10

*Multimax, Inc. v. FAA*,
231 F.3d 882 (D.C. Cir. 2000) .......... 25

*Myersville Citizens for a Rural Cmty., Inc. v. FERC*,
783 F.3d 1301 (D.C. Cir. 2015) .......... 12, 17, 23

*Nat'l Council of Resistance of Iran v. Dep't of State*,
251 F.3d 192 (D.C. Cir. 2001) .......... 9

*Nat'l Wildlife Fed'n v. EPA*,
286 F.3d 554 (D.C. Cir. 2002) .......... 15, 18, 27

*Nichols v. United States*,
511 U.S. 738 (1994) .......... 27, 28

*Pearson v. District of Columbia*,
644 F. Supp. 2d 23 (D.D.C. 2009) .......... 22

*Pineiro-Lopez v. Kennedy*,
293 F.2d 540 (D.C. Cir. 1961) .......... 12

**Cases (cont.)**

*PJM Power Providers Grp. v. FERC*,
880 F.3d 559 (D.C. Cir. 2018) ........ 32

*Pro. Air Traffic Controllers Org. v. FLRA*,
685 F.2d 547 (D.C. Cir. 1982) ........ 24

*RadNet Mgmt v. NLRB*,
992 F.3d 1114 (D.C. Cir. 2021) ........ 19

*Ramirez v. DHS*,
975 F.3d 1342 (Fed. Cir. 2020) ........ 15

*Richardson v. Perales*,
402 U.S. 389 (1971) ........ 33

*Ross' Case*,
2 Pick. 165 (Mass. 1824) ........ 27

*Salem Hosp. Corp. v. NLRB*,
808 F.3d 59 (D.C. Cir. 2015) ........ 24

*Sanchez v. United States*,
50 F.3d 1448 (9th Cir. 1995) ........ 12

*Sardo v. McGrath*,
196 F.2d 20 (D.C. Cir. 1952) ........ 13, 17, 23

*Sayers v. Dep't of Veterans Affairs*,
954 F.3d 1370 (Fed. Cir. 2020) ........ 30

*Schneider v. Kissinger*,
412 F.3d 190 (D.C. Cir. 2005) ........ 31

*Skoczen v. Shinseki*,
564 F.3d 1319 (Fed. Cir. 2009) ........ 18

*Southwire Co. v. NLRB*,
820 F.2d 453 (D.C. Cir. 1987) ........ 18

*Stone v. FDIC*,
179 F.3d 1368 (Fed. Cir. 1999) ........ 25

*Gryger v. Burke*,
334 U.S. 728 (1948) ........ 28

**Cases (cont.)**

*Theodore Roosevelt Conservation v. Salazar*,
616 F.3d 497 (D.C. Cir. 2010) .......... 18

*Tucker v. City of Chi.*,
907 F.3d 487 (7th Cir. 2018) .......... 13, 22, 29

*Twist v. Meese*,
854 F.2d 1421 (D.C. Cir. 1988) .......... 21

*U.S. Lines v. Fed. Maritime Comm'n*,
584 F.2d 519 (D.C. Cir. 1978) .......... 18

*U.S. Info. Agency v. Krc*,
905 F.2d 389 (D.C. Cir. 1990) .......... 21

*United States v. Allen*,
960 F.2d 1055 (D.C. Cir. 1992) .......... 26

*United States v. Bisong*,
645 F.3d 384 (D.C. Cir. 2011) .......... 22

*United States v. Brown*,
560 F.3d 754 (8th Cir. 2009) .......... 32

*United States v. Campbell*,
684 F.2d 141 (D.C. Cir. 1982) .......... 28

*United States v. Fausto*,
484 U.S. 439 (1988) .......... 11

*United States v. Marshall*,
132 F.3d 63 (D.C. Cir. 1998) .......... 11

*United States v. Mendoza-Lopez*,
481 U.S. 828 (1987) .......... 13, 22, 29

*United States v. Morgan*,
255 F. Supp. 3d 221 (D.D.C. 2017) .......... 28

*United States v. Pettigrew*,
346 F.3d 1139 (D.C. Cir. 2003) .......... 14

*United States v. Porter*,
886 F.3d 562 (6th Cir. 2018) .......... 32

**Cases (cont.)**

*United States v. Rodriquez*,
553 U.S. 377 (2008) ........ 28

*United States v. Ruiz*,
536 U.S. 622 (2002) ........ 22

*United States v. Settles*,
530 F.3d 920 (D.C. Cir. 2008) ........ 28

*United States v. Sitzmann*,
893 F.3d 811 (D.C. Cir. 2018) ........ 13, 17

*United States v. Tarantino*,
846 F.2d 1384 (D.C. Cir. 1988) ........ 22

*United States v. Vidacak*,
553 F.3d 344 (4th Cir. 2009) ........ 32

*United States v. Watts*,
519 U.S. 148 (1997) (per curiam) ........ 27, 28

*United States v. Williams-Davis*,
90 F.3d 490 (D.C. Cir. 1996) ........ 13, 17

*UnitedHealthcare Ins. Co. v. Becerra*,
9 F.4th 868 (D.C. Cir. 2021) ........ 12

*Warren v. U.S. Parole Comm'n*,
659 F.2d 183 (D.C. Cir. 1981) ........ 28

*Weatherford v. Bursey*,
429 U.S. 545 (1977) ........ 22

*Williams v. New York*,
337 U.S. 241 (1949) ........ 29

*Williams v. Robinson*,
432 F.2d 637 (D.C. Cir. 1970) ........ 18

**Statutes**

5 U.S.C. § 706 ........ 19

5 U.S.C. § 3131 ........ 1

**Statutes (cont.)**

5 U.S.C. § 7543(a) .......... 1

5 U.S.C. § 7542, 7543(b) .......... 2

5 U.S.C. § 7543(c) .......... 2

5 U.S.C. § 7701(a)(1) .......... 2

18 U.S.C. § 3661 .......... 29

38 U.S.C. § 713 .......... 1, 2

38 U.S.C. § 713(b)(1)(A) .......... 17

38 U.S.C. § 713(b)(1)(A)-(B), (2)(B) .......... 2

38 U.S.C. § 713(b)(1)(C), (b)(3) .......... 3

38 U.S.C. § 713(b)(2)(A), (C) .......... 3

38 U.S.C. § 713(b)(5) .......... 26

38 U.S.C. § 713(b)(6) .......... 3, 10

38 U.S.C. § 714 .......... 30

Civil Service Reform Act of 1978,
Pub. L. No. 95-454, 92 Stat. 1111, 1112 .......... 1

Department of Veterans Affairs Accountability and Whistleblower Protection Act of 2017,
Pub. L. No. 115-41, 131 Stat. 862 .......... 2

Veterans Access, Choice, and Accountability Act of 2014,
Pub. L. No. 113-146, 127 Stat. 1754 .......... 2

**Other Authorities**

*Am. Heritage Dictionary of the English Language* (4th ed. 2000) .......... 18

*Webster's 9th New Collegiate Dictionary* (1990) .......... 18

U.S. Sen. Comm. on Veterans' Affairs, Press Release,
*VA Accountability Measure Signed Into Law* (June 23, 2017) .......... 2

**Other Authorities (cont.)**

Sidath Viranga Panangala et al., Cong. Rsch. Serv., R43704,
*Veterans Access, Choice, and Accountability Act of 2014 (H.R. 3230; P.L. 113-146)* (2015) .. 2

U.S. Const. amend. V ........ 9

U.S. Const. amend. VI ........ 22

**Rules**

Fed. R. Civ. P. 56(c)(1) ........ 18

Fed. R. Evid. 801(c)(2) ........ 32

LCvR 65.1(c) ........ 23

Defendants Denis McDonough, Secretary of Veterans Affairs, and the U.S. Department of Veterans Affairs ("VA"), by and through undersigned counsel, respectfully file this memorandum in support of their motion for summary judgment. This action arises under the Due Process Clause and 38 U.S.C. § 713, which governs discipline of members of the Senior Executive Service within VA. Trinka was a Senior Executive at VA until his removal for Conduct Unbecoming a Federal Supervisor. During an interview with VA's Office of Inspector General ("OIG"), Trinka claimed that he had told three supervisors about his wife's unlawful immigration status. Those supervisors, however, stated that Trinka had never told them any such thing. Trinka's untrue statement formed the basis of the charge for which he was removed. Trinka now raises various arguments under the Due Process Clause and Section 713 challenging his removal, but none of them have any merit. For that reason, this Court should grant the Defendants summary judgment and dismiss this action.

## BACKGROUND

### A. The Secretary's Authority to Remove Senior Executives

Congress enacted the Civil Service Reform Act of 1978 in order "to provide the people of the United States with a competent, honest, and productive Federal work force reflective of the Nation's diversity, and to improve the quality of public service." Pub. L. No. 95-454, § 3, 92 Stat. 1111, 1112. As part of this effort, Congress created the Senior Executive Service ("SES"), which is responsible for ensuring "that the executive management of the [federal government] is responsive to the needs, policies, and goals of the Nation and otherwise is of the highest quality." 5 U.S.C. § 3131. Senior Executives are subject to removal from the SES and/or federal service for cause, including "misconduct, neglect of duty, malfeasance, or failure to accept a directed reassignment or to accompany a position in a transfer of function." *Id.* § 7543(a). A Senior Executive whose removal is proposed generally is entitled to 30 days' written notice, seven days

to respond with supporting evidence, representation by an attorney or other representative, and a written decision with specific reasons by the earliest practicable date. *Id.* §§ 7542, 7543(b). The Senior Executive may appeal an adverse decision to the Merit System Protection Board ("MSPB"), and receive a post-termination hearing. *Id.* §§ 7701(a)(1), 7543(c).

In 2014, in response to reports of delay in patient care and manipulation of wait times at certain VA health facilities, Congress enacted the Veterans Access, Choice, and Accountability Act of 2014, Pub. L. No. 113-146, 127 Stat. 1754; *see also* Sidath Viranga Panangala et al., Cong. Rsch. Serv., R43704, *Veterans Access, Choice, and Accountability Act of 2014 (H.R. 3230; P.L. 113-146)*, at 1 (2015). In a provision codified at 38 U.S.C. § 713, the Act provided the Secretary new authority to remove Senior Executives from either the SES or federal service altogether for misconduct or performance. Panangala et al., *supra*, at 20-21; Pub. L. No. 113-146, § 707. Such removals were subject to a process of expedited review before an MSPB administrative judge. *Id.*[1]

In 2017, "to improve accountability" at VA, Congress enacted the Department of Veterans Affairs Accountability and Whistleblower Protection Act of 2017, Pub. L. No. 115-41, 131 Stat. 862; U.S. Sen. Comm. on Veterans' Affairs, Press Release, *VA Accountability Measure Signed Into Law* (June 23, 2017), https://www.veterans.senate.gov/newsroom/majority-news/va-accountability-measure-signed-into-law. The Act revised Section 713 to create a new procedure governing discipline of Senior Executives. *See* 38 U.S.C. § 713. A Senior Executive proposed to be disciplined now is entitled to "advance notice of the action and a file containing all evidence in support of the proposed action," has seven business days to respond to a notice of proposed removal, and may "be represented by an attorney or other representative." *Id.* § 713(b)(1)(A)-(B),

[1] The administrative judge's decision initially was not subject to further MSPB review, but the U.S. Court of Appeals for the Federal Circuit invalidated this provision in *Helman v. Department of Veterans Affairs*, 856 F.3d 920, 923 (Fed. Cir. 2017).

(2)(B). VA must issue a decision on the discipline within 15 days of the notice of proposed removal's issuance. *Id.* § 713(b)(2)(A), (C). The Senior Executive may grieve a decision to impose discipline in accordance with an internal grievance process that the Secretary establishes, which must take less than 21 days. *Id.* § 713(b)(1)(C), (b)(3). The Senior Executive may obtain judicial review of an adverse decision on the administrative record. *Id.* § 713(b)(6).

**B. <u>VA's Procedures for Disciplining Senior Executives</u>**

On July 7, 2017, the Secretary issued Corporate Senior Executive Management Office Letter No. 006-17-1 ("Letter No. 006-17-1"), laying out a procedural framework to govern the discipline of Senior Executives in accordance with Section 713. Administrative Record ("AR") 384. Under this framework, VA components refer all allegations of misconduct, poor performance, or retaliation involving Senior Executives to VA's Office of Accountability and Whistleblower Protection. AR 389. That Office "review[s] and, if necessary, investigate[s] any allegation or other evidence of [m]isconduct, poor performance, or [r]etaliation, using appropriate processes such as administrative investigation boards or fact-finding inquiries." AR 390.

Once an investigation is complete, VA determines whether to pursue discipline against the Senior Executive. *Id.* If VA pursues discipline, it designates an official (the "proposing official") to review the investigation's results and determine whether to propose reprimanding, suspending, demoting, or removing the Senior Executive, or whether no action is warranted. AR 388, 390. The proposing official provides the Senior Executive a copy of the proposal. AR 391. Moreover, "[u]nless the circumstances of the investigation make it impossible, unreasonable, or unnecessary to do so, a Senior Executive who is the subject of an investigation or review will be given an opportunity to respond to and provide evidence relating to the matters under investigation. Any statement or evidence provided by the Senior Executive will be included in the investigative file,

and if relevant or used in support of a subsequent proposed action, the evidence file." AR 390. The Senior Executive has seven business days to respond in writing to the individual (the "deciding official") to whom the Secretary has delegated authority to make an initial decision as to what disciplinary action to take. AR 385, 391. The deciding official may grant an extension to the reply period, but only "in the most exigent circumstances and recognizing the statutory requirement to issue a decision within 15 business days from the date that the Proposal was issued." AR 391. Within 15 business days of the proposal's issuance, the deciding official issues an initial decision concerning the disciplinary action to take. AR 392.

Within seven business days of receiving the initial decision, the Senior Executive may grieve it to an individual (the "grievance official") designated to examine the grievance and make a recommendation to the Secretary on it, who shall in turn make a recommendation to the Secretary on it. AR 386, 392-93. The Secretary shall review the grievance official's recommendation and the record and issue a final decision on the discipline. AR 393. The Secretary's decision is subject to judicial review under 38 U.S.C. § 713. *Id.*

### C. <u>Trinka's Investigation</u>

Trinka joined VA on January 15, 2012 as the Executive Director of Leading Edge, a government-wide senior executive development initiative—a position within the Senior Executive Service. AR 003, 010. Trinka was later assigned the position of Chief Talent Management Officer in VA's Office of Information and Technology. *Id.*

Trinka married Piyaporn Trinka in December 2013. AR 303. Mrs. Trinka is not a U.S. citizen. AR 003-04. On January 3, 2014, Trinka applied for health and life insurance benefits for Mrs. Trinka, using her non-citizen IRS tax identification number in lieu of a Social Security number on a Federal Employees Health Benefits Election Form and Federal Employees' Group

Life Insurance Designation of Beneficiary Form. AR 004, 334-39. In filling out these forms, Trinka failed to disclose that Mrs. Trinka was in the United States unlawfully. *Id.* Trinka also used Mrs. Trinka's non-citizen IRS tax identification number to obtain a military dependent identification card, allowing her to access military installations. AR 004.

As part of a regular suitability and background reinvestigation, Trinka submitted an Electronic Questionnaire for Investigation Processing ("e-QIP") on August 13, 2014. AR 003, 280. On page 15 of the e-QIP, Trinka incorrectly stated that Mrs. Trinka is a citizen of the United States. AR 003, 294. In a supplemental subject interview by the U.S. Office of Personnel Management's Federal Investigative Services, he acknowledged that Mrs. Trinka is not a U.S. citizen. AR 003. During that interview, he did not disclose that Mrs. Trinka was in the United States unlawfully. *Id.*

On May 22, 2014, the Department of Homeland Security informed OIG that Trinka was the subject of an investigation, and OIG learned that Trinka was married to a non-citizen who was present in the United States unlawfully. AR 003. On December 7, 2018, OIG asked Trinka's supervisor, John Oswalt, to escort Trinka to an interview with an OIG investigator. AR 306. While walking to the interview, Trinka informed Oswalt that he believed that the interview might concern his wife's immigration and/or citizenship status, and told Oswalt for the first time that his wife had no lawful immigration status. *Id.* Once Trinka arrived at the site of the interview, he requested that an attorney be present, and the interview was postponed so his attorney could be present. AR 320.

On December 21, 2018, OIG finally interviewed Trinka. AR 303, 320. OIG recorded this interview, and later summarized it in a memorandum. *Id.* According to that memorandum, Trinka stated that he had "verbally disclosed his wife's undocumented immigration status to three different supervisors who managed him." AR 304. OIG also summarized Trinka's interview in its Comprehensive Report of Investigation, which said the same thing. AR 320-21. In May 2019, OIG

interviewed three of Trinka's supervisors—Oswalt, Richard Chandler, and Martha Orr—summarizing these interviews in three separate memoranda. AR 305-10. According to the memorandum summarizing Oswalt's OIG interview, Oswalt stated that Trinka had never informed him of Mrs. Trinka's immigration status until December 7, 2018, the date that Oswalt escorted Trinka to the originally-scheduled OIG interview. AR 306. According to the memoranda summarizing Chandler and Orr's OIG interviews, both Chandler and Orr stated that Trinka had never informed them of Mrs. Trinka's immigration status. AR 308, 310.

**D. <u>Trinka's Removal From Federal Service</u>**

In January 2020, OIG referred its report of investigation of Trinka to the Office of Accountability and Whistleblower Protection for "further action as appropriate." AR 001. On July 16, 2020, that Office recommended Trinka's removal from federal service for making "false or inaccurate statements or provid[ing] false or inaccurate information to the government on at least two occasions." *Id.* The two inaccurate statements that the Office identified were Trinka's claims that (1) Mrs. Trinka is a U.S. citizen, which he made in his e-QIP, and (2) he had told three of his supervisors about Mrs. Trinka's immigration status, which he made during his OIG interview. *Id.* VA appointed Paul Cunningham, the Deputy Assistant Secretary and Chief Information Officer, to serve as the proposing official. AR 006. Cunningham was not provided any transcripts or recordings of OIG's interviews of Trinka or his supervisors, relying only on OIG's memoranda summarizing these interviews. AR 744-45.

On September 11, 2020, Cunningham proposed Trinka's removal based on one charge of "Conduct Unbecoming a Federal Supervisor." AR 003. This charge specified a single act of misconduct—that Trinka had provided false or inaccurate information to OIG when he inaccurately stated that he had told three supervisors about Mrs. Trinka's immigration status. *Id.*

The charge did not reference Trinka's inaccurate statement on his e-QIP that Mrs. Trinka is a U.S. citizen, or his use of Mrs. Trinka's non-citizen tax identification number to obtain federal benefits and a military dependent identification card for her. *Id.* In justifying his decision to recommend a penalty of removal for the charge, however, Cunningham considered several aggravating factors, including Trinka's inaccurate statement on his e-QIP that Mrs. Trinka is a U.S. citizen and use of Mrs. Trinka's non-citizen tax identification number to obtain federal benefits and a military dependent identification card. AR 004-05.

Cunningham told Trinka that "[t]he evidence demonstrates that you have a propensity to misinform, mislead or otherwise provide false answers and narratives." AR 004. "On numerous occasions," he continued, "it seems clear that you have willfully misinformed federal financial, insurance, medical, and security programs on the citizenship status of your spouse. In the case of security investigation, your lack of candor could have resulted in access to sensitive information you would have not otherwise been entitled. Your failure to disclose information seemed to be intentional." *Id.* Cunningham further stated that "[a]s a member of the SES, you are expected to exhibit a high standard of professionalism, integrity, care, candor, and judgement," and "to make every effort to uphold the core and foundational values that apply across the entire VA organization." AR 005. "Based off of your actions," Cunningham said, "it is evident that you failed to meet the expectations. You intentionally misrepresented the citizenship and legal status of your spouse to federal investigators. The external agency investigation revealed reoccurring incidents of poor judgement and lack of candor to federal authorities by you." *Id.*

Cunningham also told Trinka that "[d]ue to the totality of the circumstances and your lack of candor, you have compromised the trust and confidence required of an employee of your position." *Id.* He said that Trinka's behavior "calls into question your judgment in difficult

situations," and that "[b]ased on the evidence and testimonies, you have failed to act with high moral principle, adhere to the highest professional standards, and uphold the values expected of a VA SES employee." *Id.* He explained that he chose to propose Trinka's removal because he did "not believe that a lesser alternative sanction, such as suspension, reprimand or demotion," would be "adequate to deter further misconduct by" Trinka. *Id.* In proposing the removal, Cunningham did not consider any transcripts or recordings of Trinka's interview or his supervisors' interviews, relying instead on OIG's memoranda summarizing these interviews. AR 302-10, 744-45.

VA notified Trinka of the proposed removal on September 11, 2020. AR 003. VA provided Trinka an evidence file, which included OIG's summaries of his and his supervisors' interviews, but not transcripts or recordings of those interviews. AR 355, 380. The evidence file included all of the evidence that Cunningham had available to him in making his proposal to remove Trinka. AR 744-45. Trinka was given seven business days to respond to the proposal. AR 005. On September 16, 2020, Trinka requested a three-business-day extension of time to respond to the proposal, but VA denied his request, citing a lack of exigent circumstances. AR 355-56, 555-56. On September 22, 2020, Trinka responded in writing to the proposal, denying the charge against him and raising various legal challenges to his removal. AR 353-79.

On October 2, 2020, Dominic Cussatt, Principal Deputy Assistant Secretary for the Office of Information and Technology, issued the decision to remove Trinka from the Senior Executive Service and federal service. AR 529. He found that Trinka "engaged in conduct unbecoming a Federal Supervisor when [he] provided false and inaccurate information to [OIG] investigators," and stated that "Senior Executives are held to a higher standard of conduct." *Id.* In making his decision, Cussatt did not consider or rely on transcripts or recordings of Trinka's OIG interview

or his three supervisors' interviews, relying instead on OIG's memoranda summarizing the interviews. AR 529, 744-45. Trinka's removal became effective immediately. AR 529.

On October 14, 2020, Trinka grieved his removal to the Secretary, asserting numerous legal challenges to the decision to remove him. AR 538. James Gfrerer, Assistant Secretary for Information and Technology, reviewed Trinka's grievance, and recommended that the Secretary sustain Trinka's removal and deny his grievance. AR 742. Then-Secretary Robert Wilkie sustained Trinka's removal for Conduct Unbecoming a Federal Supervisor and denied his grievance. AR 750-51. The Secretary found that Trinka's removal was warranted by a preponderance of the evidence. AR 750-51. In making this decision, the Secretary did not consider or rely on transcripts or recordings of Trinka's OIG interview or his three supervisors' interviews, relying instead on OIG's memoranda summarizing these interviews. AR 750.

## ARGUMENT

No person shall "be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. Due process "is not a technical conception with a fixed content unrelated to time, place and circumstances." *Nat'l Council of Resistance of Iran v. Dep't of State*, 251 F.3d 192, 205 (D.C. Cir. 2001). Rather, "the procedures due one person in one situation are not mechanically the same as those due another in a different context." *Gonzalez v. Freeman*, 334 F.2d 570, 579 (D.C. Cir. 1964). Courts weigh three factors to determine "the specific dictates of due process" in any given context: the (1) "private interest that will be affected by the official action," (2) "risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," and (3) "Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Matthews v. Eldridge*, 424 U.S. 319, 335 (1976). Courts

recognize "the significance of" both a public servant's "private interest in retaining employment" and a public employer's "interest in the expeditious removal of unsatisfactory employees," as well as its interest in "the avoidance of administrative burdens." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 543 (1985). When public employees challenge their removals, then, the risk of error that the procedures used pose, and the probable value of additional procedural safeguards, may be the determinative factor in the due process analysis. *Eldridge*, 424 U.S. at 335.

Section 713, meanwhile, provides that a reviewing court may set aside a Senior Executive's discipline that is (1) "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with a provision of law," (2) "obtained without procedures required by a provision of law having been followed," or (3) "unsupported by substantial evidence." 38 U.S.C. § 713(b)(6). "The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). "Normally, an agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Id.* The substantial evidence standard, meanwhile, "is not a high bar. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *DHSC, LLC v. NLRB*, 944 F.3d 934, 937 (D.C. Cir. 2019). This is "less than a preponderance of the evidence," but more than a scintilla." *Fred Meyer Stores, Inc. v. NLRB*, 865 F.3d 630, 637 (D.C. Cir. 2017) (quotation marks omitted).

Trinka contends that his removal violated both the Due Process Clause and Section 713. Specifically, he challenges VA's (1) failure to provide him a transcript or recording of his and his

supervisors' interviews, Compl. ¶¶ 216-31, 241, 271, 273-77, 301-07, (2) failure to provide him an evidentiary hearing where he could confront the evidence against him, *id.* ¶¶ 232-37, 242, (3) failure to provide him an opportunity for discovery or other fact-finding, *id.* ¶¶ 239-40, (4) provision of only seven days to respond to the removal proposal, *id.* ¶¶ 240, 243, (5) supposed reliance on *ex parte* communications, *id.* ¶¶ 244-51, (6) use of the substantial evidence standard to review the evidence against him, *id.* ¶¶ 252-57, 272, (7) supposed retroactive application of Section 713, *id.* ¶¶ 258-62, 284-89, 293, (8) failure to consider his arguments against his removal, *id.* ¶¶ 295-300, and (9) reliance on hearsay, *id.* ¶¶ 309-29; *see also id.* ¶ 269 (re-alleging due process allegations under Section 713). As explained below, none of these arguments have merit.[2]

## I. Trinka Was Not Entitled to Transcripts or Recordings of the Interviews

Trinka argues that VA violated the Due Process Clause and Section 713 by failing to provide him any transcripts or recordings of his and his supervisors' interviews, instead providing him only summaries of these interviews. Two points warrant clarifying at the outset. First, neither the proposing official, deciding official, grievance official, nor Secretary themselves considered or relied on any transcripts or recordings of these interviews, relying instead solely on the summary memoranda that OIG prepared. AR 744-45, 750. Second, while OIG recorded Trinka's interview, it never transcribed this interview, and never recorded or transcribed his supervisors' interviews. *See* Answer ¶¶ 118, ECF No. 11. Except for the recording of Trinka's interview, the transcripts and recordings to which Trinka claims he was entitled do not, as a matter of fact, exist. *See United States v. Marshall*, 132 F.3d 63, 68 (D.C. Cir. 1998) ("[T]he government cannot be required to

---

[2] While the Federal Circuit generally has exclusive jurisdiction over federal personnel cases (other than actions under a limited set of statutes such as Title VII of the Civil Rights Act of 1964), *see United States v. Fausto*, 484 U.S. 439, 449 (1988), federal district courts have jurisdiction over Section 713 cases. *See* Order, *McLafferty v. Wilkie*, No. 20-1772 (Fed. Cir. Aug. 31, 2020).

disclose evidence that it neither possesses nor controls"); *Sanchez v. United States*, 50 F.3d 1448, 1453 (9th Cir. 1995) (same under due process).

As best Defendants can tell, nothing in the record specifically reflects that fact, and it is hard to prove a negative. But Trinka, as the party asserting that VA acted unlawfully by failing to furnish these materials, bears the burden to show that they exist. *See UnitedHealthcare Ins. Co. v. Becerra*, 9 F.4th 868, 882 (D.C. Cir. 2021) ("The party challenging agency action bears the burden of proof."); *Pineiro-Lopez v. Kennedy*, 293 F.2d 540, 543 (D.C. Cir. 1961) (plaintiff bears "burden of demonstrating lack of due process"). He cannot meet this burden, because they do not exist. For convenience's sake, the Secretary thus will refer only to Trinka's argument that he was entitled to a recording of his own interview, although the same arguments would also apply to any transcript of his own interview and transcripts or recordings of his supervisors' interviews that existed. As explained below, Trinka's arguments that he was entitled to a recording of his interview lack merit.

### A. Due Process Principles Did Not Entitle Trinka to a Recording of His Interview

Due process does not categorically bar an agency from relying on a summary of evidence, rather than the underlying evidence itself, to remove an employee. *See ASSE Int'l, Inc. v. Kerry*, 803 F.3d 1059, 1077 (9th Cir. 2015) ("A summary of evidence may, in certain circumstance, provide sufficient notice to allow a meaningful opportunity to respond."); *Loudermill*, 470 U.S. at 546 ("The tenured public employee is entitled to . . . an explanation of the employer's evidence"). Rather, the question is whether, under the circumstances presented, relying on a summary of the evidence would create such a high risk of an erroneous deprivation that due process forbids it. *See Eldridge*, 424 U.S. at 335; *ASSE Int'l, Inc.*, 803 F.3d at 1077.

"Due process challenges to agency action are subject to the general prejudicial error rule." *Myersville Citizens for a Rural Cmty., Inc. v. FERC*, 783 F.3d 1301, 1327 (D.C. Cir. 2015). An

agency's failure to provide an opportunity to challenge evidence thus violates due process only so long as "it can be demonstrated to have been prejudicial." *Sardo v. McGrath*, 196 F.2d 20, 22 (D.C. Cir. 1952). To establish that the failure to furnish certain evidence violated due process requires more than bare speculation that the evidence might have been helpful to the party making the claim. *See United States v. Williams-Davis*, 90 F.3d 490, 514 (D.C. Cir. 1996) ("[I]t is unwise to infer the existence of [exculpatory] material based upon speculation alone. . . . Except for bare speculation, Restrepo has nothing to suggest the existence of favorable materials."). One must show both that the evidence was "favorable" and "a reasonable probability that, had the evidence been disclosed . . . the result of the proceeding would have been different." *United States v. Sitzmann*, 893 F.3d 811, 826 (D.C. Cir. 2018) (quotation marks omitted). This principle has at least as much force in the administrative context as in criminal cases, if not more—it would be anomalous to say due process entitles public employees facing removal from their jobs to more protection than criminal defendants. *See United States v. Mendoza-Lopez*, 481 U.S. 828, 839 n.17 (1987) ("[T]he procedures required in an administrative proceeding are less stringent than those demanded in a criminal trial"); *Tucker v. City of Chi.*, 907 F.3d 487, 493 (7th Cir. 2018) ("one's liberty interest in a criminal prosecution" outweighs "property interest in continued employment").

Trinka cannot show that VA's failure to furnish him a recording of his interview prejudiced him in any way. He does not deny that the memorandum summarizing his interview was accurate insofar as it shows that (1) Trinka claimed to the OIG interviewer that he had told three supervisors about Mrs. Trinka's immigration status, and (2) this statement was not true. Indeed, Trinka does not claim that the summary memorandum was inaccurate in any way at all. Instead, he offers only bare speculation that a recording of his interview might possibly reveal some helpful information,

without offering a reason to think it actually would. "Such naked speculation is simply insufficient to establish prejudice." *United States v. Pettigrew*, 346 F.3d 1139, 1147 (D.C. Cir. 2003).

Trinka makes a slew of arguments for how the recording might possibly have helped him, but none exceeds the level of speculation for the same basic reason—he fails to explain how a recording of his interview might show that his indisputably false statement was actually true as he understood it. Trinka claims that the summary did not "describe the circumstances under which [he] allegedly made that statement," Compl. ¶ 110, but he does not say what possible circumstance could have made his false statement true. He likewise contends that the summary did not "identify what question or questions were asked to elicit [his] response," *id.*, but again, does not say what possible question the interviewer could have asked him that could have made his false answer true. He says that the summary did not "state whether [he] had further explained the circumstances of the disclosures," *id.*, but once again, he does not identify any possible circumstance that could have rendered his false answer true. He says that the summary did not identify which supervisors he claimed to have told about Mrs. Trinka's immigration status or even specify whether he identified them by name, *id.*, but he does not actually deny that the supervisors in question were Oswalt, Chandler, and Orr. Finally, he says that the summary did not make clear whether he had prefaced his inaccurate statement with the words "I think" or "I believe," which he contends could have rendered his statements technically true. *Id.* But even if Trinka had prefaced his statement with "I think" or "I believe," he fails to explain how he possibly could have believed that he had told his supervisors about Mrs. Trinka's immigration status when he in fact had not done so—and thus, he fails to explain how the OIG interviewer possibly could have concluded that he really believed his statement was true. *Cf. Milkovich v. Lorain Journal*, 497 U.S. 1, 20 n.7 (1990) ("[T]he statement, 'I think [X]' may be provable as false" if "the speaker really did not think [X]").

Trinka did not argue during agency proceedings, and does not claim in his complaint, that due process entitled him to a transcript or recording of his supervisors' interviews, AR 353-54, 360-61, 541, 543-45; Compl. ¶¶ 216-31, and so forfeits any such argument. *See Hall v. Ford*, 856 F.2d 255, 267 (D.C. Cir. 1988) (refusing to consider theory other than "the theory presented in the complaint"); *Koretoff v. Vilsack*, 707 F.3d 394, 398 (D.C. Cir. 2013) ("We require the argument petitioner advances here to be raised before the agency, not merely the same general legal issue." (cleaned up)); *Nat'l Wildlife Fed'n v. EPA*, 286 F.3d 554, 562 (D.C. Cir. 2002) ("[T]here is a near absolute bar against raising new issues—factual or legal—on appeal in the administrative context"). But even if Trinka had preserved such an argument, he cannot show that VA's failure to provide him transcripts of his supervisors' interviews prejudiced him in any way, as he neither alleges that the summaries of their interviews were inaccurate nor offers any non-conclusory explanation for how transcripts or recordings of their interviews would have helped him. In short, Trinka fails to show a reasonable probability that VA's failure to provide transcripts or recordings of his or his supervisors' interviews prejudiced him in any way. At most, he offers only a bare possibility that such materials might possibly have helped him in some way, which is not enough.

For that reason, the cases that Trinka cites for his claim that due process required VA to provide him a recording of his interview, *see* Compl. ¶ 226, are entirely inapposite. In *Ramirez v. Department of Homeland Security*, the Federal Circuit held that an agency violated due process principles when it refused to provide clinical psychological records that it had relied on to justify an employee's removal. 975 F.3d 1342, 1350 (Fed. Cir. 2020). But there, "one of the most likely sources of error" in the clinical psychologist's analysis was plain—namely, "the possibility that he used a validity range that did not account for the typical scores found in law enforcement

officers." *Id.* at 1354. Trinka, in contrast, does not identify any source of likely error in the summary of his interview, offering only bare speculation that a recording might possibly help him.

He also cites *Banks v. FAA*, which held that due process required an agency to provide the urinalysis sample it had relied on to remove an employee on drug charges. 687 F.2d 92, 94-96 (5th Cir. 1982). That holding rested on "the possibility that the samples were mixed-up, damaged, or even inaccurately tested." *Id.* at 94. But Trinka cites no comparable reason, or any reason, to doubt the summary's reliability, and so cannot show prejudice due to the failure to give him a recording.[3]

Next, Trinka cites *Asse International, Inc.*, but there, the court credited the plaintiff's claim that "it may have been able to produce evidence refuting" the agency's evidence had it received a transcript of certain testimony rather than only a summary of the testimony. 803 F.3d at 1077. This Court, however, should not credit Trinka's wholly speculative claim that the recording may have help him somehow. *Hicks v. Commissioner of Social Security*, 909 F.3d 786 (6th Cir. 2018), is even further afield—it did not even involve an agency's refusal to provide evidence at all. The issue was the agency's exclusion from the record of certain evidence that the plaintiffs had offered. *Id.* at 798. And the prejudice that the plaintiffs suffered due to this exclusion was obvious—without it, they could not show "their initial eligibility for [disability] benefits." *Id.* Trinka, in contrast, cannot show that failing to provide him a recording of his interview prejudiced him at all.

Finally, Trinka relies on *Greene v. McElroy* for the idea that "where governmental action seriously injures an individual, and the reasonableness of the action depends on fact findings, the

---

[3] For the same reason, *Houston Federation of Teachers, Local 2415 v. Houston Independent School District*, 251 F. Supp. 3d 1168 (S.D. Tex. 2017), is inapposite. There, the district court held that a school could not make teacher retention choices based on scores produced by a proprietary assessment without letting teachers review the assessment's methodology and accuracy. *Id.* at 1178-80. But there, the record established that the scores "might be erroneously calculated for any number of reasons, ranging from data-entry mistakes to glitches in the computer code itself." *Id.* at 1178. Trinka points to no similar reason to doubt the reliability of the summary of his interview.

evidence used to prove the Government's case must be disclosed to the individual so that he has an opportunity to show that it is untrue." 360 U.S. 474, 496 (1959).[4] This principle was rooted in the concern that disclosure of the government's evidence is necessary to ensure its reliability. *Id.* at 496-98 (government's evidence may "consis[t] of the testimony of individuals whose memory might be faulty or who, in fact, might be perjurers or persons motivated by malice, vindictiveness, intolerance, prejudice, or jealousy," and disclosure can "uncover inconsistencies, lapses of recollection, and bias"). But that concern is inapposite where, as here, an employee fails to explain how failing to provide the evidence caused him any prejudice at all. For these reasons, none of the cases Trinka cites show that he was entitled to a recording of his interview. And even if these cases could somehow be read to hold that due process requires an agency to furnish evidence supporting an employee's removal even absent any showing of prejudice, such holdings would conflict with binding D.C. Circuit precedent and should not be followed. *See Myersville Citizens*, 783 F.3d at 1327; *Sardo*, 196 F.2d at 22; *Williams-Davis*, 90 F.3d at 514; *Sitzmann*, 893 F.3d at 826.

**B. <u>Section 713 Did Not Entitle Trinka to a Recording of His Interview</u>**

Trinka also contends that VA's failure to provide him a recording of his interview violated Section 713, which entitled him to "a file containing all evidence in support of the proposed action." 38 U.S.C. § 713(b)(1)(A). But Trinka forfeited this argument by failing to raise it below. AR 353-79, 538-47; *Koretoff*, 707 F.3d at 398; *Nat'l Wildlife Fed'n*, 286 F.3d at 562.

---

[4] *Greene* did "not determine" whether the employee "was accorded due process of law," 360 U.S. at 493, and acknowledged that the challenged action might be constitutional, *id.* at 508 ("it is possible that the Constitution presents no inhibition"). The issue was simply whether Congress or the President had authorized the procedures the agency used to remove the employee. *Id.* at 493 ("The issue, as we see it, is whether the [agency] has been authorized to create" the program), 508 ("We decide only that in the absence of explicit authorization from either the President or Congress the respondents were not empowered to deprive petitioner of his job in a proceeding in which he was not afforded the safeguards of confrontation and cross-examination."). Here of course, Congress did authorize the procedures that VA followed to remove Trinka. *See* 38 U.S.C. § 713.

In any event, Section 713(b)(1)(A) simply required VA to provide Trinka the evidence that it considered in proposing his removal, and neither the proposing official, deciding official, grievance official, nor Secretary ever considered the recording of Trinka's interview in deciding whether to remove him, relying solely on OIG's summary of the interview. AR 744-45, 750. The conclusion that Section 713(b)(1)(A) reaches only the evidence that decision-makers considered in proposing a Senior Executive's discipline follows naturally from its use of the term "support," which connotes a decision-maker's actual reliance on the evidence in question. *See Webster's 9th New Collegiate Dictionary* 1186 (1990) ("to provide with substantiation: corroborate"); *Am. Heritage Dictionary of the English Language* 1739 (4th ed. 2000) ("To furnish corroborating evidence for"); *Skoczen v. Shinseki*, 564 F.3d 1319, 1323 (Fed. Cir. 2009) ("[T]he commonly understood meaning of 'support'" is "provide an evidentiary basis for the claim"); *cf. Southwire Co. v. NLRB*, 820 F.2d 453, 460 (D.C. Cir. 1987) ("Substantial evidence supports the Board's decision"); Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record").

Such an interpretation also aligns with Section 713(b)(1)(A)'s manifest purpose—enabling an employee to understand the reason for the disciplinary decision. And relatedly, it comports with the bedrock administrative law principle that review of agency action focuses on "the information upon which [the agency] relied in reaching its decision" and "the course of reasoning by which the result was reached." *Williams v. Robinson*, 432 F.2d 637, 641 (D.C. Cir. 1970); *see also Durham Sch. Servs., LP v. NLRB*, 821 F.3d 52, 60 (D.C. Cir. 2016) (party not entitled to respond to evidence that agency "did not rely on"); *U.S. Lines v. Fed. Maritime Comm'n*, 584 F.2d 519, 541 (D.C. Cir. 1978) (judicial review of agency action focuses on its "motivating force"). For that reason, an administrative record should not include materials the agency did not consider. *See, e.g.*, *Theodore*

*Roosevelt Conservation v. Salazar*, 616 F.3d 497, 515 (D.C. Cir. 2010) (record need not include "documents that were not used in making [the] decision"); *Charleston Area Med. Ctr. v. Burwell*, 216 F. Supp. 3d 18, 28 (D.D.C. 2016) ("If data was never thought to be relevant by the agency, then it is not part of the agency's decisionmaking record."); *Grunewald v. Jarvis*, 924 F. Supp. 2d 355, 357 (D.D.C. 2013) ("The Record should not include materials that were not considered by agency decisionmakers." (quotation marks omitted)). Under such a rule, the recording of Trinka's interview is not part of the record because no decision-maker who proposed Trinka's removal ever considered it. It only makes sense to read Section 713(b)(1)(A) in light of that background rule.

Finally, this reading of Section 713(b)(1)(A) is more readily administrable than Trinka's proposed alternative. An agency can more easily identify the evidence that it actually considered in making a decision than the universe of evidence that it did not consider, but which would have supported the decision it made. The latter inquiry would require an agency to both know about evidence that it did not consider and then assess retrospectively whether that evidence would have supported its decision. In contrast, an agency will have little trouble knowing which evidence that it actually considered supports its action. Practical considerations thus counsel for reading Section 713(b)(1)(A) to require disclosure only of evidence VA actually used to propose Trinka's removal.

Finally, even if Section 713(b)(1)(A) required VA to provide Trinka a recording of his interview, Trinka cannot show that its failure to do so prejudiced him, for all of the reasons explained above, and thus cannot show that reversible error occurred. *Cf.* 5 U.S.C. § 706 (under Administrative Procedure Act's analogous judicial review provision, "due account shall be taken of the rule of prejudicial error"); *RadNet Mgmt v. NLRB*, 992 F.3d 1114, 1124 (D.C. Cir. 2021) ("In administrative law, as in federal civil and criminal litigation, there is a harmless error rule"); *Jicarilla Apache Nation v. Dep't of the Interior*, 613 F.3d 1112, 1121 (D.C. Cir. 2010) ("If the

agency's mistake did not affect the outcome, if it did not prejudice the petitioner, it would be senseless to vacate and remand for reconsideration." (cleaned up)).

### C. Letter No. 006-17-1 Did Not Entitle Trinka to a Recording of His Interview

Trinka further argues that Letter No. 006-17-1 required VA to include a recording of his interview in the evidence file that it provided him. He relies on Section 7.a.iii.1 of the Letter, which states that "[a]ny statement or evidence provided by the Senior Executive will be included in the investigative file, and if relevant or used in support of a subsequent proposed action, the evidence file." AR 390. But Section 7.a.iii by its plain language applies only to the Office of Accountability and Whistleblower Protection. AR 390. OIG never transmitted the recording of Trinka's interview to the Office of Accountability and Whistleblower Protection, so Section 7.a.iii does not apply to the recording. (While the record itself does not make clear the fact that OIG never transmitted the recording, once again, Trinka bears the burden to prove that OIG did transfer the recording—a burden he cannot meet.) In any event, the recording was not "used in a subsequent proposed action," *id.*, as the proposing official, deciding official, grieving official, and Secretary did not consider it. For that reason, the recording was not "relevant," either. *See Gen. Elec. Co. v. Jackson*, 595 F. Supp. 2d 8, 15 (D.D.C. 2009) (materials that agency did not consider are "irrelevant"). Letter No. 006-17-1 thus did not entitle Trinka to the recordings. And even if it did, he cannot show that the failure to provide him the recording prejudiced him, for the reasons explained above.

## II. Trinka Was Not Entitled to Cross-Examine Adverse Witnesses

Next, Trinka argues that VA denied him due process by removing him without a hearing where he could confront his supervisors or the OIG investigator who summarized their statements.[5]

[5] To the extent that Trinka argues he was denied any kind of hearing at all, that is patently untrue. Trinka received the evidence the proposing official considered in proposing his removal, an opportunity to respond to that proposal with arguments and supporting evidence, and the ability

But Trinka identifies no authority for the notion that due process entitles a public employee facing removal to confront adverse witnesses, and the D.C. Circuit has repeatedly recognized that it does not. In *Harrison v. Bowen*, for example, the D.C. Circuit held that a federal employee could not show a due process violation where she "received 30 days written notice of her proposed removal, an opportunity to respond orally and in writing, . . . a further opportunity personally to present her case to a higher official," and an opportunity to file a complaint with the Office of Special Counsel. 815 F.2d 1505, 1519 (D.C. Cir. 1987) (alterations omitted); *see also id.* at 1511-12 (providing overview of Office of Special Counsel proceedings, without indicating they allow opportunity for confrontation). The D.C. Circuit reached the same conclusion in *United States Information Agency v. Krc*, where the agency had "timely notified [an employee] of his impending termination" and "terminated him on a ground expressly provided in its own regulations." 905 F.2d 389, 399 (D.C. Cir. 1990). And in *Twist v. Meese*, the D.C. Circuit held that a federal employee's removal satisfied due process principles because he had "received advance notice, an on-the-record hearing, and an opportunity to submit a written answer to the charges against him." 854 F.2d 1421, 1429 (D.C. Cir. 1988); *see also id.* at 1423 (describing the hearing without indicating that it provided any opportunity for confrontation). In each of these cases, the D.C. Circuit concluded that the removal comported with due process even though the employee could not confront adverse witnesses.

That is unsurprising, as "[t]he essential requirements of due process" are simply "notice and an opportunity to respond," meaning only "[t]he opportunity to present reasons, either in person or in writing, why proposed action should not be taken. . . . an opportunity to present [one's]

---

to grieve his removal to the Secretary. There can be no doubt that this process provided "some kind of hearing prior to [Trinka's] discharge," which is all that due process requires. *Loudermill*, 470 U.S. at 542; *see also id.* at 545 ("[T]he formality and procedural requisites for the hearing can vary, depending upon the importance of the interests involved and the nature of the subsequent proceedings." (quotation marks omitted)).

side of the story." *Loudermill*, 470 U.S. at 546. That does not by its nature seem to require any opportunity for confrontation, and as best Defendants know, neither the Supreme Court nor D.C. Circuit have ever held that a public employee facing removal has a due process right to confront witnesses. Indeed, it would be odd to hold that the Due Process Clause provides in administrative hearings a right expressly enshrined in a separate amendment that covers only criminal defendants. *See* U.S. Const. amend. VI; *Dutton v. Evans*, 400 U.S. 74, 97 n.4 (1970) (Harlan, J., concurring) (Confrontation Clause "applies only to criminal prosecutions"); *Pearson v. District of Columbia*, 644 F. Supp. 2d 23, 47 (D.D.C. 2009), *aff'd*, 377 F. App'x 34 (D.C. Cir. 2010) ("Plaintiff does not have a right to confront witnesses against him, as the Confrontation Clause does not apply here."); *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 574 n.22 (1996) ("The strict constitutional safeguards afforded to criminal defendants are not applicable to civil cases"). For these reasons, Trinka's claim that due process required an opportunity to confront adverse witnesses lacks merit.

## III. Trinka Was Not Entitled To Discovery

Trinka also argues that VA deprived him of due process by failing to provide a procedure to take discovery or otherwise engage in fact-finding. But due process principles do not require an agency to provide an employee facing removal any mechanism for discovery or fact-finding. *See United States v. Tarantino*, 846 F.2d 1384, 1416 (D.C. Cir. 1988) ("[T]he Due Process Clause has little to say regarding the amount of discovery which the parties must be afforded." (quoting *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977))). Given that "there is no general constitutional right to discovery in a criminal case," *United States v. Bisong*, 645 F.3d 384, 396 (D.C. Cir. 2011) (quoting *United States v. Ruiz*, 536 U.S. 622, 629 (2002)), a due process right to discovery in administrative proceedings would be bizarre. *See Mendoza-Lopez*, 481 U.S. at 839 n.17; *Tucker*, 907 F.3d at 493. Rather, "[t]he extent of discovery that a party engaged in an administrative hearing

is entitled to is primarily determined by the particular agency." *McClelland v. Andrus*, 606 F.2d 1278, 1285 (D.C. Cir. 1979); *see also Hi-Tech Furnace Sys., Inc. v. FCC*, 224 F.3d 781, 789 (D.C. Cir. 2000) (same). As such, VA's failure to provide Trinka a means to take discovery or otherwise gather evidence did not violate due process principles.

## IV. Trinka's Seven-Day Reply Period Did Not Violate Due Process Principles

Trinka argues that VA denied him due process by providing him only seven days to respond to the proposing official's recommendation that he be removed. As best Defendants can tell, Trinka's argument is that this supposedly truncated response period amounted to a constructive denial of his opportunity to be heard. It is hard to see why. Trinka nowhere explains just how the seven-day response period violated due process principles, or why seven days was not enough time to respond to the proposal of his removal. He identifies no arguments that he was unable to raise or sufficiently develop because he had only seven days to respond, or otherwise point to any prejudice that he suffered. *See Myersville Citizens for a Rural Cmty., Inc.*, 783 F.3d at 1327; *Sardo*, 196 F.2d at 22. Trinka offers only a bare, conclusory allegation that the seven-day response period denied him due process, which does not suffice to state a claim. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("mere conclusory statement[s] do not suffice" to state claim); *Haneke v. Sec'y of Health, Ed. & Welfare*, 535 F.2d 1291, 1294 (D.C. Cir. 1976) (district court granted summary judgment for failure to state claim); *cf. Loudermill* 470 U.S. at 546-47 (employee's conclusory allegation that the nine-month duration of his administrative proceedings violated due process because nine months "is too long to wait" did "not state a claim of constitutional deprivation"). Nor is there any *per se* rule that due process requires a response period of more than seven days. This Court's Local Civil Rule 65.1(c), which requires a defendant to respond to an application for a preliminary injunction within seven days, surely does not violate due process.

## V. The Secretary Did Not Improperly Rely On Ex Parte Communications

Trinka argues that VA improperly relied on ex parte materials by considering the grievance official's recommendation that he be removed. To show that an ex parte communication voids an agency's decision, a party must show that "the agency's decisionmaking process was irrevocably tainted" due to the communication. *Salem Hosp. Corp. v. NLRB*, 808 F.3d 59, 71 (D.C. Cir. 2015) (quotation marks omitted). Some factors that "may be relevant" to this inquiry include (1) the communication's "gravity," and whether (2) it "may have influenced" the agency's decision, (3) the party making it "benefitted from the agency's ultimate decision," (4) the communication's contents "were unknown to opposing parties," and (5) vacatur and remand "would serve a useful purpose." *See Pro. Air Traffic Controllers Org. v. FLRA*, 685 F.2d 547, 565 (D.C. Cir. 1982).

These factors weigh firmly against voiding VA's decision to remove Trinka. The grievance official's recommendation was of low gravity, as it contained no new factual information—only legal analysis of facts already known to Trinka. AR 742-49; *see also Garza v. Dep't of Justice*, 5 F. App'x 894, 896 (Fed. Cir. 2001) (ex parte communication was not improper where it consisted only of the agency's own "review of the arguments [the employee] made in challenging proposed removal," not "evidence upon which the agency proposed to remove" him). Nor did the grievance official benefit in any way from the decision to remove Trinka. Vacatur and remand, meanwhile, would serve no useful purpose, as there is no reason to believe the Secretary would make a different decision absent the grievance official's recommendation. Finally, although the grievance official's recommendation may have influenced the Secretary and was unknown to Trinka, these factors do not weigh in favor of vacatur because the grievance official advised the Secretary as a disinterested counselor, much like a law clerk to a judge, not as an advocate. Indeed, Trinka's argument, if accepted, seemingly would prohibit judges from discussing their cases privately with their clerks.

Trinka relies on *Stone v. FDIC* for the notion that "[t]he introduction of new and material information by means of ex parte communications to the deciding official" violates due process principles. 179 F.3d 1368, 1376 (Fed. Cir. 1999). *Stone* explained that whether ex parte materials create a due process violation turns on factors such as whether (1) the "communication merely introduces 'cumulative' information or new information," (2) "the employee knew of the error and had a chance to respond to it," and (3) "the ex parte communications were of the type likely to result in undue pressure upon the deciding official to rule in a particular manner." *Id.* at 1377. The ultimate question, *Stone* held, "is whether the ex parte communication is so substantial and so likely to cause prejudice that no employee can fairly be required to be subjected to a deprivation of property under such circumstances." *Id.* The grievance official's recommendation does not meet this standard. It contained no new factual information, only analysis of facts known to Trinka. AR 742-49. The Secretary explained his reasons for removing Trinka, which Trinka can challenge in this case. And it defies credulity to suppose that the Secretary somehow felt undue pressure to rule in the manner his subordinate recommended. For these reasons, the Secretary did not improperly rely on ex parte communications in considering the grievance official's recommendation.

## VI. The Secretary Did Not Apply Substantial Evidence Review In Removing Trinka

Trinka argues that the Secretary erred in finding that his removal was warranted under the substantial evidence standard, which he says is unconstitutional, rather than by a preponderance of the evidence. This argument fails for two reasons. First, substantial evidence review is indeed constitutional. *See Crowell v. Benson*, 285 U.S. 22, 47 (1932) (upholding agency fact-finding against due process challenge). Trinka's only purported citation to the contrary is *Multimax, Inc. v. Federal Aviation Administration*, which held simply that substantial evidence supported agency

factual findings, without suggesting that substantial evidence review somehow violates the Constitution. 231 F.3d 882, 887-88 (D.C. Cir. 2000). His reliance on *Multimax* is frankly baffling.

Second, and more importantly, the Secretary expressly applied the preponderance of the evidence standard in removing Trinka. AR 754. Specifically, he found removal to be proper under either the preponderance or substantial evidence standards. *Id.* Because he found Trinka's removal proper under the preponderance standard, he did not deny Trinka due process merely by finding it also to be proper under substantial evidence review as well.[6] *Id.* (preponderance standard is "a higher standard" than substantial evidence review); *cf. United States v. Allen*, 960 F.2d 1055, 1058 (D.C. Cir. 1992) (harmless error where government assumed higher burden of proof than required).

## VII. Section 713 Does Not Have Impermissible Retroactive Effect

Trinka contends that VA applied Section 713 in an unlawfully retroactive manner by removing him based on conduct that predates its 2017 enactment in current form. The sole charge against Trinka concerned conduct that occurred after the current version of Section 713 came into effect—his December 21, 2018 statement during his OIG interview that he had told his supervisors about his wife's immigration status, when he in fact had not. AR 003, 529, 750. Trinka nonetheless argues that VA applied Section 713 in an unlawfully retroactive fashion by considering conduct that predated its enactment in determining that this charge warranted his removal—namely, his identification of his wife as a citizen on his e-QIP in 2014, and his use of her tax identification number to obtain federal benefits in 2013 and 2014. Compl. ¶ 260. Trinka asserts that this violated

---

6 To be sure, the deciding official had used only the substantial evidence standard in making the decision to remove Trinka. AR 529. And the Secretary mistakenly believed that the deciding official had applied the preponderance standard. AR 750, 754. But any such error is harmless, because the challenged action here is the Secretary's decision to remove Trinka, which superseded the deciding official's decision. *See* 38 U.S.C. § 713(b)(5). Indeed, the deciding official could only exercise authority that the Secretary had delegated to him in the first place. AR 759.

both the Due Process Clause and Section 713, which he contends cannot apply retroactively as a matter of statutory construction. But he forfeited these arguments by failing to raise them below. During agency proceedings, he raised numerous challenges to his proposed removal, but never a retroactivity challenge to VA's consideration of misconduct predating Section 713's enactment in present form. AR 353-78, 538-47; *Koretoff*, 707 F.3d at 398; *Nat'l Wildlife Fed'n*, 286 F.3d at 562.

In any event, it is well-settled that a penalty does not trigger retroactivity concerns merely because it is enhanced based on prior misconduct. For nearly 200 years, if not even longer, courts have rejected retroactivity challenges to statutes that enhance an offender's penalties based on his prior misconduct. *See Ross' Case*, 2 Pick. 165, 171 (Mass. 1824) ("the punishment is for the last offence committed, and it is rendered more severe in consequence of the situation into which the party had previously brought himself."). Enhancing a penalty based on an offender's prior misconduct thus does "not punish a defendant for [previous] crimes . . . but rather increase[s] his sentence because of the manner in which he committed the crime of conviction." *United States v. Watts*, 519 U.S. 148, 154 (1997) (per curiam). In other words, considering prior misconduct in crafting a penalty "does not result in punishment for any offense other than the one of which the defendant was convicted. Rather, the [offender] is punished only for the fact that the *present* offense was carried out in a manner that warrants increased punishment." *Id.* (cleaned up).

This principle holds even where the prior misconduct being taken into consideration was never charged. *See Gore*, 517 U.S. at 573 n.19 ("A sentencing judge may even consider past criminal behavior which did not result in a conviction"); *Nichols v. United States*, 511 U.S. 738, 747 (1994) (courts traditionally "considered a defendant's past criminal behavior, even if no conviction resulted from that behavior"). It also holds even if the prior misconduct predates the very statute authorizing the penalty at issue. In *Gryger v. Burke*, the Supreme Court affirmed a

sentence under a statute that enhanced penalties for recidivists, even though a predicate conviction underlying the sentence occurred before the statute's enactment. 334 U.S. 728, 732 (1948). *Gryger* held that the statute's application there was not "invalidly retroactive" because the sentence "is not to be viewed as either a new jeopardy or additional penalty for the earlier crimes," but only "a stiffened penalty for the latest crime, which is considered to be an aggravated offense because a repetitive one." *Id.* at 732. The D.C. Circuit later applied *Gryger* to reject a retroactivity challenge to the Parole Commission's denial of a defendant's eligibility for release based on guidelines that it had issued after his conviction. *See Warren v. U.S. Parole Comm'n*, 659 F.2d 183, 185, 195-96 (D.C. Cir. 1981). *Warren* explained that while the guidelines "affected past wrongdoers," they raised no retroactivity concerns because they are "triggered only by future crimes," and "would not have affected [the defendant] but for his subsequent criminal convictions." *Id.* at 194-95.

The idea that a penalty that is enhanced based on past misconduct is for the instant offense only, not for the past misconduct, and so does not offend retroactivity principles has grown only more "firmly established" since then. *United States v. Morgan*, 255 F. Supp. 3d 221, 233 (D.D.C. 2017); *see also United States v. Rodriquez*, 553 U.S. 377, 386 (2008) (when a court "increases a sentence based on the defendant's criminal history—100% of the punishment is for the offense of conviction. None is for the prior convictions or the defendant's status as a recidivist." (cleaned up)); *Nichols*, 511 U.S. at 747 (recidivist laws "do not change the penalty imposed for the earlier conviction"). Indeed, courts "may consider uncharged or even acquitted conduct in calculating an appropriate sentence," *United States v. Settles*, 530 F.3d 920, 923 (D.C. Cir. 2008), or conduct beyond the statute of limitations, *United States v. Campbell*, 684 F.2d 141, 154 (D.C. Cir. 1982). The Supreme Court has explained that considering past misconduct is not only permissible but necessary to impose a fair and just penalty. *See Watts*, 519 U.S. at 152 ("Highly relevant—if not

essential—to [the] selection of an appropriate [penalty] is the possession of the fullest information possible concerning [one's] life and characteristics." (quoting *Williams v. New York*, 337 U.S. 241, 247 (1949)). Congress codified this principle in 18 U.S.C. § 3661, which provides that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."

Once again, while the Supreme Court articulated these principles in criminal cases, they apply with at least as much force in this context, as a public employee's interest in keeping his job surely is no stronger than a criminal defendant's interest in keeping out of prison. *See Mendoza-Lopez*, 481 U.S. at 839 n.17; *Tucker*, 907 F.3d at 493. Nor does it matter that these cases involved constitutional challenges to statutes, while Trinka argues that Section 713 cannot have retroactive effect as a matter of statutory construction. Determining whether a statute has retroactive effect entails the same inquiry—a "process of judgment concerning the nature and extent of the change in the law and the degree of connection between the operation of the new rule and a relevant past event," calling on "sound instincts" and "familiar considerations of fair notice, reasonable reliance, and settled expectations," *Landgraf v. USI Film Prod.*, 511 U.S. 244, 270 (1994)—regardless of whether the ultimate issue is what the statute means or whether it comports with the Constitution.

For these reasons, retroactivity principles did not preclude the Secretary from considering uncharged misconduct predating Section 713's enactment in current form in deciding to remove him. Trinka's removal was in no way a penalty for his earlier misconduct—only for the false statement that he made during his 2018 OIG interview. It defies reason to suppose that Congress meant to preclude VA from considering prior uncharged misconduct in crafting proper penalties for Senior Executives when it has not seen fit to afford such protection to criminal defendants.

Trinka will no doubt point to a trio of Federal Circuit decisions holding that application of 38 U.S.C. § 714, which governs the discipline of non-SES VA civil servants, to conduct predating its enactment was impermissibly retroactive. *See Brenner v. Dep't of Veterans Affairs*, 990 F.3d 1313, 1328 (Fed. Cir. 2021); *Harrington v. Dep't of Veterans Affairs*, 981 F.3d 1356, 1359 (Fed. Cir. 2020); *Sayers v. Dep't of Veterans Affairs*, 954 F.3d 1370, 1380 (Fed. Cir. 2020). But these cases are all inapposite, because in each of them, pre-enactment misconduct formed the basis of the actual charge that was brought and sustained—it was not used merely to fashion an appropriate penalty once an otherwise-valid charge had already been sustained. *See Brenner*, 990 F.3d at 1328; *Harrington*, 981 F.3d at 1359; *Sayers*, 954 F.3d at 1380. Trinka may also point to *Sayers*' statement that the "decision" under review in a matter under 38 U.S.C. § 714 "includ[es] the [Secretary's] choice of penalty." 954 F.3d at 1375; *see also* Compl. ¶ 285 (quoting this language). That is a non-sequitur—there is no dispute that the Secretary's choice of penalty is subject to review, but that says nothing about whether any given penalty that he imposes is lawful. The Secretary agrees that this Court may review the penalty that he imposed on Trinka, but contends only that the penalty was lawful. The penalties in *Sayers*, *Brenner*, and *Harrington* were invalid because the underlying charges rested on conduct predating 38 U.S.C. § 714's enactment. That is not so here. Those cases thus had no occasion to, and did not, consider the unbroken line of authority extending back nearly 200 years holding that a statute enhancing a penalty for an offense based on an offender's prior misconduct lacks retroactive effect. As such, Trinka's retroactivity argument is meritless.

## VIII. Trinka's Removal Accorded With Law And Required Procedures

Trinka argues that his removal was arbitrary, capricious, and an abuse of discretion because the Secretary did not consider the arguments and evidence that he presented as to why his removal was unwarranted. But Trinka does not identify which particular arguments and/or evidence the

Secretary supposedly failed to consider. This conclusory assertion does not state a cognizable claim. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Nor is this Court obliged to conduct an independent review of the record to determine whether the Secretary failed to consider any arguments or evidence that Trinka presented—it was Trinka's responsibility to bring these matters to the Court's attention. *See Schneider v. Kissinger*, 412 F.3d 190, 200 n.1 (D.C. Cir. 2005) ("It is not enough merely to mention a possible argument in the most skeletal way . . . . a litigant has an obligation to spell out its arguments squarely and distinctly"); *see also Jones v. Kirchner*, 835 F.3d 74, 83 (D.C. Cir. 2016) ("[J]udges are not like pigs, hunting for truffles buried in . . . the record." (quotation marks omitted)).

In any event, the Secretary explained that he made the decision to remove Trinka based on his statement during his interview that he told his supervisors about his wife's immigration status when he in fact had not done so. AR 750, 758. Substantial evidence supports that choice—namely, the memoranda summarizing Trinka's interview, in which he claimed to have told his supervisors about Mrs. Trinka's immigration status, and his supervisors' interviews, in which they stated that Trinka had not told them any such thing. AR 302-10. The Secretary "carefully reviewed the entire record for [him]self," AR 758, responded to Trinka's arguments as to why he felt his removal was unwarranted, and concluded that his removal was proper under the law and justified under the facts. AR 750-58. Trinka's removal thus was not arbitrary, capricious, or an abuse of discretion.

## IX. Substantial Evidence Supported Trinka's Removal

Finally, Trinka argues that substantial evidence did not support his removal. As explained already, the Secretary concluded that Trinka's removal was warranted by a preponderance of the evidence, not just substantial evidence. AR 750, 754. Regardless, Trinka's claim that substantial

evidence did not support his removal is incorrect. As explained, the Secretary relied on summaries of OIG's interviews with Trinka and his supervisors to determine that Trinka falsely claimed that he had told his supervisors about Mrs. Trinka's unlawful immigration status, when he in fact had not. AR 750, 758. That is far "more than a scintilla." *Fred Meyer Stores, Inc.*, 865 F.3d at 637.

Trinka argues that the interview summaries on which the Secretary relied are hearsay, and that an "[a] federal agency cannot support a termination action affecting a protected property interest . . . with only hearsay evidence when direct, non-hearsay evidence exists and is available to the agency or in the agency's possession and the employee does not have an opportunity to confront the direct evidence." Compl. ¶ 314. A statement is hearsay, however, only if offered "to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c)(2). The summary of Trinka's interview is not hearsay, because it was offered to prove that Trinka's statement was false, not that it was true. *See United States v. Porter*, 886 F.3d 562, 567 (6th Cir. 2018) ("[S]tatements that are offered to prove the *falsity* of the matter asserted are not hearsay."); *United States v. Brown*, 560 F.3d 754, 765 (8th Cir. 2009) (statement was not hearsay because it "was not introduced for the truth of the matter asserted, but to show that [the speaker] was lying"); *United States v. Vidacak*, 553 F.3d 344, 353 (4th Cir. 2009) (statements that "were offered for the falsity of the matter asserted" were not hearsay); *Foster-Miller, Inc. v. Babcock & Wilcox Can.*, 210 F.3d 1, 13 (1st Cir. 2000) (statement offered "to show the *falsity*" of the matter asserted are not hearsay).

As to the summaries of the supervisors' interviews, "hearsay can constitute substantial evidence in an administrative proceeding," *PJM Power Providers Grp. v. FERC*, 880 F.3d 559, 563 (D.C. Cir. 2018)—contrary to Trinka's claim—"as long as it bears satisfactory indicia of reliability," *Lacson v. DHS*, 726 F.3d 170, 178 (D.C. Cir. 2013) (cleaned up). Statements satisfy this standard when the persons who made them "were 'uniquely in a position to know' the relevant

information." *PJM Power Providers Grp.*, 880 F.3d at 563 (quoting *Honeywell Int'l, Inc. v. EPA* 372 F.3d 441, 447 (D.C. Cir. 2004)). That is the case here. Trinka's supervisors were uniquely well-positioned to know whether he had told them about Mrs. Trinka's immigration status. Indeed, it is hard to imagine who could be better positioned to know whether Trinka told his supervisors about his wife's immigration status than the very supervisors he claims to have told. *See Lacson*, 726 F.3d at 179 (crediting hearsay statements by "officials who, given their responsibilities, were clearly in a position to know" the information at issue).

The only authority Trinka offers for his contention that hearsay is inadmissible in agency proceedings where non-hearsay evidence exists and an employee lacks the ability to confront such evidence is *Richardson v. Perales*, 402 U.S. 389, 402 (1971). *See* Compl. ¶ 314. *Richardson* held nothing of the sort, and if anything held nearly the opposite—that hearsay "is admissible up to the point of relevancy" in hearings under the Administrative Procedure Act and Social Security Act, and that a medical report "may constitute substantial evidence supportive of a finding" that an applicant for disability benefits was not disabled "despite its hearsay character and an absence of cross-examination." *Id.* at 402, 410; *see also id.* at 405 ("Courts have recognized the reliability and probative worth of written medical reports even in formal trials and, while acknowledging their hearsay character, have admitted them as an exception to the hearsay rule."), 407-08 ("administrative reliance on hearsay" turns on its "reliability and probative value").

## CONCLUSION

For the foregoing reasons, this Court should grant the Secretary summary judgment and dismiss this action in its entirety.

Dated: March 18, 2022

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
DC Bar #481052

BRIAN P. HUDAK
Acting Chief, Civil Division

By: *<u>/s/ Bradley G. Silverman</u>*
BRADLEY G. SILVERMAN
DC Bar #1531664
Assistant United States Attorney
555 4th St. NW
Washington, DC 20530
(202) 252-2675
bradley.silverman@usdoj.gov

*Counsel for Defendants*

LINDSAY J. GOWER
Department of Veterans Affairs
Office of General Counsel
Personnel Law Group
810 Vermont Ave. NW
Washington, DC 20420
(202) 460-8181
Lindsay.Gower@va.gov

*Of Counsel*