**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JAMES TRINKA<br><br>*Plaintiff*,<br><br>v.<br><br>DENIS McDONOUGH,<br>Secretary of Veterans Affairs<br>(in his official capacity);<br><br>UNITED STATES DEPARTMENT OF<br>VETERANS AFFAIRS;<br><br>*Defendants*. | Civil Action No. 1:21-cv-02904-RC |

**PLAINTIFF'S REPLY IN SUPPORT OF HIS CROSS-MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

TABLE OF CONTENTS ..... i

TABLE OF AUTHORITIES ..... ii

I. DVA'S Termination Of Trinka Violated The Constitution ..... 2

A. DVA's Removal Process Fell Far Short of the Constitutional Minimum ..... 2

B. Retroactive Application of the 2017 Act Violated Due Process. ..... 16

II. DVA's Actions Were Not In Accordance With Law ..... 17

A. Section 713 Required Disclosure of the Recorded Statement to Trinka. ..... 17

B. DVA Violated Its Own Policies by Withholding the Recorded Statement ..... 20

C. DVA Violated Its Own Policies by Denying Trinka an Opportunity To Respond or Provide Evidence During OAWP's Investigation ..... 20

D. OAWP Exceeded Its Authority in Recommending Trinka's Removal ..... 21

E. DVA's Use of the Substantial Evidence Standard Violated the 2017 Act ..... 22

F. DVA Impermissibly Relied on Pre-2017 Conduct ..... 22

III. DVA'S Removal Decision Was Arbitrary And Capricious ..... 22

A. The Refusal To Consider Relevant Evidence Violated Reasoned Decisionmaking ..... 22

B. DVA Failed To Explain Why It Disbelieved Trinka's Version of Events. ..... 24

C. If DVA Applied a Preponderance Standard, That Was Unreasoned ..... 24

IV. DVA's Decision Is Unsupported By Substantial Evidence ..... 24

Conclusion ..... 25

# TABLE OF AUTHORITIES

## CASES

*Allentown Mack Sales & Servs., Inc. v. N.L.R.B.*,
522 U.S. 359 (1998) ....................24

*Auto Workers v. N.L.R.B.*,
459 F.2d 1329 (D.C. Cir. 1972) ....................6

*Baird v. Bd. of Educ. for Warren Cmty. Unit Sch. Dist. No. 205*,
389 F.3d 685 (7th Cir. 2004) ....................9, 10, 12

*Brenner v. Dep't of Veterans Affairs.*,
990 F.3d 1313 (Fed. Cir. 2021) ....................16, 17

*Burlington Truck Lines, Inc. v. U.S.*,
371 U.S. 156 (1962) ....................6, 24

*Bus. Commc'ns, Inc. v. U.S. Dep't of Educ.*,
739 F.3d 374 (8th Cir. 2013) ....................9, 12

*Butte County v. Hogen*,
613 F.3d 190 (D.C. Cir. 2010) ....................22, 23

*Carr v. Saul*,
141 S.Ct 1352 (2021) ....................13

*Charlton v. F.T.C.*,
543 F.2d 903 (D.C. Cir. 1976) ....................12, 13

*Cleveland Bd. of Educ. v. Loudermill*,
470 U.S. 532 (1985) ....................4

*Contrast McClenning v. Army*,
2022 M.S.P.B. 3 (2022) ....................14

*Delta Found., Inc. v. United States*,
303 F.3d 551 (5th Cir. 2002) ....................13, 14

*Doe v. Baum*,
903 F.3d 575 (6th Cir. 2018) ....................10, 12

*Engine Mfrs. Ass'n v. EPA*,
88 F.3d 1075 (D.C. Cir. 1996) ....................13, 24

*Env't Defense Fund, Inc. v. Costle*,
657 F.2d 275 (D.C. Cir. 1981) ....7

*Gen. Elec. Co. v. Jackson*,
610 F.3d 110 (D.C. Cir. 2010) ....5

*Goldberg v. Kelly*,
397 U.S. 254 (1970) ....8

*Gozlon-Peretz v. United States*,
498 U.S. 395 (1991) ....19

*Haidak v. Univ. of Massachusetts-Amherst*,
933 F.3d 56 (1st Cir. 2019) ....12

*Harrington v. Dep't of Veterans Affairs.*,
981 F.3d 1356 (Fed. Cir. 2020) ....16

*Harrison v. Bowen*,
815 F.2d 1505 (D.C. Cir. 1987) ....11

*Holy Land Found v. Ashcroft*,
333 F.3d 156 (D.C. Cir. 2003) ....10

*Karem v. Trump*,
960 F.3d 656 (D.C. Cir. 2020) ....16

*Kincaid v. District of Columbia*,
854 F.3d 721 (D.C. Cir. 2017) ....5

*Kyles v. Whitley*,
514 U.S. 419 (1995) ....5

*Landgraf v. USI Film Prods.*,
511 U.S. 244 (1994) ....22

*Locurto v. Safir*,
264 F.3d 154 (2d Cir. 2001) ....9

*Ludlum v. Dep't of Justice*,
278 F.3d 1280 (Fed. Cir. 2002) ....25

*Matthews v. Eldridge*,
424 U.S. 319 (1976) ....2, 4

*McClure v. Indep. Sch. Dist. No. 16*,
228 F.3d 1205 (10th Cir. 2000) ....................10, 12

*Mid Continent Nail Corp. v. United States*,
846 F.3d 1364 (Fed. Cir. 2017) ....................5

*Pierce v. Underwood*,
487 U.S. 552 (1988) ....................24

*Ramirez v. Dep't of Homeland Sec.*,
975 F.3d 1342 (Fed. Cir. 2020) .................... 2, 3, 6, 8

*Richardson v. Perales*,
402 U.S. 389 (1971) ....................25

*Rodriguez v. Dep't of Veterans Affairs*,
8 F.4th 1290 (Fed. Cir. 2021) ....................12, 22

*Sayers v. Dep't of Veterans Affairs.*,
954 F.3d 1370 (Fed. Cir. 2020) ....................16, 22

*SEC v. Chenery Corp.*,
332 U.S. 194 (1947) ....................15

*Sims v. Apfel*,
530 U.S. 103 (2000) ....................13

*Strickler v. Greene*,
527 U.S. 263 (1999) ....................4, 5

*Twist v. Meese*,
854 F.2d 1421 (D.C. Cir. 1988) ....................11

*U.S. v. Mason*,
951 F.3d 567 (D.C. Cir. 2020) ....................5

*U.S. v. Oruche*,
484 F.3d 590 (D.C. Cir. 2007) ....................5

*U.S. Information Agency v. Krc*,
905 F.2d 1421 (D.C. Cir. 1988) ....................11

*United States v. Williams-Davis*,
90 F.3d 490 (D.C. Cir. 1996) ....................4, 5

*Walsh v. Hodge*,
975 F.3d 475 (5th Cir. 2020) ......9, 10, 12

*Wannall v. Honeywell, Inc.*,
775 F.3d 425 (D.C. Cir. 2014) ......3

*White v. U.S. Dep't of the Army*,
720 F.2d 209 (1983) ......15

*Wolff v. McDonnell*,
418 U.S. 539 (1974) ......8

**STATUTES**

5 C.F.R. § 1201.71-75 ......10

28 U.S.C. § 2201 ......19

28 U.S.C. § 2202 ......19

38 U.S.C. § 713(a)(1) ......16, 21

38 U.S.C. § 713(b)(1)(A) ......17, 18

38 U.S.C. § 713(b)(2)(A) ......9

38 U.S.C. § 713(b)(6) ......19

The undisputed facts are clear: The government arbitrarily ousted lifelong civil servant James Trinka from his tenured position without even a semblance of meaningful process and in violation of law. Trinka was fired from the Department of Veterans Affairs ("DVA") for allegedly falsely telling investigators that he informed three of his supervisors of his wife's immigration status. DVA does not deny that the only direct evidence Trinka made that statement—or of what he actually said—was a recording of Trinka's interview with investigators. Nor does DVA deny that the recording has been in its control the entire time. Indeed, the administrative record expressly says the recording was sent to the officials who terminated Trinka. Yet DVA has inexplicably refused to provide the recording to Trinka or this Court—even as it proposes (improperly) to augment the administrative record with other, *post hoc* evidence of its own creation.

DVA has likewise hidden the ball regarding the only supposed evidence that Trinka's statement was ***false***—statements by three of Trinka's supervisors. For reasons DVA has never explained, those statements were neither recorded nor transcribed, even though they were evidently taken for the sole purpose of contradicting Trinka. Nor was Trinka permitted to examine those witnesses to test their perception, memory, and credibility. Instead, as with Trinka's own alleged statement, DVA hid the only evidence that supposedly justified Trinka's firing behind summaries prepared by case agents—whom Trinka ***also*** was never allowed to confront.

DVA barely tries to argue that those machinations comported with due process or governing statutes and regulations. Rather, it insists Trinka cannot prevail because he cannot prove what was in the recording (which was never provided to him) or what the witnesses (whom Trinka was barred from questioning) would have said if questioned. The law does not impose

such impossible burdens. It is enough that the outcome ***could*** have been different if Trinka were afforded the protections guaranteed by due process, statute, and regulation. It surely could.

# I. DVA'S TERMINATION OF TRINKA VIOLATED THE CONSTITUTION

DVA recognizes Trinka had a constitutionally protected property interest in continued employment. *See generally* ECF 14-1 ("Def. Mot."), ECF 18 ("Def. Opp."). DVA unconstitutionally deprived Trinka of that property interest without affording him basic procedural protections. By its own admission, DVA hid from Trinka and agency decisionmakers—and continues to hide from Trinka and this Court—the only direct evidence of Trinka's supposed misconduct. DVA refused Trinka an evidentiary hearing with the opportunity to cross-examine the witnesses who provided the only alleged evidence against him. DVA applied a nonsensical standard of proof. And it improperly relied on conduct predating the governing statute. Those failures, alone and together, fail the due-process test required by *Matthews v. Eldridge*, 424 U.S. 319 (1976).

## A. DVA's Removal Process Fell Far Short of the Constitutional Minimum

### 1. *Trinka Was Improperly Denied the Evidence Against Him*

"[E]ven the most rudimentary standards of due process" require that an employee the government seeks to terminate be able to "access and meaningfully challenge" the "critical and dispositive" "evidence asserted against him." *Ramirez v. Dep't of Homeland Sec.*, 975 F.3d 1342, 1351 (Fed. Cir. 2020). DVA defied those "rudimentary standards" by hiding the recording of Trinka's interview—the only direct evidence of his alleged misconduct—from both Trinka and (according to DVA) agency decisionmakers. Before this Court, DVA now offers to create ***new*** evidence to explain its failure to turn over the recording. But DVA's eagerness to augment the record with newly created evidence only underscores the indefensibility of its refusal to turn over the recording that has been in its control for more than three and a half years.

a. *Trinka Was Entitled to the Recording*

DVA has no real answer to Trinka's argument that due process entitled him to a copy of the recording of his interview. As explained in Trinka's cross-motion, ECF 15-1, a "'fundamental'" principle of due process is that "'the evidence used to prove the Government's case must be disclosed to the individual so that he has an opportunity to show that it is untrue.'" *Ramirez*, 975 F.3d at 1350. The recording was the best and only direct evidence that Trinka made the statements that led to his removal. DVA, however, tried to evade the requirements of due process by hiding the recording behind a hearsay summary (prepared months after the fact) and withholding this direct evidence from the decisionmakers themselves. *See* Pl. Br. 8-10.

Trinka cited case after case holding that the government cannot "shield" evidence underlying its decisions by laundering it through a summary. *Ramirez*, 975 F.3d at 1351. In *Ramirez*, for example, the Federal Circuit held that the agency must produce the original tests used to create a psychological report, even though agency decisionmakers relied only on the report and "did not directly review or consider" the tests. *Id.* at 1351. Like *Ramirez*, Trinka too is entitled to the recording of the interview used to create the summaries wielded against him—regardless if agency decisionmakers "directly" reviewed that recording. *Ramirez* is far from alone.[1] DVA's failure to address ***any*** of those cases concedes the point. *See generally* Def. Opp. (discussing *Ramirez* only in context of Trinka's argument for a post-termination hearing; not discussing or citing *Banks*, *ASSE*, or *Kaur*); *Wannall v. Honeywell, Inc.*, 775 F.3d 425, 428 (D.C. Cir. 2014).

DVA is likewise silent on the application of the governing test. DVA admits Trinka's

---

[1] *See Banks v. FAA*, 687 F.2d 92, 94-96 (5th Cir. 1982) (employees fired for drug charges must be provided urinalysis samples for independent verification); *ASSE Int'l, Inc. v. Kerry*, 803 F.3d 1059, 1076 (9th Cir. 2015) (summary of accuser testimony insufficient where complete interview notes or transcript available); *Kaur v. Holder*, 561 F.3d 957, 960-62 (9th Cir. 2009) (summary stating "confidential sources" accused immigrant of wrongdoing did not satisfy due process).

claim must be evaluated under the balancing test laid out in *Mathews v. Eldridge*, 424 U.S. 319 (1976). Def. Mot. 19 of 44; *see* Def. Opp. 30 of 52 ("*Mathews* identified the factors that courts weigh to determine what due process requires in a given setting."). But DVA essentially ignores *Mathews*. It nowhere denies that Trinka has a weighty "private interest in retaining employment." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 543 (1985). It does not deny that providing the recording—which has always been in DVA's control—would impose ***zero*** burden on DVA. It offers only a one-sentence (factually incorrect) assertion that the risk of erroneous deprivation is "low" because Trinka "offers no more than speculation" that having the recording would have changed the outcome. Def. Opp. 22. Even if true (it is not, *see* pp. 5-8, *infra*), DVA never explains why even a "low" risk of erroneous deprivation is not outweighed by Trinka's significant interest in retaining his employment and the nonexistent burden of providing the recording. DVA's failure to apply the governing test should be dispositive.

b. *DVA Mischaracterizes Any "Prejudice" Requirement*

Instead of addressing Trinka's authority or applying the *Mathews* test, DVA spends ten pages arguing that Trinka failed to show "prejudice." Def. Opp. 13-22. But insofar as a showing of "prejudice" is required to prevail on a due-process claim, that requirement is baked into the *Mathews* test. Thus, there is no freestanding "prejudice" requirement. Tellingly, DVA cites no case imposing a freestanding prejudicial-error rule to a civil procedural due process claim. DVA cites only *Brady* cases—a fact it obscures by strategically omitting the word "*Brady*" from its quotations. *See* Def. Opp. 13-14 (citing *Strickler v. Greene*, 527 U.S. 263, 282 (1999), and *United States v. Williams-Davis*, 90 F.3d 490 (D.C. Cir. 1996), and bracketing out the word "*Brady*"; citing two other *Brady* cases, with quotations cropped to omit the word "*Brady*").

Binding precedent disproves DVA's argument. In the seminal public employment due process case, the Supreme Court applied the *Mathews* test, not the "prejudicial error" test used

for *Brady* claims. *See Loudermill* 470 U.S. at 543, 545. The D.C. Circuit likewise applies *Mathews* to civil procedural due process claims. *See, e.g.*, *Gen. Elec. Co. v. Jackson*, 610 F.3d 110, 117 (D.C. Cir. 2010), *Kincaid v. District of Columbia*, 854 F.3d 721, 726 (D.C. Cir. 2017).

Even if prejudice were required, DVA misstates the test. DVA claims (without citation) that to establish prejudice, "Trinka would need to show that VA ***would not have fired him*** had the recording been available." Def. Opp. 14 (emphasis added). But DVA's authority makes clear that, even in the *Brady* context, a defendant need only show a "***reasonable probability***" the withheld evidence would have led to different result. *Strickler*, 527 U.S. at 281 (emphasis added). The defendant does ***not*** need to show "disclosure of the suppressed evidence ***would have resulted ultimately*** in the defendant's acquittal"—*i.e.*, that the withheld evidence would have changed the result, as DVA asserts is required here. *Kyles v. Whitley*, 514 U.S. 419, 434 (1995) (emphasis added).

The "reasonable probability" test, moreover, applies only "once the existence ***and content*** of undisclosed evidence has been established." *U.S. v. Oruche*, 484 F.3d 590, 595 (D.C. Cir. 2007) (emphasis added); *see United States v. Mason*, 951 F.3d 567, 573 (D.C. Cir. 2020) (suppressed evidence with known content). Where the content of the withheld *Brady* evidence is ***unknown***, a different test applies: whether the defendant raised a "***colorable*** claim that the [withheld material] contained evidence favorable to [him]." *Williams-Davis*, 90 F.3d at 514 (emphasis added); *cf. Mid Continent Nail Corp. v. United States*, 846 F.3d 1364, 1384 (Fed. Cir. 2017) (where agency record is "thin or nonexistent," "even a minimal showing of prejudice may suffice to defeat a claim of harmless error").

c. *Trinka Has Shown Prejudice Under Any Proper Standard*

Even if a separate prejudice showing were required, Trinka has shown a "reasonable probability"—and certainly a "colorable claim"—the withheld evidence would make a differ-

ence. Trinka insisted below that the recording was "exculpatory" and specifically denied providing inaccurate information to investigators. AR 359, 378, 545-546. And, as Trinka's cross-motion explained, even if he did make the statements attributed to him, the statements' context or precise wording might render them true. ECF 15-1 ("Pl. Mot.") 28-29 of 56. DVA's own brief makes clear that those details matter. DVA contends that Trinka's statement that he told supervisor Oswalt about his wife's immigration status was false because, according to Oswalt, Trinka told Oswalt only "while walking to the OIG interview itself." Def. Opp. 50. The summary of Trinka's alleged statement, however, says nothing about ***when*** Trinka told Oswalt. AR 304. Trinka's alleged statement to Oswalt thus could be false only if Trinka said something ***more*** than the summary recounts—*e.g.*, that he told Oswalt about his wife's status at some other time. It was thus crucial for both Trinka and DVA decisionmakers to have access to the recording: Trinka so he could "meaningfully challenge" the "critical" evidence against him, *Ramirez*, 975 F.3d at 1351, and DVA so it could make a reasoned and accurate decision, *see* pp. 22-24, *infra*.

DVA's arguments that Trinka has not shown prejudice are meritless. DVA spends five pages speculating about what exactly Trinka might have said and why DVA decisionmakers might hypothetically have found he lacked candor. Def. Opp. 14-18. DVA even faults ***Trinka*** for "furnish[ing] no evidence" of what he said in the interview. But DVA, not Trinka, has the "evidence" of what Trinka said, and is withholding it from Trinka. In any event, the Court must determine the propriety of DVA's action on the "basis articulated in the order by the agency itself," not counsel's post-hoc rationalizations that the agency ***might*** have reached the same result regardless. *Burlington Truck Lines, Inc. v. U.S.*, 371 U.S. 156, 169 (1962).

Indeed, DVA's refusal to produce the recording ***itself*** warrants an inference the withheld recording is "unfavorable" to DVA. *Auto Workers v. N.L.R.B.*, 459 F.2d 1329, 1336 (D.C. Cir.

1972). DVA decisionmakers at all levels refused to produce the recording to Trinka below, and DVA counsel has not offered to produce it during this litigation. DVA offers no defense of that decision on the merits. Instead, DVA offers to create ***entirely new evidence*** to explain away its failure to turn over the recording below. Def. Opp. 19 n.4. According to DVA, that evidence would consist of a "declaration from a knowledgeable VA official attesting that OIG simply never sent [OAWP] the recording of Trinka's interview." *Id.* DVA's eagerness to create ***new*** evidence, rather than simply handing over ***the evidence it already has***, is telling: Unless the recording is exculpatory, there could be no reason to go to such lengths to hide it.

Regardless, DVA's argument that OAWP never received the recording from OIG is flatly contradicted by the record. The record shows that an OAWP official directed an OAWP intake specialist to "get the underlying evidence file" from OIG. AR 324. That "evidence file" included both a "***copy of interview of James Trinka dated December 21, 2018***," and a "***copy of recorded interview of James Trinka dated December 21, 2018***." AR 322 (emphasis added). DVA has no response to those statements. And despite Trinka's repeated requests for the recording, no DVA official below ever denied that OAWP had it. *See, e.g.*, AR 532 (recording was not provided to the "proposing official or deciding official" because "***OAWP*** is only required to forward evidence that is deemed necessary" (emphasis added)). On that record, no reasonable factfinder could conclude that OAWP did not obtain the recording. DVA—which submitted the administrative record and moved for summary judgment on it—cannot belatedly manufacture evidence to the contrary. *Env't Defense Fund, Inc. v. Costle*, 657 F.2d 275, 284 (D.C. Cir. 1981).[2]

---

[2] *Beach Commc'ns, Inc. v. FCC*, 959 F.2d 975, 987 (D.C. Cir. 1992) (cited at Def. Opp. 19 n.4) does not help DVA. In *Beech*, when the court found it needed additional facts, it remanded ***to the agency*** for factfinding. *Id.* at 987. *Beech* does not approve a district court conducting first-instance factfinding based on self-serving submissions that the adverse party has had no chance

Even if OAWP never received the recording, that would be irrelevant. An agency cannot avoid its constitutional duty to turn over evidence by asserting it does not have custody of that evidence. *Ramirez*, 975 F.3d at 1351. If an agency "relie[s]" on evidence and its importance to the proceedings is "foreseeable," the agency must "make the evidence available for independent examination by the employee," whether or not it is in the agency's custody. *Id.* DVA did not just "rely on" Trinka's interview—it was the entire basis for his removal.

DVA, moreover, never disputes that ***OIG***—an office within DVA—had the recording. It does not, and cannot, dispute that OIG offered the recording to OAWP. AR 324-25 (inviting OAWP to "request an official evidence file of the OIG's investigation"). OAWP thus at minimum had constructive possession of the recording and could have obtained and produced it to Trinka at any time. Once Trinka informed DVA of the recording's existence and demanded a copy, OAWP had no "innocuous explanation[]," Def. Opp. 18, for failing to obtain it. Any decisionmaker acting in good faith would have ***wanted*** the recording to confirm what Trinka said to investigators. Instead, OAWP either withheld or refused to request the recording from OIG, and DVA decisionmakers refused to listen to it. That refusal only reinforces what Trinka has said all along: The recording is exculpatory, and DVA hid it from Trinka because DVA knows it.

2. *Trinka Was Entitled To Challenge Witnesses and Evidence Against Him*

"In almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses." *Goldberg v. Kelly*, 397 U.S. 254, 269 (1970). Those procedural safeguards are "essential . . . where a person may lose his job in society." *Wolff v. McDonnell*, 418 U.S. 539, 567 (1974). A public employee faced with termination is thus entitled to at least one "full adversarial hearing," *Locurto v. Safir*, 264

---

to test. At minimum, if further factfinding is conducted, it should be before the agency, and Trinka should have a chance to discover relevant evidence, including the recording.

F.3d 154, 171 (2d Cir. 2001), complete with "confrontation and cross-examination," *Baird v. Bd. of Educ. for Warren Cmty. Unit Sch. Dist. No. 205*, 389 F.3d 685, 692 (7th Cir. 2004). If that "full adversarial hearing" is not provided before termination, it must be provided "promptly after." *Locurto*, 264 F.3d at 154; *Baird,* 389 F.3d at 690.

DVA never afforded Trinka the "full adversarial hearing" due process demands. *Locurto*, 264 F.3d at 171. Both before and after termination, the most Trinka was offered was the opportunity to respond in writing to ***summaries*** of key witnesses' testimony. Pl. Mot. 8-10. Trinka had no "opportunity to test" the credibility or memory of the supervisors whose statements allegedly proved his own statement false. *See Walsh v. Hodge*, 975 F.3d 475, 484-85 (5th Cir. 2020). Nor could he question the agents who summarized his own statement and the statements of his supervisors. Case after case applying the *Mathews* test agrees: The chance to "submit a written rebuttal is no substitute for the opportunity to test adverse evidence and cross-examine witnesses during a hearing." *Bus. Commc'ns, Inc. v. U.S. Dep't of Educ.*, 739 F.3d 374 (8th Cir. 2013); *Walsh*, 975 F.3d at 484-85; *Baird,* 389 F.3d at 692.

DVA largely fails to dispute that the *Mathews* factors required an adversarial hearing. DVA never denies that Trinka has a strong interest in continuing his SES employment. DVA asserts in a footnote that the government has "strong interests in 'expeditious removal of unsatisfactory employees and the avoidance of administrative burdens.'" Def. Opp. 30 n. 10. But removal under Section 713 is necessarily "expeditious." Pre-termination process "may not exceed 15 business days." 38 U.S.C. § 713(b)(2)(A). A meaningful hearing ***after*** that speedy termination does not impair "expeditious removal." As for "administrative burdens," DVA nowhere elaborates what those "burdens" are or why they would outweigh Trinka's strong interest in avoiding wrongful removal—likely because federal agencies, including DVA, routinely provide

administrative hearings involving both cross-examination and evidence-gathering procedures. *See, e.g.*, 5 C.F.R. § 1201.71-75, 1201.51 (MSPB hearings).

DVA's only real argument under *Mathews* is that Trinka offers only "conjecture that cross-examination or confrontation must unearth . . . helpful information." Def. Opp. 30-31. But Trinka is not required to ***prove*** that cross-examination would have yielded "helpful information." Other circuits have held that the "serious[ness]" of "charges depriving a plaintiff of her livelihood" ***alone*** "require[s] cross-examination." *McClure v. Indep. Sch. Dist. No. 16*, 228 F.3d 1205, 1211 (10th Cir. 2000); *Baird*, 389 F.3d at 692 ("present entitlement" to government employment sufficient to require cross-examination). Still others hold it is enough that "credibility is in dispute and material to the outcome." *Doe v. Baum*, 903 F.3d 575, 584 (6th Cir. 2018). Here, credibility was not just "in dispute and material." DVA's case against Trinka rested ***entirely*** on credibility—Trinka's own credibility; the credibility of the two supervisors who reportedly claimed that Trinka never disclosed his wife's immigration status; and the credibility of the VA OIG agents who summarized Trinka's and his supervisors' interviews. Because the entire case "boiled down to [] issue[s] of credibility," Trinka "should have had an opportunity to test" the credibility of adverse witnesses." *Walsh*, 975 F.3d at 484-85.[3]

DVA argues that D.C. Circuit precedent holds that public employees facing removal are "not entitle[d]" to "post-termination hearings to confront or cross-examine witnesses." Def. Opp. 28. But the cases DVA cites hold no such thing. *Holy Land Found. v. Ashcroft*, 333 F.3d 156 (D.C. Cir. 2003), did not involve public employment at all. *Id.* at 159, 161 (holding organization received sufficient ***pre***-termination process before being designated a "Specially Designated Global Terrorist" by Office of Foreign Assets Control). DVA's other cases—recycled from its open-

[3] DVA's throwaway assertion (at 21) that "any denial" of the right to a hearing "was harmless" fails for the same reasons.

ing brief—similarly do not hold that no hearing is required in the public employment context. As explained in Trinka's cross-motion, *Harrison v. Bowen*, 815 F.2d 1505 (D.C. Cir. 1987), did not consider whether the employee was entitled to confrontation and cross-examination, because the employee ***did not raise*** that issue. DVA insists that *Harrison* "made clear the protections [the] employee received satisfied due process," Def. Opp. at 29, but when an issue is not raised, a court cannot be considered to have ruled on it, *see, e.g.*, *In re Rail Freight Fuel Surcharge Antitrust Litig. (No. II)*, No. MC 20-00008 (BAH), 2021 WL 1909777, at *13 n.8 (D.D.C. May 12, 2021) (court's statements on "an issue not raised by the parties" "did not constitute a holding"). Similarly, neither *U.S. Information Agency v. Krc*, 905 F.2d 389 (D.C. Cir. 1990), nor *Twist v. Meese*, 854 F.2d 1421 (D.C. Cir. 1988), addressed an asserted right to confront and cross-examine adverse witnesses at a hearing.[4]

DVA's effort to distinguish Trinka's cases fails. DVA once again (at 18) misquotes *Loudermill*'s description of the minimal requirements for a ***pre***-termination hearing, ignoring that *Loudermill*'s holding was expressly conditioned on the state's provision of a "full ***post***-termination hearing." 470 U.S. at 546-47 (emphasis added). DVA protests that *Loudermill* did not "say what protections that hearing entailed." Def. Opp. 30. But court after court has held that, at least when facts are in dispute, the target of government action must be given "the opportunity to

[4] *Krc* and *Meese* are otherwise distinguishable. DVA reads *Krc* to hold that "an employee's removal does not divest him of a protected property interest so long as the agency removes him for reasons and in a manner that its own policies permit." Def. Opp. 29. But the point is not that termination comports with due process as long as the government follows its own procedures (an idea nonsensical in light of the Supremacy Clause and inconsistent with *Loudermill*). The point is that the employee in *Krc*—who had at best a "circumscribed" property interest in his "limited" foreign service appointment, subject at all times to the requirement that he maintain a security clearance—did not have the same kind of weighty property interest as a tenured career SES employee like Trinka. *See* 905 F.3d at 398-99. In *Meese*, the employee was held to have ***no property interest at all***. *Id.* at 1429. Dicta about what process might be sufficient if he did is no guide here. Regardless, as in *Harrison*, there is no indication the employees in *Krc* or *Twist* asserted a right to a hearing with cross-examination.

confront adverse evidence and cross examine adverse witnesses." *Bus. Commc'ns*, 739 F.3d at 381; *see McClure*, 228 F.3d at 1212 (cross-examination required when charge "depriv[ed] a plaintiff of her livelihood by attacking her morality and fitness as a teacher"); *Walsh*, 975 F.3d at 484-85 (cross-examination required "where credibility was critical and the sanction imposed would result in loss of employment"); *Baird*, 389 F.3d at 692-94 (terminated teachers entitled to "confrontation and cross-examination"); *Haidak v. Univ. of Massachusetts-Amherst*, 933 F.3d 56, 69 (1st Cir. 2019) ("serious disciplinary charge" requires "mechanism for confronting the complaining witness and probing his or her account"); *Doe*, 903 F.3d at 581-85 (6th Cir. 2018) (cross-examination required in student disciplinary hearing "when credibility is at issue"). DVA dismisses those cases as turning on "credibility determinations," Def. Opp. 32, but this case ***also*** turns on credibility. It is ***entirely*** a matter of "he said, they said."

3. *DVA's Use of the Substantial Evidence Standard Violated Due Process*

As the D.C. Circuit has recognized, use of "substantial evidence" as a standard of proof during misconduct proceedings violates due process. *See Charlton v. F.T.C.*, 543 F.2d 903, 907 (D.C. Cir. 1976); *Rodriguez v. Dep't of Veterans Affs*, 8 F.4th 1290, 1301 (Fed. Cir. 2021). DVA's opposition rightly abandons any argument that using the substantial evidence standard would comport with due process. Def. Opp. 37-38. DVA instead argues that Trinka "waived this argument by failing to raise it in his grievance," *id.* at 33, and that the Secretary "sustained [Trinka's] removal by a preponderance of the evidence," *id.* at 34. Both arguments lack merit.

a. *Trinka Did Not Waive His "Substantial Evidence" Argument.*

Trinka did not fail to raise his substantial evidence argument in his grievance. Def. Opp. 34. Trinka raised the argument in his written response to the proposed removal, and incorporated those arguments into his grievance (which attached the written response). AR 356, 538, 541, 543. The Secretary read and considered that response: In rejecting Trinka's grievance, the

Secretary affirmed that he "carefully reviewed the entire record for [him]self ***which includes [Trinka's] response to the Proposed Removal***." AR 758 (emphasis added). And the Secretary specifically addressed Trinka's argument that the agency applied "the incorrect standard of evidence." AR 754. When an agency "actually considered" an issue, that issue is subject to judicial review, regardless whether the party pressing it raised it before the agency (which Trinka in fact did). *Engine Mfrs. Ass'n v. EPA*, 88 F.3d 1075, 1084 (D.C. Cir. 1996).

Regardless, Trinka was not required to raise any argument to preserve it for judicial review. "[R]equirements of administrative issue exhaustion are largely creatures of statute." *Sims v. Apfel*, 530 U.S. 103, 107 (2000). DVA cites no statute or regulation that requires issue exhaustion here, and neither the governing statute nor DVA's implementing policy contains such a requirement. *See* 38 U.S.C. § 713. Much less do any of those authorities prescribe a particular manner in which arguments must be raised before the agency. Nor should the court apply a "judicially imposed issue-exhaustion requirement." *Sims*, 530 U.S. at 108. Such a requirement is appropriate only in proceedings "analog[ous] to normal adversarial litigation." *Id.* at 109. The "critical feature" that distinguishes "adversarial proceedings" is that, in such proceedings, "claimants bear the responsibility to develop issues for adjudicators' consideration." *Carr v. Saul,* 141 S.Ct. 1352, 1358 (2021).

Both the statute and DVA's implementation of it demonstrate that the "responsibility to develop issues" was on DVA decisionmakers, not Trinka. By statute, the entire termination process, from notice to decision, "may not exceed 15 business days." The individual targeted for termination is permitted only seven business days to respond, and is "not required[] to file briefs." *Delta Found., Inc. v. United States*, 303 F.3d 551, 561 (5th Cir. 2002) (short timing and lack of required briefing indicate proceeding is not adversarial). No government representative

opposes the employee's briefing (if any), so there is no adversarial back-and forth. *See id.*; AR 391-92. DVA, moreover, reserved for itself the task of developing evidence and presenting it to the factfinders, denying Trinka an opportunity even to respond during the investigation period. *See* p. 20, *infra.* DVA likewise denied Trinka even a minimal opportunity to "develop issues," withholding the key evidence from him and affording no opportunity to build the record or test DVA's evidence through discovery or cross-examination. *Contrast McClenning v. Army*, 2022 M.S.P.B. 3 at ¶¶17-20 (2022); *Delta*, 303 F.3d at 561-62. Given those constraints, the termination proceeding was not adversarial, making a judicially-imposed exhaustion requirement "not appropriate." *Id.* at 560.[5]

b. *DVA Decisionmakers Applied the Substantial Evidence Standard*

DVA next contends there was no error because the Secretary "sustained [Trinka's] removal by a preponderance of the evidence." Def. Opp. 33. Even if true, DVA concedes that ***the Deciding Official***—the official who ***actually terminated*** Trinka—applied the (deficient) substantial evidence standard. *Id.* at 34; *see* AR 529-536. DVA's effort to dismiss that decision as an "immaterial" action by a "lesser official," Def. Opp. 35, strains credulity. The Deciding Official's decision terminated Trinka's lifetime of public service, "effective" the day it issued. AR 529. And it was that decision which the Secretary was bound to follow unless he found it "[n]ot supported by [s]ubstantial [e]vidence," arbitrary and capricious, or obtained without required procedures being followed. AR 393.[6] That the official charged with "initially

---

[5] A judicially imposed issue exhaustion requirement on Trinka's constitutional claims is further disfavored here, given that "agency adjudications are generally ill suited to address structural constitutional challenges, which usually fall outside the adjudicators' areas of technical expertise." *Carr v. Saul,* 141 S.Ct. 1352, 1360-61 (2021).

[6] DVA's limitations on the Secretary's ability to review the Deciding Official's decision themselves violate the Constitution by restricting the Secretary's ability to overturn the decisions of inferior DVA officers. *See United States v. Arthrex*, 141 S. Ct. 1970, 1982 (2021). They also run

ascertain[ing] the facts" applied substantial evidence ***alone*** shows that DVA fell short of the "rock bottom . . . level of civil litigation," regardless what standard the Secretary applied in adjudicating Trinka's grievance.[7] *Charlton*, 543 F.2d at 907.

The record, however, makes clear the Secretary ***also*** applied a substantial evidence standard. His decision states repeatedly it is based on the "substantial evidence standard." *See, e.g.* AR 754, 758. The Secretary's throwaway comment that he would have upheld the decision under a "preponderant" standard "if necessary," AR 758, is meaningless where the Secretary's analysis focuses entirely on the substantial evidence standard and articulates no reasoned basis for a finding under a preponderance standard. *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (court "may not supply a reasoned basis . . . the agency itself has not given"); *White v. U.S. Dep't of the Army*, 720 F.2d 209, 210 (1983). DVA cites the presumption of regularity of agency action, Def. Opp. 49, but that cuts the other way: DVA policy ***required*** the Secretary to apply the substantial evidence standard, AR 393, so the Court must assume he did and set aside the action. *See Santosky v. U.S.*, 455 U.S. 745 (1982).

4. *DVA Improperly Relied on Ex Parte Communications*

Tenured employees are entitled to notice and "explanation of the evidence" against them.

---

afoul of the statute, which requires the Secretary to "determine" what action is warranted. 38 U.S.C. § 713(a)(1). DVA's contention that those restrictions "prevent[] [the Secretary] only from upholding a legally defective decision," while leaving him the power to "countermand[]" the Deciding Official's decision "for any reason," Def. Opp. 38, does not pass the straight-face test. Surely DVA would not argue that the substantially identical language of the APA, 5 U.S.C. § 706(2), or Section 713 itself, 38 U.S.C. § 713(b)(6), permits a reviewing court to overturn its decisions "for any reason." *Id.* DVA's argument that the Secretary could have unilaterally rescinded those restrictions is equally meritless. The Secretary expressly said he made his decision "in accordance with . . . [DVA] Policy," citing the CSEMO letter. AR 750 & fn. 1. And if the Secretary ***had*** silently abandoned DVA's written policies, that itself would have been arbitrary and capricious. *Nat'l Biodiesel Bd. v. Env't Prot. Agency*, 843 F.3d 1010, 1018 (D.C. Cir. 2016).

[7] Taking an agency action based on facts that "might" be true is arbitrary and capricious. Compl. at ¶ 293.

Pl. Mot. 28. Introduction of "new and material information by means of *ex parte* communication" to a deciding official "undermines the public employee's constitutional due process guarantee of notice . . . and the opportunity to respond." *Stone*, 179 F.3d at 1376. DVA concedes that a third-party "Grievance Official" transmitted a "recommendation" to the Secretary, and that Trinka asked for the recommendation and was denied. AR 761-762. DVA does not dispute that the Secretary's decision was almost word-for-word copy of the "recommendation." *Compare* AR 742-749 with 750-758. And DVA does not dispute that the Secretary relied on this communication—with a few formatting changes, it ***was*** the Secretary's decision. AR 758. Trinka's inability to respond to that "new" and "material" communication violated due process.

**B. Retroactive Application of the 2017 Act Violated Due Process.**

As the Federal Circuit has held, the 2017 Act "cannot be applied retroactively." *Sayers v. Dep't of Veterans Affs.*, 954 F.3d 1370, 1380-82 (Fed. Cir. 2020); *Harrington v. Dep't of Veterans Affs.*, 981 F.3d 1356, 1358 (Fed. Cir. 2020); *Brenner v. Dep't of Veterans Affs.*, 990 F.3d 1313, 1328-1329 (Fed. Cir. 2021). Although the formal charge against Trinka was based on post-2017 conduct (his statement to investigators in December 2018), the recommendation to ***remove*** him from federal service was based on alleged "aggravating factors" involving ***pre***-2017 conduct. AR 004-005. DVA's interpretation of Section 713 to reach pre-2017 conduct violated basic principles of fair notice. *Karem v. Trump*, 960 F.3d 656, 666 (D.C. Cir. 2020); Pl. Mot. 31.

Avoiding Trinka's authorities, DVA analogizes to criminal sentencing, where courts have held that using aggravating factors to increase the sentence is not impermissibly retroactive. Def. Opp. 39. But unlike a criminal conviction and sentencing, Trinka's termination was one proceeding with one decision. Section 713 authorizes the Secretary to remove an employee only when he determines the employee's "misconduct or performance . . . warrants such action." 38 U.S.C. § 713(a)(1). The Federal Circuit accordingly rejected an identical argument in *Brenner*. There,

DVA argued it did not apply the statute retroactively when the Secretary terminated an employee for a "pattern of poor performance that began before the Act was passed," which "became worse" after enactment. 990 F.3d at 1328. As in *Brenner*, DVA ***terminated*** Trinka because of allegedly "reoccurring incidents [prior to the 2017 Act] of poor judgement and lack of candor to federal authorities"[8] that supposedly demonstrated Trinka "ha[s] a propensity to misinform, mislead or otherwise provide false answers and narratives." AR 04-05. As in *Brenner*, DVA's reliance on alleged pre-2017-Act conduct violated due process.[9]

## II. DVA's Actions Were Not In Accordance With Law

In addition to the constitutional violations above, Trinka's removal was "not in accordance with a provision of law," and/or "obtained without procedures required by a provision of law having been followed." 38 U.S.C. §713(b)(6)(A)-(B). Federal employees are entitled to procedural protections afforded by the U.S. Constitution ***and*** those afforded by statute, regulation and agency procedure. *Stone*, 179 F.3d at 1378. DVA failed to afford Trinka the procedural protections required by Section 713 and DVA's implementing regulations.

### A. Section 713 Required Disclosure of the Recorded Statement to Trinka.

#### a. *Trinka Was Entitled to the Recording Under § 713's Plain Text*

Trinka was entitled to "advance notice of the action and a file containing ***all evidence in support of*** the proposed action." 38 U.S.C. §713(b)(1)(A) (emphasis added). That language means what it says: "***all***" the evidence "in support of" the proposed action" must be turned over. Trinka's recorded statements during the interview are the basis for the removal action; therefore they are evidence "in support of" the agency's action. Indeed, if the recording of Trinka's

[8] As Trinka noted below, DVA's "aggravating" allegations were unsubstantiated. AR 367-370.

[9] DVA's argument that Trinka waived this claim fares no better. Trinka was not required to exhaust his claim. *See p.13, supra*. Trinka's claim is presumed preserved for judicial review, even if raised "for the first time in federal court." *Carr*, 141 S.Ct. at 1362.

verbatim testimony does ***not*** "support" DVA's action, then his removal was unsupported by ***any*** evidence and unjustified for that reason alone.

DVA struggles with the statute's plain text. During the administrative process, DVA insisted it was only required to provide the "evidence that is deemed necessary"—presumably evidence "deemed necessary" by OAWP to bolster the charge. AR 532. This practice of selectively and unfairly presenting evidence is the exact practice for which the VA OIG excoriated OAWP. Pl. Mot. 5-6. DVA now argues it is only required to disclose "materials that the proposing official considered," Def. Opp. 26—which amounts to the same thing, because OAWP dictates the materials to be considered, AR 390. Nonetheless, DVA's argument defies the statute's plain text, requiring "***all evidence***" be provided, not just evidence OAWP "deemed necessary" or evidence the "proposing official considered."

DVA cites cases interpreting other statutes to permit agencies to "exclude materials" it "did not consider in proposing discipline." Def. Op. 26-27. But DVA ***did*** consider Trinka's recorded statements—they were the basis for VA OIG's interview summary. DVA draws a line at evidence considered by the ***Proposing Official***, Def. Opp. 27, but there is no basis in the statute to distinguish between the proposing official and other agency officials, *see* 38 U.S.C. § 713(b)(1)(A). Nor would it make sense for a statute to broadly guarantee employees "all evidence" against them, only to let the agency gerrymander that evidence by withholding probative evidence from the proposing official and substituting selectively curated summaries.

DVA's claim that Trinka failed to raise this argument during agency proceedings, Def. Opp. 26, is simply false. Trinka argued that, because DVA withheld the recording and potentially other documents, DVA had not provided Trinka "*all of the evidence* in support of the proposed action." AR 361 (emphasis added). Then, in his grievance, Trinka challenged the Deciding

Official's assertion that DVA satisfied its obligations by providing him only with the curated "evidence file." AR 544. DVA was clearly on notice of this argument, as both the Grievance Official's recommendation and the Secretary's Decision stated that DVA complied with this provision of Section 713.[10] AR 744, 752. In any event, exhaustion is not required. *See p.13, supra*.

b. *Section 713 Does Not Contain a "Prejudice" Requirement*

DVA contends Trinka is required to "show prejudice to obtain relief under Section 713." Def. Opp. 22. But DVA ***concedes*** that Section 713's text contains no such rule. *Id.* at 10-11. DVA argues that this Court should write one into the statute because the Administrative Procedure Act ***does*** contain a prejudicial error rule. *Id.* That turns statutory interpretation on its head. *See Cf. Gozlon-Peretz v. United States*, 498 U.S. 395, 404 (1991) ("'[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'"). And, Trinka showed prejudice. *See* pp. 5-8, *supra*

DVA argues that Trinka "cannot evade the prejudicial error rule" of Section 713 "by suing directly under the constitution." Def. Opp. 25. That is irrelevant, because Section 713 doesn't contain a "prejudicial error rule." In any event, Trinka need not sue "directly under the constitution" because Section 713 permits judicial review of decisions that are "not in accordance with a provision of law." 38 U.S.C. §713(b)(6). "Law" necessarily includes the Constitution. U.S. Const. art. VI, cl. 2. Trinka also sues for relief under the Declaratory Judgment Act, *see* 28 U.S.C. §§ 2201, 2202; Compl. ¶3, and so is not merely seeking "judge-made equitable relief," Def. Opp. 25.

[10] This misstatement of the law makes the decision arbitrary and capricious. Compl. at ¶ 306.

### B. DVA Violated Its Own Policies by Withholding the Recorded Statement

DVA's policy implementing Section 713 dispels any doubt the recording must be provided. Section 7.a.iii.1 of that policy requires "***[a]ny statement*** or evidence provided by the Senior Executive ***will be included*** in the investigative file, and ***if relevant or used in support of*** a subsequent proposed action, the evidence file." AR 390 (emphasis added). It thus does not matter whether Trinka's recorded statement was "in support of" the action, because the policy required its inclusion if it was "used in support of" the action ***or*** was "relevant." Trinka's recorded statement was clearly "relevant" – it was direct evidence of the purported misconduct. DVA's *post-hoc* claim that the relevant agency actors did not possess or review the recording fails for all the reasons explained above.[11] *See* pp. 7-8, *supra*.

### C. DVA Violated Its Own Policies by Denying Trinka an Opportunity To Respond or Provide Evidence During OAWP's Investigation

DVA policy also obligated it to provide Trinka an "opportunity to respond and provide evidence relating to the matters under investigation" during OAWP's investigation of the alleged misconduct. AR 390 § 7.a.iii.1. DVA concededly did not. To excuse its failure, DVA asks the Court to disregard that this mandate falls under the heading of "Investigation" in DVA's policy, and to ignore that the text of § 7.a.iii.1 repeatedly presumes that an opportunity to respond is provided while the investigation is underway. AR 390 § 7.a.iii.1 ("opportunity to respond and provide evidence relating to the matters ***under investigation***"; opportunity must be given unless "the circumstances of ***the investigation*** make it impossible" (emphasis added)).[12]

Perhaps recognizing the weakness of its textual argument, DVA again argues waiver.

---

[11] Terminating Trinka without considering the only direct evidence of the alleged misconduct was arbitrary and capricious. Compl. ¶ 305.

[12] DVA does not claim that "the circumstances of the investigation" made it "impossible" to give Trinka an opportunity to respond.

Def. Opp. 40. But Trinka's reply to the agency specifically alleged that DVA violated § 7.a.iii.1, *see* AR 358, 359 at fn. 7 ("OAWP did not interview Mr. Trinka, in violation of CSEMO Letter Section 7.a.iii.1."). Trinka also raised the issue in his complaint. Compl. ¶¶ 120-122.[13]

**D. OAWP Exceeded Its Authority in Recommending Trinka's Removal**

Section 713 authorizes "the Secretary," not OAWP, to determine what penalty to impose for a Senior Executive's misconduct. 38 U.S.C. § 713(a)(1). Consistent with the statute, DVA policy limits OAWP's role to briefing the Secretary on "whether disciplinary action is recommended," so long as OAWP's "recommendation will be limited to ***whether*** disciplinary action should be pursued." AR 390 at § 7.a.iii.3 (emphasis added). OAWP exceeded that limitation by recommending the ***specific penalty*** of removal. AR 001. The violation was all the more severe because, when recommending removal, OAWP threatened the Proposing Official that if he did not pursue removal he must justify his decision "to Congress." AR 001-002.[14] That threat improperly pressured the Proposing Official to seek removal, interfering with his authority under DVA policy to determine what, if any, penalty is appropriate.[15] AR 590 § 7.b.i.

DVA's contrary argument disregards the policy's plain language. According to DVA, "the language at issue" merely prohibits OAWP from "recommending that the Secretary pursue a ***criminal investigation or prosecution***." Def. Opp. 41-42. That makes no sense. The Secretary has no authority to pursue criminal investigations or prosecutions. DVA cites language from a ***different subsection*** requiring OAWP to refer "possible violations of criminal law to OIG." AR

[13] In any event, exhaustion is not required. *See p.13, supra.*

[14] That misrepresented the 2017 Act. The Secretary, not the Proposing Official, is required to justify a decision not to initiate a disciplinary action as recommended by the Assistant Secretary for Accountability and Whistleblower Protections. 38 U.S.C. § 323(f)(2).

[15] DVA thus relied on factors which Congress has not intended it to consider when it arbitrarily and capriciously terminated Trinka. Compl. at ¶ 294.

389 §7.a.ii. That has nothing to do with OAWP's authority to recommend discipline. AR 389-90.

### E. DVA's Use of the Substantial Evidence Standard Violated the 2017 Act

The 2017 Act (and due process) require the preponderance standard of proof. *Rodriguez*, 8 F.4th at 1298. DVA does not deny that. Def. Opp. 33-36. It offers only a meritless waiver argument and an assertion that the Secretary applied a preponderance standard, which fail as discussed above, pp. 14-16, *supra*.

### F. DVA Impermissibly Relied on Pre-2017 Conduct

Statutes are assumed not to apply retroactively unless Congress expresses a "clear intent." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 266 (1994). The 2017 Act expresses no such intent, and case law confirms it "cannot be applied retroactively." *Sayers*, 954 F.3d at 1380-82. DVA's reliance on pre-2017 "aggravating conduct" was thus contrary to law.

## III. DVA'S REMOVAL DECISION WAS ARBITRARY AND CAPRICIOUS

DVA's decision was also "arbitrary and capricious." 38 U.S.C. § 713(b)(6).

### A. The Refusal To Consider Relevant Evidence Violated Reasoned Decisionmaking

DVA arbitrarily "refus[ed] to consider evidence bearing on the issue before it," *Butte County v. Hogen*, 613 F.3d 190, 194 (D.C. Cir. 2010), by ignoring the recording of Trinka's interview. DVA does not dispute that that evidence "bear[s] on the issue" of whether Trinka provided misleading information during his OIG interview, or that it refused to consider the recording. Nor does DVA dispute that Trinka told DVA the recording was "exculpatory." AR 359, 362, 545-546. DVA had no conceivable valid basis to not consider that evidence. Maintaining willful ignorance of the recording's contents without any curiosity whether the verbatim recording supported the charge is textbook arbitrary and capricious decisionmaking.

Incredibly, DVA now insists it did not need to consider the recording because ***Trinka*** "never introduced the recording for VA to consider." Def. Opp. 43. Trinka ***begged*** DVA to turn

over the recording and consider it instead of OIG's summary, but DVA refused at every turn. AR 359, 362, 545-546. Trinka cannot possibly be blamed for "never introduc[ing] the recording" whose release DVA systematically stonewalled. Regardless, the recording was in DVA's possession; Trinka did not need to "introduce" it for DVA to consider it. *See p. 8, supra.*

DVA ignored still more relevant and exculpatory evidence. Trinka provided evidence that he informed at least one of his supervisors of his wife's immigration status. AR 363. DVA did not consider that. He demonstrated that he had voluntarily disclosed his wife's immigration status on other government forms. AR 366-369. DVA did not consider that. He submitted evidence that he helped his wife seek legal immigration status, after the proposed termination cited his failure to do so as a reason for his termination. AR 369-370, 499-528. DVA did not consider that. To the contrary, it found, without basis, that Trinka had "willfully chosen" not to "remediate" his wife's "illegal status." AR 004. DVA's failure to consider this exculpatory evidence compounded the arbitrariness of its decisions. AR 529-536, 750-758; *see Butte*, 613 F.3d at 194.

DVA now claims that Trinka waived these additional exculpatory facts by not raising them in his grievance or complaint. Def. Opp. 42-46. Notwithstanding that administrative exhaustion is not required in this context, *see supra* 13, Trinka raised these issues in his reply before the agency (which was incorporated into his grievance, AR 541 n.1), and in his complaint. *See* AR 354, 363, 374, 758.; Compl. ¶¶ 103, 114, 152 (arguing he disclosed his wife's immigration status to at least one supervisor); AR 367-369; Compl. ¶¶ 93, 98, 174-175 (arguing he disclosed his wife's status to various agencies); AR 369-370, 373, 376, 499-528; Compl. ¶¶ 90, 174, 176, 300 (explaining efforts to assist his wife in seeking legal immigration status).[16]

---

[16] DVA knocks Trinka for not disclosing his efforts to assist his wife obtain legal status ***prior to*** DVA proposing his removal. Def. Opp. 46. But it is hard to imagine why he should have volunteered that information, since it had no bearing on his official VA duties and he had no

DVA, moreover, concedes the Secretary "considered" these arguments, Def. Opp. 44, rendering any exhaustion issue moot. *Engine Mfrs.*, 88 F.3d at 1084.

### B. DVA Failed To Explain Why It Disbelieved Trinka's Version of Events.

Trinka denied that he misled OIG investigators. AR 362, 378, 541-542, 545. He insisted the interview recording was "exculpatory." AR 359. DVA neither reviewed the recording nor explained the decision to disbelieve Trinka's claims. While DVA "was not obliged to accept [Trinka's] claim of innocence," Def. Opp. 47, DVA ***was*** obliged to "articulate a satisfactory explanation for its action." *State Farm*, 463 U.S. at 43. DVA's failure to "rational[lly] connect" its decision to the facts was arbitrary and capricious. *Id.* DVA counsel's *post hoc* speculation cannot substitute for DVA's own reasoning. *Burlington*, 371 U.S. at 168. DVA complains Trinka did not raise this argument during agency proceedings. Trinka could not raise issues with the sufficiency of the agency's decisionmaking process ***before*** the agency made its final decision.

### C. If DVA Applied a Preponderance Standard, That Was Unreasoned

If DVA applied a different standard of proof (preponderance) than the one articulated in its policies and its communications with Trinka (substantial evidence), it failed basic reasoned decisionmaking. *Allentown Mack Sales & Servs., Inc. v. N.L.R.B.*, 522 U.S. 359, 375 (1998).

## IV. DVA's Decision Is Unsupported By Substantial Evidence

Substantial evidence is evidence that a "***reasonable*** mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (emphasis added). The evidence DVA accepted as adequate to support Trinka's termination was anything but. Because DVA refused to review Trinka's recorded statement, it terminated his employment based only a

---

obligation to disclose it. DVA, on the other hand, was obligated to consider that evidence when deciding to terminate Trinka's employment, given that it removed Trinka in part because he allegedly "willfully chose[]" not to "remediate" his wife's status. AR 004-005; *City of Portland v. EPA*, 507 F.3d 706, 713 (D.C. Cir. 2007) (agency must respond to "relevant" arguments).

four-line summary of his purported testimony, prepared months after the fact. AR 304. That summary bore no "indicia of reliability," a requirement for hearsay evidence to satisfy the substantial evidence standard. Pl. Mot. 43. That Trinka had no opportunity to cross-examine witnesses or to compare the interview summary with the actual recorded statement renders the evidence all the more unreliable. *Richardson v. Perales*, 402 U.S. 389, 402 (1971).[17]

Even accepting the hearsay summary as accurate does not save DVA's removal action. DVA must prove that Trinka knowingly provided inaccurate information with the requisite ***element of deception***. *Ludlum v. Dep't of Justice*, 278 F.3d 1280, 1284-1285 (Fed. Cir. 2002). The interview summary offers no context indicating an element of deception; only potential inaccuracy. AR 304. To the contrary, the record shows Trinka had no motive to deceive anyone about whether he told his supervisors about his wife's immigration status. He had no obligation whatsoever to disclose to ***any*** supervisor personal information about his wife. And he had historically informed multiple government entities of his wife's immigration status. There is simply no evidence for a "reasonable mind" to conclude Trinka intended to deceive OIG.

## CONCLUSION

The Court should set aside Trinka's removal and order all other appropriate relief.

[17] DVA claims Trinka waived his argument that the OIG's summary of interview was insufficiently detailed and unacceptable hearsay. But Trinka raised this argument, citing *Richardson* specifically, before the agency. AR 362-363, 543. The Grievance Official addressed this specific argument, AR 746-747, and the Secretary himself analyzed the nine *Richardson* factors in his grievance decision. AR 756-757. DVA's remaining waiver arguments fare no better. DVA claims that Trinka had not previously raised the issue of whether OIG interviewed the correct three supervisors. Trinka was not required to raise every fact below that points to DVA's lack of sufficient evidence; it was enough that he claimed that DVA's evidence was lacking and the charge "cannot be sustained." AR 362. Trinka did, however, raise this specific issue in his complaint. Compl. ¶ 110. DVA also claims that Trinka waived his argument that there is no evidence that he intended to deceive OIG by not raising the argument in agency proceedings or his complaint. However, Trinka raised it in his written reply, AR 360, 362, 366, 378, his grievance, AR 541, 544, 547, and his complaint. Compl. ¶¶ 68, 169, 194, 230, 311, 318.

Date: August 25, 2022

Respectfully submitted,

Christopher J. Keeven #993971
Debra L. Roth #422452
Conor D. Dirks #1022481
Shaw Bransford & Roth P.C.
1100 Connecticut Ave NW, Suite 900
Washington, DC 20036
Tel: 202-463-8400
Fax: 202-833-8082

*Counsel for Plaintiff James Trinka*