**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| JAMES TRINKA, | : | |
| | : | |
| Plaintiff, | : | Civil Action No.:   21-2904 (RC) |
| | : | |
| v. | : | Re Document Nos.:   14, 15 |
| | : | |
| DENIS MCDONOUGH, *et al.*, | : | |
| | : | |
| Defendants. | : | |

<u>**MEMORANDUM OPINION**</u>

**Granting in Part and Denying in Part Without Prejudice Defendants' Motion for
Summary Judgment; Granting in Part and Denying in Part Without Prejudice
Plaintiff's Cross-Motion for Summary Judgment; and Remanding to the Agency**

**INTRODUCTION**

Plaintiff James Trinka ("Plaintiff" or "Trinka") brings the instant action against the

United States Department of Veterans Affairs (the "VA") and Secretary of Veterans Affairs

Denis McDonough (the "Secretary") (collectively, "Defendants") to challenge the termination of

his employment as a career appointee in the Senior Executive Service of the VA.  Specifically,

the VA removed Trinka from his position for conduct unbecoming a federal supervisor because,

according to the VA's Office of Accountability and Whistleblower Protection ("OAWP"),

Trinka provided false or inaccurate information to the VA Office of Inspector General ("OIG")

when he stated during an interview that he had disclosed his wife's undocumented immigration

status to three supervisors.  Trinka now raises various claims.  First, he claims that his

termination violated the Due Process Clause of the Fifth Amendment because Defendants denied

him access to certain evidence, an evidentiary hearing, and a meaningful opportunity to be heard;

relied improperly on *ex parte* communications; applied an unconstitutional evidentiary standard;

and unlawfully applied 38 U.S.C. § 713 retroactively.  Compl. ¶¶ 208–62, ECF No. 1.  Second,

Trinka claims that his removal was not in accordance with the law because it violated the Due Process Clause, 38 U.S.C. § 713, and the VA's policies and procedures as set out in its Corporate Senior Executive Management Office Letter No: 006-17-1 – Senior Executive Accountability and Grievance Procedures ("CSEMO Letter"). *Id.* ¶¶ 263–83.  Third, Trinka claims that his termination was arbitrary, capricious, and/or an abuse of discretion. *Id.* ¶¶ 290–307.  Fourth, and finally, Trinka claims that his termination was not supported by substantial evidence. *Id.* ¶¶ 308–19.

Defendants and Trinka have filed cross-motions for summary judgment.  For the reasons explained below, the Court grants in part and denies in part without prejudice Defendants' motion for summary judgment.  Further, the Court grants in part and denies without prejudice Trinka's cross-motion for summary judgment.  Finally, the Court remands the matter to the agency for further consideration consistent with this Opinion.

## BACKGROUND

### A.  Statutory and Regulatory Framework

#### 1.  Civil Service Reform Act

The Civil Service Reform Act of 1978 ("CSRA") "provides a 'framework for evaluating adverse personnel actions against federal employees' and 'prescribes in great detail the protections and remedies applicable to such action, including the availability of administrative and judicial review.'"  *Esparraguera v. Dep't of the Army*, No. 21-cv-421, 2022 WL 873513, at *1 (D.D.C. Mar. 24, 2022), *appeal docketed*, No. 22-5150 (D.C. Cir. 2022) (quoting *United States v. Fausto*, 484 U.S. 439, 443 (1988)).  Established by Congress in Title IV of the CSRA, *see Senior Executives Ass'n v. United States*, 576 F. Supp. 1207, 1209 (D.D.C. 1983), the Senior Executive Service ("SES") "is a division of 'high-level' federal employees who wield

'significant responsibility—including directing organizational units, supervising work, and determining policy,'" *Esparraguera*, 2022 WL 873513, at *1 (citation omitted).

### 2.  38 U.S.C. § 713

On June 23, 2017, Congress enacted the Department of Veterans Affairs Accountability and Whistleblower Protection Act of 2017 (the "Act").  *Sayers v. Dep't of Veterans Affs.*, 954 F.3d 1370, 1374 (Fed. Cir. 2020) (citing Pub. L. No. 115-41, 131 Stat. 862).  Among other provisions, the Act established the VA's OAWP, *see* Pub. L. No. 115-41, 131 Stat. at 863, tasked with "[a]dvising the Secretary on all matters of the Department relating to accountability, including accountability of employees of the Department, retaliation against whistleblowers, and such matters as the Secretary considers similar and affect public trust in the Department," 38 U.S.C. § 323(c).  The Act also amended 38 U.S.C. § 713, relating to the removal of Senior Executives from the VA.  *See* Pub. L. No. 115-41, 131 Stat. at 868.

Pursuant to Section 713, the Secretary of Veterans Affairs may "reprimand or suspend, involuntarily reassign, demote, or remove a covered individual from a senior executive position at the Department if the Secretary determines that the misconduct or performance of the covered individual warrants such action."  38 U.S.C. § 713(a)(1).  One who is subject to such an action is then entitled to:

> (A) advance notice of the action and a file containing all evidence in support of the proposed action;
> (B) be represented by an attorney or other representative of the covered individual's choice; and
> (C) grieve the action in accordance with an internal grievance process that the Secretary, in consultation with the Assistant Secretary for Accountability and Whistleblower Protection, shall establish for purposes of this subsection.

*Id.* § 713(b)(1).  In total, "[t]he aggregate period for notice, response, and decision" on the action "may not exceed 15 business days."  *Id.* § 713(b)(2)(A).  The Senior Executive is accorded seven

business days to respond to the advance notice, *id.* § 713(b)(2)(B); the decision must then be issued no later than 15 business days after notice of the action is provided to the Senior Executive, *id.* § 713(b)(2)(C); and the grievance process established by the Secretary must "take[] fewer than 21 days," *id.* § 713(b)(3).

The statute then provides for judicial review to any "covered individual adversely affected by a decision . . . that is not grieved, or by a grievance decision." *Id.* § 713(b)(5).  The court conducting the judicial review must set aside VA action found to be:

> (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with a provision of law;
> (B) obtained without procedures required by a provision of law having been followed; or
> (C) unsupported by substantial evidence.

*Id.* § 713(b)(6).  This section does not specify the court to conduct this judicial review.  But the Federal Circuit has determined that the federal district courts have jurisdiction to review final grievance decisions governed by 38 U.S.C. § 713(b)(5).  *See* Order, *McLafferty v. Wilkie*, No. 20-1772, at 2 (Fed. Cir. Aug. 31, 2020), ECF No. 10.

## B.  Agency Policy

In July 2017, the VA issued the CSEMO Letter, which provided procedures for implementing, among other statutory provisions, 38 U.S.C. § 713.  CSEMO Letter § 1, Tab R of Joint App. at 384, ECF No. 22-3.  Allegations of misconduct, poor performance, or whistleblower retaliation involving Senior Executives are referred to OAWP.  *Id.* § 7.a.i.  Upon conclusion of OAWP's investigation, OAWP and the VA Office of General Counsel ("OGC") must brief the Secretary or his or her designee "on the results of the investigation and whether disciplinary action is recommended," with the recommendation being "limited to whether disciplinary action should be pursued."  *Id.* § 7.a.iii.3.

Should the Secretary or the designee concur with the recommendation, a Proposing Official must be "briefed regarding the results of the investigation and the evidence gathered." *Id.* § 7.a.iii.4.  This Proposing Official will then "review the available evidence to determine whether a Reprimand, Suspension, Demotion, or Removal should be proposed; or whether no action is warranted." *Id.* § 7.b.i.  In proposing a penalty, "'no action' may be warranted if the Proposing Official determines, by Substantial Evidence, that the evidence does not support any of the allegations against the Senior Executive." *Id.* § 7.b.ii.  The Proposing Official will provide a copy of the Proposal to the Senior Executive, who then has seven business days after receiving the Proposal to respond, in writing, to the Deciding Official.  *Id.* §§ 7.d.i., ii.  Within 15 business days of the date of the Proposal, the Deciding Official must "issue an Initial Decision, after independently reviewing the Proposal, the evidence being relied upon, and considering the Senior Executive's reply." *Id.* § 7.d.v.  In total, "[t]he aggregate period for notice, reply, and Initial Decision on a proposed action may not exceed 15 business days." *Id.* § 7.d.vi.

A Senior Executive who receives an Initial Decision is entitled to grieve the Initial Decision to a Grievance Official and must submit such a grievance within seven business days from the date of receipt of the Initial Decision.  *Id.* § 8.a.iii.2.  The grievance must contain "[t]he reasons for which the individual believes that the action was not supported by Substantial Evidence; is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with a provision of law; or obtained without procedures required by a provision of law having been followed." *Id.* § 8.a.ii.  Within 20 calendar days of receiving the grievance, the Grievance Official will issue a recommendation to the Secretary through OAWP on the grievance.  *Id.* § 8.a.iii.4.  After reviewing the record, the Secretary will then issue a Final Decision.  *Id.* § 8.a.iii.5.  The Final Decision "will not uphold an Initial Decision" if the Secretary determines

that the action was not supported by Substantial Evidence; arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with a provision of law; or obtained without procedures required by a provision of law having been followed.  *Id.* § 8.a.iii.6.  The Final Decision is then subject to judicial review under 38 U.S.C. §§ 713(b)(4)–(6).  *Id.* § 8.a.iii.7.

The CSEMO Letter also specifies that the "'Standard of Proof' refers to the degree of evidence necessary to sustain an action taken under 38 U.S.C. § 713," and that, "[f]or actions taken under this authority, Substantial Evidence is the Standard of Proof."  *Id.* § 6.gg.  The CSEMO Letter further defines "Substantial Evidence" to mean "relevant evidence that a reasonable person, considering the record as a whole, might accept as adequate to support a conclusion, even though other reasonable persons might disagree."  *Id.* § 6.hh.

### C.  Factual and Procedural Background

Trinka first joined the VA in a career SES position on January 25, 2012.  Compl. ¶ 80.  In June 2014, he was assigned to serve as Chief Learning Officer for the VA's Office of Information and Technology.  *Id.* ¶ 81.  Trinka was then promoted to Chief Talent Management Officer of the Office of Information and Technology in July 2017.  *Id.* ¶ 82.  He had previously also served as the Director of Leadership and Organizational Effectiveness at the Internal Revenue Service ("IRS").  *Id.* ¶ 79.

Around May 2014, *id.* ¶ 100, OIG began an investigation involving Trinka "based on information received from a special agent with [the Department of Homeland Security, Homeland Security Investigations]," which "alerted OIG that an email sent to [Plaintiff]'s VA email account was from an individual believed to be involved in a sex trafficking organization," Joint App. at 327, ECF No. 22.  In August 2014, Trinka submitted an Electronic Questionnaire for Investigations Processing ("e-QIP") form that stated incorrectly on one page that his wife,

Piyaporn Trinka, had been born in the United States and was a United States citizen. Compl. ¶¶ 95–96. On another page of the e-QIP form, however, Trinka stated correctly that his wife's place and country of birth was Chiang Rai, Thailand. *Id.* ¶ 96. During a supplemental interview with the Office of Personnel Management's Federal Investigative Services, Trinka told investigators that he had, among other errors included on his e-QIP form, mistakenly listed his spouse as a U.S. citizen. *Id.* ¶¶ 97–98. Trinka allegedly did not, however, disclose to the investigators that his wife had been in the United States illegally. Joint App. at 3.

In December 2018, OIG asked John Oswalt, Trinka's supervisor, to escort Plaintiff to OIG for an interview. Compl. ¶ 103. During this walk, Trinka told Oswalt that "he believed the interview may be regarding his wife's immigration and/or citizenship status," and that "his wife had no legal immigration status." *Id.* The interview with OIG was then delayed until later that month, when OIG interviewed Trinka by telephone. *Id.* ¶¶ 104–05. OIG's interview with Trinka on December 21, 2018 was recorded. *Id.* ¶ 106; Joint App. at 303. According to the OIG's Memorandum of Interview dated April 24, 2019, Trinka learned in 2011 that his future spouse was in the country illegally. Joint App. at 303. They married in December 2013. *Id.* Using his wife's IRS-assigned Tax Identification Number, Trinka obtained a military dependent identification card for his wife, which allowed her to obtain health insurance through Trinka's military retirement benefits. *Id.* Trinka also listed this tax ID number in lieu of a Social Security number on various forms to apply for federal health and life insurance benefits for his wife. *Id.* at 304; Compl. ¶ 91. Trinka allegedly told OIG that, having previously worked for the IRS, he "knew that the first three digits of his wife's tax ID number meant it was issued to someone with no lawful immigration status." Joint App. at 304; *see also* Compl. ¶ 93.

OIG's Memorandum of Interview stated further that Trinka "said he verbally disclosed his wife's undocumented immigration status to three different supervisors who managed him during his tenure in the VA Office of Information Technology," and that "none of his supervisors had an issue with his wife's immigration status."  Joint App. at 304.  But after its interview of Trinka, OIG then interviewed three of his supervisors: Oswalt, Richard Chandler, and Martha Orr.  Compl. ¶ 112.  Oswalt told OIG that, when he escorted Trinka to OIG in December 2018, Trinka admitted that his wife was in the country illegally; Oswalt stated that he did not know about her immigration status prior to this date.  Joint App. at 306.  Both Chandler and Orr said that Trinka had not informed them about his wife's immigration status.  *Id.* at 308, 310.

In January 2020, OIG referred the matter to OAWP "for further action as appropriate," noting that OIG had developed evidence that Trinka made false statements in official government records.  *Id.* at 324–25.  On July 16, 2020, OAWP provided a memorandum to Dominic Cussatt, Principal Deputy Assistant Secretary of the Office of Information and Technology, that stated that OAWP had concluded that Trinka "made false or inaccurate statements or provided false or inaccurate information to the government on at least two occasions: when completing his [e-QIP] and when he stated to OIG investigators that he had informed three supervisors about his wife's immigration status."  Joint App. at 1.  OAWP recommended that Trinka be removed from federal service.  *Id.*  Citing 38 U.S.C. § 323(f)(2), the recommendation noted that, should Cussatt or his designee "fail to propose the disciplinary action recommended in this paragraph within 60 calendar days from the date of this memorandum," he must then "provide OAWP with a detailed justification why the recommended action was not proposed," and the justification "will be provided to Congress."  *Id.* at 1–2.

Paul Cunningham, Deputy Assistant Secretary and Chief Information Officer of the Office of Information and Technology, was appointed the Proposing Official. Compl. ¶ 134. On September 11, 2020, Cunningham proposed to remove Trinka from the SES and federal service "in accordance with 38 U.S.C. § 713" based on the charge of Conduct Unbecoming a Federal Supervisor, *see* Joint App. at 3, 5, with the specification that Trinka had provided "false or inaccurate information" to OIG investigators on December 21, 2018 "when [he] stated that [he] informed three supervisors about [his] wife's immigration status," *id.* at 3. But as background, the memorandum also highlighted other allegedly false statements identified by OIG: the erroneous listing of Plaintiff's wife as a U.S. citizen on Trinka's e-QIP and his failure to disclose that his wife was in the United States illegally, as well as his failure to disclose her immigration status when adding her as a dependent for life and health insurance benefits and the use of her tax ID to obtain a military dependent identification card. *Id.* at 4. As aggravating factors, Cunningham noted that "[t]he evidence demonstrate[d] that [Plaintiff had] a propensity to misinform, mislead or otherwise provide false answers and narratives" because "[o]n numerous occasions, it seems clear that you have willfully misinformed federal financial, insurance, medical, and security programs on the citizenship status of your spouse." *Id.* He further added that Trinka's "failure to disclose information seemed to be intentional[.]" *Id.* Although "the investigation did not specifically state that [Plaintiff] or [his] spouse [were] currently engaged in or affiliated with" criminal activities, it had "documented an ongoing association with several individuals involved in known or suspected criminal activities." *Id.* at 5. "[C]oupled with [his] lack of candor and [his] spouse's past affiliation with illegal activity," Cunningham stated, "the preponderance of evidence provide[d] and support[ed] a narrative of high-risk behaviors unbecoming of the position [Plaintiff held]." *Id.*

On September 22, 2020, in response to the proposed removal, Trinka submitted a reply that in part emphasized that the VA had "provide[d] no evidence for its charge save hearsay" given that it had not provided him with a transcript or recording of his interview with the VA OIG, in violation of his constitutional due process rights.  *Id.* at 353, 360–61.  Trinka further contended that he was not provided access to certain evidence, even though the links to this evidence were purportedly made available to Cussatt.  *See id.* at 361.  More broadly, Trinka alleged that 38 U.S.C. § 713 unconstitutionally limited his opportunities to contest his removal, *see id.* at 355–57, and the agency violated its own internal procedures in terminating him, *see id.* at 357–60.

Then, on October 2, 2020, Cussatt issued an Initial Decision that found that "substantial evidence support[ed] the proposed charge" and upheld the charge, specification, and penalty of removal.  *Id.* at 529.  The Initial Decision stated that Trinka had "engaged in conduct unbecoming a Federal Supervisor when [he] provided false and inaccurate information to [OIG] investigators."  *Id.*  The Initial Decision rejected the various arguments that Trinka had raised in his reply to the Proposal.  *See id.* at 529–34.  Cussatt denied that 38 U.S.C. § 713 was unconstitutional because it limited the window for Trinka's response and removed the post-termination hearing at the Merit Systems Protection Board ("MSPB"), stating that due process required only that the agency provide Plaintiff with "notice of the charges, and explanation of the employer's evidence, and an opportunity to present his side of the story."  *Id.* at 531–32 (quoting *Young v. Dep't of Hous. & Urb. Dev.*, 706 F.3d 1372, 1377 (Fed. Cir. 2013)).  Not only could the agency rely on hearsay evidence, *see id.* at 529, but it had provided Trinka with the evidence file in support of the proposed action; given that the Proposing Official did not rely on a transcript or recording of his interview with the VA OIG, the agency was not required to furnish this evidence

10

to Trinka.  *See id.* at 530.  He further explained that Trinka had been provided with the additional

evidence to which Plaintiff sought access, *see id.* at 533, and denied that the agency had engaged

in *ex parte* communications or violated its internal policies, *see id.* at 532, 534.  Cussatt

concluded "that substantial evidence support[ed] the charge and removal [was] warranted for

such action."  *Id.* at 530; *see also id.* at 534 ("The burden of proof in this case is limited to

substantial evidence pursuant to 38 U.S.C.§ 713(6)(C).  I find that the charge is supported by

substantial evidence."); *id.* at 535 ("I find that pursuant to 38 U.S.C. § 713 the charge is

supported by substantial evidence.  After weighing the evidence and considering the nature and

seriousness of your misconduct and the fact that you are an SES employee, I find, in accordance

with 38 U.S.C. § 713, that your conduct warrants removal from federal service.").

        Trinka's grievance of October 14, 2020 again demanded reversal of the proposed

removal.  According to Plaintiff, not only had the agency initially informed Trinka that it was

applying a preponderance of the evidence standard to later reverse course and apply a substantial

evidence standard of proof, but hearsay evidence also could not be used to meet the agency's

burden of proof where Trinka would not be provided a post-termination hearing.  *See id.* at 543.

Though Trinka demanded both a post-termination name-clearing hearing and a post-termination

evidentiary hearing, he also claimed that VA officials such as the Secretary could not serve as an

independent decisionmaker as required for due process.  *See id.* at 539–42.

        James Gfrerer, the Assistant Secretary for Information and Technology, served as the

Grievance Official.  Compl. ¶ 197.  Gfrerer reiterated the agency's positions as to Trinka's other

arguments, denying that the agency had violated Trinka's due process rights or denied him

access to evidence.  Joint App. at 743–45.  Gfrerer's grievance recommendation letter concluded,

"contrary to [Plaintiff]'s assertions to the opposite, that the charge [was] supported by substantial

evidence and removal [was] an appropriate penalty." *Id.* at 749.  In responding to Trinka's grievance arguments, Gfrerer specifically denied that the VA had applied an incorrect standard of evidence. *Id.* at 745–46.  Acknowledging that the Proposal had referred to a preponderance of evidence, the grievance recommendation letter noted that the Proposal nevertheless "specifically state[d] in paragraph 1 that [Plaintiff]'s proposed removal was in accordance with 38 U.S.C. § 713," which "specifically provides the applicable standard of proof as substantial evidence." *Id.* at 745.  Gfrerer also concluded that, even if it was an error for the agency to apply a preponderance of the evidence standard, such an error "[was] harmless, because the agency actually held itself to a higher standard than what is actually necessary, which is the substantial level of evidence." *Id.*; *see also id.* at 746 ("Clearly, if the agency has a preponderance of evidence in favor of its decision, then the substantial level had to have been met. . . . The fact that preponderance of the evidence was mentioned in the proposed removal does not have a substantial and injurious effect or influence on the deciding official's decision.").

Finally, on November 3, 2020, the Secretary sustained the penalty of removal. *Id.* at 751. In his Grievance Decision, the Secretary rejected the contention that the agency had violated Trinka's due process rights, that Trinka was entitled to a post-determination evidentiary hearing and a post-termination name-clearing hearing, and that he had been denied access to evidence and an opportunity to confront witnesses. *See id.* at 752–53.  The Secretary stated that "the Deciding Official found that substantial evidence supported the proposed charge," and that the "Deciding Official also found that even if preponderant evidence were required to support the charge, preponderant evidence supported the charge as well." *Id.* at 750.  Like the Grievance Official, the Secretary rejected Trinka's argument that the agency applied an incorrect standard, responding that 38 U.S.C. § 713 "specifically provides the applicable standard of proof as

substantial evidence" and that the agency "actually held itself to a **higher standard than what is actually necessary**, which is the substantial level of evidence." *Id.* at 754 (emphasis in original). In concluding, the Secretary asserted that "[Plaintiff's] removal was supported by substantial evidence," but also added further that "[i]n fact, the removal was supported by the higher standard of preponderant evidence, if necessary." *Id.* at 758.

On November 3, 2021, Trinka filed the instant Complaint against Defendants to raise various challenges to his removal. First, according to Trinka, his termination violated the Due Process Clause of the Fifth Amendment because Defendants denied him access to certain evidence, an evidentiary hearing, and a meaningful opportunity to be heard; relied improperly on *ex parte* communications; applied an unconstitutional evidentiary standard; and unlawfully applied 38 U.S.C. § 713 retroactively. Compl. ¶¶ 208–62. Second, Trinka alleges that his removal was not in accordance with the law because it violated the Due Process Clause, 38 U.S.C. § 713, and the VA's policies and procedures as set out in the CSEMO Letter. *Id.* ¶¶ 263– 45. Third, Trinka alleges that his termination was arbitrary, capricious, and/or an abuse of discretion. *Id.* ¶¶ 290–307. Fourth, and finally, Trinka alleges that his termination was not supported by substantial evidence. *Id.* ¶¶ 308–19. Among other relief, Trinka requests that the Court set aside his removal from the SES, expunge his removal and any documents memorializing his removal from his official personnel file, retroactively reinstate him to his prior SES appointment and position, award him all back pay and benefits with interest, and award Plaintiff his costs and attorney's fees. *Id.* at 50–51.

Defendants filed their Answer to Trinka's Complaint on January 28, 2022. *See generally* Defs.' Answer, ECF No. 11. In relevant part, Defendants' Answer averred that, although the VA OIG possessed a recording of its interview with Trinka, OAWP never obtained a copy of that

recording; it further denied that a transcript of that interview, or recordings or transcripts of the VA OIG's interviews with Plaintiff's supervisors, were ever made.  *Id.* ¶¶ 117, 224–25; Defs.' Mem. of P. & A. in Supp. Defs.' Mot. Summ. J. ("Defs.' Mem. Supp. Mot. Summ. J.") at 11, ECF No. 14-1 ("[W]hile OIG recorded Trinka's interview, it never transcribed this interview, and never recorded or transcribed his supervisors' interviews.  Except for the recording of Trinka's interview, the transcripts and recordings to which Trinka claims he was entitled do not, as a matter of fact, exist." (internal citation omitted)).  Defendants have filed a motion for summary judgment, *see generally* Defs.' Mot. for Summ. J., ECF No. 14, and Trinka filed a Cross-Motion for Summary Judgment, *see generally* Pl.'s Cross-Mot. for Summ. J. and Opp'n to Defs.' Mot. for Summ. J., ECF No. 15.  Because the parties' cross-motions for summary judgment have been briefed, both motions are now ripe for consideration.

## LEGAL STANDARD

Summary judgment is appropriate only where the summary judgment "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "When, as in this case, both parties file cross-motions for summary judgment, each must carry its own burden under the applicable legal standard." *Ehrman v. United States*, 429 F. Supp. 2d 61, 67 (D.D.C. 2006); *see also Adair v. Solis*, 742 F. Supp. 2d 40, 50 (D.D.C. 2010), *aff'd*, 473 F. App'x 1 (D.C. Cir. 2012).  "[T]he [C]ourt must review each motion separately on its own merits 'to determine whether either of the parties deserves judgment as a matter of law.'"  *Fam. Tr. of Mass., Inc. v. United States*, 892 F. Supp. 2d 149, 154 (D.D.C. 2012) (quoting *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003)), *aff'd*, 722 F.3d 355 (D.C. Cir. 2013).  "[N]either party waives the right to a full trial on the merits by filing its own motion; each side concedes that no material facts are at issue only for the

purposes of its own motion." *Hodes v. U.S. Dep't of Treasury*, 967 F. Supp. 2d 369, 373

(D.D.C. 2013) (quoting *Sherwood v. Wash. Post*, 871 F.2d 1144, 1147 n.4 (D.C. Cir. 1989)). "If

the Court determines that one party is not entitled to summary judgment, it changes tack on the

cross motion and gives the unsuccessful movant all of the favorable factual inferences that it has

just given to the movant's opponent." *Trudel v. SunTrust Bank*, 288 F. Supp. 3d 239, 245

(D.D.C. 2018), *aff'd*, 924 F.3d 1281 (D.C. Cir. 2019). "It is nonetheless still possible for a court

to deny summary judgment to both sides." *Id.* Where the record, when "taken as a whole, could

not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial,

and summary judgment must be granted in favor of the movant." *New-Howard v. Shinseki*, No.

09-cv-5350, 2012 WL 2362546, at *5 (E.D. Pa. June 21, 2012) (citing *Matsushita Elec. Indus.

Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).[1]

## ANALYSIS

Although Defendants assert correctly that the Grievance Official's *ex parte*

communication with the Secretary did not raise due process concerns, Defendants' removal of

Plaintiff from his employment otherwise suffered from various deficiencies that deprived

Plaintiff of procedural due process, necessitating that the Court first remand the matter to the VA

for further consideration consistent with this Opinion.[2] Not only did Defendants apply 38 U.S.C.

---

[1] Because the Court is remanding the matter to the agency, it does not review the
agency's action under the arbitrary and capricious standard set forth in Section 713.
Nevertheless, the Court notes that this case would appear to potentially require the application of
the general standard for cross-motions for summary judgment as well as the deferential arbitrary
and capricious standard for review of agency action. *Cf. New-Howard*, 2012 WL 2362546, at
*5, 11 (setting forth legal standard for a motion for summary judgment, but reviewing MSPB's
decision on non-discrimination claims under arbitrary and capricious standard of Section
7703(c)).

[2] Plaintiff asserts that, given that he had a property interest in his continued employment,
he was entitled to "constitutionally adequate due process before and after his removal from the

§ 713 retroactively and impermissibly, in addition to depriving Plaintiff of access to evidence central to his ability to raise a defense, but Defendants also applied an unconstitutional evidentiary standard by removing Plaintiff from federal service based on a substantial evidence, rather than a preponderance of the evidence, standard.  Given the need to remand these issues to the agency, however, the Court does not address Plaintiff's remaining arguments challenging his removal, which the agency enacted without providing post-termination evidentiary and name-clearing hearings, as more broadly having further violated his due process rights or having been contrary to law or arbitrary and capricious.[3]  Should these issues arise again in the agency's re-consideration of Plaintiff's removal, the parties may then re-file renewed cross-motions for summary judgment that address those arguments.

_____

civil service."  Compl. ¶¶ 211–15.  Given that Defendants do not dispute that Plaintiff had a property interest in his employment that permits him to raise such due process claims, the Court does not analyze this issue further.

[3] The Court also does not address Plaintiff's objection to OAWP having recommended Plaintiff's removal, as opposed to merely limiting its recommendation to whether disciplinary action should be pursued.  *See, e.g.*, Compl. ¶ 279.  Plaintiff points to the CSEMO Letter, which provides that "OAWP will brief the Secretary on 'whether disciplinary action is recommended' and that 'the recommendation will be limited to whether disciplinary action should be pursued.'"  Pl.'s Mem. Supp. Cross-Mot. Summ. J. at 37 (quoting CSEMO Letter § 7.a.iii.3).  In "specifically recommend[ing] Trinka be terminated" and "coupl[ing] this recommendation with a warning to the Proposing Official [that he] would be forced to justify his decision [not to follow OAWP's recommendation] to Congress," Plaintiff contends, "OAWP exceeded its authority" and acted "[i]n violation of the CSEMO Letter."  *Id.*

Plaintiff's argument appears to assume that the CSEMO Letter has the force and effect of law, but does not provide any support for that premise.  In particular, neither party has briefed whether it would first be necessary for the Court to consider whether the CSEMO Letter constitutes a legislative or interpretive rule.  To the extent still necessary, the parties should address this issue in the next round of briefing.

## A. Retroactivity

First, Plaintiff claims that Defendants applied 38 U.S.C. § 713 retroactively and unconstitutionally removed Plaintiff based on conduct that predated the Act.  Compl. ¶¶ 258–62. Defendants respond that not only did Plaintiff not raise this issue during the agency proceedings, but it is also "well-settled that a penalty does not trigger retroactivity concerns merely because it is enhanced based on prior misconduct."  Defs.' Mem. Supp. Mot. Summ. J. at 26–27.

### 1. Waiver of Argument

It is true that "the D.C. Circuit has consistently held that courts 'are bound to adhere to the hard and fast rule of administrative law, rooted in simple fairness, that issues not raised before an agency are waived and will not be considered by a court on review.'" *Tindal v. McHugh*, 945 F. Supp. 2d 111, 129 (D.D.C. 2013) (quoting *Coburn v. McHugh*, 679 F.3d 924, 929 (D.C. Cir. 2012)) (cleaned up); *see also Seafarers Int'l Union of N. Am. v. United States*, 891 F. Supp. 641, 649 (D.D.C. 1995), *aff'd sub nom. Clifford v. Pena*, 77 F.3d 1414 (D.C. Cir. 1996) ("[A] party's objection to agency action may be deemed waived if it did not first raise the objection before the agency.").  But a court determines, "in its discretion, whether the policies served by the exhaustion requirement call for application of the waiver rule under the circumstances of the case." *Seafarers*, 891 F. Supp. at 649 (citing *R.R. Yardmasters of Am. v. Harris*, 721 F.2d 1332, 1338 (D.C. Cir. 1983).  "The principal policy underlying the waiver rule is that 'judicial review might be hindered by the failure of the litigant to allow the agency to make a factual record, exercise its discretion, or apply its expertise.'" *Salt Lake Cmty. Action Program, Inc. v. Shalala*, 11 F.3d 1084, 1087 (D.C. Cir. 1993) (quoting *Yardmasters*, 721 F.2d at 1338).  Given that waiver "is a discretionary issue," the Federal Circuit has "recognized several reasons for considering issues raised for the first time on appeal: (i) the issue involves a pure

question of law; (ii) the proper resolution is beyond any doubt; (iii) the appellant had no opportunity to raise the objection before appeal; (iv) the issue presents significant questions of general impact; or (v) the interest of substantial justice is at stake." *Harrington v. Dep't of Veterans Affs.*, 981 F.3d 1356, 1359 (Fed. Cir. 2020); see also *Seafarers*, 891 F. Supp. at 649 ("Thus, where the issue presented to the Court is, for example, one of statutory interpretation, courts have not applied the waiver rule."). Because the question here of "[w]hether or not a statute applies retroactively is a pure question of law," the Court declines to find that Trinka waived this issue and instead proceeds to consider the merits of the parties' arguments. *Harrington*, 981 F.3d at 1359.

### 2. Retroactive Application of Section 713

As Defendants acknowledge, the Federal Circuit has, in reviewing removals under 38 U.S.C. § 714, set forth guidance barring its application retroactively to conduct and evidence predating its enactment. *See* Defs.' Mem. Supp. Mot. Summ. J. at 30. In *Sayers v. Dep't of Veterans Affs.*, 954 F.3d 1370 (Fed. Cir. 2020), the Federal Circuit considered the appeal of a VA pharmacist removed by the VA under 38 U.S.C. § 714 for failing to correct violations of VA policy in pharmacies under his supervision. *Id.* at 1373. Agreeing with the plaintiff's argument that the MSPB "erred in upholding his removal under § 714 because his alleged misconduct took place before its enactment," and that "the statute's standard of proof and limitations on penalty mitigation detrimentally affect his property right to agency employment," *id.* at 1374, the Federal Circuit explained that, "[i]f [a] statute attaches new legal consequences to events before its enactment (and is otherwise silent about its retroactivity), the statute must not apply to those prior events," *id.* at 1380. Although 38 U.S.C. § 714 was silent on retroactivity, and the Act did not reveal any intent that it apply retroactively, *id.*, the VA had sought to remove the plaintiff

18

from his employment based on misconduct that predated the passage of Section 714, *see id.* at 1372, 1381.  The plaintiff was "entitled to the legal protections in place during the period in which the alleged misconduct occurred," the Federal Circuit observed, "because Congress did not provide a clear statement that it intended to modify retroactively VA employees' rights to those protections."  *Id.* at 1381–82.  The "changes in proof, persuasion, and the availability of discretionary penalty mitigation" that resulted from applying Section 714 "unquestionably diminish[ed] [the plaintiff's] property right in continued employment."  *Id.* at 1381.

The Federal Circuit then confirmed its holding from *Sayers* in *Brenner v. Dep't of Veterans Affs.*, 990 F.3d 1313 (Fed. Cir. 2021).  Rejecting the government's argument that the plaintiff's poor performance had begun prior to, but worsened following, the passage of the Act, the Federal Circuit in *Brenner* noted that the MSPB had "impermissibly considered evidence predating the enactment of the Act, irrespective of whether [the plaintiff's] performance worsened after its enactment."  990 F.3d at 1329; *see also id*. at 1327–28 (highlighting that the proposed removal had cited conduct that occurred prior to the effective date of the Act).  "If the VA [sought] to remove [the plaintiff] for conduct prior to the effective date of the Act," it needed to do so "in accordance with Chapter 75 or Chapter 43 [statutes authorizing federal agencies to demote or remove employees]."  *Id.* at 1329.  To instead use the expedited removal procedures allowed by Section 714, the Federal Circuit stated, the VA "may only consider events that occurred after the effective date of the Act."  *Id.*  Removal for conduct predating the effective date of the Act "'attache[d] new legal consequences' to that conduct and thereby [gave] the Act impermissible retroactive effect."  *Id.* (quoting *Landgraf v. USI Film Prod.*, 511 U.S. 244, 270 (1994)); *see also Harrington*, 981 F.3d at 1357, 1359 ("[In *Sayers*,] we held that § 714 does not apply to proceedings instituted based on conduct occurring before its enactment. . . . Further, [the

plaintiff] 'had a right to the substantive civil service protections from improper or unjustified removal in effect at the time of his alleged misconduct.'" (citation omitted)).

Applying these principles here, the Court concludes that, in considering Plaintiff's conduct predating passage of the Act, the agency applied Section 713 retroactively and in violation of Plaintiff's due process rights.  Cunningham's proposal to remove Plaintiff from his employment describes "reoccurring incidents of poor [judgment] and lack of candor," noting the "numerous occasions" in which Plaintiff "willfully misinformed federal financial, insurance, medical, and security programs on the citizenship status of [his] spouse."  Joint App. at 4–5; *see also Do v. Dep't of Hous. & Urb. Dev.*, 913 F.3d 1089, 1094 (Fed. Cir. 2019) ("It is well-established that, in the civil service system, '[o]nly the charge and specifications set out in the Notice may be used to justify punishment . . . .'").  Though not explicit, the proposal clearly indicates that Cunningham took into consideration not only Plaintiff's alleged statements about what he told his supervisors regarding his wife's citizenship status, but also Plaintiff's alleged statements on his e-QIP and other forms, *see* Joint App. at 4–5—the latter of which all took place before passage of the Act in 2017, *see* Compl. ¶ 260.

Defendants attempt to distinguish the instant case from these Federal Circuit precedents by drawing a comparison to criminal law and arguing that the agency was merely considering Plaintiff's conduct predating the Act "to fashion an appropriate penalty once an otherwise-valid charge had already been sustained."  Defs.' Mem. Supp. Defs.' Mot. Summ. J. at 30.  But the concerns underlying *Sayers* and *Brenner* apply with equal force here.  Although the Proposal couches Trinka's past conduct as "aggravating factors," Joint App. at 4, other parts of the record, such as the Secretary's Grievance Decision, discuss Trinka's conduct predating the Act as the basis of his removal without any such caveating, *see id.* at 751–52.  Defendants argue that the

consideration of the pre-Act conduct constituted merely a factor in deciding the appropriateness

of the penalty, yet the record does not reflect any discussion of whether, for example, an

alternative penalty would have been suitable absent consideration of such preceding conduct.

Thus, *Brenner* provides a more applicable comparison than do the criminal precedents cited by

Defendants, and at no point in *Brenner* did the Federal Circuit allow for the possibility that the

plaintiff's prior conduct could have been considered to enhance the penalty.  *See* 990 F.3d at

1329.  As with Section 714, Section 713 is silent on retroactivity and the Act does not "reveal

any intent" that it should be applied retroactively.  *Sayers*, 954 F.3d at 1380.  "The statute plainly

lacks an 'unambiguous directive' or 'express command' that the statute is to be applied

retroactively."  *Id.* (quoting *Martin v. Hadix*, 527 U.S. 343, 354 (1999)) (cleaned up).  Thus, in

removing Trinka under Section 713 in part based on evidence or events predating the passage of

the Act, the agency retroactively "attach[ed] new legal consequences" to that prior conduct and

stripped Plaintiff of the civil service protections to which he was entitled.  *Landgraf*, 511 U.S. at

270.[4]

---

[4] Opting to draw a comparison to criminal law, Defendants do not analogize to *Douglas v. Veterans Admin.*, 5 M.S.P.R. 280 (1981), *see* Defs.' Mem. Supp. Defs.' Mot. Summ. J. at 26–30, even though Trinka argued during agency proceedings that it should hold weight, *see* Joint App. at 371.  The 12 factors listed in *Douglas* are "non-exhaustive factors that the [MSPB] has determined are 'relevant to [the] appropriateness' of a government employer's decision to discipline an employee."  *Tarquinii v. Del Toro*, No. 21-cv-1567, 2023 WL 2424618, at *3 (D.D.C. Mar. 9, 2023) (quoting *Fogg v. Ashcroft*, 254 F.3d 103, 112 (D.C. Cir. 2001)).  Among these factors is the employee's past disciplinary record, *Douglas*, 5 M.S.P.R. at 305, which an agency may consider "in determining the appropriate penalty for the subject employee," *Tartaglia v. Dep't of Veterans Affs.*, 858 F.3d 1405, 1408 (Fed. Cir. 2017).  Thus, in the context of disciplining federal employees, there does seem to be some precedent for relying upon past conduct for determining an appropriate penalty without raising retroactivity concerns.  However, given the parties' failure to brief the relevance, if any, of *Douglas* to the issue, the Court does not discuss it further.

**B.  Access to Evidence**

Trinka also asserts that due process requires that the agency provide him with the recording of his interview with the VA OIG, during which he purportedly claimed to have told his supervisors about his wife's immigration status.  *See, e.g.*, Compl. ¶¶ 216–31.  Defendants respond that due process does not mandate that Trinka be furnished with the recording, given that the VA OIG's summary of the interview has provided Trinka with sufficient notice for a meaningful opportunity to respond and he has not shown that his lack of access to the recording was prejudicial.  *See* Defs.' Mem. Supp. Mot. Summ. J. at 12–13.

In considering how much process is due to an individual in a given context, courts apply a balancing test that weighs three factors:

> (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Ramirez v. Dep't of Homeland Sec.*, 975 F.3d 1342, 1349–50 (Fed. Cir. 2020) (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).  But courts have also "recognized that one 'relatively immutable' principle of due process is that 'where governmental action seriously injures an individual, and the reasonableness of the action depends on fact findings, the evidence used to prove the Government's case must be disclosed to the individual so that he has an opportunity to show that it is untrue.'"  *Id.* at 1350 (quoting *Greene v. McElroy*, 360 U.S. 474, 496 (1959)).

As another court in this District recognized in *Dodson v. U. S. Capitol Police*, 633 F. Supp. 3d 235 (D.D.C. 2022), "[f]ew decisions of this Court speak to the precise point at which notice becomes constitutionally deficient," and "the Court has not had occasion to decide whether the failure to provide [a certain] type of information will, inevitably, run afoul of due

process." *Id.* at 269.  There, a plaintiff who had been terminated by the U.S. Capitol Police and only had access to the limited information contained in two notices of proposed disciplinary action, argued that he had not received sufficient notice for due process because the agency did not 'provide him with the underlying evidence or any explanation [for the charges against him],' including 'the investigative file, interview statements, and information about how similarly situated employees were treated for the same infraction.'" *Id.* at 268 (citation omitted).  The notices of proposed disciplinary action provided by the agency "only briefly summarized" the investigation and indicated the rules that the plaintiff allegedly violated, without further "indicat[ing] who was interviewed, what credibility judgments (if any) were made, whether any similar cases were considered for purposes of comparison," and whether the investigation substantiated certain of the allegations made against the plaintiff.  *Id.*  Though the court noted that the agency appeared to have relied on evidence that the plaintiff did not have the opportunity to review or rebut, it also highlighted that the notices gave the plaintiff "*some* notice of the basis for the proposed discipline and, in a cursory fashion, set forth 'an explanation of the employer's evidence,'" such that the plaintiff "was able (albeit with limitations) to contest some of the factual predicates for his discipline."  *Id.* at 270 (quoting *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985)) (emphasis in original).  Ultimately, the court concluded that it did not have enough information to grant summary judgment for either party on the plaintiff's due process claim because the record proved insufficient for the "careful and fact-intensive 'balancing of the competing public and private interests involved, as defined by the now familiar *Mathews* factors.'"  *Id.* at 271 (quoting *Propert v. District of Columbia*, 948 F.2d 1327, 1332 (D.C. Cir. 1991)).

But cases from the Federal Circuit and other courts also offer helpful guidance.  In *Ramirez*, the Federal Circuit found that an arbitrator erred in concluding that the plaintiff did not have a due process right to "review and challenge" the records of a psychological assessment that Department of Homeland Security relied upon in removing him from his employment.  975 F.3d at 1352.  In that case, the agency had determined that the plaintiff was not fit for duty based on a doctor's conclusion that the plaintiff should be restricted from any weapons-carrying position—a conclusion that the doctor had reached using the results of the plaintiff's written psychological assessment as interpreted by a third-party clinical psychologist, who had found the plaintiff to be defensive in completing the questionnaire.  *See id.* at 1345.  The plaintiff objected to his removal in part on the ground that he had been denied access to the test records by the agency, but the arbitrator reviewing the plaintiff's removal denied his request for an order mandating that the agency produce those records.  *See id.* at 1346–47.  On review, the Federal Circuit vacated the arbitrator's final award, rejecting the arbitrator's reasoning that the agency did not need to produce the records given that they were not in the agency's custody and the agency did not directly review or consider the records in making its removal decision.  *See id.* at 1350.  The agency's reliance on the records, "together with the foreseeable importance of the evidence at issue to the employee's defense, obligated the [a]gency to make the evidence available for independent examination by the employee."  *Id.* at 1351.  Moreover, the Federal Circuit explained, the agency "[could not] shield the evidence underlying [the] finding [that the plaintiff was defensive and uncooperative in completing his psychological assessment] by simply relaying it through the report of another expert."  *Id.*  Even if the plaintiff had an opportunity to cross-examine the doctor or to administer a new assessment using his own expert, the plaintiff lacked the opportunity to test the methods and standards used for the psychological assessment

or to verify that the third-party clinical psychologist tabulated the results accurately.  *See id.* at 1351–52.  And importantly, "[a]gainst the critical role of the . . . records for protecting against wrongful deprivation, the [a]gency made no showing that it would have been unduly burdensome to obtain and produce those records."  *Id.* at 1350.  Nevertheless, as long as the plaintiff had the opportunity to "independently review the [psychological assessment] results with the assistance of his own expert to test their validity and reliability" during post-removal arbitration, the agency's failure to provide the plaintiff with those records before his termination did not necessarily independently justify vacating the agency's removal decision.  *Id.* at 1353.

The Fifth Circuit similarly concluded in a case involving two air traffic control specialists who were removed for drug use that the agency had violated their due process right to independently test their laboratory samples, which had been destroyed by the laboratory that the agency had used.  *See Banks v. F.A.A.*, 687 F.2d 92, 93 (5th Cir. 1982).  "[T]here [could] be no doubt" that such independent testing was "crucial," the Fifth Circuit stated, given that "[t]he only persuasive evidence of drug usage was the laboratory tests."  *Id.* at 94.  It also disagreed with the government's "casual treatment of the procedural rights of governmental employees," and rejected that the non-availability of the samples did not violate due process because the plaintiffs could cross-examine the testing laboratory's director and challenge the testing methods used.  *Id.* Given that the samples had been destroyed, and plaintiffs were denied the opportunity to submit their laboratory samples for testing, it was not proper for the MSPB to have allowed the introduction of those tests into evidence.  *See id.* at 96.  According to the Fifth Circuit, "[t]he major factor in this determination [was] the importance of the evidence in question."  *Id.* Recognizing that "the presence or absence of cocaine in the samples alone determined the ultimate issue" and "[t]he results of the laboratory tests were the only credible evidence

supporting the [agency's] charges," the Fifth Circuit concluded that "even the most rudimentary standards of due process require here that the claimants have access to the solitary piece of incriminating evidence." *Id.*

Here, "fundamental fairness"—the "touchstone" of due process—leads the Court to find that it was a violation of due process for the VA to deny Trinka access to the recording of his interview with the VA OIG. *United States v. Harrington*, 749 F.3d 825, 828 (9th Cir. 2014) (quoting *Walters v. Nat'l Ass'n of Radiation Survivors*, 473 U.S. 305, 320–21 (1985)). In so concluding, the Court is not stating that an agency must, in every scenario, provide a recording or transcript of an interview with the subject of an agency removal to provide him with sufficient notice. Indeed, "[a] summary of evidence may, in certain circumstance[s], provide sufficient notice to allow a meaningful opportunity to respond." *ASSE Int'l, Inc. v. Kerry*, 803 F.3d 1059, 1076 (9th Cir. 2015). For instance, the agency here has only provided Trinka with the VA OIG's summaries of its interviews with his supervisors—and the Court does not conclude that providing the evidence in this form must necessarily violate due process, particularly in light of the fact that Defendants have averred that no recording or transcript of the interviews even exist. But the agency's refusal to provide Trinka access to the recording of his interview with the VA presents greater due process concerns. Just as "the presence or absence of cocaine in the samples alone determined the ultimate issue" in *Banks*, thus necessitating that the samples be made available to the plaintiffs for testing, *see* 687 F.2d at 96, Trinka's removal here turns solely on the question of what, precisely, he said to the investigators about having disclosed his wife's immigration status to his supervisors. Without the recording, Trinka can neither verify nor challenge the VA OIG's assertion that he made a false or inaccurate statement by claiming to have told his supervisors about his wife's immigration status. He has no means to review or

rebut Defendants' claims, aside from relying on his own memory of what he might have said to the investigators five years ago.

Defendants argue that, because Trinka "offers only bare speculation that a recording of his interview might possibly reveal some helpful information" and "does not claim that the summary memorandum was inaccurate in any way at all," he has not demonstrated that he has been prejudiced by his lack of access to the interview recording. Defs.' Mem. Supp. Mot. Summ. J. at 13. It may indeed be the case that the recording will simply confirm the VA OIG's representations of what Trinka said. But, as illustrated by *Ramirez* and *Banks*, the agency has deprived Trinka of a meaningful opportunity to challenge his removal by withholding the one piece of evidence upon which those allegations turn. The recording provides significant value in potentially verifying or disproving the VA OIG's conclusions, and the agency has not made any attempt at showing that it "would have been unduly burdensome to obtain and produce" the recording. *Ramirez,* 975 F.3d at 1350. And unlike in *Ramirez*, where the plaintiff would have the opportunity to review the records as part of a post-removal arbitration, Plaintiff has not been accorded post-termination administrative procedures here.

In sum, the serious risk that Trinka may have been removed from his employment because of an erroneous summary of his statements, when weighed against the agency's minimal burden in providing him with the recording, counsels in favor of concluding that Trinka was entitled to the recording prior to his termination as a matter of due process. Having concluded that Defendants violated due process by failing to accord Trinka access to the interview recording, the Court does not address Trinka's alternative arguments as to why he should have been given access to that evidence.

## C. Evidentiary Standard

Next, Trinka claims that, in violation of the Fifth Amendment, Defendants applied an

unconstitutional evidentiary standard by removing him from federal service based on a

substantial evidence, rather than a preponderance of the evidence, standard.  Compl. ¶¶ 252–57.

Defendants respond that Trinka waived this argument because he did not raise it in his grievance,

which "argu[ed] only that VA failed to notify him that it was applying the preponderance

standard—not that it had (unlawfully) applied the substantial evidence standard."  Defs.' Reply

Supp. Mot. Summ. J. and Opp'n to Pl.'s Cross-Mot. Summ. J. ("Defs.' Reply") at 21, ECF No.

18.  Moreover, Defendants argue, not only does substantial evidence review not violate the

Constitution, but the Secretary also did in fact find removal "to be proper under either the

preponderance or substantial evidence standards."  Defs.' Mem. Supp. Mot. Summ. J. at 25–26.

Trinka rejects the contention that he received any agency decision applying the preponderance of

evidence standard given that the VA's procedures required application of the substantial

evidence standard and the Secretary's decision was "strictly circumscribed" by agency policy.

Pl.'s Mem. of P. & A. in Supp. Pl.'s Cross-Mot. Summ. J. and Opp'n Defs.' Mot. Summ. J.

("Pl.'s Mem. Supp. Cross-Mot. Summ. J.") at 27–28, ECF No. 15-1.

The Court agrees with Trinka that 38 U.S.C. § 713 requires application of a

preponderance of the evidence burden of proof, rather than a substantial evidence standard.

VA's internal policies state clearly that the agency should apply a substantial evidence standard

during disciplinary processes initiated under 38 U.S.C. § 713.  Though the Secretary stated that

Trinka's removal could be supported by a preponderance of the evidence, and other officials in

earlier stages of the removal process referred inconsistently to such a higher standard, Trinka's

removal was marred by muddled statements by Defendants about the appropriate burden of

proof.  Thus, even if the Court credits the Secretary's statement that the evidence could have satisfied a preponderance of the evidence standard, the inconsistency across officials led to inadequate notice to Trinka of the proper standard, such that he did not have a meaningful opportunity to respond to Defendants' findings.

### 1.  Waiver of Argument

As an initial matter, Defendants contend that Trinka waived his argument because he argued in his grievance only that the agency misinformed him about the applicable standard of proof, rather than objecting to the substantial evidence standard.  *See* Defs.' Reply at 21.  But the circumstances of this case do not call for finding that he waived his objections to the substantial evidence standard.  This issue is, at its current stage, primarily one of statutory interpretation—specifically, whether the VA misinterpreted 38 U.S.C. § 713 by determining that the statute imposes a substantial evidence standard to disciplinary action against SES employees.  *See Seafarers*, 891 F. Supp. at 649.  To the extent that judicial review might have been hindered because the agency's factual record is lacking or its ability to exercise its discretion and apply its expertise has been limited, the fault rests primarily with the agency itself, rather than with Trinka, for the reasons explained further below.  Considering the policies underlying the waiver rule, the Court declines to conclude here that Trinka waived his argument that the agency erred in failing to consider the evidence under a preponderance of the evidence standard.

### 2.  Burden of Proof

Defendants raise two arguments against Trinka's objections to the application of a substantial evidence standard to his removal.  First, Defendants contend, substantial evidence review does not, contrary to Plaintiff's arguments otherwise, violate the Constitution.  Defs.' Mem. Supp. Mot. Summ. J. at 25–26.  Second, according to Defendants, even if the VA should

have applied a preponderance of the evidence standard in removing Trinka, the Secretary in fact found removal "to be proper under either the preponderance or substantial evidence standards." *Id.* at 26. Defendants therefore argue that, given that the Secretary indicated adequate support under a preponderance of the evidence standard, it is immaterial that other officials at earlier stages of the proceedings analyzed the evidence under a substantial evidence standard. *See* Defs.' Reply at 23–24.

Analogous caselaw from the Federal Circuit, however, leads this Court to conclude that Defendants should have reviewed the evidence supporting Trinka's removal under 38 U.S.C. § 713 under a preponderance of the evidence standard rather than a substantial evidence standard. In *Rodriguez v. Department of Veterans Affairs*, 8 F.4th 1290 (Fed. Cir. 2021), the Federal Circuit determined that substantial evidence was not the appropriate standard of proof for the VA to apply in employee disciplinary actions instituted under 38 U.S.C. § 714. *Id.* at 1298. The plaintiff in *Rodriguez*—who had been removed from his employment with the VA for verbally confronting a patient and asking a subordinate to modify her witness statement, *id.* at 1294— posited "that the administrative judge misinterpreted 38 U.S.C. § 714 when he ruled that 'substantial evidence' is the proper standard for the [VA] to apply in determining whether an employee has engaged in misconduct that justifies discipline," *id.* at 1296–97. Not only had the deciding official in the plaintiff's removal applied a substantial evidence standard, but the VA's internal guidance had also stated explicitly that substantial evidence served as the standard of proof for actions taken under Section 714. *See id.* at 1297.

Noting that "[t]he references to 'substantial evidence' in section 714 are all explicitly directed to the standard of review to be applied by administrative judges and the [MSPB]," the Federal Circuit explained that those references "[did] not address the standard of proof to be

applied by the [VA] in making disciplinary determinations, nor does the remaining text of section 714 explicitly address the standard of proof in proceedings before the [VA]." *Id.* at 1298. Rather, because 38 U.S.C. § 714 "provides that an employee may be removed, demoted, or suspended 'if the Secretary determines the performance or misconduct of the covered individual warrants' such action," it "implies that the Secretary must find that it is likely, i.e., more likely than not, that the employee has engaged in the misconduct that justifies the proposed discipline." *Id.* (citation omitted). Accordingly, "the language of section 714 implies that the proper standard is the preponderance of the evidence." *Id.*

Distinguishing between preponderance of evidence as a burden of proof and substantial evidence as a standard of review, the Federal Circuit then observed that "[p]reponderance of the evidence has long been recognized as the traditional burden of proof in civil administrative proceedings." *Id.* at 1299. Applying substantial evidence as the burden of proof requirement "would mean that the deciding official would be required to find that the employee had engaged in the charged misconduct as long as substantial evidence supports the charge, i.e., as long as a reasonable person might accept the evidence as adequate to support that conclusion," but such a standard would conflict "with the requirement that the deciding official, as the delegee of the Secretary, 'determine' that the employee engaged in the misconduct justifying discipline, as required by section 714." *Id.* at 1300. It would also be inconsistent with "the traditional principle that in order for an agency to take disciplinary action against an individual based on predicate facts, it must find those facts; absent clear authority to the contrary, it is not enough for an agency to conclude merely that a reasonable person could make such a finding." *Id.* Acknowledging that "[t]here may be exceptional circumstances in which a lower burden of proof

than preponderance of the evidence could legitimately be applied," the court concluded that Section 714 did "not present such unusual circumstances." *Id.* at 1301.

The Federal Circuit has since reaffirmed in other cases its conclusion from *Rodriguez* that Section 714 requires that a charge be proved by a preponderance of the evidence, as opposed to merely substantial evidence. *See Bryant v. Dep't of Veterans Affs.*, 26 F.4th 1344, 1346–47 (Fed. Cir. 2022) (vacating the MSPB's decision as to the underlying removal where deciding official only found charge proved by substantial evidence and remanding to the MSPB for further proceedings under the correct legal standard); *Bannister v. Dep't of Veterans Affs.*, 26 F.4th 1340, 1342–43 (Fed. Cir. 2022) (same).

The Court considers the Federal Circuit's decisions in the *Rodriguez* line of cases, even if not binding on this Court and not directly on point in addressing 38 U.S.C. § 713, to nevertheless be persuasive here.  Like Section 714, Section 713 refers to a substantial evidence standard only in describing the standard of review to be applied by a reviewing court; nowhere does the statute "contain any language stating explicitly, or even implicitly, that the burden of proof in disciplinary actions should be substantial evidence." *Rodriguez*, 8 F.4th at 1301.  Indeed, Section 713 contains comparable language—stating that the Secretary must "determine[]" that the misconduct warrants disciplinary action under the statutory provision, 38 U.S.C. § 713(a)(1)—comparable to that in Section 714 that the Federal Circuit interpreted to require a preponderance of the evidence standard, *see Rodriguez*, 8 F.4th at 1298.

The D.C. Circuit's caselaw further supports the application of the Federal Circuit's reasoning regarding Section 714 to the Court's interpretation of Section 713.  In *Charlton v. F.T.C.*, 543 F.2d 903 (D.C. Cir. 1976), the D.C. Circuit reviewed an order from the Federal Trade Commission that, based "upon substantial evidence of record," reprimanded the plaintiff

and suspended him from practicing before the Commission for a year. *Id.* at 904–05 (citation

omitted). Remarking on the "Commission's use of a totally incorrect standard of proof in

passing on [the plaintiff's] blameworthiness," *id.* at 906, the court recognized that, "on judicial

review of agency action, administrative findings of fact must be sustained when supported by

substantial evidence on the record considered as a whole," *id.* at 907. Even so, "that rule

implicates only the reviewing court; the yardstick by which the agency itself is to initially

ascertain the facts is something else again." *Id.* "[R]ecall[ing] that in American law a

preponderance of the evidence is rock bottom at the factfinding level of civil litigation," the D.C.

Circuit further commented: "Nowhere in our jurisprudence have we discerned acceptance of a

standard of proof tolerating 'something less than the weight of the evidence.'" *Id.* (citation

omitted). Bearing this guidance and the Federal Circuit's rationale in *Rodriguez* in mind, the

Court concludes that disciplinary action initiated pursuant to 38 U.S.C. § 713 must be justified

under a preponderance of the evidence, rather than by a substantial evidence, standard.

As the parties' briefing highlights, however, there is some question here as to what

burden of proof the VA even applied in removing Trinka from his position. The CSEMO Letter,

which was disseminated to implement Section 713, *see* CSEMO Letter § 1, makes clear that the

standard of proof to be applied by the agency in accordance with agency policy is the substantial

evidence standard, *see id.* § 6.gg. Yet the proposal to remove Trinka stated in part that "the

preponderance of evidence provide[d] and support[ed] a narrative of high-risk behaviors

unbecoming of the position [Plaintiff held]." Joint App. at 5. Meanwhile, the Initial Decision

emphasized the applicability of a substantial evidence standard and did not again mention a

preponderance of the evidence standard. *See, e.g.*, *id.* at 529–30, 534–35. Subsequently, the

grievance recommendation letter reaffirmed that the substantial evidence standard was,

according to the agency, the appropriate standard to be applied under Section 713.  *See, e.g.*, *id.* at 745 ("[Section 713] specifically provides the applicable standard of proof as substantial evidence.").  It did not confirm that the Grievance Official himself concluded that Trinka's removal was supported by a preponderance of the evidence, but argued that the application of a preponderance of the evidence would have been harmless error and its mention in the Proposal "[d]id not have a substantial and injurious effect or influence on the deciding official's decision." *See id.* at 745–46.  As Defendants emphasize, however, the Secretary—who had the last word on the matter, *see* Defs.' Reply at 23—stated both that "[Plaintiff's] removal was supported by substantial evidence," and that "[i]n fact, the removal was supported by the higher standard of preponderant evidence, if necessary," Joint App. at 758.

Presented with this muddled explanation of the standard applied to Trinka's removal, the Court concludes that it is necessary to first remand this matter to the VA for the agency to engage in further consideration consistent with this Opinion.  It is not apparent to the Court that, even if the Court were to accept Defendants' argument that the Secretary in fact ultimately applied the preponderance of the evidence standard, Trinka had proper notice of that standard such that he was accorded a meaningful opportunity to respond as required for procedural due process.  "Procedural due process requires that certain substantive rights—including the property interest established by certain kinds of federal employment—cannot be deprived unless constitutionally adequate procedures are followed."  *Young*, 706 F.3d at 1376.  "[T]he essential requirements of due process . . . [are] notice and an opportunity to respond."  *Id.* (citation omitted).  Accordingly, "an employee is entitled to notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story before termination."  *Id.*

Even if the Secretary could be said to have applied a preponderance of the evidence standard here, Defendants deprived Trinka of a meaningful opportunity to respond at earlier stages of the proceedings, which provided the basis of the Secretary's final decision.  Trinka responded to the proposed removal by arguing that "the charge is not supported by sufficient evidence."  Joint App. at 372.  But faced with the agency's Initial Decision that relied on a substantial evidence, rather than a preponderance of the evidence, standard, Trinka asserted in his grievance that the agency had reversed course and "[m]isinformed" him of the applicable standard of proof.  *Id.* at 543.  He then also put forward his argument that the decision was "unsupported by substantial evidence."  *Id.* at 538, 547; *see also id.* at 543 (arguing that hearsay evidence does not suffice to meet a substantial evidence burden and thus "the Decision is wrong that hearsay evidence can be used in this instance to meet the Agency's burden of proof").  It thus appears to the Court that the agency's lack of consistency between the various stages of this process, and between the process as implemented here and its internal policies, generated some confusion as to what standard, precisely, Trinka should be arguing that the agency failed to meet.  Indeed, as Defendants acknowledge, the Secretary's own final decision makes a mistake about the standard applied at an earlier stage of the proceedings.  *See* Defs.' Mem. Supp. Mot. Summ. J. at 26 n.6.  Thus, even if the Secretary ultimately concluded that Trinka's removal was justified under a preponderance of the evidence standard, the prior proceedings were so deficient in notifying Trinka of the standard being applied by the agency that he was not accorded a meaningful opportunity to respond.  *See Santosky v. Kramer*, 455 U.S. 745, 757 (1982) ("Since the litigants and the factfinder must know at the outset of a given proceeding how the risk of error will be allocated, the standard of proof necessarily must be calibrated in advance."); *cf. Cheney v. Dep't of Just.*, 479 F.3d 1343, 1352–53 (Fed. Cir. 2007) (stating that the agency

provided such "limited information" about the allegations against the plaintiff that he could not

"have made a meaningful response" as required by procedural protections under 5 U.S.C. §

7513).

### D.  Ex Parte Communications

Finally, Trinka also alleges that, because the agency denied his request for a copy of the

Grievance Official's recommendation to the Secretary, the Grievance Official's recommendation

constituted an *ex parte* communication that violated due process.[5]  Compl. ¶¶ 244–51.  As the

Federal Circuit has explained, "[t]he introduction of new and material information by means of

*ex parte* communications to the deciding official undermines the public employee's

constitutional due process guarantee of notice (both of the charges and of the employer's

evidence) and the opportunity to respond."  *Stone v. Fed. Deposit Ins. Corp.*, 179 F.3d 1368,

1376 (Fed. Cir. 1999); *see Vanover v. Hantman*, 77 F. Supp. 2d 91, 105 (D.D.C. 1999) ("Ex

parte communications that introduce new and material information as to the reasons for the

action or the evidence supporting it violate a person's right to due process."), *aff'd*, 38 F. App'x

4 (D.C. Cir. 2002).  Even so, "not every *ex parte* communication is a procedural defect

so substantial and so likely to cause prejudice that it undermines the due process guarantee and

entitles the claimant to an entirely new administrative proceeding."  *Stone*, 179 F.3d at 1376–77.

Instead, "[o]nly e*x parte* communications that introduce new and material information to the

deciding official will violate the due process guarantee of notice."  *Id.* at 1377.  Accordingly, the

---

[5] During the administrative process, Plaintiff argued that, because he was not provided access to the links contained in certain documents, the agency may have engaged in additional *ex parte* communications.  *See, e.g.*, Joint App. at 361.  Because Plaintiff has not included such arguments in his Complaint or cross-motion for summary judgment, the Court does not address them here.

Federal Circuit has identified several factors to consider when determining if new and material information has been introduced by means of *ex parte* contacts:

> (1) whether the *ex parte* communication introduces "cumulative" information or new information; (2) whether the employee knew of the communication and had a chance to respond; and (3) whether the *ex parte* communication resulted in undue pressure upon the deciding official to rule in a particular manner.

*Young*, 706 F.3d at 1376 (citing *Stone*, 179 F.3d at 1377).

Gfrerer's recommendation to the Secretary did not introduce any new and material information, but instead presented the evidence to which Trinka already had the opportunity to respond during prior steps of the removal process and offered the agency's rebuttal to Trinka's arguments. *See Vanover*, 77 F. Supp. 2d at 105 (concluding that a letter between a hearing officer and agency counsel, to which the plaintiff objected as an *ex parte* communication, "passes due process review" because "[t]he letter contained no new information as to the nature of the charges or the evidence, but rather dealt with interpretations of the governing procedures" and did not "suggest[] that [the hearing officer's] objectivity would be undermined"). Plaintiff relies on *Young* for the contention that, because the Secretary appears to have adopted the Grievance Official's recommendation, the recommendation played such a "significant and overwhelming role" in the Secretary's decision that it must thereby be understood to have introduced new and material information. *See* Pl.'s Mem. Supp. Cross-Mot. Summ. J. at 29 (citation omitted). But *Young* is distinguishable than the scenario here, based on the simple fact that the deciding official there not only reviewed the proposal and supporting documents for the removal, but also interviewed witnesses herself, such that the plaintiff "was unaware of the content and substance of the interviews and was unable to respond to anything unearthed during those interviews." 706 F.3d at 1374, 1377. The deciding official then "described the *ex parte* communication as a 'huge' departure from written statements already on the record," and

"admitted that the *ex parte* communications were the most critical statements in her mind."  *Id.* at 1377.  By contrast, Plaintiff has not pointed to anything in the recommendation letter or otherwise shown that Gfrerer did anything more than summarize the investigation and present the agency's responses to Plaintiff's arguments.

Moreover, Plaintiff has not demonstrated that Gferer's letter "were of the type likely to result in undue pressure upon the deciding official to rule in a particular manner."  *Stone*, 179 F.3d at 1377.  Plaintiff concedes that this factor "is less significant when (as here) the deciding official admits that the ex parte communications influenced [his] determination."  Pl.'s Mem. Supp. Cross-Mot. Summ. J. at 29 (quotation marks omitted); *see also Ward v. U.S. Postal Serv.*, 634 F.3d 1274, 1280 n.2 (Fed. Cir. 2011); *Young*, 706 F.3d at 1377.  "Under these circumstances, the materiality of the ex parte communications appears to be self-evident from the [Secretary's] admission," *Ward*, 634 F.3d at 1280 n.2, and the Secretary's decision does not reflect any undue pressure exerted by Gfrerer's recommendation, which the Secretary merely states that he reviewed, *see* Joint App. at 750.  Although Plaintiff asserts that the 2017 Act and internal policies exerted such pressure on the Secretary because he would have needed to justify not following the recommended action, any such pressure, to the extent it existed, did not flow from the fact that the communication was made *ex parte*.  *See* Pl.'s Mem. Supp. Cross-Mot. Summ. J. at 29–30.  Accordingly, this consideration does not move the third factor toward the conclusion that the recommendation letter presented new and material information.  In short, upon considering the content of Gfrerer's recommendation letter, the Court concludes that the communication is not "so substantial and so likely to cause prejudice that no employee can fairly be required to be subjected to a deprivation of property under such circumstances."  *Stone*, 179 F.3d at 1377.

**CONCLUSION**

In accordance with the Court's conclusion that Defendants applied an incorrect evidentiary standard, the Court will remand this case to the VA for further consideration consistent with this Opinion.  *See Rodriguez*, 8 F.4th at 1301 (reversing the administrative judge's ruling on the burden of proof issue and remanding for further proceedings on that issue). But given that the Court has identified a number of additional deficiencies that undermined the agency's removal process, the Court remands the entire matter as a whole, and not just the issue of the evidentiary standard, to the agency.  Following the agency's arriving at a new decision, if necessary, the parties may file renewed cross-motions for summary judgment that may, as appropriate, re-assert the arguments raised in this round of briefing, including those that the Court has yet to address.

For the foregoing reasons, Defendants' Motion for Summary Judgment (ECF No. 14) is **GRANTED IN PART AND DENIED IN PART** without prejudice.  It is **FURTHER ORDERED** that Plaintiff's Cross-Motion for Summary Judgment (ECF No. 15) is **GRANTED IN PART AND DENIED IN PART** without prejudice.  It is **FURTHER ORDERED** that the matter is **REMANDED** to the agency for further consideration consistent with this Opinion, and that Defendants will file a status report with the Court 14 days after the agency renders a decision or within 90 days of this Opinion, whichever is earlier.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  September 21, 2023                                     RUDOLPH CONTRERAS
                                                             United States District Judge