UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JAMES TRINKA,

Plaintiff,

v.

DENIS McDONOUGH,
Secretary of Veterans Affairs, et al.,

Defendants.

Civil Action No. 21-2904 (RC)

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ..... iii

BACKGROUND ..... 1

I. The Secretary's Authority to Remove Senior Executives ..... 1

II. The Department's Procedures for Disciplining Senior Executives ..... 2

III. Trinka's Investigation ..... 3

IV. Trinka's Removal From Federal Service ..... 5

LEGAL STANDARD ..... 7

ARGUMENT ..... 7

I. Trinka's Interview Recording, Retroactivity, and Standard of Proof Arguments No Longer Are Viable in Light of the Amended Removal Decision ..... 8

A. The Amended Removal Decision Has Mooted Trinka's Interview Recording, Retroactivity, and Standard of Proof Arguments ..... 8

B. The Retroactivity, Interview Recording, and Standard of Proof Errors in the Initial Removal Decision Were Harmless ..... 10

II. Trinka Received a Constitutionally Adequate Hearing ..... 10

A. Public Employees, Even Those With Protected Interests In Their Positions, Are Not Entitled to Cross-Examine Witnesses During Removal Proceedings ..... 12

B. No Hearing is Required Because the Interview Recording Eliminates Any Genuine Dispute Over the Dipositive Fact That He Lied During His Interview ..... 15

III. The Office's Recommendation of Trinka's Removal Does Not Warrant Vacatur ..... 18

A. The Letter Lacks Force of Law ..... 18

B. The Letter Does Not Prohibit the Office From Recommending a Specific Disciplinary Action Against a Senior Executive ..... 19

C. Any Error in the Office's Recommendation of Removal Was Harmless ..... 20

IV. Trinka's Removal Was Not Otherwise Arbitrary, Capricious, an Abuse of Discretion, Not in Accordance With a Provision of Law, or Unsupported By Substantial Evidence ..... 20

CONCLUSION ..... 22

## TABLE OF AUTHORITIES

**Cases**

*Air Canada v. Dep't of Transp.*,
148 F.3d 1142 (D.C. Cir. 1998) ........ 10

*Akiachak Native Cmty. v. Dep't of Interior*,
827 F.3d 100 (D.C. Cir. 2016) ........ 9

*Am. Fed. of Gov't Emps., Loc. 2782 v. Fed. Lab. Rels. Auth.*,
803 F.2d 737 (D.C. Cir. 1986) ........ 19

*Anderson v. Dep't of Hous. & Urb. Dev.*,
Civ. A. No. 23-1259 (DLF), 2024 WL 1701641 (D.D.C. Apr. 19, 2024) ........ 9

*Aref v. Lynch*,
833 F.3d 242 (D.C. Cir. 2016) ........ 8

*Ashbourne v. Hansberry*,
703 F. App'x 3 (D.C. Cir. 2017) ........ 14, 16

*Atl. Richfield Co. v. United States*,
774 F.2d 1193 (D.C. Cir. 1985) ........ 15, 17

*Barry v. Barchi*,
443 U.S. 55 (1979) ........ 11

*Beth Rochel Seminary v. Bennett*,
825 F.2d 478 (D.C. Cir. 1987) ........ 15, 17

*Blue Water Balt. v. Pruitt*,
266 F. Supp. 3d 174 (D.D.C. 2017) ........ 9

*Board of Regents v. Roth*,
408 U.S. 564 (1972) ........ 10

*Christensen v. Harris Cnty.*,
529 U.S. 576 (2000) ........ 18

*Citizens Exposing Truth About Casinos v. Kempthorne*,
492 F.3d 460 (D.C. Cir. 2007) ........ 18

*Cleveland Bd. of Educ. v. Loudermill*,
470 U.S. 532 (1985) ........ 10

**Cases (cont.)**

*Codd v. Velger*,
429 U.S. 624 (1977) ........ 15, 17

*Combat Vets. for Cong. Pol. Action Comm. v. FEC*,
795 F.3d 151 (D.C. Cir. 2015) ........ 10, 20

*Conservation Force, Inc. v. Jewell*,
733 F.3d 1200 (D.C. Cir. 2013) ........ 8

*Elcon Enters., Inc. v. Wash. Metro. Area Trans. Auth.*,
977 F.2d 1472 (D.C. Cir. 1992) ........ 20

*Freeport-McMoRan Oil & Gas Co. v. Fed. Energy Regul. Comm'n*,
962 F.2d 45 (D.C. Cir. 1992) ........ 9

*Gen. Elec. Co. v. Johnson*,
362 F. Supp. 2d 327 (D.D.C. 2005) ........ 11

*Harper v. Blumenthal*,
478 F. Supp. 176 (D.D.C. 1979) ........ 20

*Harrison v. Bowen*,
815 F.2d 1505 (D.C. Cir. 1987) ........ 12, 13

*Holy Land Foundation for Relief & Development v. Ashcroft*,
333 F.3d 156 (D.C. Cir. 2003) ........ 15

*In re Sealed Case*,
77 F.4th 815 (D.C. Cir. 2023) ........ 8

*In re Sibley*,
564 F.3d 1335 (D.C. Cir. 2009) ........ 15

*Kugel v. United States*,
947 F.2d 1504 (D.C. Cir. 1991) ........ 18

*Lea v. District of Columbia*,
No. 23-7108, 2024 WL 3042182 (D.C. Cir. June 18, 2024) ........ 16, 17

*Lemon v. Geren*,
514 F.3d 1312 (D.C. Cir. 2008) ........ 8

*Londoner v. Denver*,
210 U.S. 373 (1908) ........ 11

**Cases (cont.)**


*Mathews v. Eldridge*,
424 U.S. 319 (1976) .......... 11

*McCormick v. District of Columbia*,
752 F.3d 980 (D.C. Cir. 2014) .......... 13, 14

*Memphis Light, Gas & Water Div. v. Craft*,
436 U.S. 1 (1978) .......... 11, 12

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
463 U.S. 29 (1983) .......... 21

*Myersville Citizens for a Rural Cmty., Inc. v. Fed. Energy Regul. Comm'n*,
783 F.3d 1301 (D.C. Cir. 2015) .......... 10

*Nat'l Ass'n Home Builders v. Defs. of Wildlife*,
551 U.S. 644 (2007) .......... 19

*Nat. Res. Def. Council, Inc. v. Nuclear Regul. Comm'n*,
680 F.2d 810 (D.C. Cir. 1982) .......... 8, 10

*Orion Rsrvs. Ltd. P'ship v. Salazar*,
553 F.3d 697 (D.C. Cir. 2009) .......... 15, 17

*PDK Labs. Inc. v. DEA*,
362 F.3d 786 (D.C. Cir. 2004) .......... 10, 20

*Privacy Info. Ctr. v. IRS*,
910 F.3d 1232 (D.C. Cir. 2018) .......... 18

*Salesian Soc'y, Province of St. Philip the Apostle, Inc. v. Mayorkas*,
Civ. A. No. 18-0477 (EGS), 2021 WL 4306150 (D.D.C. Sept. 22, 2021) .......... 9

*Schmidt v. United States*,
749 F.3d 1064 (D.C. Cir. 2014) .......... 8

*Schweiker v. Hansen*,
450 U.S. 785 (1981) .......... 18

*Scott v. Harris*,
550 U.S. 372 (2007) .......... 17

*Sturdza v. United Arab Emirates*,
562 F.3d 1186 (D.C. Cir. 2009) .......... 15

**Cases (cont.)**

*Telemundo de Puerto Rico, Inc. v. Nat'l Lab. Rels. Bd.*,
113 F.3d 270 (1st Cir. 1997) .......... 20

*Theodore Roosevelt Conservation P'ship v. Salazar*,
661 F.3d 66 (D.C. Cir. 2011) .......... 8, 9

*Transp. Div. v. Fed. R.R. Admin.*,
10 F.4th 869 (D.C. Cir. 2021) .......... 14

*Troutbrook Co. v. Nat'l Lab. Rels. Bd.*,
107 F.4th 994 (D.C. Cir. 2024) .......... 21

*Twist v. Meese*,
854 F.2d 1421 (D.C. Cir. 1988) .......... 13

*UDC Chairs Chapter, Am. Ass'n of Univ. Profs. v. Bd. of Trs. of Univ. of D.C.*,
56 F.3d 1469 (D.C. Cir. 1995) .......... 11

*Unification Church v. Att'y Gen.*,
581 F.2d 870 (D.C. Cir. 1978) .......... 11

**Statutes**

5 U.S.C. § 706 .......... 13

5 U.S.C. § 3131 .......... 1

38 U.S.C. § 303 .......... 20

38 U.S.C. § 713 .......... 2

38 U.S.C. § 713(b) .......... 11

38 U.S.C. § 713(b)(6)(A) .......... 20

38 U.S.C. § 713(b)(6)(B) .......... 18, 19

Civil Service Reform Act of 1978,
Pub. L. No. 95-454, 92 Stat. 1111 .......... 1

D.C. Code § 1-606.03 .......... 13

D.C. Code § 1-606.03(d) .......... 13

D.C. Code § 1-606.03(c) .......... 13, 14

**Statutes (cont.)**

D.C. Code § 1-606.04(d) ........................................................................................ 13

Veterans Access, Choice, and Accountability Act of 2014,
Pub. L. No. 113-146, 128 Stat. 1754 ........................................................................ 1, 2

Department of Veterans Affairs Accountability and Whistleblower Protection Act of 2017,
Pub. L. No. 115-41, 131 Stat. 862 ........................................................................ 2

**Rules**

D.C. Cir. R. 36(c)(2)(A)-(C) ........................................................................................ 14

Fed. R. Civ. P. 56(a) ........................................................................................ 7

**Other Authorities**

Henry J. Friendly,
*"Some Kind of Hearing"*, 123 U. Pa. L. Rev. 1267 (1975) .................................................... 11

Sidath Viranga Panangala et al.,
Cong. Rsch. Serv., R43704, *Veterans Access, Choice, and Accountability Act of 2014 (H.R. 3230; P.L. 113-146)* (2015) ........................................................................ 1

Defendants Denis McDonough, Secretary of Veterans Affairs, and Department of Veterans Affairs ("Department"), by and through undersigned counsel, respectfully file this memorandum of points and authorities in support of their motion for summary judgment.

## BACKGROUND

### I. <u>The Secretary's Authority to Remove Senior Executives</u>

Congress passed the Civil Service Reform Act of 1978 ("CSRA") "to provide the people of the United States with a competent, honest, and productive Federal work force reflective of the Nation's diversity, and to improve the quality of public service." Pub. L. No. 95-454, § 3, 92 Stat. 1111, 1112. As part of these efforts, Congress established the Senior Executive Service, which is responsible for ensuring "that the executive management of the [federal government] is responsive to the needs, policies, and goals of the Nation and otherwise is of the highest quality." 5 U.S.C. § 3131. Senior Executives are subject to removal for cause, which includes "misconduct, neglect of duty, malfeasance, or failure to accept a directed reassignment or to accompany a position in a transfer of function." *Id.* § 7543(a). A Senior Executive whose removal is proposed generally is entitled to thirty days' notice, seven days to respond with supporting evidence, representation by an attorney or other representative, and a written decision with specific reasons for the action. *Id.* §§ 7542, 7543(b). A Senior Executive generally may appeal adverse decisions to the Merit System Protection Board ("MSPB") and receive a post-termination hearing. *Id.* §§ 7701(a)(1), 7543(c).

In response to reports of delay in patient care and manipulation of wait times at Department health facilities, Congress enacted the Veterans Access, Choice, and Accountability Act of 2014, Pub. L. No. 113-146, 128 Stat. 1754; *see also* Sidath Viranga Panangala et al., Cong. Rsch. Serv., R43704, *Veterans Access, Choice, and Accountability Act of 2014 (H.R. 3230; P.L. 113-146)*, at 1 (2015). A provision of the statute codified at 38 U.S.C. § 713 endowed the Secretary with "new

authority to remove [S]enior [E]xecutives from the [D]epartment" for performance or misconduct. *Panangala et al., supra*, at 20; Pub. L. No. 113-146, § 707, 128 Stat. at 1798.

On June 23, 2017, to improve "accountability" at the Department, the President signed the Department of Veterans Affairs Accountability and Whistleblower Protection Act of 2017, Pub. L. No. 115-41, 131 Stat. 862, into law. Press Release, *President Donald J. Trump Signs S. 1094 Into Law*, White House (June 23, 2017), https://trumpwhitehouse.archives.gov/briefings-statements/president-donald-j-trump-signs-s-1094-law/. This statute amended Section 713 to create a new procedure to govern discipline of Senior Executives. *See* 38 U.S.C. § 713. When the Department proposes to discipline a Senior Executive, it must give the Senior Executive "advance notice of the action and a file containing all evidence in support of the proposed action." *Id.* § 713(b)(1)(A). The Department must issue a decision on the proposal within fifteen days. *Id.* § 713(b)(2)(A), (C). A Senior Executive may grieve the decision in accordance with an internal grievance process. *Id.* § 713(b)(1)(C), (3). If a Senior Executive does not grieve the decision, then he may obtain judicial review of the removal decision based on the administrative record. *Id.* § 713(b)(5)-(6). If the Senior Executive grieves the decision, then he may obtain judicial review of the grievance decision. *Id.*

## II. <u>The Department's Procedures for Disciplining Senior Executives</u>

On July 7, 2017, the Secretary issued Corporate Senior Executive Management Office Letter No. 006-17-1, *Senior Executive Accountability and Grievance Procedures* ("Letter"), which creates a framework to govern discipline of Senior Executives under Section 713. Administrative Record ("AR") 584. Under this framework, Department entities refer all allegations of misconduct, poor performance, or retaliation involving Senior Executives to the Office of Accountability and Whistleblower Protection ("Office"), which then "shall review and, if necessary, investigate any allegation or other evidence of [m]isconduct, poor performance, or [r]etaliation, using appropriate processes such as administrative investigation boards or fact-finding inquiries." AR 589-90.

Once an investigation is complete, the Department determines whether to pursue discipline against the Senior Executive. *Id.* If the Department pursues discipline, it designates an official (the "Proposing Official") to review the investigation and determine whether to propose reprimanding, suspending, demoting, or removing the Senior Executive, or else whether no action is warranted. AR 588, 590. The Proposing Official gives the Senior Executive a copy of the proposal. AR 591. "Unless the circumstances of the investigation make it impossible, unreasonable, or unnecessary to do so, a Senior Executive who is the subject of an investigation or review will be given an opportunity to respond to and provide evidence relating to the matters under investigation. Any statement or evidence provided by the Senior Executive will be included in the investigative file, and if relevant or used in support of a subsequent proposed action, the evidence file." AR 590. A Senior Executive then has seven business days to submit a response to an individual whom the Secretary has delegated authority to decide what disciplinary action to impose (the "Deciding Official"). AR 585, 591. Within fifteen business days of the proposal's issuance, the Deciding Official must issue a decision concerning the disciplinary action to impose. AR 592.

Within seven business days of receiving the decision, the Senior Executive may grieve it to an individual whom the Secretary has specially designated to examine the grievance and make a recommendation on it (the "Grievance Official"). AR 586, 592-93. The Secretary then reviews the Grievance Official's recommendation and the record and issues a final decision. AR 593.

## III. Trinka's Investigation

Trinka joined the Department as a Senior Executive on January 15, 2012. AR 763. He later became Chief Talent Management Officer within the Office of Information and Technology. *Id.*

Trinka married Piyaporn Trinka, who does not have lawful immigration status in the United States, in December 2013. AR 763, 949. On May 22, 2014, the Department of Homeland Security informed the Department's Office of Inspector General that it was investigating Trinka concerning

his wife's immigration status. AR 763. On December 7, 2018, an employee from the Office of the Inspector General asked Trinka's supervisor, John Oswalt, to escort Trinka to an interview with an investigator. AR 952. While walking to the interview, Trinka told Oswalt for the first time that his wife is in the country illegally. *Id.* Once Trinka arrived at the interview site, he requested that an attorney be present, and the interview was postponed so his attorney could be present. AR 966.

On December 21, 2018, Trinka sat for an interview with an investigator from the Office of Inspector General. AR 303, 320. The investigator recorded the interview, and later summarized the interview in a memorandum. *Id.* During Trinka's interview, the following exchange occurred:

> Q. Have you disclosed your wife's undocumented status to anyone in your chain of command since this investigation was initiated?
>
> A. Yes.
>
> Q. And when did you do that?
>
> A. I've had, if I recall correctly, I've had three supervisors during my time in the Office of Information and Technology and all three, I disclosed that information to.
>
> Q. Okay, and how did you do that?
>
> A. Verbally.
>
> Q. Verbally, but nothing in writing?
>
> A. No.
>
> Q. Well, what was their response to that?
>
> A. They just, they didn't really have any kind of a reaction at all, other than the fact that sort of like thankful for me saying anything but it didn't, you know—I got the impression, I don't know what's in their head, but I got the impression that it didn't matter to them, and, you know, they, they said, they said words to that effect. I can't recall the exact words they said, but they said words to the effect that it didn't matter to them.

AR 991 (Recording at 20:33-21:46).

In May 2019, the investigator interviewed three of Trinka's supervisors—Oswalt, Richard Chandler, and Martha Orr. AR 952-56. Chandler and Orr both stated that Trinka never told them about his wife's immigration status, while Oswalt stated that Trinka never told him about his wife's immigration until December 7, 2018, the date that Oswalt escorted Trinka to the interview. *Id.*

## IV. Trinka's Removal From Federal Service

In January 2020, the Office of Inspector General referred a report of investigation of Trinka to the Office for "further action as appropriate." AR 1. On July 16, 2020, the Office recommended Trinka's removal from federal service for making "false or inaccurate statements or provid[ing] false or inaccurate information to the government on at least two occasions." *Id.* The Department designated a Proposing Official but did not provide him transcripts or recordings of the interviews of Trinka or his supervisors—only memoranda summarizing them. AR 006, 744-45.

On September 11, 2020, the Proposing Official proposed Trinka's removal based on one charge of "Conduct Unbecoming a Federal Supervisor." AR 3. The Department notified Trinka of the proposal that day and provided him an evidence file, which included summaries of his and his supervisors' interviews, but not transcripts or recordings of those interviews. AR 3, 355, 380. The evidence file included all evidence that was available to the Proposing Official in proposing Trinka's removal. AR 744-45. On September 22, 2020, Trinka responded to the proposal, denying the charge against him and raising various challenges to his removal. AR 353-79. On October 2, 2020, the Deciding Official issued the decision to remove Trinka. AR 529. In making his decision, he did not consider transcripts or recordings of Trinka's and his supervisors' interviews, only the summary memoranda. AR 529, 744-45. Trinka's removal became effective immediately. AR 529.

On October 14, 2020, Trinka grieved his removal to the Secretary. AR 538. The Grievance Official reviewed Trinka's grievance and recommended that the Secretary sustain his removal. AR 742. The Secretary sustained Trinka's removal, finding that Trinka's removal was warranted by a

preponderance of the evidence. AR 750-51. In making this decision, the Secretary did not consider transcripts or recordings of Trinka's or his supervisors' interviews. AR 750.

Trinka filed this action on November 3, 2021, *see* Compl., ECF No. 1, and the parties cross-moved for summary judgment. ECF Nos. 14, 15. On September 21, 2023, this Court granted each party summary judgment in part and denied each party summary judgment in part. *See* Order, ECF No. 23. The Court concluded that Defendants had violated the Fifth Amendment's Due Process Clause and 38 U.S.C. § 713 in three ways: by (1) removing Trinka based on conduct predating the current version of the statute's enactment, (2) withholding the audio recording of his interview, and (3) applying the substantial evidence standard rather than the preponderance of the evidence standard, or at least failing to put Trinka on notice as to which standard it was applying. *See* Mem. Op. at 17-36, ECF No. 24. At the same time, the Court concluded that Defendants had not acted unlawfully in providing Trinka memoranda summarizing his supervisors' interviews rather than transcripts or recordings of the interviews, "particularly in light of the fact that Defendants have averred that no recording or transcript of the interviews even exist." *Id.* at 26. Finally, the Court rejected Trinka's argument that the Grievance Official's recommendation to the Secretary was an unlawful ex parte communication. *Id.* at 36-38. The Court did not reach Trinka's argument that the Office violated the Letter in recommending his removal, although it noted that while Trinka "appears to assume that the [ ] Letter has the force and effect of law," he "does not provide any support for that premise." *Id.* at 16 n.3. The Court then remanded the matter to the Department for further consideration in light of its ruling but did not vacate Trinka's removal. *Id.* at 39; Order.

On February 29, 2024, the Department amended its proposal to remove Trinka. AR 763. In issuing the amended proposal, the Proposing Official applied (and made clear he was applying) the preponderance of the evidence standard and did not consider any conduct predating the current

version of 38 U.S.C. § 713's enactment. AR 763-69. The Department provided Trinka the evidence on which the Proposing Official had relied, including a recording of his interview. AR 769, 991. Trinka submitted a written response to the amended proposal. AR 992-93. The Deciding Official sustained Trinka's removal, applying the preponderance of the evidence standard and without considering any conduct prior to the current version of 38 U.S.C. § 713's enactment. AR 994-99.

## LEGAL STANDARD

Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## ARGUMENT

Trinka's interview recording, retroactivity, and standard of proof arguments no longer are viable in light of the amended removal decision, which superseded the original decision, contains none of these errors, and makes clear that such errors did not affect the original decision's outcome. Trinka received a constitutionally adequate hearing, as due process principles do not entitle public employees, even those with protected interests in their positions, to cross-examine witnesses at any point during termination proceedings. Further, Trinka is not entitled to a hearing because the interview recording eliminates any genuine dispute over the dispositive fact that he lied during his interview. Trinka argues that the Office violated the Letter in recommending his removal, but the Letter lacks force of law and does not prohibit the Office from recommending specific disciplinary action against a Senior Executive, and regardless, Trinka fails to show that the recommendation affected the decision's outcome. Finally, the Department's determination that Trinka lied during the interview and decision to remove him was not otherwise arbitrary, capricious, an abuse of discretion, not in accordance with a provision of law, or unsupported by substantial evidence. For all these reasons, this Court should grant Defendants summary judgment.

## I. Trinka's Interview Recording, Retroactivity, and Standard of Proof Arguments No Longer Are Viable in Light of the Amended Removal Decision

The amended removal decision has mooted Trinka's interview recording, retroactivity, and standard of proof arguments, as it superseded the initial removal decision and contains none of the errors that this Court identified in that decision. The amended removal decision also makes clear that these errors in the initial removal decision did not affect the outcome, and thus were harmless.

### A. The Amended Removal Decision Has Mooted Trinka's Interview Recording, Retroactivity, and Standard of Proof Arguments

"Federal courts lack jurisdiction to decide moot cases because their constitutional authority extends only to actual cases or controversies." *Conservation Force, Inc. v. Jewell*, 733 F.3d 1200, 1204 (D.C. Cir. 2013). Accordingly, a federal court "lose[s] jurisdiction if a pending case becomes moot." *In re Sealed Case*, 77 F.4th 815, 826 (D.C. Cir. 2023). Although the D.C. Circuit has formulated the mootness inquiry in several different ways, they boil down to essentially the same point—a case is moot "when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome," *Schmidt v. United States*, 749 F.3d 1064, 1068 (D.C. Cir. 2014) (quotation marks omitted), "intervening events make it impossible to grant the prevailing party effective relief," *Lemon v. Geren*, 514 F.3d 1312, 1315 (D.C. Cir. 2008), or a decision "will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future," *Aref v. Lynch*, 833 F.3d 242, 250 (D.C. Cir. 2016) (quotation marks omitted).

"Corrective action by an agency is one type of subsequent development that can moot a previously justiciable issue." *Nat. Res. Def. Council, Inc. v. Nuclear Regul. Comm'n*, 680 F.2d 810, 814 (D.C. Cir. 1982). This occurs when an agency action "no longer exists" because it was "superseded . . . in its entirety." *Theodore Roosevelt Conservation P'ship v. Salazar*, 661 F.3d 66, 79 (D.C. Cir. 2011). After all, a court cannot "invalidate" an action that has "disappeared into the regulatory netherworld." *Id.* (quotation marks omitted). Thus, "when one agency action supersedes

another, prospective challenges to the superseded agency action generally become moot. In those circumstances, vacating the old agency action will not deliver the plaintiff any relief. The new agency action, not the old one, is what injures the plaintiff going forward." *Anderson v. Dep't of Hous. & Urb. Dev.*, Civ. A. No. 23-1259 (DLF), 2024 WL 1701641, at *6 (D.D.C. Apr. 19, 2024) (citation omitted); *see also Freeport-McMoRan Oil & Gas Co. v. Fed. Energy Regul. Comm'n*, 962 F.2d 45, 46 (D.C. Cir. 1992) ("case is plainly moot" if any "challenged orders" are "superseded by a subsequent [agency] order"); *Akiachak Native Cmty. v. Dep't of Interior*, 827 F.3d 100, 113 (D.C. Cir. 2016) (a "perfectly uncontroversial and well-settled principle of law" is that "when an agency has rescinded and replaced a challenged [action], litigation over the legality of the original [action] becomes moot"); *Salesian Soc'y, Province of St. Philip the Apostle, Inc. v. Mayorkas*, Civ. A. No. 18-0477 (EGS), 2021 WL 4306150, at *13 (D.D.C. Sept. 22, 2021) ("an agency may take voluntary corrective action after a plaintiff has initiated litigation," which "may render a plaintiff's claims moot" (quotation marks omitted); *Blue Water Balt. v. Pruitt*, 266 F. Supp. 3d 174, 180 (D.D.C. 2017) (agency action "superseded [prior action], thus mooting the plaintiffs' challenge").

The amended removal decision has mooted Trinka's interview recording, retroactivity, and standard of proof arguments. The Proposing Official applied (and made clear that he was applying) the preponderance of the evidence standard, AR 764, and after he issued the amended removal proposal, the Department provided Trinka a recording of his interview, AR 769, 991. In issuing the amended removal decision, meanwhile, the Deciding Official applied the preponderance of the evidence standard and considered only conduct postdating the current version of 38 U.S.C. § 713's enactment. AR 763-69. Because the amended removal decision "superseded" the initial removal decision "in its entirety," *Theodore Roosevelt*, 661 F.3d at 79, and has "[c]orrect[ed]" the errors in the initial decision, Trinka's interview recording, retroactivity, and standard of proof arguments—

as well as any other arguments that are specific to the initial removal decision—are now "moot," *Nat. Res. Def. Council*, 680 F.2d at 814.

### B. The Retroactivity, Interview Recording, and Standard of Proof Errors in the Initial Removal Decision Were Harmless

"Due process challenges to agency action are subject to the general prejudicial error rule." *Myersville Citizens for a Rural Cmty., Inc. v. Fed. Energy Regul. Comm'n*, 783 F.3d 1301, 1327 (D.C. Cir. 2015). "That rule requires the party asserting error to demonstrate prejudice from the error." *Combat Vets. for Cong. Pol. Action Comm. v. FEC*, 795 F.3d 151, 157 (D.C. Cir. 2015) (quotation marks omitted). "The party claiming injury bears the burden of demonstrating harm; the agency need not prove its absence." *Id.* An error is harmless "[i]f the agency's mistake did not affect the outcome." *PDK Labs. Inc. v. DEA*, 362 F.3d 786, 799 (D.C. Cir. 2004).

The amended removal decision makes clear that the interview recording, retroactivity, and standard of proof errors in the initial removal decision did not affect the outcome, as it reached the same decision without any of these errors. As such, these errors were harmless. *See Myersville*, 783 F.2d at 1327 (error is harmless if nothing would have been "done differently"); *Air Canada v. Dep't of Transp.*, 148 F.3d 1142, 1157 (D.C. Cir. 1998) ("While [the petitioners] contend that they were prejudiced when the Department placed the burden of proof on them because they tailored their case to their initial understanding of the burden, they fail to explain how they were harmed").

## II. <u>Trinka Received a Constitutionally Adequate Hearing</u>

Due process "requires 'some kind of a hearing' prior to the discharge of an employee who has a constitutionally protected property interest in his employment." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (quoting *Board of Regents v. Roth*, 408 U.S. 564, 569-70 (1972)). "A hearing in its very essence, demands that he who is entitled to it shall have the right to support his allegations by argument however brief, and, if need be, by proof, however informal."

*Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 16 n.17 (1978) (citing *Londoner v. Denver*, 210 U.S. 373, 386 (1908)). Thus, "[a]lthough the term 'hearing' has an oral connotation," there is "no reason why, in some circumstances, a 'hearing' may not be had on written materials only." Henry J. Friendly, *"Some Kind of Hearing"*, 123 U. Pa. L. Rev. 1267, 1270 (1975); *accord Black's Law Dictionary* (12th ed. 2024) (defining the term "hearing" as a "formal, scheduled setting in which an affected person presents arguments to a decision-maker" such as "[a]n agency proceeding in which a person's rights and duties are decided after notice and an opportunity to be heard"); *Webster's Third New International Dictionary* 1044 (1993) (an "opportunity to be heard or to present one's side of a case"). After all, due process "not a technical conception with a fixed content unrelated to time, place and circumstances," but "is flexible and calls for such procedural protections as the particular situation demands." *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976).

Trinka received a constitutionally adequate hearing. Trinka had numerous opportunities to present his arguments and supporting evidence throughout the removal process, including through a written response to the removal proposal, an administrative grievance of the removal decision, and then judicial review of his removal. AR 586, 592-93, 992-93; 38 U.S.C. § 713(b); *see also UDC Chairs Chapter, Am. Ass'n of Univ. Profs. v. Bd. of Trs. of Univ. of D.C.*, 56 F.3d 1469, 1473 (D.C. Cir. 1995) (no due process violation where the "grievant [could] present his side of the story at several stages of the process" (cleaned up)); *Barry v. Barchi*, 443 U.S. 55, 65 (1979) (no due process violation where plaintiff "was given more than one opportunity to present his side of the story"); *Unification Church v. Att'y Gen.*, 581 F.2d 870, 878 (D.C. Cir. 1978) ("the requirements of due process were met in these circumstances by the availability of judicial review under the Administrative Procedure Act" ("APA")); *Gen. Elec. Co. v. Johnson*, 362 F. Supp. 2d 327, 341 (D.D.C. 2005) ("judicial review under the APA satisfie[d] the requirements of due process").

Indeed, because the Department amended the removal proposal after this Court's remand, Trinka had each of these opportunities twice. AR 353-79, 538. Under these circumstances, he received all that a constitutionally-adequate hearing requires—"the right to support his allegations by argument however brief, and, if need be, by proof, however informal." *Craft*, 436 U.S. at 16 n.17.

Due process did not entitle Trinka to a trial-like hearing in which he could cross-examine witnesses. As the D.C. Circuit repeatedly has held, due process principles do not entitle public employees—even those with protected interests in their positions—to cross-examine witnesses at any point during their termination proceedings, either before or after their removals from federal service. And in the alternative, due process principles do not entitle Trinka to a hearing because thanks to the recording, the dispositive fact that he lied during his interview no longer is in dispute.

### A. Public Employees, Even Those With Protected Interests In Their Positions, Are Not Entitled to Cross-Examine Witnesses During Removal Proceedings

In a long line of decisions, the D.C. Circuit repeatedly has held that public employees, even those with protected interests in their positions, are not entitled to cross-examine witnesses at any point during their termination proceedings, whether before or after they are removed from federal service. In *Harrison v. Bowen*, 815 F.2d 1505, 1519 (D.C. Cir. 1987) (cleaned up), for example, the employee "received 30 days written notice of her proposed removal, an opportunity to respond orally and in writing, which she exercised by counsel, and a further opportunity personally to present her case to a higher official, who concurred in her supervisor's decision." These procedures are similar to those that Trinka received. The employee in *Harrison* also "received the extensive procedural protections provided by the" CSRA, which for employees in her position did not entail a right to cross-examination, as well as "the right to seek relief through the [Office of Special Counsel]," which did not entail a right to cross-examination, either. *Id.*; *see also id.* at 1510-12, n.12 (detailing the procedural protections available to the employee, which did not include a right

to cross-examination). Under these circumstances, the D.C. Circuit held that "even assuming *arguendo* that [the employee] had a property interest in her position, her removal from that position did not violate the requirements of due process" because she had "received at least as much process as she was due as a matter of constitutional right." *Id. Harrison* thus squarely forecloses any argument that due process principles entitled Trinka to cross-examine witnesses.

In *Twist v. Meese*, 854 F.2d 1421, 1428 (D.C. Cir. 1988), meanwhile, the employee had "received advance notice, an on-the-record hearing, and an opportunity to submit a written answer to the charges against him." This "on-the-record hearing," moreover, did not provide the employee an opportunity to cross-examine witnesses—only to "respond to [the] charges against him and submit a written statement," *Id.* at 1423. Once again, these procedures are similar to the procedures that Trinka received. Under those circumstances, the D.C. Circuit concluded that the employee "received all the process to which he would be due." *Id.* 1428. *Twist*, like *Harrison*, thus forecloses Trinka's argument that due process principles entitled him to a chance to cross-examine witnesses.

Next, in *McCormick v. District of Columbia*, 752 F.3d 980, 989 (D.C. Cir. 2014), a public employee asserted that "his termination implicate[d] his liberty interest," but he "could have pursued an action for review, including one for severance, in Superior Court (or in the district court once the case was removed)." *Id.* (citing, as relevant here, D.C. Code § 1-606.03). Such an action for review would have entailed only "a review of the record," and thus, seemingly would not have provided an opportunity to cross-examine witnesses. D.C. Code § 1-606.03(d);[1] *compare* 5 U.S.C.

[1] It is unclear whether the employee could have availed himself of additional administrative procedures available under D.C. Code §§ 1-606.03 and 1-606.04. *See* D.C. Code § 1-606.03(c) (cross-referencing D.C. Code § 1-606.04). But even if so, those procedures do not provide a right to cross-examine witnesses, either. In a challenge to "a proposed removal action," an agency "may provide for an adversary hearing and the confrontation of witnesses," but seemingly is not required to do so. D.C. Code § 1-606.04(d). And an employee "may appeal . . . an adverse action for cause

§ 706 ("In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party"); *Transp. Div. v. Fed. R.R. Admin.*, 10 F.4th 869, 878 (D.C. Cir. 2021) ("As a general rule, the APA limits judicial review to the administrative record" (cleaned up)). The D.C. Circuit reasoned that "[t]he basic requirement" for a constitutionally adequate hearing "is minimal: it must provide notice of the charges and an opportunity to refute them effectively." *McCormick*, 752 F.3d at 990. Under the present circumstances, the D.C. Circuit concluded, "even assuming [the employee suffered] a deprivation of his liberty interest, such deprivation was not without due process." *Id.* Once again, this holding forecloses the notion that due process principles entitled Trinka to cross-examine witnesses at any point during or after his termination proceedings.

Indeed, the notion that due process principles do not entitle public employees to cross-examine witnesses in termination proceedings is so well-settled that the D.C. Circuit applies it in unpublished decisions. *See* D.C. Cir. R. 36(c)(2)(A)-(C), (G), (e)(1) (a decision can be unpublished if it "does not satisfy any of the criteria for publication," such as that "it is a case of first impression or the first case to present the issue in this court," "it alters, modifies, or significantly clarifies a rule of law previously announced by the court," "it calls attention to an existing rule of law that appears to have been generally overlooked," or it otherwise "warrants publication in light of other factors that give it general public interest"). In *Ashbourne v. Hansberry*, 703 F. App'x 3, 5 (D.C. Cir. 2017) (cleaned up), for example, the D.C. Circuit "assume[d] arguendo that [the employee's] termination . . . infringe[d] her protected liberty interest," but concluded that "[b]y allowing [her] to challenge the termination decision through affidavits with the help of counsel," the agency had "afforded [her a constitutionally] adequate process." If this conclusion was so self-evident to the

that results in removal," but such an appeal involves only review on the "record," i.e., limited to the administrative record, and so does not involve cross-examination either. *Id.* § 1-606.03(a)-(c).

D.C. Circuit that it did not even require a published decision, then due process principles likewise did not entitle Trinka to an opportunity to cross-examine witnesses.

Moreover, the D.C. Circuit repeatedly has rejected any right to cross-examine witnesses in circumstances of comparable or greater gravity to the termination of employment. In *In re Sibley*, 564 F.3d 1335, 1341 (D.C. Cir. 2009), the D.C. Circuit held that an attorney "has no confrontation right in an attorney discipline case." In *Sturdza v. United Arab Emirates*, 562 F.3d 1186, 1188 (D.C. Cir. 2009), the D.C. Circuit held that "a full adversary hearing" is not required before finding a litigant "incompetent," divesting her of "personal control over the litigation," and "appointing a guardian ad litem." And in *Holy Land Foundation for Relief & Development v. Ashcroft*, 333 F.3d 156, 164 (D.C. Cir. 2003), the D.C. Circuit held that an organization "has no right to confront and cross-examine witnesses" prior to being designated as a Specially Designated Global Terrorist. It would be difficult to argue that losing one's job constitutes a greater deprivation than being deemed a Specially Designated Global Terrorist, declared incompetent, or disbarred. If due process principles do not entitle one to cross-examine witnesses even under these weighty circumstances, then they did not entitle Trinka to cross-examine witnesses before or after his termination, either.

### B. No Hearing is Required Because the Interview Recording Eliminates Any Genuine Dispute Over the Dipositive Fact That He Lied During His Interview

"[I]f the hearing mandated by the Due Process Clause is to serve any useful purpose, there must be some factual dispute between an employer and a discharged employee." *Codd v. Velger*, 429 U.S. 624, 627 (1977). Thus, "[n]o constitutional right to a hearing arises where the dispositive facts are not in dispute." *Beth Rochel Seminary v. Bennett*, 825 F.2d 478, 482 (D.C. Cir. 1987); *see also Orion Rsrvs. Ltd. P'ship v. Salazar*, 553 F.3d 697, 708 (D.C. Cir. 2009) ("Without a factual conflict, [agency] had no reason to grant [ ] an evidentiary hearing"); *Atl. Richfield Co. v. United States*, 774 F.2d 1193, 1203 (D.C. Cir. 1985) ("In the absence of a factual dispute . . . the

due process clause does not require an opportunity to be heard"); *Lea v. District of Columbia*, No. 23-7108, 2024 WL 3042182, at *3 (D.C. Cir. June 18, 2024) (due process did not entitle terminated employee to cross-examine witness when there was "obviously no basis to deny that the infractions expressly noted in her revocation letter took place" (cleaned up)).

Trinka is not entitled to a hearing because the interview recording eliminates any genuine dispute over the dispositive fact that he lied during his interview. Until Trinka received a recording of his interview, he repeatedly asserted over the course of this lawsuit that the recording would vindicate him. Trinka asserted that "he did not make a false statement to the [ ] investigator as alleged." Compl. ¶ 230. He insisted that the recording "would exonerate him," and that it was "exculpatory." Pl.'s Mem. at 14-15. At a minimum, he said, the recording may "provide mitigating details that might have justified a less severe sanction." *Id.* at 16. For example, he argued, it might show that he had "further explained the circumstances of the disclosures," such as by showing he "had prefaced the statement with a qualifying phrase such as 'I think,' or 'I believe.'" *Id.* at 15.

In fact, the recording only makes clear beyond doubt that Trinka lied during his interview, unambiguously undermining his previous assertions about what it would show. Trinka told the investigator point-blank that he "had three supervisors . . . and all three, I disclosed that information [i.e., his wife's immigration status] to." AR 991 (Recording at 20:53-21:06). While he used the qualifying language "if I recall correctly," he did so only in reference to the number of supervisors that he had had "during [his] time in the Office of Information and Technology." *Id.* (Recording at 20:52-21:01). In contrast, he did not use any qualifying language in asserting that he had told his three supervisors about his wife's immigration status. *Id.* (Recording at 20:53-21:06). But two of Trinka's supervisors later told the investigator that Trinka had never informed them of his wife's

legal status, while a third supervisor said that Trinka told him about his wife's legal status for the first time only as he was escorting Trinka to an Inspector General interview. AR 952-56.

The recording further shows that Trinka's statement was no innocent one-time slip up. To the contrary, over the course of an exchange lasting a minute and thirteen seconds, Trinka repeated his false statement several times and elaborated on it with a degree of detail that cannot plausibly be chalked up to a mere lapse in memory. Trinka asserted that he had informed all three of his supervisors about his wife's legal status "verbally" but not "in writing" and that "they didn't really have any kind of a reaction at all, other than the fact that sort of like thankful for me saying anything . . . they said words to the effect that it didn't matter to them." AR 991 (Recording at 21:10-21:47). None of that was true, as the statements from Trinka's supervisors show—rather, Trinka simply made these assertions up from whole cloth. AR 952-56. As this Court observed previously, "[i]t may indeed be the case that the recording will simply confirm [Defendants'] representations of what Trinka said." Mem. Op. at 27. That is exactly what has ended up happening here.

Because the recording eliminates any genuine dispute over the dispositive fact that Trinka lied during his interview, due process does not entitle him to a hearing. *See Codd*, 429 U.S. at 627; *Bennett*, 825 F.2d at 482; *Salazar*, 553 F.3d at 708; *Atl. Richfield*, 774 F.2d at 1203; *Lea*, 2024 WL 3042182, at *3. The Supreme Court has held that if a recording "capturing the events in question . . . quite clearly contradicts" one party's "version of the story," then there is no "genuine dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 378, 380-81 (2007) (quotation marks omitted). *Scott* involved a video rather than audio recording, *id.*, but that distinction is immaterial. Trinka lied with his words, which the recording captured in full. Viewing "the facts in the light depicted by the" recording, Trinka's insistence that he did not lie during his interview is "visible fiction" that is "is blatantly contradicted by the record," *id.* at 380-81, and thus does not require a hearing.

## III. The Office's Recommendation of Trinka's Removal Does Not Warrant Vacatur

Trinka's argument that the Office violated the Letter in recommending his removal fails for three separate reasons. First, the Letter lacks force of law, so even if the Office violated it in recommending Trinka's removal, that cannot merit vacatur. Second, the Office's recommendation did not violate the Letter, as the Letter does not prohibit the Office from recommending specific disciplinary action against a Senior Executive. Third, any error in the Office's recommendation of Trinka's removal was harmless, as Trinka fails to show that the recommendation prejudiced him.

### A. The Letter Lacks Force of Law

A reviewing court may set aside a disciplinary action that is found to be "obtained without procedures required by a provision of law having been followed." 38 U.S.C. § 713(b)(6)(B). But the Letter lacks force of law, so even assuming that the Office violated it in recommending that Trinka be removed, that would not warrant vacatur of Trinka's removal.

Agency "policy statements, agency manuals, and enforcement guidelines . . . lack the force of law." *Christensen v. Harris Cnty.*, 529 U.S. 576, 587 (2000). The Letter is analogous to a policy statement, manual, or enforcement guideline. It guides the Department in undertaking disciplinary action under 38 U.S.C. § 713, but does not purport to bind the agency as a matter of law. The Letter "is not a regulation," but only a document "for internal use by [agency] employees." *Schweiker v. Hansen*, 450 U.S. 785, 789 (1981); *see also Elec. Privacy Info. Ctr. v. IRS*, 910 F.3d 1232, 1244-45 (D.C. Cir. 2018) (an internal agency document that was "directory rather than mandatory" and "not codified regulations . . . clearly [did] not have the force and effect of law"); *Kugel v. United States*, 947 F.2d 1504, 1507 (D.C. Cir. 1991) ("intra-office manuals, unlike official regulations, have no legal force"). Nor has the Letter undergone "publication in the federal register," which sometimes "reflects a deliberating agency's self-binding choice." *Citizens Exposing Truth About*

*Casinos v. Kempthorne*, 492 F.3d 460, 467 (D.C. Cir. 2007). Because the Letter is not "a provision of law," 38 U.S.C. § 713(b)(6)(B), any noncompliance with it cannot require vacatur.

**B. The Letter Does Not Prohibit the Office From Recommending a Specific Disciplinary Action Against a Senior Executive**

Regardless, the Office's recommendation of Trinka's removal did not violate the Letter, as the Letter did not prohibit the Office from recommending a specific disciplinary action. The Letter provides that the Office "will refer matters involving actual or possible violations of criminal laws to the [Inspector General]," and that "[u]pon conclusion of the [Office's] investigation, [the Office] and [Office of General Counsel] shall brief the Secretary or his or her designee on the results of the investigation and whether disciplinary action is recommended. The recommendation will be limited to whether disciplinary action should be pursued." AR 589-90. Reading these provisions together, the final sentence most naturally is read not to preclude the Office from recommending a specific disciplinary action for a Senior Executive, but merely to prohibit it from recommending a criminal investigation or prosecution, as that call is reserved to the Inspector General alone. *Cf. Nat'l Ass'n Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 19 (2007) ("It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." (cleaned up)); *Am. Fed. of Gov't Emps., Loc. 2782 v. Fed. Lab. Rels. Auth.*, 803 F.2d 737, 740 (D.C. Cir. 1986) ("It is a generally accepted precept of interpretation that statutes or regulations are to be read as a whole, with each part or section construed in connection with every other part or section." (cleaned up)).

This construction also comports with common sense. There is no sound reason to permit the Office to recommend that some sort of disciplinary action be taken against a Senior Executive but not a specific disciplinary action to take. Any suggestion that the Proposing Official, Deciding Official, or Secretary somehow would feel pressured to accept the Office's recommendation rather

than exercise their own judgment is speculative and implausible. "There is simply no support for the proposition that [these] superior decisionmakers" would feel themselves "duty-bound to follow the [Office's] recommendations." *Elcon Enters., Inc. v. Wash. Metro. Area Trans. Auth.*, 977 F.2d 1472, 1480 (D.C. Cir. 1992); *see also Telemundo de Puerto Rico, Inc. v. Nat'l Lab. Rels. Bd.*, 113 F.3d 270, 275 (1st Cir. 1997) (even if lower employees "have submitted recommendations, their superiors have exercised independent judgment in deciding whether (and if so, what) disciplinary action is warranted."); *cf. Harper v. Blumenthal*, 478 F. Supp. 176, 184 (D.D.C. 1979) ("Although he recommends to his superiors that certain actions be taken, it is the superiors who review the matter and make the decision on whether or not to take disciplinary action."). That is especially so as to the Secretary himself, who "is the head of the Department and . . . . responsible for the proper execution and administration of all laws administered by the Department and for the control, direction, and management of the Department." 38 U.S.C. § 303.

### C. Any Error in the Office's Recommendation of Removal Was Harmless

Finally, even if the Office's recommendation of Trinka's removal was unlawful, any such error is harmless. *See supra* § I.B (agency actions are subject to harmless error review). Trinka fails to show that the Office's recommendation of his removal "prejudice[d]" him, *Combat Vets.*, 795 F.3d at 157, i.e., that any such error "affect[ed] the outcome," *PDK Labs.*, 362 F.3d at 799. And as explained above, any suggestion that the Office's recommendation exerted undue influence on the Proposing Official, Deciding Official, or Secretary) is implausible. *See supra* § III.B.

## IV. Trinka's Removal Was Not Otherwise Arbitrary, Capricious, an Abuse of Discretion, Not in Accordance With a Provision of Law, or Unsupported By Substantial Evidence

Last, Trinka's removal was not otherwise "arbitrary, capricious, an abuse of discretion, [ ] otherwise not in accordance with a provision of law," or "unsupported by substantial evidence." 38 U.S.C. § 713(b)(6)(A), (C). Agency action is not arbitrary or capricious so long as the agency

"examine[s] the relevant data and articulate[s] a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (quotation marks omitted). "Substantial evidence requires enough relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Troutbrook Co. v. Nat'l Lab. Rels. Bd.*, 107 F.4th 994, 1000 (D.C. Cir. 2024) (quotation marks omitted). As the Proposing Official explained, Trinka asserted during his interview that he had told three supervisors about his wife's legal status, but two of the supervisors stated that Trinka had never done so while a third stated that he did so only while being escorted to the interview site. AR 952-56. Based on these facts, the Deciding Official sustained Trinka's charge of Conduct Unbecoming a Federal Supervisor and found that removal was the proper penalty. AR 994. This explanation reflects "a rational connection between the facts found and the choice made," *State Farm*, 463 U.S. at 43, and rests on "enough relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Troutbrook*, 107 F.4th at 1000.

* * *

## CONCLUSION

This Court should grant Defendants summary judgment.

Dated: September 3, 2024
Washington, DC

Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

By: *_/s/ Bradley G. Silverman_*
BRADLEY G. SILVERMAN
D.C. Bar #1531664
Assistant United States Attorney
601 D Street NW
Washington, DC 20530
(202) 252-2575
bradley.silverman@usdoj.gov

*Attorneys for the United States of America*