UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JAMES TRINKA,<br><br>Plaintiff,<br><br>v.<br><br>DENIS McDONOUGH,<br>Secretary of Veterans Affairs, et al.,<br><br>Defendants. | Civil Action No. 21-2904 (RC) |

**DEFENDANTS' OPPOSITION TO MOTION TO SET ASIDE AGENCY ACTION**

**TABLE OF CONTENTS**


TABLE OF AUTHORITIES ..... iii

BACKGROUND ..... 1

I. The Secretary's Authority to Remove Senior Executives ..... 1

II. The Department's Procedures for Disciplining Senior Executives ..... 2

III. Trinka's Investigation ..... 3

IV. Trinka's Removal From Federal Service ..... 5

ARGUMENT ..... 7

I. Defendants Had Authority to Amend the Removal Action, so the Amended Removal Action Moots Trinka's Recording, Retroactivity, and Standard of Proof Arguments ..... 9

A. 38 U.S.C. § 713 Authorized Defendants to Amend the Removal Action ..... 12

B. Defendants Had Inherent Authority to Reconsider the Removal Action ..... 19

1. Defendants Reconsidered the Removal Action in a Timely Fashion ..... 19

2. Congress Provided No Mechanism Capable of Correcting Mistaken Actions ..... 22

3. Congress Had Not Otherwise Limited Defendants' Inherent Authority to Reconsider Actions Under 38 U.S.C. § 713 ..... 24

II. The Errors in the Initial Removal Decision Were Harmless ..... 25

A. Constitutional Violations Are Amenable to Harmless Error Analysis ..... 26

B. Three Provisions Require Trinka to Satisfy the Harmless Error Rule ..... 27

1. 38 U.S.C. § 713 Itself Contains an Implicit Harmless Error Rule ..... 28

2. Rule 61's Harmless Error Rule Applies Here ..... 34

3. 28 U.S.C. § 2111's Harmless Error Rule Applies Here ..... 34

III. An Agency May Cure a Defective Removal Without Reinstating the Employee First ..... 35

A. *Vitarelli* is Inapposite ..... 37

B. *Greene* is Inapposite ..... 42

C. *Esparraguera* is Inapposite ..... 42

IV. The Amended Removal Action Comports With the Appointments Clause ..... 43

V. Trinka Has Forfeited His Remaining Arguments ..... 44

CONCLUSION ..... 45

## TABLE OF AUTHORITIES

### Cases

*Air Canada v. Dep't of Transp.*,
148 F.3d 1142 (D.C. Cir. 1998) ........................................ 26, 31

*Akiachak Native Cmty. v. Dep't of Int.*,
827 F.3d 100 (D.C. Cir. 2016) ........................................ 10

*Al Bahlul v. United States*,
967 F.3d 858 (D.C. Cir. 2020) ........................................ 44

*Albertson v. FCC*,
182 F.2d 397 (D.C. Cir. 1950) ........................................ 23

*Al-Tamimi v. Adelson*,
916 F.3d 1 (D.C. Cir. 2019) ........................................ 45

*Allied-Signal, Inc. v. Nuclear Regul. Comm'n*,
988 F.2d 146 (D.C. Cir. 1993) ........................................ 36

*Am. Bioscience, Inc. v. Thompson*,
269 F.3d 1077 (D.C. Cir. 2001) ........................................ 35

*Anderson v. Dep't of Hous. & Urb. Dev.*,
Civ. A. No. 23-1259 (DLF), 2024 WL 1701641 (D.D.C. Apr. 19, 2024) ........................ 10

*Andrew G. Nelson, Inc. v. United States*,
355 U.S. 554 (1958) ........................................ 27

*Aref v. Lynch*,
833 F.3d 242 (D.C. Cir. 2016) ........................................ 9

*Arizona v. Fulminante*,
499 U.S. 279 (1991) ........................................ 26

*AT&T Corp. v. FCC*,
970 F.3d 344 (D.C. Cir. 2020) ........................................ 44

*Black v. Interstate Com. Comm'n*,
762 F.2d 106 (D.C. Cir. 1985) ........................................ 35

*Blue Water Balt. v. Pruitt*,
266 F. Supp. 3d 174 (D.D.C. 2017) ........................................ 10

**Cases (cont.)**

*Bookman v. United States*,
453 F.2d 1263 (Ct. Cl. 1972)....21

*Bragdon v. Abbott*,
524 U.S. 624 (1998)....30

*Brandenburg v. Dep't of State*,
No. 23-5295, 2024 WL 2152116 (D.C. Cir. May 14, 2024)....35

*Brenner v. Dep't of Vets. Affs.*,
990 F.3d 1313 (Fed. Cir. 2021)....33

*Brooks v. Marbury*,
24 U.S. (11 Wheat.) 78 (1826)....40

*Buford v. United States*,
532 U.S. 59 (2001)....40

*Cboe Futures Exch. v. SEC*,
77 F.4th 971 (D.C. Cir. 2023)....36

*Certain Former CSA Emps. v. Dep't of Health & Hum. Servs.*,
762 F.2d 978 (Fed. Cir. 1985)....41

*Chapman v. California*,
386 U.S. 18 (1967)....31

*Chi. & N. W. Ry. Co. v. United States*,
311 F. Supp. 860 (N.D. Ill. 1970)....24

*Combat Vets. for Cong. Pol. Action Comm. v. FEC*,
795 F.3d 151 (D.C. Cir. 2015)....25

*ConocoPhillips Co. v. Environmental Protection Agency*,
612 F.3d 822 (5th Cir. 2010)....20, 21

*Conservation Force, Inc. v. Jewell*,
733 F.3d 1200 (D.C. Cir. 2013)....9

*Coy v. Dep't of Treasury*,
43 F.4th 1334 (Fed. Cir. 2022)....41

*Culbertson v. Berryhill*,
586 U.S. 53 (2019)....36

**Cases (cont.)**

*Curtin v. Off. of Pers. Mgmt.*,
846 F.2d 1373 (Fed. Cir. 1988)....29

*Davis v. Mich. Dep't of Treasury*,
489 U.S. 803 (1989)....14, 17, 18

*Dean v. United States*,
556 U.S. 568 (2009)....12

*DiBacco v. Dep't of the Army*,
926 F.3d 827 (D.C. Cir. 2019)....15

*Dolcin Corp. v. FTC*,
219 F.2d 742 (D.C. Cir. 1954)....34

*Elkem Metals Co. v. United States*,
26 C.I.T. 234 (2002)....20, 21

*Esparraguera v. Dep't of Army*,
101 F.4th 28 (D.C. Cir. 2024)....37, 43

*Fogerty v. Fantasy, Inc.*,
510 U.S. 517 (1994)....28, 36

*Food Mktg. Inst. v. Argus Leader Media*,
588 U.S. 427 (2019)....30

*Freeport-McMoRan Oil & Gas Co. v. Fed. Energy Regul. Comm'n*,
962 F.2d 45 (D.C. Cir. 1992)....10

*Friedman v. Fed. Aviation Admin.*,
841 F.3d 537 (D.C. Cir. 2016)....22

*Gabbs Expl. Co. v. Udall*,
315 F.2d 37 (D.C. Cir. 1963)....20, 21

*Gerlich v. Dep't of Just.*,
711 F.3d 161 (D.C. Cir. 2013)....45

*Gov't of Manitoba v. Bernhardt*,
923 F.3d 173 (D.C. Cir. 2019)....44

*Graves v. Dep't of Air Force*,
494 F. App'x 68 (Fed. Cir. 2012)....30

**Cases (cont.)**

*Greene v. United States*,
376 U.S. 149 (1964) ........................................ 37, 42

*Gulf Restoration Network v. Haaland*,
47 F.4th 795 (D.C. Cir. 2022) ........................................ 35

*Hairston v. Dep't of Vets. Affs.*,
761 F. App'x 1005 (Fed. Cir. 2019) ........................................ 33

*Hall v. District of Columbia*,
867 F.3d 138 (D.C. Cir. 2017) ........................................ 44

*Hameetman v. City of Chi.*,
776 F.2d 636 (7th Cir. 1985) ........................................ 34

*Handy v. Postal Serv.*,
754 F.2d 335 (Fed. Cir. 1985) ........................................ 32

*Harmon v. Thornburgh*,
878 F.2d 484 (D.C. Cir. 1989) ........................................ 34, 35

*Helman v. Dep't of Vets. Affs.*,
856 F.3d 920 (Fed. Cir. 2017) ........................................ 18, 32, 37

*Helsinn Healthcare S. A. v. Teva Pharms. United States, Inc.*,
586 U.S. 123 (2019) ........................................ 30

*Hoover v. Dep't of Navy*,
957 F.2d 861 (Fed. Cir. 1992) ........................................ 29

*Howard Sober, Inc. v. Interstate Com.,*
*Comm'n*, 628 F.2d 36 (D.C. Cir. 1980) ........................................ 23

*HTH Corp. v. Nat'l Lab. Rels. Bd.*,
823 F.3d 668 (D.C. Cir. 2016) ........................................ 19

*Imapizza, LLC v. At Pizza Ltd.*,
334 F. Supp. 3d 95 (D.D.C. 2018) ........................................ 11, 34

*In re Grand Jury Investigation*,
916 F.3d 1047 (D.C. Cir. 2019) ........................................ 44

*In re North*,
50 F.3d 42 (D.C. Cir. 1995) ........................................ 30

**Cases (cont.)**

*In re Sealed Case*,
77 F.4th 815 (D.C. Cir. 2023)....................9

*Ireland v. Shultz*,
829 F.2d 1189 (D.C. Cir. 1987)....................41

*Ivy Sports Med., LLC v. Burwell*,
767 F.3d 81 (D.C. Cir. 2014)....................19, 20, 22, 23 ,24

*Jama v. Immigr. & Customs Enf't*,
543 U.S. 335 (2005)....................28, 36

*Jennings v. Rodriguez*,
583 U.S. 281 (2018)....................28, 36

*Lamar, Archer & Cofrin, Llp v. Appling*,
584 U.S. 709 (2018)....................30

*Landry v. FDIC*,
204 F.3d 1125 (D.C. Cir. 2000)....................26

*Laurel Baye Healthcare of Lake Lanier, Inc. v. Nat'l Lab. Rels. Bd.*,
564 F.3d 469 (D.C. Cir. 2009)....................27

*Lemon v. Geren*,
514 F.3d 1312 (D.C. Cir. 2008)....................9, 20, 21

*Liuksila v. Turner*,
351 F. Supp. 3d 166 (D.D.C. 2018)....................27

*Loper Bright Enters. v. Raimondo*,
144 S. Ct. 2244 (2024)....................31

*Lozano v. Alvarez*,
572 U.S. 1 (2014)....................31

*Mazaleski v. Treusdell*,
562 F.2d 701 (D.C. Cir. 1977)....................20, 21, 22, 23, 36, 41

*McDonough Power Equip., Inc. v. Greenwood*,
464 U.S. 548 (1984)....................28

*Myersville Citizens for a Rural Cmty., Inc. v. Fed. Energy Regul. Comm'n*,
783 F.3d 1301 (D.C. Cir. 2015)....................25, 26, 27

**Cases (cont.)**

*Miss. ex rel. Hood v. Au Optronics Corp.*,
571 U.S. 161 (2014) ....................35

*Mogil v. Dep't of Vets. Affs.*,
769 F. App'x 920 (Fed. Cir. 2019)....................33

*Moncrief v. Dep't of Int.*,
339 F. Supp. 3d 1 (D.D.C. 2018) ....................20

*Mouat v. Off. of Pers. Mgmt.*,
128 F. App'x 128 (Fed. Cir. 2005)....................30

*Murthy v. Missouri*,
144 S. Ct. 1972 (2024) ....................45

*N.Y. Gaslight Club, Inc. v. Carey*,
447 U.S. 54 (1980)....................34

*N.Y. State Dep't of Soc. Servs. v. Dublino*,
413 U.S. 405 (1973) ....................33

*Nat. Res. Def. Council, Inc. v. Nuclear Regul. Comm'n*,
680 F.2d 810 (D.C. Cir. 1982)....................9, 11

*Nat. Res. Def. Council v. Regan*,
67 F.4th 397 (D.C. Cir. 2023)....................19, 24

*Nat'l Ass'n of Trailer Owners, Inc. v. Day*,
299 F.2d 137 (D.C. Cir. 1962)....................23

*Norton v. S. Utah Wilderness,*
*All.*, 542 U.S. 55 (2004)....................31

*Parker Drilling Mgmt. Servs., Ltd. v. Newton*,
587 U.S. 601 (2019) ....................31

*PDK Labs. Inc. v. DEA*,
362 F.3d 786 (D.C. Cir. 2004)....................25

*Ramos v. Garland*,
77 F.4th 932 (D.C. Cir. 2023)....................44

*Rempfer v. Sharfstein*,
583 F.3d 860 (D.C. Cir. 2009)....................35

**Cases (cont.)**

*Robinson v. Shell Oil Co.*,
519 U.S. 337 (1997) ........................................................................12, 13, 14, 15, 16

*Rodriguez v. Dep't of Vets. Affs.*,
8 F.4th 1290 (Fed. Cir. 2021) ........................................................................33, 44

*Rudisill v. McDonough*,
601 U.S. 294 (2024) ........................................................................28, 36

*Salesian Soc'y, Province of St. Philip the Apostle, Inc. v. Mayorkas*,
Civ. A. No. 18-0477 (EGS), 2021 WL 4306150 (D.D.C. Sept. 22, 2021)..............................10

*Save Jobs USA v. Dep't of Homeland Sec.*,
111 F.4th 76 (D.C. Cir. 2024)........................................................................41

*Sayers v. Dep't of Vets. Affs.*,
954 F.3d 1370 (Fed. Cir. 2020)........................................................................33

*Schmidt v. United States*,
749 F.3d 1064 (D.C. Cir. 2014) ........................................................................9

*Scotts Valley Band of Pomo Indians v. Dep't of Int.*,
633 F. Supp. 3d 132 (D.D.C. 2022) ........................................................................27

*Shaffer v. George Wash. Univ.*,
27 F.4th 754 (D.C. Cir. 2022)........................................................................23

*Shinseki v. Sanders*,
556 U.S. 396 (2009) ........................................................................28, 34

*Shook v. D.C. Fin. Resp. & Mgmt. Assistance Auth.*,
132 F.3d 775 (D.C. Cir. 1998)........................................................................44

*Sistek v. Dep't of Vets. Affs.*,
955 F.3d 948 (Fed. Cir. 2020) ........................................................................29

*Snyder v. Dep't of Navy*,
854 F.3d 1366 (Fed. Cir. 2017)........................................................................29

*Stewart v. Dutra*,
543 U.S. 481 (2005) ........................................................................31

*Theodore Roosevelt Conservation P'ship v. Salazar*,
661 F.3d 66 (D.C. Cir. 2011)........................................................................9, 11

**Cases (cont.)**

*United States v. All Assets Held at Credit Suisse (Guernsey) Ltd.*,
45 F.4th 426 (D.C. Cir. 2022)....................11

*United States v. Barnes*,
295 F.3d 1354 (D.C. Cir. 2002)....................33

*United States v. Civ. Aeronautics Bd.*,
510 F.2d 769 (D.C. Cir. 1975)....................23

*United States v. Fausto*,
484 U.S. 439 (1988)....................30

*United States v. Gonzales*,
520 U.S. 1 (1997)....................35

*United States v. Gordon*,
829 F.2d 119 (D.C. Cir. 1987)....................26

*United States v. Hasting*,
461 U.S. 499 (1983)....................26

*United States v. Smith*,
524 F.2d 1288 (D.C. Cir. 1975)....................26

*Vitarelli v. Seaton*,
359 U.S. 535 (1959).................... 37, 38, 39, 40

*Voyageur Outward Bound Sch. v. United States*,
Civ. A. No. 18-1463 (TNM), 2021 WL 1929123 (D.D.C. May 13, 2021)....................20

*Webb v. District of Columbia*,
146 F.3d 964 (D.C. Cir. 1998)....................36

*Wis. Dep't of Revenue v. William Wrigley, Jr., Co.*,
505 U.S. 214 (1992)....................32

*Young v. Dep't of Hous. & Urb. Dev.*,
706 F.3d 1372 (Fed. Cir. 2013)....................27

**Statutes**

4 U.S.C. § 111....................14

4 U.S.C. § 111(a)....................14

**Statutes (cont.)**


5 U.S.C. § 706 ........ 26, 28, 29, 31, 37

5 U.S.C. § 706(2) ........ 28, 36

5 U.S.C. § 3131 ........ 1, 17

5 U.S.C. § 3132(a)(4) ........ 15

5 U.S.C. § 7701(c)(2)(A) ........ 32

5 U.S.C. § 7703(b)(1) ........ 30

5 U.S.C. § 7703(c) ........ 29

28 U.S.C. § 2111 ........ 31, 34, 35, 42

38 U.S.C. § 512(a) ........ 43

38 U.S.C. § 713(a)(1) ........ 15, 16, 17

38 U.S.C. § 713(b)(1)(A) ........ 24, 25

38 U.S.C. § 713(b)(1)(C) ........ 16

38 U.S.C. § 713(b)(5) ........ 16, 17, 18, 22

38 U.S.C. § 713(b)(6) ........ 16, 28, 29, 30, 35, 37

38 U.S.C. § 713(d) ........ 33, 36

38 U.S.C. § 713(d)(2)(A) (2014) ........ 32

38 U.S.C. § 714 ........ 33

38 U.S.C. § 714(h)(1)(A) ........ 33

38 U.S.C. § 7306(a) ........ 15

50 U.S.C. § 3507 ........ 15

Act of Feb. 26, 1919,
Pub. L. No. 65-281, 40 Stat. 1181 ........ 31

**Statutes (cont.)**

Civil Service Reform Act of 1978,
Pub. L. No. 95-454, 92 Stat. 1111 ........ 1, 18

Veterans Access, Choice, and Accountability Act of 2014,
Pub. L. No. 113-146, 128 Stat. 1754 ........ 1, 2

Department of Veterans Affairs Accountability and Whistleblower Protection Act of 2017,
Pub. L. No. 115-41, 131 Stat. 862 ........ 2

**Rules**

Fed. R. Civ. P. 61 ........ 34

Fed. R. Civ. P. 61(a) ........ 31

Fed. R. Crim. P. 52(a) ........ 31

**Other Authorities**

Daniel Bress, Note,
*Administrative Reconsideration*, 91 Va. L. Rev. 1737 (2005) ........ 20, 24

Sidath Viranga Panangala et al., Cong. Rsch. Serv., R43704,
*Veterans Access, Choice, and Accountability Act of 2014 (H.R. 3230; P.L. 113-146)* (2015) ... 1

Defendants Denis McDonough, Secretary of Veterans Affairs, and Department of Veterans Affairs ("Department"), by and through undersigned counsel, respectfully oppose Plaintiff James Trinka's Motion to Set Aside Agency Action, ECF No. 39.

## BACKGROUND

### I. <u>The Secretary's Authority to Remove Senior Executives</u>

Congress passed the Civil Service Reform Act of 1978 ("CSRA") "to provide the people of the United States with a competent, honest, and productive Federal work force reflective of the Nation's diversity, and to improve the quality of public service." Pub. L. No. 95-454, § 3, 92 Stat. 1111, 1112. As part of these efforts, Congress established the Senior Executive Service, which is responsible for ensuring "that the executive management of the [federal government] is responsive to the needs, policies, and goals of the Nation and otherwise is of the highest quality." 5 U.S.C. § 3131. Senior Executives are subject to removal for cause, which includes "misconduct, neglect of duty, malfeasance, or failure to accept a directed reassignment or to accompany a position in a transfer of function." *Id.* § 7543(a). A Senior Executive whose removal is proposed generally is entitled to thirty days' notice, seven days to respond with supporting evidence, representation by an attorney or other representative, and a written decision with specific reasons for the action. *Id.* §§ 7542, 7543(b). A Senior Executive generally may appeal adverse decisions to the Merit System Protection Board ("MSPB") and receive a post-termination hearing. *Id.* §§ 7701(a)(1), 7543(c).

In response to reports of delay in patient care and manipulation of wait times at Department health facilities, Congress enacted the Veterans Access, Choice, and Accountability Act of 2014, Pub. L. No. 113-146, 128 Stat. 1754; *see also* Sidath Viranga Panangala et al., Cong. Rsch. Serv., R43704, *Veterans Access, Choice, and Accountability Act of 2014 (H.R. 3230; P.L. 113-146)*, at 1 (2015). A provision of the statute codified at 38 U.S.C. § 713 endowed the Secretary with "new

authority to remove [S]enior [E]xecutives from the [D]epartment" for performance or misconduct. *Panangala*, *supra*, at 20; Pub. L. No. 113-146, § 707, 128 Stat. at 1798.

On June 23, 2017, to improve "accountability" at the Department, the President signed the Department of Veterans Affairs Accountability and Whistleblower Protection Act of 2017 ("2017 Act"), Pub. L. No. 115-41, 131 Stat. 862. Press Release, *President Donald J. Trump Signs S. 1094 Into Law*, White House ("White House Press Release") (June 23, 2017), https://trumpwhitehouse.archives.gov/briefings-statements/president-donald-j-trump-signs-s-1094-law/. This law amended Section 713 to create a new procedure to govern discipline of Senior Executives. *See* 38 U.S.C. § 713. When the Department proposes to discipline a Senior Executive, it must first provide him "advance notice of the action and a file containing all evidence in support of the proposed action." *Id.* § 713(b)(1)(A). A Senior Executive can grieve the decision under an internal grievance process. *Id.* § 713(b)(1)(C), (3). If a Senior Executive does not grieve the decision, he may obtain judicial review of the removal decision based on the administrative record. *Id.* § 713(b)(5), (6). If the Senior Executive grieves the decision, he may obtain judicial review of the grievance decision. *Id.*

## II. The Department's Procedures for Disciplining Senior Executives

On July 7, 2017, the Secretary issued Corporate Senior Executive Management Office Letter No. 006-17-1, *Senior Executive Accountability and Grievance Procedures*, which creates a framework to govern the discipline of Senior Executives under Section 713. Administrative Record ("AR") 584. Under this framework, Department entities refer all allegations of misconduct, poor performance, or retaliation involving Senior Executives to the Office of Accountability and Whistleblower Protection ("Office"), which then "shall review and, if necessary, investigate any allegation or other evidence of [m]isconduct, poor performance, or [r]etaliation, using appropriate processes such as administrative investigation boards or fact-finding inquiries." AR 589-90.

Once an investigation is complete, the Department determines whether to pursue discipline against the Senior Executive. *Id.* If the Department pursues discipline, it designates an official (the "Proposing Official") to review the investigation and determine whether to propose reprimanding, suspending, demoting, or removing the Senior Executive, or else whether no action is warranted. AR 588, 590. The Proposing Official gives the Senior Executive a copy of the proposal. AR 591. "Unless the circumstances of the investigation make it impossible, unreasonable, or unnecessary to do so, a Senior Executive who is the subject of an investigation or review will be given an opportunity to respond to and provide evidence relating to the matters under investigation. Any statement or evidence provided by the Senior Executive will be included in the investigative file, and if relevant or used in support of a subsequent proposed action, the evidence file." AR 590. A Senior Executive then has seven business days to submit a response to an individual whom the Secretary has delegated authority to decide what disciplinary action to impose (the "Deciding Official"). AR 585, 591. Within fifteen business days of the proposal's issuance, the Deciding Official must issue a decision concerning the disciplinary action to impose. AR 592.

Within seven business days of receiving the decision, the Senior Executive may grieve it to an individual whom the Secretary has specially designated to examine the grievance and make a recommendation on it (the "Grievance Official"). AR 586, 592-93. The Secretary then reviews the Grievance Official's recommendation and the record and issues a final decision. AR 593.

## III. <u>Trinka's Investigation</u>

Trinka joined the Department as a Senior Executive on January 15, 2012. AR 763. He later became Chief Talent Management Officer within the Office of Information and Technology. *Id.*

Trinka married Piyaporn Trinka, who does not have lawful immigration status in the United States, in December 2013. AR 763, 949. On May 22, 2014, the Department of Homeland Security informed the Department's Office of Inspector General that it was investigating Trinka concerning

his wife's immigration status. AR 763. On December 7, 2018, an employee from the Office of the Inspector General asked Trinka's supervisor, John Oswalt, to escort Trinka to an interview with an investigator. AR 952. While walking to the interview, Trinka told Oswalt for the first time that his wife is in the country illegally. *Id.* Once Trinka arrived at the interview site, he requested that an attorney be present, and the interview was postponed so his attorney could be present. AR 966.

On December 21, 2018, Trinka sat for an interview with an investigator from the Office of Inspector General. AR 303, 320. The investigator recorded the interview, and later summarized the interview in a memorandum. *Id.* During Trinka's interview, the following exchange occurred:

> Q. Have you disclosed your wife's undocumented status to anyone in your chain of command since this investigation was initiated?
>
> A. Yes.
>
> Q. And when did you do that?
>
> A. I've had, if I recall correctly, I've had three supervisors during my time in the Office of Information and Technology and all three, I disclosed that information to.
>
> Q. Okay, and how did you do that?
>
> A. Verbally.
>
> Q. Verbally, but nothing in writing?
>
> A. No.
>
> Q. Well, what was their response to that?
>
> A. They just, they didn't really have any kind of a reaction at all, other than the fact that sort of like thankful for me saying anything but it didn't, you know—I got the impression, I don't know what's in their head, but I got the impression that it didn't matter to them, and, you know, they, they said, they said words to that effect. I can't recall the exact words they said, but they said words to the effect that it didn't matter to them.

AR 991 (Recording at 20:33-21:46). In May 2019, the investigator interviewed three of Trinka's supervisors—Oswalt, Richard Chandler, and Martha Orr. AR 952-56. Chandler and Orr stated that

Trinka never told them about his wife's legal status, while Oswalt stated that Trinka never told him about his wife's legal status until the date that Oswalt escorted Trinka to the interview. *Id.*

## IV. <u>Trinka's Removal From Federal Service</u>

In January 2020, the Office of Inspector General referred a report of investigation of Trinka to the Office for "further action as appropriate." AR 1. On July 16, 2020, the Office recommended Trinka's removal from federal service for making "false or inaccurate statements or provid[ing] false or inaccurate information to the government on at least two occasions." *Id.* The Department designated a Proposing Official but did not provide him transcripts or recordings of the interviews of Trinka or his supervisors—only memoranda summarizing them. AR 6, 744-45.

On September 11, 2020, the Proposing Official proposed Trinka's removal based on one charge of "Conduct Unbecoming a Federal Supervisor." AR 3. The Department notified Trinka of the proposal that day and provided him an evidence file, which included summaries of his and his supervisors' interviews, but not transcripts or recordings of those interviews. AR 3, 355, 380. The evidence file included all the evidence that was available to the Proposing Official in proposing Trinka's removal. AR 744-45. On September 22, 2020, Trinka responded to the proposal, denying the charge against him and raising various challenges to his removal. AR 353-79. On October 2, 2020, the Deciding Official issued the decision to remove Trinka. AR 529. In making his decision, he did not consider transcripts or recordings of Trinka's and his supervisors' interviews, only the summary memoranda. AR 529, 744-45. Trinka's removal became effective immediately. AR 529.

On October 14, 2020, Trinka grieved his removal to the Secretary. AR 538. The Grievance Official reviewed Trinka's grievance and recommended that the Secretary sustain the removal. AR 742. The Secretary sustained Trinka's removal, finding that the removal was warranted by both substantial and a preponderance of the evidence. AR 750-51. In making this decision, the Secretary did not consider transcripts or recordings of Trinka's or his supervisors' interviews. AR 750.

Trinka filed this action on November 3, 2021, *see* Compl., ECF No. 1, and the parties cross-moved for summary judgment. ECF Nos. 14, 15. On September 21, 2023, this Court granted each party summary judgment in part and denied each party summary judgment in part. *See* Order, ECF No. 23. The Court concluded that Defendants had violated the Fifth Amendment's Due Process Clause and 38 U.S.C. § 713 in three ways: by (1) removing Trinka based on conduct predating the current version of the statute's enactment, (2) withholding the audio recording of his interview, and (3) applying the substantial evidence standard rather than the preponderance of the evidence standard, or at least failing to put Trinka on notice as to which standard they were applying. *See* Mem. Op. at 17-36, ECF No. 24. At the same time, the Court concluded that Defendants did not act unlawfully in giving Trinka memoranda summarizing his supervisors' interviews rather than transcripts or recordings of the interviews, "particularly in light of the fact that Defendants have averred that no recording or transcript of the interviews even exist." *Id.* at 26. Finally, the Court rejected Trinka's argument that the Grievance Official's recommendation to the Secretary was an unlawful ex parte communication. *Id.* at 36-38. The Court remanded the matter to the Department for further consideration in light of its ruling but did not vacate Trinka's removal. *Id.* at 39; Order.

The Court also ordered Defendants to "file a status report with the Court 14 days after the agency renders a decision or within 90 days of the Court's Opinion, whichever is earlier." Order; *accord* Mem. Op. at 39 (same). Ninety days later, on December 20, 2023, Defendants filed a status report stating that they were reconsidering the removal action. Status Rep., ECF No. 25. They explained that they "have been carefully reviewing that ruling, and evaluating their options in light of it." *Id.* "At this time," Defendants stated, they "continue to evaluate their options to ensure that whatever personnel action they take comports with the legal principles that the Court articulated in its ruling, but have not finally settled on a course of action." *Id.* "Given the issues that this Court

identified in its ruling," Defendants stated, "Defendants are proceeding carefully and with proper deliberation to ensure that their action with respect to Plaintiff rests on firm legal footing." *Id.*

The Secretary appointed a new Proposing Official and new Deciding Official who had not participated in the original removal action. AR 6, 536, 749, 770, 1000. On February 29, 2024, the Proposing Official issued an amended proposal to remove Trinka. AR 763. In issuing the amended removal proposal, the Proposing Official applied (and made that clear he was applying) the preponderance of the evidence standard, and did not consider any conduct predating the current version of 38 U.S.C. § 713's enactment. AR 763-69. Defendants provided Trinka all the evidence on which the Proposing Official had relied, including a recording of his interview. AR 769, 991. Trinka submitted a written response to the amended removal proposal. AR 992-93. The Deciding Official sustained the removal, applying the preponderance of the evidence standard and without considering conduct predating the current version of 38 U.S.C. § 713's enactment. AR 994-99.

**ARGUMENT**

Trinka lied during his Inspector General interview. Although Trinka once denied this fact, it is irrefutable now that an audio recording of the interview, available to this Court, confirms that he lied, and he no longer makes a meaningful effort to deny it. Trinka lied, moreover, not just as any federal employee, which would be an intolerable enough breach of the public trust, but while serving at the apex of the federal civil service—in the Senior Executive Service. Nothing in the law requires this Court to reinstate Trinka to his former position, and this Court should not do so.

Most of Trinka's arguments focus on an issue that is not in dispute here—namely, whether the initial removal action provided due process. This Court determined that it did not, and Defendants do not take issue with that conclusion here. The issue now, however, is different: now that Defendants have undertaken the amended removal action, which satisfied all the procedural requirements that the initial removal action did not satisfy, is Trinka entitled to reinstatement?

Trinka devotes relatively little attention to that question in his motion, instead repeatedly insisting that the initial action violated due process principles, which, again, is not the relevant issue here.[1]

Trinka's minimal engagement with the relevant question is unsurprising, as the answer is "no"—Trinka plainly is not entitled to reinstatement. Because the amended removal action replaced and superseded the initial action, Trinka's challenges to the initial action are moot. And further, the amended removal action makes clear that any errors in the initial action were harmless by showing that Defendants would have made the same decision even without any of those errors.

Trinka appears to raise four principal arguments, none of which ultimately passes muster. *First*, Trinka argues that Defendants lacked authority to amend the removal action because 38 U.S.C. § 713 applies only to current Department employees, and he was not a current employee by the time that Defendants amended the action. But 38 U.S.C. § 713 applies to former and current employees alike, and regardless, Defendants had inherent authority to reconsider the initial action.

*Second*, Trinka argues that constitutional errors and actions under 38 U.S.C. § 713 are not subject to a harmless error rule, but that too is incorrect. Binding precedent holds that constitutional errors such as those at issue here are subject to harmless error analysis, and 38 U.S.C. § 713, Rule 61, and 28 U.S.C. § 2111 each require Trinka to satisfy the harmless error rule to obtain relief.

*Third*, Trinka seems to argue that an agency cannot cure a defective removal action without first reinstating an employee, but there is no such rule. 38 U.S.C. § 713's plain text and background legal principles confirm this point, and Trinka's contrary arguments rely on inapposite cases.

*Fourth*, Trinka argues that the amended removal action violates the Appointments Clause because the Proposing Official and Deciding Official lacked authority to amend the Secretary's

[1] Defendants refer to the full process that includes both the removal proposal and decision at the "removal action," and to the removal proposal and decision separately where appropriate. Defendants reserve the right to argue on appeal that the initial removal action was lawful.

action. But the Secretary is the one who appointed the Proposing Official and the Deciding Official and authorized them to undertake the amended removal action in the first place, so no issue arises.

Finally, in the final sentence of his argument, Trinka cursorily alludes to arguments that he previously raised at an earlier stage of the case but does not develop these arguments at all. Such threadbare references are insufficient to raise an issue, so Trinka thus forfeits these arguments.

## I. Defendants Had Authority to Amend the Removal Action, so the Amended Removal Action Moots Trinka's Recording, Retroactivity, and Standard of Proof Arguments

"Federal courts lack jurisdiction to decide moot cases because their constitutional authority extends only to actual cases or controversies." *Conservation Force, Inc. v. Jewell*, 733 F.3d 1200, 1204 (D.C. Cir. 2013). Accordingly, a federal court "lose[s] jurisdiction if a pending case becomes moot." *In re Sealed Case*, 77 F.4th 815, 826 (D.C. Cir. 2023). Although the D.C. Circuit has formulated the mootness inquiry in several different ways, they boil down to essentially the same point—a case is moot "when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome," *Schmidt v. United States*, 749 F.3d 1064, 1068 (D.C. Cir. 2014) (quotation marks omitted), "intervening events make it impossible to grant the prevailing party effective relief," *Lemon v. Geren*, 514 F.3d 1312, 1315 (D.C. Cir. 2008), or a decision "will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future," *Aref v. Lynch*, 833 F.3d 242, 250 (D.C. Cir. 2016) (quotation marks omitted).

"Corrective action by an agency is one type of subsequent development that can moot a previously justiciable issue." *Nat. Res. Def. Council, Inc. v. Nuclear Regul. Comm'n*, 680 F.2d 810, 814 (D.C. Cir. 1982). This occurs when an agency action "no longer exists" because it was "superseded . . . in its entirety." *Theodore Roosevelt Conservation P'ship v. Salazar*, 661 F.3d 66, 79 (D.C. Cir. 2011). After all, a court cannot "invalidate" an action that has "disappeared into the regulatory netherworld." *Id.* (quotation marks omitted). Thus, "when one agency action supersedes

another, prospective challenges to the superseded agency action generally become moot. In those circumstances, vacating the old agency action will not deliver the plaintiff any relief. The new agency action, not the old one, is what injures the plaintiff going forward." *Anderson v. Dep't of Hous. & Urb. Dev.*, Civ. A. No. 23-1259 (DLF), 2024 WL 1701641, at *6 (D.D.C. Apr. 19, 2024) (citation omitted); *see also Freeport-McMoRan Oil & Gas Co. v. Fed. Energy Regul. Comm'n*, 962 F.2d 45, 46 (D.C. Cir. 1992) ("case is plainly moot" if any "challenged orders" are "superseded by a subsequent [agency] order"); *Akiachak Native Cmty. v. Dep't of Int.*, 827 F.3d 100, 113 (D.C. Cir. 2016) (a "perfectly uncontroversial and well-settled principle of law" is that "when an agency has rescinded and replaced a challenged [action], litigation over the legality of the original [action] becomes moot"); *Salesian Soc'y, Province of St. Philip the Apostle, Inc. v. Mayorkas*, Civ. A. No. 18-0477 (EGS), 2021 WL 4306150, at *13 (D.D.C. Sept. 22, 2021) ("an agency may take voluntary corrective action after a plaintiff has initiated litigation," which "may render a plaintiff's claims moot" (quotation marks omitted)); *Blue Water Balt. v. Pruitt*, 266 F. Supp. 3d 174, 180 (D.D.C. 2017) (agency action "superseded [prior action], thus mooting the plaintiffs' challenge").

The amended removal action has mooted Trinka's interview recording, retroactivity, and standard of proof arguments. The Proposing Official applied (and made clear he was applying) the preponderance of the evidence standard, and his proposal rested only on evidence postdating the current version of 38 U.S.C. § 713's enactment. AR 764. After the Proposing Official issued the amended removal proposal, Defendants sent Trinka a recording of his interview. AR 769, 991. In issuing the amended removal decision, the Deciding Official applied the preponderance of the evidence standard and considered only conduct postdating the current version of 38 U.S.C. § 713's enactment. AR 763-69. Trinka notes that the evidence provided to him after the amended removal proposal issued contained some information about his conduct predating the current version of 38

U.S.C. § 713's enactment, *see* Pl.'s Mot. at 5-6 n.4, but neither the Proposing Official nor Deciding Official considered or relied on facts predating the current version of 38 U.S.C. § 713's enactment in proposing or deciding on Trinka's removal, AR 764, 991. Regardless, Trinka forfeits this point by raising it only in a footnote. *See United States v. All Assets Held at Credit Suisse (Guernsey) Ltd.*, 45 F.4th 426, 434 (D.C. Cir. 2022) ("cursory arguments made only in a footnote are forfeited" (quotation marks omitted)); *Imapizza, LLC v. At Pizza Ltd.*, 334 F. Supp. 3d 95, 110 (D.D.C. 2018) ("The Court will not consider this argument, which is raised only in passing, and in a footnote.").

Because the amended removal action has "superseded" the initial action "in its entirety," *Theodore Roosevelt*, 661 F.3d at 79, and has "[c]orrect[ed]" the errors in the initial action, Trinka's interview recording, retroactivity, and standard of proof arguments—and any other arguments that are specific to the initial removal action—are now "moot," *Nat. Res. Def. Council*, 680 F.2d at 814. Resisting this conclusion, Trinka argues that Defendants lacked the authority to amend the initial removal action, but that is incorrect. To the contrary, Defendants had two separate sources of authority to amend the removal action. First, 38 U.S.C. § 713 itself authorized Defendants to amend the removal action. Trinka argues that 38 U.S.C. § 713 authorizes Defendants to take action only against current Department employees, and thus did not authorize it to amend the removal action because he no longer was an employee by the time Defendants amended it. But 38 U.S.C. § 713 allows Defendants to take actions against former and current employees alike, as Supreme Court and D.C. Circuit case law confirms. Second, even if 38 U.S.C. § 713 itself did not authorize Defendants to amend the initial removal action, Defendants had inherent authority to reconsider it. Because Defendants had authority to amend the removal action, the amended removal action is valid, and thus moots Trinka's interview recording, retroactivity, and standard of proof arguments.

### A. 38 U.S.C. § 713 Authorized Defendants to Amend the Removal Action

Contrary to Trinka's position, 38 U.S.C. § 713 authorized Defendants to amend the initial removal action. Trinka argues that "the Secretary's authority to take an 'action' under [38 U.S.C. §] 713 is limited to *current* [Senior Executive Service] employees," and that he "was not a [Senior Executive Service] employee when Defendants manufactured the 'amended' action in 2024." Pl.'s Mot. at 7-8 (emphasis in original). Accordingly, Trinka argues, 38 U.S.C. § 713 did not authorize Defendants to amend the initial removal action. But the word "current" is found nowhere in 38 U.S.C. § 713's text—rather, Trinka simply reads this word into the statute. Courts "ordinarily resist reading words or elements into a statute that do not appear on its face," *Dean v. United States*, 556 U.S. 568, 572 (2009), and Trinka offers no sound reason to do so here.

Indeed, Supreme Court and D.C. Circuit precedent squarely forecloses Trinka's position, holding that the term "employee" can—and in circumstances such as these, does—encompass a former employee. In *Robinson v. Shell Oil Co.*, 519 U.S. 337, 339 (1997), the Supreme Court held that the term "employee," as used in Title VII's anti-retaliation provision, does not extend "only to current employees." The Court noted that while "[a]t first blush, the term 'employees' . . . would seem to refer to those having an existing employment relationship with the employer in question . . . [t]his initial impression . . . does not withstand scrutiny in the context of" the statute. *Id.* at 341.

*Robinson* rested on a holistic analysis of the statute's text and purpose. "First," the Court explained, "there is no temporal qualifier in the statute such as would make plain that [it] protects only persons still employed at the time of the retaliation." *Robinson*, 519 U.S. at 341. While "the statute could have expressly included the phrase 'former employees,'" that did "not aid [the] inquiry," as "Congress also could have used the phrase 'current employees.'" *Id.* Yet "nowhere in Title VII is either phrase used—even where the specific context otherwise makes clear an intent

to cover current or former employees." *Id.* "Second, Title VII's definition of 'employee' likewise lacks any temporal qualifier and is consistent with either current or past employment." *Id.* at 342.

"Third," the Court explained, "a number of other provisions in Title VII use the term 'employees' to mean something more inclusive or different than 'current employees.'" *Robinson*, 519 U.S. at 342. "For example, [some provisions] authorize affirmative remedial action . . . 'which may include reinstatement . . . of employees,'" and "because one does not reinstate current employees, that language necessarily refers to former employees." *Id.* (cleaned up). Another provision stated that "'an employee . . . shall be notified of any final action taken on any complaint of discrimination filed by him thereunder.' If the complaint involves discriminatory discharge, as it often does, the 'employee' who must be notified is necessarily a former employee." *Id.* at 342-43 (cleaned up). "Similarly, [yet another provision] provides that an 'employee or applicant for employment, if aggrieved by the final disposition of his complaint, may file a civil action.' Again, given that discriminatory discharge is a forbidden 'personnel action affecting employees,' the term 'employee' in [this provision] necessarily includes a former employee." *Id.* at 343 (cleaned up).

Having found the term "employee" to be "ambiguous," the Court ultimately concluded that it covered former employees. *Robinson*, 519 U.S. at 345. The Court determined that "[t]he broader context provided by other sections of the statute provides considerable assistance in this regard," stressing that "several sections of the statute plainly contemplate that former employees will make use of the remedial mechanisms of Title VII." *Id.* "Indeed, [one provision of the statute] expressly includes discriminatory 'discharge' as one of the unlawful employment practices against which Title VII is directed." *Id.* "Insofar as [the statute] expressly protects employees from retaliation for filing 'charge' under Title VII, and a charge . . . alleging unlawful discharge would necessarily be brought by a former employee, it is far more consistent to include former employees within the

scope of 'employees' protected by [the statute]." *Id.* The Court also noted that "to hold otherwise would effectively vitiate much of the protection afforded by" the statute, as terminated employees would have no "access to statutory remedial mechanisms." *Id.* at 345-46. For all these reasons, *Robinson* held "that former employees are included within [the statute's] coverage." *Id.* at 346.

*Robinson* was not the first time that the Supreme Court held that the term "employee" can encompass a former employee—it previously did so in *Davis v. Michigan Department of Treasury*, 489 U.S. 803 (1989). At issue there was 4 U.S.C. § 111, which provided that "[t]he United States consents to the taxation of pay or compensation for personal service as an officer or *employee* of the United States . . . by a duly constituted taxing authority having jurisdiction, if the taxation does not discriminate against the officer or *employee* because of the source of the pay or compensation." (emphasis added).[2] The statute's first use of the term "employee" plainly did not limit the statute to current employees, the Court explained, because it was part of the broader phrase "compensation for personal services as an officer or employee," which could include "deferred compensation for past years of service rendered to the Government." *Davis*, 489 U.S. at 808. The statute's second use of the term "employee," however, stood alone, and thus seemingly limited the statute's non-discrimination mandate "only to current federal employees." *Id.* at 809. But the Court rejected this "hypertechnical reading" of the statute, stressing that "statutory language cannot be construed in a vacuum." *Id.* Reading the statute as a whole, the Court concluded that it covered former employees. *Id.* "Any other interpretation," the Court emphasized, "would be implausible at best." *Id.* "It is difficult to imagine that Congress consented to discriminatory taxation of the pensions of retired federal civil servants while refusing to permit such taxation of current employees, and nothing in the statutory language or even in the legislative history suggests this result." *Id.*

---

[2] Congress has since amended the law, and the text at issue now appears at 4 U.S.C. § 111(a).

Following the Supreme Court's lead, the D.C. Circuit likewise has recognized that the term "employee" can cover a former employee. In *DiBacco v. Department of the Army*, 926 F.3d 827, 834 (D.C. Cir. 2019), an agency withheld certain information concerning former employees of the Central Intelligence Agency ("CIA") under 50 U.S.C. § 3507, which protects against disclosure "the organization, functions, names, official titles, salaries, or numbers of personnel employed by the [CIA]." The Court noted that the statute's "text does not expressly restrict its scope to personnel currently employed by the agency. The relevant provision contains no 'temporal qualifier,' and the plain text could just as easily be read to refer to past employment as to ongoing employment." *DiBacco*, 926 F.3d at 836 (quoting *Robinson*, 519 U.S. at 342). "Given the statutory text" and "the Supreme Court's decision in *Robinson*," among other things, the Court "reject[ed] [the] argument that the [provision] only applies to information referencing current intelligence personnel." *Id.*

38 U.S.C. § 713 authorizes disciplinary action against "a covered individual," 38 U.S.C. § 713(a)(1), a term defined to mean either (1) "a career appointee (as that term is defined in section 3132(a)(4) of title 5)" or (2) "any individual who occupies an administrative or executive position and who was appointed under section 7306(a), section 7401(1), or section 7401(4) of this title," *id.* § 713(d)(1). Only the first prong of this definition is relevant to Trinka, as 5 U.S.C. § 3132(a)(4) defines "career appointee" to mean "an individual in a Senior Executive Service position whose appointment to the position or previous appointment to another Senior Executive Service position was based on approval by the Office of Personnel Management of the executive qualifications of such individual." This description formerly applied to Trinka, who held a Senior Executive Service position. 38 U.S.C. §§ 7306(a), 7401(1), and 7401(4), in contrast, concern positions in the Office of the Under Secretary for Health and Veterans Health Administration, which Trinka never held.

Every single factor that the Supreme Court and D.C. Circuit emphasized points toward the same conclusion: 38 U.S.C. § 713 authorized Defendants to amend the removal action even though Trinka no longer worked at the Department by that time. The term "covered individual," as used in 38 U.S.C. § 713, contains "no temporal qualifier in the statute such as would make plain that [it covers] only persons still employed at the time of the [action]," such as, for example, the phrase "current." *Robinson*, 519 U.S. at 341. The remainder of 38 U.S.C. § 713, meanwhile, "likewise lacks any temporal qualifier and is consistent with either current or past employment." *Id.* at 342.

And various "other provisions" of 38 U.S.C. § 713 "use the term ['covered individual'] to mean something more inclusive or different than 'current employees.'" *Robinson*, 519 U.S. at 342. For example, 38 U.S.C. § 713(b)(6) authorizes a court to "set aside any Department action found to be" unlawful, which allows a court to reinstate an employee, and "because one does not reinstate current employees, that language necessarily refers to former employees," *Robinson*, 519 U.S. at 342. Another provision entitles a "covered individual who is the subject of an action" to "grieve the action." 38 U.S.C. § 713(b)(1)(C). When the action at issue is a removal, the covered individual grieving that action "is necessarily a former employee." *Robinson*, 519 U.S. at 343. Yet another provision allows a "covered individual adversely affected by a decision" to "obtain judicial review of such decision." 38 U.S.C. § 713(b)(5). Because a removed employee can obtain review of his removal, the statute "necessarily includes a former employee." *Robinson*, 519 U.S. at 343. Finally, the statute "expressly includes," *id.* at 345, the option to "remove a covered individual," 38 U.S.C. § 713(a)(1), as one that Defendants may take. Because a lawsuit under 38 U.S.C. § 713 "alleging unlawful discharge would necessarily be brought by a former employee, it is far more consistent to include former employees within the scope of" the statute. *Robinson*, 519 U.S. at 345. In short, "several sections of the statute plainly contemplate that former employees will make use of [38

U.S.C. § 713's] remedial mechanism." *Id.* Indeed, "to hold otherwise would effectively vitiate much of the protection afforded by" 38 U.S.C. § 713's judicial review provision, because then a terminated employee would lack any "access to statutory remedial mechanisms." *Id.* at 345-46.

Simply put, 38 U.S.C. § 713's text presupposes that the term "covered individual" includes a former employee. Trinka's contrary reading would strip away all the statute's protections from an individual who is removed, as the individual would have no way to challenge his removal under the statute's judicial provision if the term "covered individual" did not include a former employee. Such an interpretation would mean that 38 U.S.C. § 713 provides a judicial remedy to an employee who is reprimanded, suspended, involuntarily reassigned, or demoted, 38 U.S.C. § 713(a)(1), but provides no remedy to an employee who is removed, a far more serious personnel action. Such an interpretation "would be implausible at best." *Davis*, 489 U.S. at 810. Indeed, if Trinka is correct that a former employee is not a "covered individual," then he himself would be unable to sue under the statute because he no longer was an employee of the Department by the time he filed suit, and this Court would need to dismiss the case because he would lack a cause of action under the statute.

Finally, "[i]t is difficult to imagine that Congress" intended to prohibit Defendants from correcting easily fixable procedural errors in disciplinary actions against Senior Executives and instead force Defendants to vacate such actions and redo them from scratch. *Davis*, 489, at 810. It is particularly implausible that Congress intended to force Defendants to welcome an individual whom they previously removed on the ground that his "misconduct or performance . . . warrant[ed] such action," 38 U.S.C. § 713(a)(1), back into the Senior Executive Service, thus allowing him to resume partaking in "the executive management of the Government of the United States," 5 U.S.C. § 3131, and drawing taxpayer-funded paychecks and benefits until Defendants finish a brand-new removal action. A more "[ ]plausible" interpretation than this "hypertechnical reading," *Davis*, 489

U.S. at 809-10, is that Congress meant for Defendants to correct a disciplinary action—especially a removal—against a misbehaving or poorly performing Senior Executive upon discovering a fixable error in the action, without needing to vacate the action or restore the individual to service.

After all, Congress enacted 38 U.S.C. § 713 "to improve accountability at the" Department. Press Release, U.S. Sen. Comm. on Veterans' Affairs, *VA Accountability Measure Signed Into Law* ("U.S. Senate Press Release") (June 23, 2017), https://www.veterans.senate.gov/newsroom /majority-news/vaaccountability-measure-signed-into-law; *accord* White House Press Release (38 U.S.C. § 713 intended to promote "accountability"); *Helman v. Dep't of Vets. Affs.*, 856 F.3d 920, 923 (Fed. Cir. 2017) (previous version of 38 U.S.C. § 713 was "designed to make it easier . . . to remove or demote senior executives in the agency for poor performance"). And Congress created the Senior Executive Service "to provide the people of the United States with a competent, honest, and productive Federal work force . . . and to improve the quality of public service." CSRA, Pub. L. No. 95-454, § 3, 92 Stat. 1111, 1112. Forcing Defendants to return the reins of the civil service within the Department to misbehaving and poorly performing Senior Executives undermines both of these statutes' laudatory goals. Unsurprisingly, "nothing in the statutory language or even in the legislative history [of 38 U.S.C. § 713] suggests this result." *Davis*, 489 U.S. at 810.

For all these reasons, 38 U.S.C. § 713 authorized Defendants to amend the removal action even though Trinka no longer worked at the Department by that time. Indeed, if Trinka were not a "covered individual" within 38 U.S.C. § 713's meaning, then he would not have been authorized to file this suit in the first place. This is because the statute's judicial review provision is available only to a "covered individual," 38 U.S.C. § 713(b)(5), and Trinka filed suit after his removal took place. And for this reason, if this Court concludes that the term "covered individual" does not include a former Department employee, it should dismiss the suit for lack of a valid cause of action.

### B. Defendants Had Inherent Authority to Reconsider the Removal Action

Alternatively, even if 38 U.S.C. § 713 did not authorize Defendants to amend the removal action, Defendants had inherent authority to reconsider the action. "[A]dministrative agencies are assumed to possess at least some inherent authority to revisit their prior decisions, at least if done in a timely fashion." *Ivy Sports Med., LLC v. Burwell*, 767 F.3d 81, 86 (D.C. Cir. 2014).[3] An agency generally may "rely on inherent reconsideration authority" unless "Congress has provided a mechanism capable of rectifying mistaken actions," *id.*, or otherwise has limited an agency's inherent reconsideration authority, *see Nat. Res. Def. Council v. Regan*, 67 F.4th 397, 401-04 (D.C. Cir. 2023) (agency lacked inherent authority to reconsider regulatory action when statute directed it to act). Exercising its inherent reconsideration authority, Defendants appropriately amended the removal action. AR 998 (amended removal decision invoking inherent reconsideration authority). And as explained further below, none of the limits on agencies' inherent reconsideration authority apply here: (1) Defendants reconsidered the removal action in a timely fashion, and Congress has neither (2) provided an alternative mechanism capable of rectifying an erroneous action under 38 U.S.C. § 713 nor (3) otherwise limited Defendants' inherent authority to reconsider such actions.

1. Defendants Reconsidered the Removal Action in a Timely Fashion

First, Defendants reconsidered the removal action "in a timely fashion." *Ivy Sports Med.*, 767 F.3d at 86. "Most courts consider the relevant time period to be the time between the initial final judgment and the agency's notice of reconsideration, rather than the time between the initial adjudication and the date when that decision is actually reversed or modified." Daniel Bress, Note,

[3] The D.C. Circuit has described such authority as "implicitly granted authority," a "subtle" shift in nomenclature "that [courts] generally overlooked [ ] until" recently, and that does not have substantive implications. *HTH Corp. v. Nat'l Lab. Rels. Bd.*, 823 F.3d 668, 679 (D.C. Cir. 2016).

*Administrative Reconsideration*, 91 Va. L. Rev. 1737, 1764 (2005) (collecting cases).[4] There is no "hard and fast test" for, and are "no objective limits on," what constitutes timeliness in this context. *Id.* at 1761, 1763. The D.C. Circuit, for example, has held that reconsideration can be proper even "three years" after the action. *Gabbs Expl. Co. v. Udall*, 315 F.2d 37, 41 (D.C. Cir. 1963). The relevant inquiry simply is whether "subsequent developments" or "changed circumstances" have called the first action into doubt. *Elkem Metals Co. v. United States*, 26 C.I.T. 234, 241 (2002). In *Elkem Metals*, for example, an agency "took action soon after it possessed information it believed substantiated [certain] allegations concerning [a] price-fixing conspiracy," even though "four and one-half year[s]" had elapsed since its first decision. *Id.* at 241-42. The Court explained that "even though the period of time that elapsed between the [initial] [d]etermination and the commencement of the [r]econsideration [p]roceedings was substantial, it was not unreasonable." *Id.* at 242.

One intervening event that furnishes proper grounds for reconsideration is receiving notice of an error in the initial action. Under analogous circumstances, for example, the D.C. Circuit held that an agency had timely "offer[ed] to reopen the administrative proceedings" on an employee's removal when it "was first informed of its error." *Mazaleski v. Treusdell*, 562 F.2d 701, 720-21 (D.C. Cir. 1977). Thus, an intervening judicial decision providing notice of a potential error in an action can furnish a proper basis for reconsideration, even years after the action. In *ConocoPhillips Co. v. Environmental Protection Agency*, 612 F.3d 822, 830, 832 (5th Cir. 2010), for example, the Fifth Circuit held that an agency properly could exercise inherent authority to reconsider a rule it

4 The D.C. Circuit and judges in this District have relied on this publication in analyzing the scope of an agency's inherent reconsideration authority. *See, e.g.*, *Ivy Sports Med.*, 767 F.3d at 86; *Voyageur Outward Bound Sch. v. United States*, Civ. A. No. 18-1463 (TNM), 2021 WL 1929123, at *3 (D.D.C. May 13, 2021); *Moncrief v. Dep't of Int.*, 339 F. Supp. 3d 1, 9 (D.D.C. 2018).

had promulgated over four years earlier in light of an intervening Supreme Court decision, because there were "substantial similarities of fact between" that decision and the challenged rule.

Defendants timely reconsidered the removal action under these circumstances. Defendants provided notice that they were reconsidering the removal action on December 20, 2023, *see* Defs.' Status Rep., ECF No. 25, less than three months after this Court ruled that the action was erroneous, *see* ECF Nos. 23; *Gabbs Expl.*, 315 F.2d at 41 (reconsideration within "three years" of initial action was timely); *Bookman v. United States*, 453 F.2d 1263, 1264-65 (Ct. Cl. 1972) (reconsideration of a personnel action within three months was timely); *Elkem Metals*, 26 C.I.T. at 241 (intervening events can justify reconsideration); *Mazaleski*, 562 F.2d at 720-21 (intervening events can include notice of an error in the initial action); *id.* at 720 (citing *Bookman* with approval); *ConocoPhillips*, 612 F.3d at 832 (intervening judicial decision providing notice of potential error in action justifies reconsideration); Bress, *supra*, at 1764 (relevant interval is between the initial action and notice of reconsideration). This was a reasonable interval of time—especially because the Court had ordered Defendants to provide a status update within this timeframe. *See* Order (Sept. 21, 2023) (ordering Defendants to "file a status report with the Court 14 days after the agency renders a decision or within 90 days of the Court's Opinion, whichever is earlier"). Defendants timely reconsidered the removal action by giving notice of reconsideration within the timeframe that this Court specified.

Even if one measured the relevant interval measured by when the new action occurred, not merely by the notice of reconsideration, Defendants still timely exercised their inherent authority. Defendants issued the amended removal proposal on February 29, 2024, AR 763, and the amended removal decision on March 11, 2024, AR 992. That was a reasonable interval given the numerous challenges to the initial removal action that Trinka had raised, *see* Pl.'s Cross-Mot. Summ. J, ECF No. 15; Pl.'s Reply Supp. Cross-Mot. Summ. J, ECF No. 21; AR 553 (response to initial removal

proposal); AR 538 (grievance of initial removal decision), and the need to ensure that the amended removal action was legally airtight given the virtual certainty that Trinka would challenge it, *see* Status Rep. (Dec. 20, 2023) ("Defendants are proceeding carefully and with proper deliberation to ensure that their action with respect to Plaintiff rests on firm legal footing.").

The D.C. Circuit's suggestion that what constitutes timely reconsideration "will vary with each case, but absent unusual circumstances, the time period would be measured in weeks, not years," *Mazaleski*, 562 F.2d at 720, does not compel a different result. Whether reconsideration is timely is a case-by-case analysis, and the circumstances here certainly were "unusual," *id.*—the Court ruled that the removal action was erroneous years after the action occurred, and Defendants then promptly announced, within the timeframe this Court had established, that they would amend the action (then promptly did so). Under these unusual circumstances, reconsideration was timely.

Finally, any argument that Defendants were on notice that the initial removal action was erroneous back in 2020 because Trinka challenged its validity is meritless. The Court's summary judgment ruling is an authoritative statement of the removal action's legality, while Trinka's self-advocacy was not. Defendants believed reasonably and in good faith, even if incorrectly, that the initial removal action was valid, and were entitled to rely on that belief until this Court ultimately concluded otherwise. *See Friedman v. Fed. Aviation Admin.*, 841 F.3d 537, 541 (D.C. Cir. 2016) ("Without evidence to the contrary, we must presume an agency acts in good faith." (cleaned up)).

2. <u>Congress Provided No Mechanism Capable of Correcting Mistaken Actions</u>

Second, Congress has not "provided a mechanism capable of rectifying mistaken actions" under 38 U.S.C. § 713.[5] *Ivy Sports Med.*, 767 F.3d at 86. Courts "assume that Congress intends to

[5] If the term "covered individual" does in fact encompass a former employee, *see supra* § I.A, then 38 U.S.C. § 713 itself authorized Defendants to amend the removal action, and there is

displace an administrative agency's inherent reconsideration authority when it provides statutory authority to rectify the agency's mistakes." *Id.* By the same token, if Congress does not provide statutory authority to correct a mistaken action, courts are likelier to conclude that an agency has inherent authority to rectify the mistake. *See id.* Congress has not provided a specific mechanism to correct erroneous actions under 38 U.S.C. § 713, so no inference arises that Congress precluded Defendants from exercising their inherent reconsideration authority to correct erroneous actions.

Nor does 38 U.S.C. § 713's generic judicial review provision, which allows courts to set aside erroneous actions, itself constitute "a mechanism capable of rectifying mistaken actions" that precludes inherent reconsideration authority. *Ivy Sports Med.*, 767 F.3d at 86. The D.C. Circuit repeatedly has found inherent reconsideration authority even where statutes generically authorized judicial review of agency action. *See Howard Sober, Inc. v. Interstate Com. Comm'n*, 628 F.2d 36, 41 (D.C. Cir. 1980); *Mazaleski*, 562 F.2d at 720; *United States v. Civ. Aeronautics Bd.*, 510 F.2d 769, 773-75 (D.C. Cir. 1975); *Nat'l Ass'n of Trailer Owners, Inc. v. Day*, 299 F.2d 137, 139 (D.C. Cir. 1962); *Albertson v. FCC*, 182 F.2d 397, 400 (D.C. Cir. 1950). Indeed, it axiomatically is true that in every case recognizing an agency's inherent reconsideration authority, a statute necessarily generically authorized judicial review of agency action. Otherwise, the case could never have been in court. If a generic judicial review provision were enough to preclude an agency from exercising inherent reconsideration authority, then the agencies in the above cases could not have had such authority—and indeed, an agency could never have inherent reconsideration authority whenever judicial review is available. The D.C. Circuit's jurisprudence plainly rejects such an approach.

---

no need to consider the question of inherent authority. *See Shaffer v. George Wash. Univ.*, 27 F.4th 754, 760 (D.C. Cir. 2022) (a party is "allowed to advance inconsistent and alternative theories").

It follows that a generic judicial review provision is not in itself "a mechanism capable of rectifying mistaken actions" that can preclude an agency from exercising inherent reconsideration authority. *Ivy Sports Med.*, 767 F.3d at 86; *see also* Bress, *supra*, at 1755-56 (explaining that if an action "is substantively incorrect, it can still always be challenged on these grounds regardless of whether reconsideration is allowed," while recognizing that this is not enough to preclude inherent reconsideration authority); *Chi. & N. W. Ry. Co. v. United States*, 311 F. Supp. 860, 872 (N.D. Ill. 1970) (Marovitz, J., dissenting) (arguing against inherent reconsideration authority because "[i]f the [agency's] error is serious, . . . then the aggrieved party may gain relief in court," a view that the majority rejected). For these reasons, 38 U.S.C. § 713's generic judicial review provision does not preclude Defendants from exercising inherent authority to reconsider the removal action.

3. Congress Had Not Otherwise Limited Defendants' Inherent Authority to Reconsider Actions Under 38 U.S.C. § 713

Finally, Congress has not otherwise limited Defendants' inherent authority to reconsider an action under 38 U.S.C. § 713. *Regan* offers an illustrative contrast. There, Congress foreclosed an agency from exercising inherent authority to reconsider certain regulatory actions by mandating that the agency "shall" take those actions. *Regan*, 67 F.4th at 401-04. 38 U.S.C. § 713, in contrast, contains no similar language constraining Defendants from reconsidering the removal action.

Trinka points to 38 U.S.C. § 713(b)(1)(A), which provides that "[a] covered individual who is the subject of an action . . . is entitled to . . . advance notice of the action and a file containing all evidence in support of the proposed action," but nothing in this provision prevents Defendants from exercising inherent authority to reconsider a removal action. And Defendants fully complied with this provision in amending the removal action. Defendants provided Trinka advance notice of the amended removal action through the amended removal proposal, along with a file containing all the evidence in support of the proposed removal action, including the interview recording, prior

to issuing the amended removal decision. AR 769-70, 991, 994. Trinka argues that Defendants had to take these steps "while he was still employed," Pl.'s Mot. at 7, but 38 U.S.C. § 713(b)(1)(A)'s plain language contains no such requirement. Nothing in the statute required Defendants to provide Trinka advance notice of an amended removal action or the evidence supporting such action while he was still employed. Once again, Trinka simply inserts such a "requirement" into the statute.

## II. <u>The Errors in the Initial Removal Decision Were Harmless</u>

The harmless error "rule requires the party asserting error to demonstrate prejudice from the error." *Combat Vets. for Cong. Pol. Action Comm. v. FEC*, 795 F.3d 151, 157 (D.C. Cir. 2015) (quotation marks omitted). "The party claiming injury bears the burden of demonstrating harm; the agency need not prove its absence." *Id.* An error is harmless "[i]f the agency's mistake did not affect the outcome." *PDK Labs. Inc. v. DEA*, 362 F.3d 786, 799 (D.C. Cir. 2004). The amended removal decision makes clear that the interview recording, retroactivity, and standard of proof errors in the initial removal decision were harmless, as Defendants made the same decision without any of these errors. *See Myersville Citizens for a Rural Cmty., Inc. v. Fed. Energy Regul. Comm'n*, 783 F.3d 1301, 1327 (D.C. Cir. 2015) (error harmless if nothing would be "done differently").

The amended removal action makes clear that any errors in the initial removal action were harmless even assuming for argument's sake that Defendants lacked authority to amend the initial action. The amended removal action, even if ultra vires, proves that Defendants would have made the same decision in the initial removal action even without any of the errors in the initial removal action. Whether Defendants actually had authority to amend the action does not change that fact.

Tellingly, Trinka does not even try to dispute that the errors in the initial removal action were harmless. Instead, he argues that the errors simply are not amenable to harmless error analysis at all. *See* Pl.'s Mot. at 4-5. This is so, he argues, for two reasons. First, he says, the harmless error rule does not apply to constitutional errors. Second, he says, no statute authorizes harmless error

review of the initial removal action because 38 U.S.C. § 713, unlike the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, does not contain a harmless error rule. Neither one of these points are correct. Supreme Court and D.C. Circuit precedent squarely holds that the harmless error rule applies to constitutional errors such as the due process errors at issue here are. And three separate provisions of law require Trinka to satisfy the harmless error rule to obtain relief—38 U.S.C. § 713 itself, Federal Rule of Civil Procedure ("Rule") 61, and 28 U.S.C. § 2111. For all these reasons, a harmless error rule applies to the initial removal action. And again, there is no meaningful dispute that the amended removal action renders harmless all the errors in the initial removal action.

### A. Constitutional Violations Are Amenable to Harmless Error Analysis

Trinka's argument that constitutional errors are not amendable to harmless analysis flouts well-settled precedent. The Supreme Court "has applied harmless error analysis to a wide range of errors, and has recognized that most constitutional errors can be harmless." *Arizona v. Fulminante*, 499 U.S. 279, 306 (1991); *see also United States v. Hasting*, 461 U.S. 499, 509 (1983) ("it is the duty of a reviewing court . . . to ignore errors that are harmless, including most constitutional violations"); *United States v. Smith*, 524 F.2d 1288, 1291 (D.C. Cir. 1975) ("Even clearly presented constitutional claims are subject to rules of harmless error."); *United States v. Gordon*, 829 F.2d 119, 127 n.9 (D.C. Cir. 1987) ("constitutional rights are subject to the harmless error analysis").

Indeed, the errors at issue were due process errors, and "[d]ue process challenges to agency action are subject to the general prejudicial error rule." *Myersville Citizens*, 783 F.3d at 1327; *see also Air Canada v. Dep't of Transp.*, 148 F.3d 1142, 1156 (D.C. Cir. 1998) ("a mid-course change in the assignment of the burden of proof" was harmless because although petitioners argued "that they were prejudiced when [agency] placed the burden of proof on them because they tailored their case to their initial understanding of the burden, they fail[ed] to explain how they were harmed"); *Landry v. FDIC*, 204 F.3d 1125, 1137 (D.C. Cir. 2000) (failure to produce evidence in enforcement

proceeding was "harmless error"); *Andrew G. Nelson, Inc. v. United States*, 355 U.S. 554, 561 (1958) ("any retroactive application" in administrative proceedings "could work no prejudice").

Trinka's argument to the contrary is meritless. He cites *Young v. Department of Housing & Urban Development*, 706 F.3d 1372, 1377 (Fed. Cir. 2013), but that Federal Circuit decision cannot trump D.C. Circuit precedent squarely holding that due process challenges to agency action are subject to the harmless error rule, *see Myersville Citizens*, 783 F.3d at 1327; *see also Laurel Baye Healthcare of Lake Lanier, Inc. v. Nat'l Lab. Rels. Bd.*, 564 F.3d 469, 476 (D.C. Cir. 2009) ("We are bound only by the decisions of our circuit and the Supreme Court."); *Scotts Valley Band of Pomo Indians v. Dep't of Int.*, 633 F. Supp. 3d 132, 145 (D.D.C. 2022) ("this Court is not bound by out-of-circuit authority, particularly when it is contrary to the binding precedent here"); *Liuksila v. Turner*, 351 F. Supp. 3d 166, 184 (D.D.C. 2018) ("Those decisions, however, no matter how persuasive, do not grant the court license to disregard D.C. Circuit precedent.").

Regardless, Trinka mischaracterizes *Young*, 706 F.3d at 1377, which did not hold that the harmless error rule never applies to "constitutional violations," as he inaccurately says. Pl.'s Mot. at 4. That case was limited to one specific type of due process error—introduction of impermissible ex parte communications during agency proceedings, and even then, only those communications that are "so substantial and so likely to cause prejudice that no employee can fairly be required to be subjected to a deprivation of property under such circumstances." *Young*, 706 F.3d at 1376. Nothing like that happened here—indeed, this Court already held that there was no impermissible ex parte communication. *See* Mem. Op. at 36-38. Even on its own terms, then, *Young* is inapposite.

**B. Three Provisions Require Trinka to Satisfy the Harmless Error Rule**

Trinka's argument that no statute authorizes harmless error review of the initial removal action likewise is meritless. Three separate provisions of law require Trinka to satisfy the harmless error rule to obtain relief—(1) 38 U.S.C. § 713 itself, (2) Rule 61, and (3) 28 U.S.C. § 2111.

1. 38 U.S.C. § 713 Itself Contains an Implicit Harmless Error Rule

Although 38 U.S.C. § 713, unlike the APA, does not expressly state that "due account shall be taken of the rule of prejudicial error," 5 U.S.C. § 706, four considerations demonstrate that 38 U.S.C. § 713 nonetheless contains an implicit harmless error rule. *First*, 38 U.S.C. § 713(b)(6) states that "the court shall review the record and *may* set aside any Department action found to be" erroneous—not that the court must set aside any action found to be erroneous. (emphasis added). "The word 'may' clearly connotes discretion." *Rudisill v. McDonough*, 601 U.S. 294, 310 (2024) (cleaned up); *accord Jennings v. Rodriguez*, 583 U.S. 281, 300 (2018) (stressing "the word 'may,' which implies discretion"); *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 533 (1994) ("The word 'may' clearly connotes discretion."). "That connotation is particularly apt where, as here, 'may' is used in contraposition to the word 'shall.'" *Jama v. Immigr. & Customs Enf't*, 543 U.S. 335, 346 (2005); *see* 38 U.S.C. § 713(b)(6) (court "shall" review the record but "may" set aside erroneous action).

A reviewing court thus need not vacate an erroneous action, but rather may, in appropriate circumstances, exercise its discretion to leave such an action in place. Although there is no need to catalogue every circumstance in which a court might exercise discretion under 38 U.S.C. § 713 to leave an erroneous action intact, common sense suggests that one such circumstance is where the error is harmless. The Supreme Court, after all, has recognized "the principle that courts should exercise judgment in preference to the automatic reversal for 'error' and ignore errors that do not affect [a proceeding's] essential fairness." *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 553 (1984); *see also Shinseki v. Sanders*, 556 U.S. 396, 408 (2009) (recognizing "a congressional preference" for "harmless error" rule). Indeed, because 38 U.S.C. § 713(b)(6) uses the discretionary term "may set aside" whereas the APA uses the mandatory term "[t]he reviewing court shall . . . hold unlawful and set aside," 5 U.S.C. § 706(2), Congress may have thought that including an express harmless error rule in 38 U.S.C. § 713 simply was unnecessary.

*Second*, 38 U.S.C. § 713's judicial review provision is modeled on that found in the CSRA, which long has been construed to contain an implicit harmless error rule even though it does not contain such a rule expressly. The CSRA's judicial review provision states that in reviewing final orders or decisions of the Merit System Protection Board ("MSPB"), "the court shall review the record and hold unlawful and set aside any agency action, findings, or conclusions found to be—

> (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
>
> (2) obtained without procedures required by law, rule, or regulation having been followed;
>
> (3) unsupported by substantial evidence[.]

5 U.S.C. § 7703(c). This provision is materially identical to that of 38 U.S.C. § 713(b)(6). Indeed, the only meaningful difference between these two provisions is that 38 U.S.C. § 713(b)(6), unlike the CSRA's judicial review provision, provides that a reviewing court "may," not shall, set aside an erroneous action, and thus expressly vests the court with discretion to leave such action in place.

Unlike the APA, the CSRA's judicial review provision does not expressly state that "due account shall be taken of the rule of prejudicial error," 5 U.S.C. § 706, or contain other language to that effect. Yet courts nonetheless have long construed the CSRA's judicial review provision to contain an implicit harmless error rule. *See Sistek v. Dep't of Vets. Affs.*, 955 F.3d 948, 953 (Fed. Cir. 2020) (affirming as employee "only identified harmless errors in [MSPB's] decision"); *Snyder v. Dep't of Navy*, 854 F.3d 1366, 1376 (Fed. Cir. 2017) (MSPB "did not commit reversible error" because "any such error would be harmless"); *Hoover v. Dep't of Navy*, 957 F.2d 861, 863 (Fed. Cir. 1992) (affirming because MSPB's "error was harmless"); *Curtin v. Off. of Pers. Mgmt.*, 846 F.2d 1373, 1379 (Fed. Cir. 1988) (requiring petitioner to "prove that [MSPB's] error caused substantial harm or prejudice to his rights which could have affected the outcome of the case");

*Graves v. Dep't of Air Force*, 494 F. App'x 68, 71 (Fed. Cir. 2012) (same); *Mouat v. Off. of Pers. Mgmt.*, 128 F. App'x 128, 131 (Fed. Cir. 2005) (affirming as MSPB's error was "harmless").

Congress thus enacted 38 U.S.C. § 713(b)(6) against a backdrop of decades of case law construing the CSRA's judicial review provision to contain an implicit harmless error rule. "When Congress used the materially same language in [38 U.S.C. § 713], it presumptively was aware of the longstanding judicial interpretation of the [language] and intended for it to retain its established meaning." *Lamar, Archer & Cofrin, Llp v. Appling*, 584 U.S. 709, 721-22 (2018); *see also Food Mktg. Inst. v. Argus Leader Media*, 588 U.S. 427, 439 (2019) ("Congress is aware of a definitive judicial interpretation of a statute when it reenacts the same statute using the same language"); *Helsinn Healthcare S. A. v. Teva Pharms. United States, Inc.*, 586 U.S. 123, 131 (2019); (when "settled . . . precedent" has fixed statute's meaning, courts "presume that when Congress reenacted the same language in [a new statute], it adopted the earlier judicial construction of that phrase"); *Bragdon v. Abbott*, 524 U.S. 624, 645 (1998) ("When . . . judicial interpretations have settled the meaning of an existing statutory provision, repetition of the same language in a new statute indicates, as a general matter, the intent to incorporate its . . . judicial interpretations as well.").

The case law construing the CSRA's judicial review provision would have been especially "definitive," *Food Mtkg. Inst.*, 588 U.S. at 439, and "authoritative," *In re North*, 50 F.3d 42, 45 (D.C. Cir. 1995), to Congress, as so much of this precedent came from the Federal Circuit, which plays a primary role in construing the CSRA. *See* 5 U.S.C. § 7703(b)(1), (c) (under CSRA, judicial review of MSPB decisions generally is channeled into the Federal Circuit with limited exceptions); *United States v. Fausto*, 484 U.S. 439, 449 (1988) ("the primacy of the MSPB for administrative resolution of disputes over adverse personnel action, and the primacy of the United States Court of Appeals for the Federal Circuit for judicial review," is a "structural element" of the CSRA).

*Third*, the harmless error rule was part of the "backdrop against which Congress enacted" 38 U.S.C. § 713, which Congress presumably incorporated into the statute. *Stewart v. Dutra*, 543 U.S. 481, 487 (2005). "It is a commonplace of statutory interpretation that Congress legislates against the backdrop of existing law." *Parker Drilling Mgmt. Servs., Ltd. v. Newton*, 587 U.S. 601, 611 (2019) (quotation marks omitted); *accord Lozano v. Alvarez*, 572 U.S. 1, 18 (2014) ("Congress is presumed to incorporate . . . the established backdrop of American law" in enacting statutes).

The harmless error rule was deeply established in American law by the time that Congress enacted 38 U.S.C. § 713. Congress enacted the first harmless error statute in 1919. *See* Act of Feb. 26, 1919, Pub. L. No. 65-281, 40 Stat. 1181, 1181. By the time that Congress enacted 38 U.S.C. § 713, the harmless error rule was embedded in the Federal Rules of Civil and Criminal Procedure, the statute governing appellate review, and the law of all fifty states. See Fed. R. Crim. P. 52(a); Fed. R. Civ. P. 61(a); 28 U.S.C. § 2111; *Chapman v. California*, 386 U.S. 18, 22 (1967) ("All 50 States have harmless-error statutes or rules"). Indeed, the APA's command that "due account shall be taken of the rule of prejudicial error" merely recognized and codified the preexisting harmless error rule, as its phrasing indicates. 5 U.S.C. § 706; *see also Air Canada*, 148 F.3d at 1157 ("As incorporated into the APA, the harmless error rule requires the party asserting error to demonstrate prejudice from the error."); Dep't of Just., Attorney General's Manual on the Administrative Procedure Act ("Attorney General's Manual") 110 (1947) (APA's "prejudicial error" rule "sums up in succinct fashion the 'harmless error' rule applied by the courts in the review of lower court decisions as well as of administrative bodies").[6] And "the venerable maxim de minimis non curat

[6] The Supreme Court often relies on the Attorney General's Manual in construing the APA, describing it as "a document whose reasoning we have often found persuasive." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 63 (2004) (collecting citations); *see also Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2262 (2024) (citing the Manual for the idea that the APA "merely 'restate[d] the present law as to the scope of judicial review'" (alterations in original)).

lex ('the law cares not for trifles') is part of the established background of legal principles against which all enactments are adopted, and which all enactments (absent contrary indication) are deemed to accept." *Wis. Dep't of Revenue v. William Wrigley, Jr.*, Co., 505 U.S. 214, 231 (1992).

38 U.S.C. § 713 contains no indication that Congress intended to abandon the harmless error rule in enacting it. To the contrary, there is good reason to presume that Congress intended to retain harmless error review under 38 U.S.C. § 713. After all, Congress enacted 38 U.S.C. § 713 to "make[ ] it easier for the [Department] to remove poor performing senior executives and replace them with qualified candidates." U.S. Senate Press Release, *supra*; *Helman*, 856 F.3d at 923 (same for prior version of the statute). Requiring a court to overlook harmless errors in 38 U.S.C. § 713 actions would serve the statute's purpose by allowing it to affirm a removal of a poorly performing employee who could identify only harmless error in his removal. Invalidating such actions due to harmless errors, in turn, would undermine the statute's purpose by requiring a court to invalidate the removal of a poorly performing employee who can identify only harmless error in his removal.

38 U.S.C. § 713's enactment history reinforces this conclusion. Until Congress amended 38 U.S.C. § 713 in 2017, a Senior Executive who was removed from the civil service or transferred out of the Senior Executive Service pursuant to the statute could appeal such actions to the MSPB. *See* 38 U.S.C. § 713(d)(2)(A) (2014); *Helman*, 856 F.3d at 923-25. In such MSPB proceedings, the employee could prevail in a challenge to an agency's procedural error only if he demonstrated that such error harmed him. *See* 5 U.S.C. § 7701(c)(2)(A) (employee can prevail only if he "shows harmful error in the application of the agency's procedures in arriving at such decision"); *Handy v. Postal Serv.*, 754 F.2d 335, 338 (Fed. Cir. 1985) ("It is insufficient simply to show that a statutory procedure was not followed at the agency level. Harmful error must be shown."). The idea that Congress, in amending 38 U.S.C. § 713, made it easier for Senior Executives to invalidate

personnel actions against them by relieving them of any need to show harm, as they previously needed to do in MSPB proceedings, is implausible. *See N.Y. State Dep't of Soc. Servs. v. Dublino*, 413 U.S. 405, 419-20 (1973) ("We cannot interpret federal statutes to negate their own stated purposes."); *United States v. Barnes*, 295 F.3d 1354, 1364 (D.C. Cir. 2002) ("A statute should ordinarily be read to effectuate its purposes rather than frustrate them." (quotation marks omitted)).

*Fourth*, and finally, the Federal Circuit has construed 38 U.S.C. § 713's sister statute, 38 U.S.C. § 714, to contain an implicit harmless error rule. Congress enacted 38 U.S.C. § 714 as part of the same legislation through which it amended 38 U.S.C. § 713 into its present form. *See* 2017 Act, § 202(a), 131 Stat. at 869 (enacting 38 U.S.C. § 714). 38 U.S.C. § 714, like 38 U.S.C. § 713, "provide[s] an expedited set of procedures by which the [Department] may remove, demote, or suspend [its] employees" for misconduct or performance. *Rodriguez v. Dep't of Vets. Affs.*, 8 F.4th 1290, 1297 (Fed. Cir. 2021); *accord Sayers v. Dep't of Vets. Affs.*, 954 F.3d 1370, 1374 (Fed. Cir. 2020) (38 U.S.C. § 714 sets out "a process for removing, demoting, or suspending [Department] employees for inadequate performance or misconduct"). 38 U.S.C. § 714 is similar to 38 U.S.C. § 713, but covers any "individual occupying a position at the Department" with certain exceptions such as—as relevant here—"an individual occupying a senior executive position" within 38 U.S.C. § 713(d)'s meaning. 38 U.S.C. § 714(h)(1)(A) (citing 38 U.S.C. § 713(d)).

As relevant, 38 U.S.C. § 714, like 38 U.S.C. § 713, does not contain an express harmless error rule, but the Federal Circuit nonetheless has construed it to contain such a rule implicitly. *See Mogil v. Dep't of Vets. Affs.*, 769 F. App'x 920, 923 (Fed. Cir. 2019) (concluding, on review of MSPB administrative law judge's ("ALJ") decision, that "any error in interpreting § 714 was harmless"); *Brenner v. Dep't of Vets. Affs.*, 990 F.3d 1313, 1325 n.6 (Fed. Cir. 2021) (same); *Hairston v. Dep't of Vets. Affs.*, 761 F. App'x 1005, 1009 (Fed. Cir. 2019) (petitioner failed to

show that MSPB ALJ committed error that "caused prejudice to the outcome of the proceeding"). Given that Congress enacted 38 U.S.C. §§ 713 and 714 through the same legislation to achieve the same purpose, it stands to reason that 38 U.S.C. § 713 contains an implicit harmless error rule too.

2. Rule 61's Harmless Error Rule Applies Here

Even if 38 U.S.C. § 713 did not contain a harmless error rule, Rule 61's harmless error rule would apply. "At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights." Fed. R. Civ. P. 61. Rule 61 applies to errors in agency proceedings. *See Shinseki*, 556 U.S. at 406 (explaining that prior to the APA's enactment, courts would apply Rule 61's "'harmless error' rule" in reviewing decisions of "administrative bodies" (quoting *Attorney General's Manual*, *supra*, at 110)); *Dolcin Corp. v. FTC*, 219 F.2d 742, 748 & n.8 (D.C. Cir. 1954) (applying Rule 61 to agency proceedings). By its plain terms, Rule 61 applies not only to in-court errors but also errors in "proceeding[s]," Fed. R. Civ. P. 61, a term that applies to proceedings "other than court actions," including "administrative proceedings" that precede a suit, as the Supreme Court had "little doubt" concluding. *N.Y. Gaslight Club, Inc. v. Carey*, 447 U.S. 54, 61 (1980). While the APA's enactment has largely obviated the need to rely on Rule 61's harmless error rule in cases involving challenges to agency action, Rule 61's harmless error rule continues to apply in cases, such as this, raising challenges to agency action that do are not subject to the APA. Accordingly, Rule 61 requires Trinka to satisfy the harmless error rule to obtain relief.

3. 28 U.S.C. § 2111's Harmless Error Rule Applies Here

Finally, 28 U.S.C. § 2111's harmless error rule applies here as well. "On the hearing of any appeal . . . in any case, the court shall give judgment . . . without regard to errors or defects which do not affect the substantial rights of the parties." 28 U.S.C. § 2111. A plaintiff files an APA suit in district court, but it "is actually a review proceeding rather than an original proceeding." *Harmon v. Thornburgh*, 878 F.2d 484, 495 n.19 (D.C. Cir. 1989) (quoting *Hameetman v. City of Chi.*, 776

F.2d 636, 640 (7th Cir. 1985)). As such, "when a party seeks review of agency action under the APA before a district court, the district judge sits as an appellate tribunal." *Rempfer v. Sharfstein*, 583 F.3d 860, 865 (D.C. Cir. 2009) (cleaned up, citing *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001)); *accord Gulf Restoration Network v. Haaland*, 47 F.4th 795, 799 (D.C. Cir. 2022) (same); *Brandenburg v. Dep't of State*, No. 23-5295, 2024 WL 2152116, at *1 (D.C. Cir. May 14, 2024) (same). 28 U.S.C. § 2111 thus applies to APA suits in the district court.

28 U.S.C. § 2111's harmless error rule is not limited to the U.S. Courts of Appeals, after all—it applies to "any appeal . . . in any case," even an "appeal" that is filed in district court when such cases arise. *See United States v. Gonzales*, 520 U.S. 1, 5 (1997) ("Read naturally, the word 'any' has an expansive meaning, that is, one or some indiscriminately of whatever kind" (quotation marks omitted)). Further, 28 U.S.C. § 2111 applies to petitions for review of agency action that are filed directly in the Courts of Appeals, *see, e.g.*, *Black v. Interstate Com. Comm'n*, 762 F.2d 106, 108, 119 (D.C. Cir. 1985), and any distinction between "a suit . . . in district court" and "a petition for review to the Court of Appeals" is not "especially relevant" because the APA "strongly suggests that the two avenues of review are analogous." *Harmon*, 878 F.2d at 495 n.19. As with Rule 61, the APA's enactment has largely obviated the need to rely on 28 U.S.C. § 2111's harmless error rule in cases raising challenges to agency action, but 28 U.S.C. § 2111's harmless error rule continues to apply in cases, such as this, raising challenges to agency action that are not subject to the APA. 28 U.S.C. § 2111 thus requires Trinka to satisfy the harmless error rule to obtain relief.

## III. An Agency May Cure a Defective Removal Without Reinstating the Employee First

Trinka appears to argue that an agency cannot cure a defective removal without reinstating the employee first, but there simply is no such rule. The relevant "analysis begins with the statutory text." *Miss. ex rel. Hood v. Au Optronics Corp.*, 571 U.S. 161, 168 (2014). As explained, 38 U.S.C. § 713(b)(6) states that a reviewing court "may set aside" an erroneous action, not that a court must

do so. The statute's use of the word "may" connotes the discretion to leave an erroneous action in place in proper circumstances. *See supra* § I; *Rudisill*, 601 U.S. at 310; *Jennings*, 583 U.S. at 300; *Jama*, 543 U.S. at 346; Fogerty, 510 U.S. at 533; That alone precludes Trinka's argument that a court has no choice but to set a removal aside when it concludes that the action was erroneous. *See Culbertson v. Berryhill*, 586 U.S. 53, 58 (2019) ("We begin with the language of the statute itself, and that is also where the inquiry should end, for the statute's language is plain." (cleaned up)).

Two background legal principles against which Congress enacted 38 U.S.C. § 713 buttress this conclusion. *First*, it is well-settled that reinstatement, being an equitable and thus discretionary remedy, is not available as a matter of right. *See Webb v. District of Columbia*, 146 F.3d 964, 976 (D.C. Cir. 1998) ("Whether reinstatement is indeed appropriate may be determined only after careful consideration of the circumstances of a particular case."); *Mazaleski*, 562 F.2d at 721 n.47, 722 (D.C. Cir. 1977) ("reinstatement" is an "equitable remedy" that was "not justified by the circumstances"). 38 U.S.C. § 713 contains no hint that Congress intended to displace this principle by requiring courts to reinstate employees automatically whenever they conclude that challenged actions are erroneous. Indeed, as noted earlier, it would be surprising if Congress chose to displace this rule in enacting 38 U.S.C. § 713, given that Congress enacted the statute to make it easier, not harder, to remove employees. *See supra* § II.B.1. Thus, the mere fact that an employee's removal was legally flawed does not mean that the employee's reinstatement necessarily is required.

*Second*, although the APA states that "[t]he reviewing court shall . . . hold unlawful and set aside [an erroneous] agency action," 5 U.S.C. § 706(2), the D.C. Circuit has held that a court nonetheless has the authority to "remand to the agency without vacatur in certain circumstances," *Cboe Futures Exch. v. SEC*, 77 F.4th 971, 982 (D.C. Cir. 2023); *see also Allied-Signal, Inc. v. Nuclear Regul. Comm'n*, 988 F.2d 146, 150 (D.C. Cir. 1993) ("An inadequately supported rule,

however, need not necessarily be vacated”). It would be odd if a court had authority to remand without vacatur under the APA, which uses the mandatory term “shall,” 5 U.S.C. § 706, but lacked any authority to remand without vacatur under 38 U.S.C. § 713(b)(6), which uses the permissive, discretion-conferring term “may,” and which Congress enacted, after all, to “make[ ] it easier for the [Department] to remove poor performing senior executives.” U.S. Senate Press Release, *supra*; *Helman*, 856 F.3d at 923 (same for prior version of 38 U.S.C. § 713).

Trinka’s contrary argument relies on a trio of inapposite decisions: *Vitarelli v. Seaton*, 359 U.S. 535 (1959), *Greene v. United States*, 376 U.S. 149 (1964), and *Esparraguera v. Department of Army*, 101 F.4th 28 (D.C. Cir. 2024). As explained below, none of these cases held that an agency cannot cure a defective removal action until it first reinstates the employee.

### A. *Vitarelli* is Inapposite

*Vitarelli* did not hold or even suggest that an agency cannot cure a defective removal action without first reinstating the employee. To the contrary, *Vitarelli* expressly acknowledged the exact opposite—i.e., that an agency can properly cure a defective removal action without first reinstating the employee. Although *Vitarelli* concluded that the agency had not properly cured the defective removal action at issue, its reasoning was highly fact-specific, eschewing broad categorical rules. Most importantly for present purposes, *Vitarelli* did not involve, and therefore did not address, the situation that is present here—i.e., one where the second removal action satisfied all the procedural requirements that the first removal action did not satisfy. And to the extent there is any lingering doubt as to whether *Vitarelli* requires an agency to reinstate an employee before curing a defective removal action, the D.C. Circuit has conclusively answered that question in the negative. Federal Circuit case law is in accordance. For all these reasons, *Vitarelli* does not support Trinka’s position.

In *Vitarelli*, 359 U.S. at 538-39, the agency had authority to remove an employee in two ways: (1) for national security reasons, subject to certain procedural rules, or (2) in a summary

fashion, without any procedural requirements at all. The agency removed an employee for national security reasons, but did not satisfy the applicable procedural rules. *Id.* at 538-45. The agency later issued a second notice of removal that "was identical" to the first notice "except that it omitted any reference to the [national security] reason for [the employee's] discharge." *Id.* at 538. The second removal action did not satisfy the procedural rules for national security removals any more than the first action did, but the agency argued that those rules did not apply because the removal action had relied on its summary removal authority, not its national security removal authority. *Id.* at 545.

The Court rejected this argument, determining that the agency had exercised its national security removal authority, not its summary removal authority, in taking the second action—and thus, had to satisfy the applicable procedural rules. *Vitarelli*, 359 U.S. at 545-46. But the Court did not hold that the agency could never cure a defective removal action without first reinstating an employee. To the contrary, it stated that the agency "could at any time after" the first action "have validly dismissed [the employee] without any statement of reasons, and independently of [first] proceedings," using its "summary dismissal power." *Id.* at 545. The problem was that the agency had not in fact exercised its summary removal authority in taking the second removal action—not that it could not do so. *Id.* Because the second action, like the first action, had relied on the agency's national security removal authority rather than its summary removal authority but did not satisfy the procedural rules that apply to national security removals, it was invalid too. *Id.* at 546.

*Vitarelli* thus did not hold, as Trinka claims, that an agency cannot cure a defective removal action without first reinstating the employee. To the contrary, the Court acknowledged the precise opposite—that the agency could have removed the employee at any time after the initial removal action without first reinstating him, simply by exercising its summary removal authority. *Vitarelli*,

359 U.S. at 545. The problem was not that the agency did not possess such authority; the problem was that the agency had not used such authority. *See id.* at 545-46. It could have, but it did not. *Id.*

The Court's conclusion that the agency had not cured the defect in the initial removal action was intensely fact-specific and limited to "these circumstances"—it did not turn on any categorical rules. *Vitarelli*, 359 U.S. at 546. The Court stressed that the second removal action "was identical" to the first action except that it omitted any mention of the national security reasons for the action. *Id.* at 538. The agency took the second action in October 1956, but it "was dated '9-21-54'"—the date of the first action over two years earlier—and "contained a termination of employment date of '9-10-54,'" the date on which the first action took effect. *Id.* at 545. Indeed, the agency had filed the second notice of removal in district court before even giving it to the employee. *Id.* at 545-46. And of course, *Vitarelli* did not address 38 U.S.C. § 713, which Congress enacted decades later.

The circumstances here could not be more different. The amended removal decision is not "identical," *Vitarelli*, 359 U.S. at 538, to the initial removal decision—it was written from scratch, by a different Deciding Official who did not participate in the first action, and contains differences in reasoning. *Compare* AR 529 *with* AR 994. For example, it applied only the preponderance of the evidence standard, not the substantial evidence standard; did not consider evidence predating the current version of 38 U.S.C. § 713's enactment; and issued only after Trinka had received a recording of his interview. AR 994. It contained a new analysis of the appropriate penalty in light of the relevant aggravating and mitigating factors. AR 995-98. It addressed arguments that Trinka had raised for the first time in his response to the amended removal proposal, i.e., that he had not raised in his response to the initial removal proposal. AR 998-99. It is dated March 21, 2024, not the date of the initial removal action. AR 994. And Defendants delivered it to Trinka before filing it in court (indeed, they have not yet filed it in court). AR 994. Likewise, the amended removal

proposal was written from scratch by a new Proposing Official who did not participate in the initial removal action, applied the preponderance of the evidence standard, did not consider evidence that predated the current version of 38 U.S.C. § 713's enactment, and contained a new analysis of the appropriate penalty in light of all the relevant factors. AR 763-70. Finally, Trinka received a new opportunity to present arguments and evidence before the amended removal decision issued. AR 769, 992-93, 998-99. None of "these circumstances" were true in *Vitarelli*, 359 U.S. at 546.

Most importantly for present purposes, *Vitarelli* did not involve the situation that is present here—namely, a second removal action that satisfies all the procedural requirements that the first action did not satisfy. *Vitarelli* thus did not address the dispositive issue here: i.e., whether a second removal action that satisfies all the procedural requirements that the first action did not satisfy (1) moots any challenge to the initial action or (2) makes clear that any errors in the initial action were harmless by showing that the agency would have reached the same decision even without any such errors. *See supra* §§ I-II. In *Vitarelli*, 359 U.S. at 545-46, there was no doubt that the agency had the authority—its summary removal authority—to redo, and thus cure the error in, the first removal action; it simply had not used this authority. Nor did the Court address the issue of harmless error—the errors in the first action clearly were not harmless because the second action did not satisfy the applicable procedural requirements either. Because *Vitarelli* did not address either of these issues, let alone both issues, it is inapposite. *See Viteralli*, 359 U.S. at 546 (limiting its holding to "these circumstances"); *Buford v. United States*, 532 U.S. 59, 65-66 (2001) (a "fact-bound . . . precedent . . . may provide only minimal help when other courts consider other procedural circumstances"); *Brooks v. Marbury*, 24 U.S. (11 Wheat.) 78, 91 (1826) ("An opinion in a particular case, founded on its special circumstances, is not applicable to cases under circumstances essentially different.").

Were there any lingering doubt about whether *Vitarelli* requires an agency to reinstate an employee before it can cure a defective removal action, the D.C. Circuit has conclusively answered that question in the negative. In *Ireland v. Shultz*, 829 F.2d 1189, 1191-92 (D.C. Cir. 1987), the D.C. Circuit rejected the notion that *Vitarelli* "entitle[s]" an employee to "reinstatement . . . until such time as he has been lawfully terminated," holding that whether reinstatement is appropriate instead depends on "the specific circumstances of [the] case," not inflexible categorical rules. And in *Mazaleski*, 562 F.2d at 721-22, the D.C. Circuit cited *Vitarelli* to "conclude that reinstatement" of an employee whose removal was erroneous "is not justified by the circumstances," and thus refused to "require that [the agency] reinstate" him "before a decision on the merits of [his] appeal . . . during the pendency of the reopened proceedings." As such, the D.C. Circuit has conclusively interpreted *Vitarelli*, foreclosing Trinka's argument that *Vitarelli* requires Defendants to reinstate him prior to curing the first removal action. *See Save Jobs USA v. Dep't of Homeland Sec.*, 111 F.4th 76, 80 (D.C. Cir. 2024) (a D.C. Circuit case "was decided after" a Supreme Court case, "[s]o the relationship between those two cases was [the prior D.C. Circuit's panel] legal issue, not ours").

Federal Circuit case law is in accordance. The Federal Circuit has "decline[d] to extend the principle applied in *Vitarelli*" to a "wholly different factual situation," *Certain Former CSA Emps. v. Dep't of Health & Hum. Servs.*, 762 F.2d 978, 984 (Fed. Cir. 1985), and expressly "disapproved of" the notion "that an employee who has been removed cannot be removed again until restored to his prior position," *Coy v. Dep't of Treasury*, 43 F.4th 1334, 1339 n.3 (Fed. Cir. 2022), as Trinka argues here. Simply put, there is no support for Trinka's overbroad reading of *Vitarelli*. As such, *Vitarelli* does not require Defendants to reinstate Trinka prior to curing the initial removal action.

**B. *Greene* is Inapposite**

*Greene* is even further afield.[7] There, the Supreme Court said that "where the Government has acted without authority in causing the discharge of an employee without providing adequate procedural safeguards, we should be reluctant to conclude that a regulation, not explicitly so requiring, conditions restitution on a retrospective determination of the validity of the substantive reasons for the Government action—reasons which the employee was not afforded an adequate opportunity to meet or rebut at the time of his discharge." *Greene*, 376 U.S. at 162. Put simply, *Greene* held that the regulation at issue did not contain a harmless error rule. *Id.* This does nothing to help Trinka for two reasons, both of which flow from the fact that Defendants have amended the removal action to satisfy all the procedural requirements that the initial action did not satisfy.

*First*, although the regulation at issue in *Greene* did not contain a harmless error rule, 38 U.S.C. § 713, Rule 61, or 28 U.S.C. § 2111, each do contain a harmless error rule, and all of them apply here. Thus, while the harmless error rule did not apply in *Greene*, it applies here. *See supra* § II.B. And the errors in the initial removal action were harmless, as the amended removal decision makes clear that Defendants would have made the same decision even without those errors. *See supra* § II. *Second*, the claim in *Greene* was not moot because the challenged action remained in effect, while Trinka's claims are moot because he challenges only the initial removal action, which the amended removal action has replaced and superseded. *See supra* § I. *Greene* thus is inapposite.

**C. *Esparraguera* is Inapposite**

Finally, *Esparraguera* is even less relevant. There, the D.C. Circuit concluded only that an employee had a property interest in her Senior Executive Service position and received inadequate

---

[7] While Trinka claims that *Greene* "subsequently reiterated [*Vitarelli*'s] holding," Pl.'s Mot. at 7, *Greene* did not even cite or discuss *Vitarelli*, much less reiterate *Vitarelli*'s holding.

process when she was removed from the Senior Executive Service (but not removed from federal service entirely)—nothing more. *Esparraguera*, 101 F.4th at 39. Neither of those two points are in dispute here. Defendants have never disputed that Trinka had a protected interest in his position, and do not take issue with this Court's conclusion that the initial removal action did not satisfy due process principles. But the issues here are different—whether the amended removal action, which superseded the initial action, means that (1) Trinka's challenges to the initial action are moot and (2) any errors in the initial action were harmless because Defendants plainly would have made the same decision even without such errors. Nothing in *Esparraguera* addressed either of these points.

## IV. <u>The Amended Removal Action Comports With the Appointments Clause</u>

Trinka's argument that the amended removal action violates the Appointments Clause is meritless. According to Trinka, the amended removal action is unconstitutional because the new Proposing Official and Deciding Official "are not constitutionally authorized to overrule a prior, final decision made by the Presidential-appointed and Senate-confirmed Secretary." Pl.'s Mot. at 8. But the Secretary himself delegated authority for the Proposing Official and Deciding Official to undertake the amended removal action, AR 1001-03, so the Proposing Official and the Deciding Official's actions necessarily do not contravene the Secretary's will.

Federal law expressly empowered the Secretary to delegate authority to take the amended removal action to the Proposing Official and the Deciding Official. "Except as otherwise provided by law, the Secretary may assign functions and duties, and delegate, or authorize successive redelegation of, authority to act and to render decisions, with respect to all laws administered by the Department, to such officers and employees as the Secretary may find necessary. Within the limitations of such delegations, redelegations, or assignments, all official acts and decisions of such officers and employees shall have the same force and effect as though performed or rendered by the Secretary." 38 U.S.C. § 512(a). The Secretary exercised this statutory power in delegating

authority to the Proposing Official and Deciding Official to undertake the amended removal action. *See Rodriguez*, 8 F.4th at 1304 ("the Secretary's delegation of removal and disciplinary authority" under 38 U.S.C. § 714 to inferior official "is a lawful delegation"); *In re Grand Jury Investigation*, 916 F.3d 1047, 1056 (D.C. Cir. 2019) ("statutes may temporarily authorize an officer or employee to perform the functions and duties of a specified office"); *Shook v. D.C. Fin. Resp. & Mgmt. Assistance Auth.*, 132 F.3d 775, 784 n.6 (D.C. Cir. 1998) ("We often have upheld an agency head's ability to delegate duties to subordinate officers"); *cf. Al Bahlul v. United States*, 967 F.3d 858, 873 (D.C. Cir. 2020) (a "statute's conferral of the power to designate the Convening Authority was sufficient to vest the Secretary with the constitutional power to appoint an inferior officer").

## V. Trinka Has Forfeited His Remaining Arguments

In the final sentence of the final paragraph of his argument, Trinka states that he "reasserts both his prior prevailing arguments and the arguments that this Court previously declined to address, including: Defendants failed to provide constitutionally adequate post-deprivation due process and an evidentiary hearing, the removal action was not in accordance with law, the removal action was arbitrary and capricious, and the removal action was not supported by substantial evidence." Pl.'s Mot. at 9 (citations omitted). But this single threadbare, cursory sentence is wholly insufficient to raise any of the referenced arguments. Accordingly, Trinka forfeits these arguments.

"A party forfeits an argument by mentioning it only in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones." *Gov't of Manitoba v. Bernhardt*, 923 F.3d 173, 179 (D.C. Cir. 2019) (quotation marks omitted); *see also Ramos v. Garland*, 77 F.4th 932, 940 (D.C. Cir. 2023) (declining to hear "skeletal and inadequately developed arguments"); *AT&T Corp. v. FCC*, 970 F.3d 344, 351 (D.C. Cir. 2020) ("a litigant does not properly raise an issue by addressing it in a cursory fashion with only bare-bones arguments" (cleaned up)); *Hall v. District of Columbia*, 867 F.3d 138, 152 n.1 (D.C. Cir. 2017) ("Without any

arguments advancing the disputed claims, such blanket, conclusory assertions are insufficient to preserve them”). Trinka’s bald, conclusory assertions and citations to his prior summary judgment moving papers from several years ago thus are insufficient to preserve his arguments.

Nor may Trinka simply incorporate the arguments that he raised in his earlier summary judgment moving papers into his motion to set aside agency action. Courts “ordinarily reject a party’s attempt to evade this rule by incorporating by reference an argument made at an earlier stage of the litigation.” *Al-Tamimi v. Adelson*, 916 F.3d 1, 6 (D.C. Cir. 2019); *see also Gerlich v. Dep’t of Just.*, 711 F.3d 161, 173 (D.C. Cir. 2013) (party waived an argument by purporting to incorporate it from earlier stage of proceedings). That is for good reason: “judges are not like pigs, hunting for truffles buried in the record.” *Murthy v. Missouri*, 144 S. Ct. 1972, 1991 n.7 (2024) (cleaned up). Consequently, Trinka has forfeited these arguments.

**CONCLUSION**

This Court should grant Defendants summary judgment.

Dated: October 1, 2024
Washington, DC

Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

By: *___/s/ Bradley G. Silverman___*

BRADLEY G. SILVERMAN
D.C. Bar #1531664
Assistant United States Attorney
601 D Street NW
Washington, DC 20530
(202) 252-2575
bradley.silverman@usdoj.gov

*Attorneys for the United States of America*