UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JAMES TRINKA,<br><br>Plaintiff,<br><br>v.<br><br>DENIS McDONOUGH,<br>Secretary of Veterans Affairs, et al.,<br><br>Defendants. | Civil Action No. 21-2904 (RC) |

**PLAINTIFF'S REPLY IN SUPPORT OF HIS RENEWED MOTION TO SET ASIDE THE UNLAWFUL & UNCONSTITUTIONAL AGENCY ACTION**

Ever since the passage of the Civil Service Reform Act and creation of the Senior Executive Service in 1978, the remedy for the government's failure to provide meaningful notice and an opportunity to respond in violation of the Due Process Clause is to set aside the unconstitutional action and return the employee to the *status quo ante*. ECF No. 39-1 at 7-8, ECF No. 41 at 12-13 (citing *Johnson v. Dep't of Air Force,* 50 F.4th 110, 117 (Fed. Cir. 2022), *Stone v. Fed. Deposit Ins. Corp.*, 179 F.3d 1368, 1377 (Fed. Cir. 1999), and *Ward* v. *U.S. Postal Serv.,* 634 F.3d 1274, 1278-79 (Fed. Cir. 2011)). For good reason. Fundamental constitutional rights, like the right to meaningful notice and an opportunity to respond *before* a government taking, are not optional or subject to the "harmless error" test.

Defendants in their Opposition to Plaintiff's Motion to Set Aside Agency Action ignore *Johnson*, *Stone*, *Ward* and decades of related Supreme Court precedent in *Hamdi v. Rumsfeld,* 542 U.S. 507 (2004), *Fuentes v. Shevin*, 407 U.S. 67 (1972) and *Armstrong v. Manzo*, 380 U.S. 545 (1965), all holding that governmental takings without constitutionally adequate notice and

opportunity to respond are legally void actions that must be set aside. This Court cannot ignore this binding precedent.

Defendants' *post hoc* amendments to their unconstitutional action are no substitute for meaningful pre-deprivation due process. They do not cure the constitutional violations Trinka suffered in 2020. The so-called amendments did not even alter the parties' legal relationship. The Secretary's 2020 removal action was "final and conclusive," not subject to subsequent amendment by inferior officers in 2024. "Advance notice" of all the reason and evidence cannot be provided retrospectively. Contrary to the Defendants' arguments, the plain language of 38 U.S.C. § 713 means what it says. Congress intentionally chose to omit the "harmless error" test from Section 713 actions. Besides, this Court is ill-suited under the circumstances to determine the extent of Trinka's harm.

Defendants in 2020 violated the Fifth Amendment and Section 713 to Trinka's detriment. Trinka identified these violations before the removal was effectuated, and again immediately after it was effectuated. This Court determined last year that Defendants violated Trinka's fundamental right to due process. Yet, Defendants still refuse to afford Trinka fair and meaningful due process. The Department of Veterans Affairs Accountability and Whistleblower Protection Act (DVAAWPA) authorized this Court to review and set aside unconstitutional actions, like Trinka's 2020 removal. It's time for this Court to hold Defendants accountable and set aside the unconstitutional and unlawful 2020 action.

## I. "FINAL AND CONCLUSIVE" ACTIONS MAY NOT BE AMENDED.

The Secretary's "last word" on Trinka's removal in 2020, ECF No. 24 at 34, was "final and conclusive." 38 U.S.C. § 713(b)(4). Ignoring the plain language of Section 713, Defendants believe an inferior officer can, in 2024, "amend" the Secretary's decision effectuated in 2020.

Defendants claim the "inherent authority" to amend a "final and conclusive" action years afterwards. The text of Section 713 says otherwise. The 2024 amendments were unauthorized by law, a charade designed to dispose of this litigation, not to provide Trinka constitutional process. ECF No. 39-1 at 9-12.

When reviewing Section 713, this Court must "assum[e] that the ordinary meaning of that language accurately expresses the legislative purpose." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 175 (2009) (internal citation and quotation marks omitted). Courts "must enforce plain and unambiguous statutory language according to its terms." *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 251 (2010), *citing Carcieri v. Salazar*, 555 U.S. 379, 387 (2009) (additional citation omitted). The language of the statute "must ordinarily be regarded as conclusive." *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102 (1980). Indeed, "in interpreting a statute a court should always turn to one cardinal canon before all others…courts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253-254 (1992) (internal citations omitted). "After all, only the words on the page constitute the law adopted by Congress and approved by the President. If judges could add to, remodel, update, or detract from old statutory terms inspired only by extratextual sources and our own imaginations, we would risk amending statutes outside the legislative process reserved for the people's representatives. And we would deny the people the right to continue relying on the original meaning of the law they have counted on to settle their rights and obligations." *Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644, 654–55 (2020) (internal citations omitted).

Section 713 plainly states that the Secretary's decision to uphold Trinka's removal in 2020 was "final and conclusive." 38 U.S.C. § 713(b)(4). The definition of "final" is "not to be

altered or undone."[1] The definition of "conclusive" is "of, relating to, or being a conclusion."[2] Given the meaning of the unambiguous language, the statute is clear. When a Section 713 action is taken, it is "not to be altered or undone" *unless* a reviewing court decides to set it aside. 38 U.S.C. § 713(b)(6). It is axiomatic that something "conclusive and final" cannot be amended afterwards. *See Colautti v. Franklin*, 439 U.S. 379, 392 (1979) ("Appellants' argument…would make either the first or the second condition redundant or largely superfluous, in violation of the elementary canon of construction that a statute should be interpreted so as not to render one part inoperative.")

Other language in Section 713 leads to the same inevitable conclusion. *See Duncan v. Walker*, 533 U.S. 167, 174 (2001) ("This Court's duty to give effect, where possible, to every word of a statute…makes the Court reluctant to treat statutory terms as surplusage.") Section 713 is a VA employee discipline statute. It authorizes the Secretary to "suspend, involuntarily reassign, demote, or remove a covered individual" only applies to current appointees. 38 U.S.C. § 713(a). A "career appointee" can be either "an individual *in a Senior Executive Service position* whose appointment to the position…was based on approval by the Office of Personnel Management of the executive qualifications of such individual," 38 U.S.C. § 713(d)(1)(A) and 5 U.S.C. § 3132(a)(4) (emphasis added), or "any individual *who occupies* an administrative or executive position and who was appointed under section 7306(a), section 7401(1), or section 7401(4) of [Title 38]." 38 U.S.C. § 713(d)(1)(A) (emphasis added). Trinka met the first definition until his removal in 2020. He was not *in a Senior Executive Service position*, or even in the

[1] "Final." Merriam-Webster.com Dictionary, Merriam-Webster, https://www.merriam-webster.com/dictionary/final. Accessed 9 Oct. 2024.

[2] "Conclusive." Merriam-Webster.com Dictionary, Merriam-Webster, https://www.merriam-webster.com/dictionary/conclusive. Accessed 9 Oct. 2024.

Senior Executive Service, in 2024 at the time of the amendment charade. Assuming the ordinary meaning of this text, only current employees can be "an individual *in* a Senior Executive Service position," or be one "who *occupies* an administrative or executive position"—and thus subjected to a Section 713 action. The Secretary cannot "suspend" the pay and benefits of someone who does not receive pay and benefits from the VA. The Secretary cannot "involuntarily reassign" to a new position someone who is not employed in position at the VA from which to be reassigned. The Secretary cannot "demote" someone to a lower pay and/or a lower grade when they do not have a grade and do not receive pay. Likewise, the Secretary cannot "remove" someone, like Trinka in 2024, from the federal service when he is not in the federal service. It is not just the plain meaning of the text of the statute that demands this conclusion – it is common sense.

Absent any statutory text permitting the amendments charade, Defendants declare "inherent" authority to take Section 713 actions against a former employee. (This would surely be a surprise to all the former VA employees in our country). Defendants' baseless argument focuses largely on the supposed congressional intent, an approach disfavored by the courts when statutory language is unambiguous. *See Performance Coal Co. v. Federal Mine and Health Review Comm'n*, 642 F.3d 234, 238 (D.C. Cir. 2011) ("Because congressional intent is best divined from the statutory language itself, resort to legislative history is inappropriate when the statute is unambiguous.") Defendants suggest that it "is particularly implausible that Congress intended to force Defendants to welcome an individual whom they previously removed… back into the Senior Executive Service." ECF No. 42 at 29. But that is exactly what Congress did. Section 713 provides SES for-cause protections, creates a property interest in the SES appointment, mandates certain pre-deprivation process, affords the right to judicial review, and

granted this Court the authority to "set aside" unjustified and unwarranted actions. *See* 38 U.S.C. § 713(a)-(b).

Defendants argue that the statutory language affording "a covered individual adversely affected by a decision" the right to seek judicial review means that a "covered individual" must mean former employees, or else there would be no right to judicial review. ECF No. 42 at 27. This is nonsense. A covered individual is adversely affected when the suspension, demotion, reassignment or removal is effectuated, or while the individual is still employed. Someone who is not employed by the VA cannot possibly be "adversely affected" by a personnel action taken by an agency that is not their employer. Here, only the unconstitutional 2020 removal action adversely affected Trinka. The 2020 action, not the 2024 amendment, ended Trinka's employment and deprived his property interest. The so-called "amended action" did not adversely affect Trinka at all, because it did not alter his employment relationship with the VA in any way. Only the 2020 removal altered that relationship.

Defendants' reliance on *Robinson v. Shell Oil Co*., 519 U.S. 337 (1997), for the proposition that the Secretary can take Section 713 actions against former employees, is misplaced. The Supreme Court in *Robinson* explained based on the text of the statute that the term "employee" in Title VII can mean a former employee for some parts of the statute, but "there are sections of Title VII where, in context, use of the term 'employee' refers unambiguously to a current employee, for example, those sections addressing salary or promotions." *Robinson*, 519 U.S. at 343. If portions of Title VII addressing an employee's salary or promotion can only apply to current employees, then Section 713 too can only apply to current employees. According to *Robinson*, then, an employer cannot take personnel actions

relating to salary or promotion against a former employee. Neither can the Secretary take Section 713 actions against former employees.

Defendants' reliance on *Davis v. Michigan Dep't of Treasury*, 489 U.S. 803 (1989) and *DiBacco v. Dep't of the Army*, 926 F.3d 827, 834 (D.C. Cir. 2019) fare even worse. Both are readily distinguishable. *Davis* interpreted a statute prohibiting discriminatory taxation of federal civil servants, whether the taxes were imposed on a current employee's salary or a former employee's pension. The statute at issue in *DiBacco* shields the disclosure of information of "personnel employed by the [Central Intelligence Agency]." 50 U.S.C. § 3507. The D.C. Circuit held in *DiBacco* that "the plain text [of the word 'employed'] could just as easily be read to refer to past employment as to ongoing employment" given the statute's purpose to protect against disclosure of the identity of clandestine intelligence sources. *Dibacco*, 926 F.3d at 836. Unlike the statutes in *Davis* and *DiBacco*, nothing about the plain text of Section 713 can be read to apply to former employees like Trinka.

Defendants also proffer the backwards view that because the statute does not expressly prohibit amending removal action years afterwards, the Secretary is free to do so.[3] Article II of the Constitution and separation of powers principles preclude this theory. As explained by the White House: "The President is responsible for implementing and enforcing the laws written by Congress and, to that end, appoints he heads of federal agencies, including the Cabinet … The Cabinet and independent federal agencies are responsible for the day-today enforcement and administration of federal laws." *The Executive Branch*, whitehouse.gov, https://www.whitehouse.gov/about-the-white-house/our-government/the-executive-

[3] Section 713 does not explicitly prohibit corporal punishment either. Because Section 713 does not expressly prohibit it, it begs the question whether Defendants believe the Secretary may dole out physical punishment, too.

branch/#:~:text=Under%20Article%20II%20of%20the,administration%20of%20the%20federal %20government (last visited Oct. 22, 2024). Defendants flip this constitutional structure on its head. They believe the Secretary can do whatever he wants, *unless* Congress passes a law to reign in his limitless power. This Court must reject this erroneously expansive view of executive branch power. The executive branch may not rewrite statutes to justify a particular result. *See Virginia Uranium, Inc. v. Warren,* 587 U.S. 761, 765 (2019) ("[A]s in any field of statutory interpretation, it is our duty to respect not only what Congress wrote but, as importantly, what it didn't write.")

A. "Advance Notice" Cannot Be Given After an Action is Effectuated.

The plain meaning of the statutory requirement for the Secretary to give "advance notice" before taking a Section 713 action further exposes the Defendants' so-called amendments as a charade. Trinka was entitled to "advance notice of the action and a file containing all evidence in support of the proposed action." 38 U.S.C. § 713(b)(1)(A). He did not receive "advance notice" before his removal was effected in 2020. Moving the goalposts away from the unlawful 2020 action that ended Trinka's employment, Defendants now claim: "[n]othing in the statute required Defendants to provide Trinka advance notice of an amended removal action or the evidence supporting such action while he was still employed." ECF No. 42-1 at 24. This argument rests on Defendants' erroneous belief that the Secretary can retroactively amend the reasons and evidence for Section 713 actions years after effectuation. Defendants' view is contrary to the statutory text. Absent time travel, the government cannot provide meaningful pre-deprivation due process and "advance notice" in 2024, of the evidence and reasons for Trinka's removal effectuated years ago in 2020.

B. <u>The 2020 Removal Action is Not Moot</u>.

In addition to being unauthorized by law or policy, the so-called "amended decision" is also legally meaningless. It did not alter the relationship between the Parties. It did not undo or alter the 2020 removal action, or moot this litigation. The so-called "amendments" are no more than *post hoc* rationalization and extra-record evidence created solely to try to gain a litigation advantage. It should not be entertained. *Cf Motor Vehicle Mfrs. Ass'n of US., Inc. v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 50 (1983) *(citing Burlington Truck Lines, Inc. v. US.,* 371 U.S. 156, 168 (1962)) ("the courts may not accept [the government's] *post hoc* rationalizations for agency action"); *Vermont Yankee Nuclear Power Corp. v. Nat. Res. Def Council, Inc.,* 435 U.S. 519, 549 (1978) ("[W]hen there is a contemporaneous explanation of the agency decision, the validity of that action must stand or fall on the propriety of that finding . . . If that finding is not sustainable on the administrative record made, then the [agency's] decision must be vacated") (internal quotations and citations omitted). Notwithstanding, Defendants' Opposition parrots the same erroneous mootness argument Plaintiff's proffered in the Second Motion for Summary Judgment. *Compare* ECF No. 42 *with* ECF No. 40-1 at 15-17. Trinka will not repeat why Defendants' argument fails. For efficiency, Trinka refers the Court to and incorporates his prior mootness arguments in opposition to Defendants' Second Motion for Summary Judgment. ECF No. 41 at 15-18. Notably, Defendants' second attempt at this argument in their Opposition *again* offers no proof that the 2020 action has been "superseded in its entirety," and *again* fails to identity any supporting case law involving due process owed to an individual with a property interest in public employment to support the mootness claim.

C. Inferior Officers Cannot Amend the Secretary's Final and Conclusive Action.

Amongst its many problems, Defendants' amendment charade also violates the Appointments Clause. Defendants contend that the "amended removal" was consistent with the Appointments Clause because "the Secretary himself delegated authority for the Proposing Official and Deciding Official to undertake the amended removal action, AR 1001-03, so the Proposing Official and the Deciding Official's actions necessarily do not contravene the Secretary's will." ECF No. 42 at 55. Not so. The delegation of authority for the Proposing Official was signed by the Deputy Secretary—*not* the Secretary—and the Deputy Secretary identified Mr. Nathan Tierney "to serve as the proposing official for any disciplinary or adverse action proposed under authority of 38 U.S.C. § 713 for Mr. James A. Trinka, former Chief Talent Manger OIT"—not to "amend" the 2020 action. AR 1004. This delegation does not include the word "amend" or mention the Secretary's 2020 action. *Id.* Same for the general delegation of authority for the Deciding Official, Mr. Dewaine Beard. It too fails to delegate any authority to modify or amend a previously effected Section 713 action. AR 1001-1003. Perhaps the Secretary could have lawfully delegated his authority in 2020, as Defendants suggest. He did not. He had the "last word" on Trinka's removal in 2020. ECF No. 24 at 34. Four years later, inferior officers cannot make decisions or take actions that amend, supersede or replace the "final and conclusive" decision of the Presidentially appointed and Senate confirmed principal officer. *See United States v. Arthrex*, 594 U.S. 1 (2021) (finding that inferior officers cannot possess unreviewable authority to make agency-binding decisions under the Appointments Clause).

Besides, Mr. Tierney and Mr. Beard are seemingly just rubber-stamp signatories. On January 22, 2024, Defendants told this Court that "Defendants have drafted a new agency action and are in what they hope will be the final stages of reviewing the action for legal sufficiency,"

ECF No. 26, *weeks before* the two delegations of authority were made on February 8, 2024, and February 28, 2024, respectively. AR 1001-1003 (Deciding Official) and 1004 (Proposing Official). Then, just one day after Mr. Beard was designated, he signed and issued the "amended proposal" on February 29, 2024. AR 763-770. It is unworthy of belief that Mr. Tierney reviewed the hundreds of pages in evidence file, engaged in reasoned analysis, applied the appropriate burden of proof, made a good faith decision, and then wrote "from scratch" the "amended proposal" in just one day. ECF No. 42-1 at 51-52 ("the amended removal proposal was written from scratch by a new Proposing Official); *see* AR 390 (CSEMO Letter at 7.b) (listing the responsibilities of a proposing official). It appears that even the identity of the authors of the "new action" or "amended" action is part of the charade.

## II. <u>VIOLATION OF FUNDAMENTAL DUE PROCESS RIGHTS ARE NOT HARMLESS.</u>

Violations of the Due Process Clause and other fundamental constitutional rights, like Trinka suffered, cannot be excused as harmless. "Where a person has been deprived of property in a manner contrary to the most basic tenets of due process, 'it is no answer to say that in his particular case due process of law would have led to the same result because he had no adequate defense upon the merits.'" *Peralta v. Heights Medical Center, Inc.*, 485 U.S. 80, 86-87, 108 S.Ct. 896, 899 (1988) (quoting *Coe v. Armour Fertilizer Works*, 237 U.S. 413, 424 (1915)). To remedy the unconstitutional taking, "only 'wip[ing] the slate clean ... [can restore] [him] to the position he would have occupied had due process of law been accorded to him in the first place.' The Due Process Clause demands no less in this case." *Id.* (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).

Courts have applied this principle to public employment. Rightfully so. The Due Process guarantee would have little substance if it did not guarantee prior notice and meaningful

opportunity to respond before termination of public employment. ECF 39-1 at 10 (citing *Armstrong,* 380 U.S. at 552, *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 543 (1985), and *Carmody v. Bd. of Trustees of Univ. of Illinois,* 747 F.3d 470,475 (7th Cir. 2014). Defendants ignore this foundational principle and decades of precedent, effectively asking this Court to render the foundations of the Due Process Clause optional for individuals who Defendants find undeserving. Absent any authority addressing the Due Process Clause and public employment, Defendants claim that Section 713, Federal Rule of Civil Procedure ("Rule") 61, and 28 U.S.C. § 2111 impose the "harmless error" rule be applied here. They're wrong, for many reasons.

(1) The "harmless error" test cannot apply to violations of fundamental constitutional rights like pre-deprivation notice and opportunity to respond. No statutory provision or rules of procedure passed by Congress can limit the reach of the Due Process Clause, once it applies. *Loudermill*, 470 U.S. at 541 (finding right to due process is conferred "not by legislative grace, but by constitutional guarantee"). (2) Congress omitted the "harmless error" rule from Section 713, and (3) Rule 61 and 28 U.S.C. § 2111 are not applicable.

A. Harmless Error Test Cannot Apply to Violations of Fundamental Rights.

The Supreme Court in *Peralta* held that pre-taking violations of the Due Process Clause cannot be excused as "harmless," even when the appellant in that case "conceded" he had no "meritorious defense."[4] *Peralta*, 485 U.S. at 80. "Where a person has been deprived of property in a manner contrary to the most basic tenets of due process, 'it is no answer to say that in his particular case due process of law would have led to the same result because he had no adequate defense upon the merits.'" *Id.* at 86-87 (quoting *Coe v. Armour Fertilizer Works,* 237

---

[4] Trinka has a defense. Neither the 2020 decision nor the 2024 "amended decision" engaged in any reasoned analysis or otherwise addressed Trinka's denial. *See* ECF No. 41 at 23-24.

U.S. 413, 424, 35 S.Ct. 625, 629 (1915)). Just like in *Peralta*, and *Amrstrong* before it, "only wip[ing] the slate clean ... [will] restore[] [Trinka] to the position he would have occupied had due process of law been accorded to him in the first place.' The Due Process Clause demands no less in this case." *Id.* (quoting *Armstrong*, 380 U.S. at 552).

Plaintiffs wish this Court to apply to Trinka this "meritorious defense" standard that *Peralta* rejected. In making this argument, Defendants do not even try to distinguish the facts here from the many due process Supreme Court cases cited in Plaintiff's Motion. ECF No. 39-1 at 7. Defendants ignore *Hamdi v. Rumsfeld,* 542 U.S. 507, 330 (2004) (finding due process guarantee "does not depend on the merits of a claimant's substantive assertions"), *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (the "'root requirement' of the Due Process Clause [is] 'that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest'") (emphasis in original), *Fuentes v. Shevin*, 407 U.S. 67, 81 (1972) (the "right to notice and a hearing…must be granted at a time when the deprivation can still be prevented."), and *Armstrong*, 380 U.S. at 552 (meaningful notice and an opportunity to respond is a "fundamental requirement of due process," that when violated mandates "set[ting] aside" the offending action to "wipe[] the slate clean"). Nor do Defendants attempt to distinguish the analogous public employment cases from the United States Court of Appeals from the Federal Circuit listed in the Motion. ECF No. 39-1 at 7-9 (citing *Johnson v. Dep't of Air Force*, 50 F.4th 110, 117 (Fed. Cir. 2022), *Ward v. U.S. Postal. Serv.*, 634 F.3d 1274, 1278-79 (Fed. Cir. 2011), *Stone v. Fed. Deposit Ins. Corp.*, 179 F.3d 1368, 1377 (Fed. Cir. 1999). Defendants' silence speaks volumes.

Defendants do try to address *Young v. Dep't of Hous. & Urb. Dev.*, 706 F.3d 1372, 1377 (Fed. Cir. 2013). As noted in the Motion, *Young* rejected the "harmless error test" for Fifth

Amendment pre-deprivation due process violations in public employment actions.[5] *Young*, 706 F.3d at 1377. Defendants try to draw a distinction with *Young* that does not exist, narrowly focusing on the type of constitutional violation at issue. To be sure, the constitutional due process violation in *Young* was an *ex parte* communication, which is different than the many violations Trinka suffered. But the *Young* holding is not limited to only *ex parte* communications alone. It plainly applies to all "due process violations." *Id.* ("No amount of time for reflection can excuse past due process violations," and "[a] due process violation has occurred and Mr. Young is entitled to a new constitutionally correct removal procedure"). Indeed, constitutionally impermissible *ex parte* communications implicate the same fundamental due process interest violated here – affording the employee constitutionally adequate notice and meaningful opportunity to respond before they were fired. *Young*, *Peralta* and the cases Defendants ignore—*Hamdi*, *Loudermill, Fuentes*, *Amstrong*, *Johnson*, *Ward* and *Stone*—all show that violations of fundamental due process rights are not subject to "harmless error" analysis. This precedent demands this Court to set aside Trinka's unconstitutional removal.

B. <u>Congress Intentionally Excluded the "Harmless Error" Rule from Section 713.</u>

The text of Section 713 further shows that the "harmless error" test is not applicable to Defendants' many constitutional violations. Congress omitted the "harmless error" test from Section 713. This omission was by design. Congress did, as Defendants observe, use in Section 713 the phrase "may set aside." The term "may set aside" is not an "implicit" inclusion of the "harmless error" rule; nor has the Federal Circuit found the "harmless error" rule implicit in

---

[5] Because of 5 U.S.C. § 7701(c)(2)(a), the Federal Circuit when reviewing final decisions by the Merit Systems Protection Board must analyze the "harmful error" standard for agency procedural violations. There is no such requirement for judicial review of Section 713 actions. *See infra* 11-16.

Section 714 actions, as Defendants suggest. Review of the statutory text undermines Defendants' theory.

For other types of government actions, including certain public employment actions, Congress explicitly requires the "harmless error" test be applied. *See* 5 U.S.C. 706 ("due account shall be taken of the rule of prejudicial error"), 5 U.S.C. § 7701(c)(2)(a) (public employment actions taken under 38 U.S.C. § 714 or 5 U.S.C. § 7513 "may not be sustained … if the employee … shows harmful error"). The exclusion of the "harmless error" test from Section 713 was intentional.

If Congress wanted the "harmless error" test to be applied to Section 713 actions, it would have said so in the text like it did for actions taken under (1) 38 U.S.C. § 714 against certain VA employees, (2) under 5 U.S.C. § 7513 against general schedule employees, and (3) under 5 U.S.C. § 7543 against members of the Senior Executive Service. Disciplinary actions taken against federal employees under these three authorities may be appealed to the Merit Systems Protection Board (MSPB). *See* 38 U.S.C. §§ 714(c)(4), (d)(1), 5 U.S.C. §§ 7513(d), 7543(d). The MSPB's statutory authority and procedures require the MSPB to not sustain and reverse any disciplinary decision when the employee "shows harmful error in the *application of the agency's procedures* in arriving at such decision." 5 U.S.C. § 7701(c)(2)(A) (emphasis added). Even when applied, the "harmful error" analysis is limited to only procedural violations. A "final order or decision" by the MSPB is then subject to judicial review by the Federal Circuit. 5 U.S.C. § 7703. This statutory structure explicitly requires the Federal Circuit to apply the "harmful error" test for agency procedural—not constitutional—violations when deciding whether to affirm the MSPB's final decision.

"Congress generally acts intentionally when it uses particular language in one section of a statute but omits it in another." *Dep't of Homeland Sec. v. MacLean*, 574 U.S. 383, 391, 135 S. Ct. 913 (2015). In the DVAAWPA, Congress decided to remove the "harmful error" test entirely from Section 713 actions. For Section 714, Congress decided to alter some procedural provisions of 5 U.S.C. § 7701 for the MSPB's adjudication of appeals of Section 714 actions. *See* 38 U.S.C. § 714(d). When doing so, Congress chose to keep in place the "harmful error" provision provided in 5 U.S.C. § 7701(c)(2)(A). This statutory text is explicit. The "harmful error" applies only to Section 714 actions, and not to Section 713 actions.

This Court is ill-suited to even try to apply it. Defendants refused to provide Trinka the opportunity to conduct discovery and an evidentiary hearing before a neutral adjudicator where he could confront the witnesses and decision-makers. Without an adversarial process, this Court is ill-suited to adjudicate whether a procedural error was "harmless," even if Supreme Court precedent did not forbid such a consideration. Fortunately, it does not need to even try. As the Federal Circuit held, removing federal employees without constitutional due process "automatically entitl[es]" Trinka "to a new removal proceeding free from any violation of his constitutional rights." *Ward*, 634 F.3d at 1278.

C. Rule 61 and 28 U.S.C. § 2111 Do Not Apply.

Neither Fed. R. Civ. P. Rule 61 nor 28 U.S.C. § 2111 apply here. Rule 61 governs "error in admitting or excluding evidence" during a trial, not judicial review of an agency action that violates the Constitution. 28 U.S.C. § 2111 applies to the Supreme Court when "hearing of any appeal or writ of certiorari in any case." This Court is not the Supreme Court, and this action is not an appeal or writ of certiorari. What's more, both Rule 61 and 28 U.S.C. § 2111 apply only to errors and defects that do not affect a party's "substantial rights." The Fifth Amendment right to

due process is more than a substantial right. According to the Supreme Court, it's "fundamental," *Armstrong*, 380 U.S. at 552, "absolute," *Carey v. Piphus*, 435 U.S. 247, 266 (1978), and "essential," *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985). Rule 61 and 28 U.S.C. § 2111 do not apply to violation of "substantial" constitutional rights, like Trinka suffered.

D. <u>Criminal and APA Cases Are Uninstructive</u>.

Rather than confront the Supreme Court cases on Fifth Amendment property taking—*Hamdi*, *Loudermill, Fuentes*, *Armstrong*—or the Federal Circuit's analogous cases on public employment due process—*Johnson*, *Wade*, *Stone*—Defendants rely on criminal and Administrative Procedure Act cases for the that proposition some, lesser constitutional violations can be excused by the "harmless error" test. APA "harmless error" cases are uninstructive. 5 U.S.C. § 706, requires "due account shall be taken of the rule of prejudicial error." Section 713 does not. Regardless, violations of fundamental due process rights are not subjected to the "harmless error" test. *See supra* 11-16. This Court previously rejected Defendants' efforts to draw comparisons to criminal law when more analogous public employments cases from the Federal Circuit apply. ECF No. 24 at 20, 21, n.4. This Court should do so again.

In the criminal context, after a jury trial and "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828 (1967). The appropriate question is "not whether the accused is actually prejudiced but whether there is any reasonable possibility of prejudice." *Wade v. United States*, 441 F.2d 1046, 1050 (D.C. Cir. 1971). Without discovery and a full trial, this Court cannot meaningfully analyze or answer this question under the circumstances here. Even though Defendants denied Trinka an evidentiary hearing, the

answer to this question is plainly "yes." Prejudice is more than a possibility; it is a certainty when the government denies a public employee a fair and meaningful opportunity to invoke the discretion of the decisionmaker *before* his removal was effectuated. "Even where the facts are clear ... the *only meaningful opportunity* to invoke the discretion of the decisionmaker is likely to be *before the termination takes effect*." *Loudermill,* 470 U.S. at 543 (emphasis added). "The Supreme Court's view that a post-termination opportunity to try to change an employer's mind will be less meaningful is supported by common sense. It will be harder to convince an employer to reverse a decision to fire someone than to make sure the initial decision is fair and thoughtful. Whether that reluctance to change one's mind is based on concerns about appearing indecisive or admitting a mistake, or on logistical reasons or other factors, the reluctance is real." *Carmody v. Bd. of Trustees of Univ. of Illinois,* 747 F.3d 470,475 (7th Cir. 2014). This reluctance is even greater in this case, as Defendants asked an inferior officer to admit whether the Secretary made a mistake. Given this "real" reluctance, Trinka was indeed prejudiced by Defendants' due process violations. As this Court already concluded, Defendants' due process violations pose a "serious risk" Trinka's removal was erroneous. ECF No. 24 at 27. But this Court does not even need to reach this question posed in criminal proceedings, because even in the criminal context, "there are some constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error." *Chapman*, 386 U.S. at 23. In the public employment context, meaningful notice and an opportunity to respond is one of those rights. The 2020 removal must be set aside.

## III. CANCELLING THE 2020 ACTION IS THE REQUIRED REMEDY.

The Supreme Court makes clear that when the government takes an individual's property interest without affording pre-deprivation process, the unconstitutional taking must be wiped out and set aside. *Peralta*, 485 U.S. at 86-87. Likewise, the Federal Circuit demands that public

employment actions affected in violation of the Fifth Amendment must be cancelled, or set aside, to return the harmed employee to *status quo ante*. *Johnson,* 50 F.4th at 117, *Ward,* 634 F.3d at 1278-79. Following these Supreme Court and Federal Circuit cases, this Court does not need to resolve whether the phrase "may set aside" in Section 713, affords courts the discretion whether to set aside unconstitutional actions like Trinka's 2020 removal.

Defendants ignore this controlling precedent altogether. Instead, they offer several cases to argue that violations of fundamental constitutional violations can be cured in ways short of cancellation. ECF No. 42 at 47-55. Examining these cases reveals the folly of Defendants' position. In *Webb v. District of Columbia*, 146 F.3d 964, 976 (D.C. Cir. 1998), the D.C. Circuit held that "equitable relief" of reinstatement is an available remedy in a Title VII discrimination suit, but may not be an appropriate sanction for the agency's failure to preserve documents. This holding is inapposite to this case. A "successful Title VII plaintiff is entitled only to appropriate equitable relief." *Id., citing* 42 U.S.C. § 2000e-5(g)(1) (1994) (emphasis original). Section 713, on the other hand, does not provide for equitable relief. It authorizes this Court to "set aside" unconstitutional actions, like Trinka's 2020 removal. 38 U.S.C. § 713(b)(6).

Another case cited by Defendants, *Mazaleski v. Treusdell,* 562 F.2d 701, 720-21 (D.C. Cir. 1977), strengthens Trinka's request to "set aside." The employee in *Mazaleski* was terminated in July 1975, *id*. at 705, before the enactment of the Civil Service Reform Act and creation of the Senior Executive Service. He was an at-will employee "unprotected by our civil-service laws," *id.* at 704, who could not establish either a property or liberty interest in his employment, *id.* at 715. Because the Fifth Amendment did not apply, *Mazeleski* offers no value for what remedy Trinka is owed. However, *Mazelski* supports Trinka's argument that Defendants failed to afford him due process at a meaningful time. ECF No. 39-1 at 6-7. The D.C. Circuit in

*Mazelski* held that violations of an agency's internal procedures can only be cured "within a short and reasonable period. What is a short and reasonable time period will vary with each case, but absent unusual circumstances, the time period would be *measured in weeks, not years*." 562 F.2d at 720 (emphasis added). Thus, even if Defendants could retroactively amend a prior action to cure violations of fundamental constitutional procedures—they cannot—the amended action must be effectuated in a matter of weeks, if not days. Trinka identified the due process violations before and immediately after they occurred in 2020. AR 353-379 (Trinka's written reply to proposed removal) and 538-547 (Trinka's grievance contesting the 2020 removal). Yet, Defendants waited almost four years after Trinka's removal, and nearly six months after this Court's opinion identifying the due process violations, to try to avoid curing their many constitutional violations. If a violation of an internal agency procedure must be corrected within days to avoid cancellation and reinstatement, multiple violations of the Fifth Amendment cannot be retroactively cured years afterwards. Yet another reason why the "amended decision" charade is not a substitute for meaningful, pre-deprivation due process.

Defendants also cite *Ireland v. Shultz*, 829 F.2d 1189, 1191-92 (D.C. Cir. 1987) for the proposition that reinstatement is not required. ECF No. 42 at 53. *Ireland*, too, does not involve constitutional considerations, employment disciplinary actions based on misconduct, or Section 713. The employee in *Ireland* brought suit 30 years after he was removed during a reduction-in-force. *Id.* at 1190. He "set forth claims of wrongful termination, violations of the Privacy Act, and discrimination based upon the national origin of his wife." *Id.* The court denied the employees claim for equitable relief—reappointment to the specific position he previously encumbered "a generation ago"—and determined his claim for monetary damages "rightfully lies within the province of the Claims Court." *Id.* 1192-93. *Ireland* is plainly inapposite.

Defendants then mischaracterizes *Coy v. Dep't of Treasury*, 43 F.4th 1334 (Fed. Cir. 2022) by taking a single phrase out of context to support the amendment charade. ECF No. 42 at 53. But *Coy* stands for the opposite of what Defendants claim. In *Coy*, a public employee appealed their removal to the MSPB. On appeal, the administrative judge found that the removal violated due process and ordered the agency to provide interim relief—to cancel the action and retroactively restore the employee to his position with back pay because of a procedural deficiency—while the Agency petitioned the Presidentially-appointed and Senate-confirmed Board for review. *Id.* at 1336; *see also* 5 U.S.C. § 7701(b)(2)(A) (authorizing interim relief for prevailing appellants while an agency petitions for review). Notably, the administrative judge provided this remedy despite her opinion that '[a]bsent the agency's due process and harmful procedural errors, [she] would have sustained the agency's charge and supporting specifications.'" *Id.* The agency provided the interim relief, as ordered, and the parties continued to litigate. Rather than wait for the Board to adjudicate the first action, the agency initiated, after the employee was *reinstated,* a second removal action based on the same allegations, this time with constitutionally proper procedures. *Id.* at 1336-37. The employee argued that the interim relief order from the first action precluded the agency from the section action. The MSPB and Federal Circuit rejected this argument, after the second action was affected and appealed. *Id.* The legality of the second removal was conditioned on the employee's reinstatement. *Coy* demonstrates exactly what should occur here. The unconstitutional removal action must be cancelled and Trinka returned to the *status quo ante*, even if this Court believes the action would have been sustained absent the many constitutional violations. Only after reinstatement may Defendants pursue a new action with constitutionally correct process.

Defendants then spend nearly six (6) pages[6]—roughly 2/3 the length of Trinka's entire Motion—trying to distinguish three cases cited by in Trinka's Motion: *Vitarelli v. Seaton,* 359 U.S. 535 (1959), *Greene v. United States,* 376 U.S. 149 (1964)*, and Esparraguera v. Department of Army*, 101 F.4th 28 (D.C. Cir. 2024). These verbose efforts fall flat. The fact pattern of *Vitarelli* may sound familiar to this Court given the many similarities to this case. In *Vitarelli*, the government removed an employee on national security grounds in 1954. The employee's "procedural rights under the applicable regulations were violated in at least three material respects in the proceedings which terminated in the final notice of his dismissal." *Vitarelli*, 359 U.S. at 540. "Because the proceedings attendant upon [the employee's] dismissal from government service on grounds of national security fell substantially short of the requirements of the applicable departmental regulations, we hold that such dismissal was illegal and of no effect." *Id.* 545. The agency could have removed the employee on other grounds, not subject to the national security procedures they violated. Accordingly, to try to dispose of the litigation, "while the case was pending in the District Court" in 1956, two years after the removal, the agency manufactured a new personnel action "reciting that it was a revision of and replaces the original." *Id.* at 537-38. The Supreme Court rejected this charade. "In these circumstances, [the Court] would not be justified in now treating the 1956 action, plainly intended by the Secretary as a grant of relief to petitioner in connection with the form of the 1954 discharge, as an exercise of the Secretary's summary removal power as of the date of its delivery to petitioner. It follows from what we have said that petitioner is entitled to the reinstatement which he seeks, subject, of course to any lawful exercise of the Secretary's authority hereafter to dismiss him from employment in the Department of the Interior." *Id.* at 546.

---

[6] Defendants give zero (0) words to *Hamdi*, *Fuentes*, *Armstrong*, *Johnson*, *Ward* and *Stone*.

*Vitarelli* is plainly analogous to Defendants' amendment charade here, which is why Defendants work so hard over many pages of text to try to distinguish it. But they cannot. Defendants' discussion of *Vitarelli* includes an assertion that must be exposed. Defendants claim that the "amended removal proposal was written from scratch by a new Proposing Official." ECF No. 42-1 at 51-52. This claim is proven false by Defendants' own pleading and administrative record. As noted above, Defendants told this Court on January 22, 2024, they already "have drafted a new agency action," more than one month before Mr. Tierney was supposedly authorized to serve as the proposing official. *Compare* ECF No. 26 at 1 (Defendants already "drafted a new agency action" sometime before January 22, 2024) *with* AR 1004 (delegation of authority dated February 28, 2024). The "amended proposal" was then issued the very next day. AR 763-770. It is unworthy of belief that Mr. Tierney reviewed the hundreds of pages in evidence file, engaged in reasoned analysis, applied the appropriate burden of proof, made a good faith decision, and then personally drafted "from scratch" the "amended proposal" in one day.

As for *Greene*, Defendants' contention is that it does not explicitly cite to *Vitarelli*. This is true. But it does reiterate the same legal principle as *Vitarelli*, as Trinka expressed in his Motion. And like *Vitareli*, *Greene* is factually analogous to this case. Defendants' efforts to distinguish *Greene* are based on their erroneous belief that the "harmless error" rule applies to Section 713.

Defendants then argue that *Esparraguera* is irrelevant. It's not. Trinka cited *Esparraguera* because the D.C. Circuit held, less than two (2) months after Defendants completed their amendment charade, that the Due Process clause requires constitutionally adequate notice and an opportunity to respond, "before final deprivation of a property interest." ECF No. 39-1 at 11 (citing *Esparraguera v. Army*, 101 F.4th at 40). Defendants denied Trinka

that opportunity. They cannot cure it years after-the-fact. As *Esparraguera* makes clear, post-deprivation procedures are "no substitute for the pre-deprivation process." *Id.*

## IV. TRINKA DID NOT FORFEIT ARGUMENTS. HE FOLLOWED COURT ORDERS.

Defendants protest how Trinka "in the final sentence" of his Motion reasserted his prior arguments from his prior briefs in support of his motion for summary judgment, and argue these arguments should be "forfeited." ECF No. 42 at 56-57. This Court ordered that "if necessary, the parties may file renewed cross-motions for summary judgment that may, as appropriate, re-assert the arguments raised in this round of briefing, including those that the Court has yet to address." ECF No. 24 at 39. This Court then more specifically ordered "plaintiff shall file a motion to re-assert his prevailing arguments and his request for this Court to 'set aside' and to cancel the 2020 removal action on or before September 3, 2024." ECF No. 36. Trinka followed these orders. ECF No. 39-1 at 13.

## CONCLUSION

Because this Court already determined Defendants unlawfully removed Trinka in 2020 in violation of the Due Process clause, this Cout should grant Trinka's Motion, set aside the unconstitutional action, and award all other appropriate relief.

Date: October 23, 2024

Respectfully submitted,

/s/ Christopher J. Keeven

Christopher J. Keeven #993971
Debra L. Roth #422452
Conor D. Dirks #1022481
Shaw Bransford & Roth PC
1101 Connecticut Ave NW, Suite 1000
Washington, DC 20036
Tel: 202-463-8400
Fax: 202-833-8082

*Counsel for Plaintiff James Trinka*