UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JAMES TRINKA,<br><br>Plaintiff,<br><br>v.<br><br>DENIS McDONOUGH,<br>Secretary of Veterans Affairs, et al.,<br><br>Defendants. | Civil Action No. 21-2904 (RC) |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..... iii

ARGUMENT ..... 1

I. Res Judicata Principles Do Not Preclude Any of Defendants' Arguments ..... 2

II. The Amended Removal Action Superseded the Initial Removal Action ..... 2

III. The Amended Removal Action Moots All Challenges to the Initial Removal Action ..... 5

IV. The Amended Removal Actions Does Not Repeat the Initial Removal Action's Errors ..... 9

A. Defendants Provided Trinka a Recording of His Interview ..... 9

B. Defendants Did Not Rely on Any Facts That Would Raise Retroactivity Issues ..... 10

C. Defendants Applied the Preponderance of the Evidence Standard of Proof ..... 12

V. The Amended Removal Action Makes Clear That Any Errors in the Initial Removal Action Were Harmless ..... 14

VI. Trinka Was Not Entitled to a Hearing Where He Could Cross-Examine Witnesses ..... 16

A. Public Employees, Even Those With Protected Interests In Their Jobs, Are Not Entitled to Cross-Examine Witnesses at Any Point in the Removal Process ..... 16

B. There is No Genuine Dispute About the Dispositive Fact That Trinka Lied ..... 21

VII. Trinka's Remaining Challenges to the Amended Removal Action Are Meritless ..... 23

CONCLUSION ..... 25

## TABLE OF AUTHORITIES

**Cases**

*Akiachak Native Cm'ty v. Dep't of Int.*,
827 F.3d 100 (D.C. Cir. 2016) ........ 8, 9

*Al Bahlul v. United States*,
967 F.3d 858 (D.C. Cir. 2020) ........ 4

*Anderson v. Dep't of Hous. & Urb. Dev.*,
Civ. A. No. 23-1259 (DLF), 2024 WL 1701641 (D.D.C. Apr. 19, 2024) ........ 6, 8

*Arizona v. Fulminante*,
499 U.S. 279 (1991) ........ 14

*Ashbourne v. Hansberry*,
703 F. App'x 3 (D.C. Cir. 2017) ........ 17

*Atl. Arts Found. v. Small Bus. Admin.*,
Civ. A. No. 22-2109 (DLF), 2023 WL 8101074 (D.D.C. Nov. 21, 2023) ........ 4

*Banner Health v. Sebelius*,
945 F. Supp. 2d 1 (D.D.C. 2013) ........ 10

*Beth Rochel Seminary v. Bennett*,
825 F.2d 478 (D.C. Cir. 1987) ........ 21

*Blue Water Baltimore v. Pruitt*,
266 F. Supp. 3d 174 (D.D.C. 2017) ........ 7

*Cellular Mobile Sys. of Pa., Inc. v. FCC*,
782 F.2d 182 (D.C. Cir. 1985) ........ 18

*Clark v. Arizona*,
548 U.S. 735 (2006) ........ 18

*Cleveland Bd. of Educ. v. Loudermill*,
470 U.S. 532 (1985) ........ 16, 17, 18, 20

*Ctr. for Biological Diversity v. EPA*,
861 F.3d 174 (D.C. Cir. 2017) ........ 11

*Davis v. Mich. Dep't of Treasury*,
489 U.S. 803 (1989) ........ 3

**Cases (cont.)**

*DiBacco v. Dep't of Army*,
926 F.3d 827 (D.C. Cir. 2019) ... 3

*Doe v. Lieberman*,
Civ. A. No. 20-2148, 2022 WL 3576211 (D.D.C. Aug. 11, 2022) ... 18

*Does v. District of Columbia*,
593 F. Supp. 2d 115 (D.D.C. 2009) ... 23

*Eagle Cnty. v. Surface Transp. Bd.*,
82 F.4th 1152 (D.C. Cir. 2023) ... 23

*El Paso Nat. Gas Co. v. United States*,
750 F.3d 863 (D.C. Cir. 2014) ... 22

*Frank R. Jelleff, Inc. v. Braden*,
233 F.2d 671 (D.C. Cir. 1956) ... 22

*Freeport-McMoRan Oil & Gas Co. v. Fed. Energy Regul. Comm'n*,
962 F.2d 45 (D.C. Cir. 1992) ... 7

*FTC v. Owens-Corning Fiberglas Corp.*,
626 F.2d 966 (D.C. Cir. 1980) ... 13

*Galvin v. Eli Lilly & Co.*,
488 F.3d 1026 (D.C. Cir. 2007) ... 22

*Georgia ex. rel. Olens v. McCarthy*,
833 F.3d 1317 (11th Cir. 2016) ... 11

*Gila Reg'l Med. Ctr.*,
850 F. Supp. 2d 1216 (D.N.M. 2012) ... 20

*Gilbert v. Homar*,
520 U.S. 924 (1997) ... 19

*Goldberg v. Kelly*,
397 U.S. 254 (1970) ... 19

*Gov't of Manitoba v. Bernhardt*,
923 F.3d 173 (D.C. Cir. 2019) ... 24

*Greene v. McElroy*,
360 U.S. 474 (1959) ... 20

**Cases (cont.)**

*Grunewald v. Jarvis*,
776 F.3d 893 (D.C. Cir. 2015) ........ 12

*Harrison v. Bowen*,
815 F.2d 1505 (D.C. Cir. 1987) ........ 16, 17

*Holloway v. Arkansas*,
435 U.S. 475 (1978) ........ 22

*Holy Land Found. for Relief & Dev. v. Ashcroft*,
333 F.3d 156 (D.C. Cir. 2003) ........ 17

*Huthnance v. District of Columbia*,
722 F.3d 371 (D.C. Cir. 2013) ........ 14

*In re Grand Jury Investigation*,
916 F.3d 1047 (D.C. Cir. 2019) ........ 5

*In re NTE Conn., LLC*,
26 F.4th 980 (D.C. Cir. 2022) ........ 24

*In re Sibley*,
564 F.3d 1335 (D.C. Cir. 2009) ........ 17

*Irwin v. Dep't of Veterans Affs.*,
498 U.S. 89 (1990) ........ 22

*Johnson v. Dep't of Air Force*,
50 F.4th 110 (Fed. Cir. 2022) ........ 15

*Mathews v. Eldridge*,
424 U.S. 319 (1976) ........ 19

*McCormick v. District of Columbia*,
752 F.3d 980 (D.C. Cir. 2014) ........ 17

*Me. Lobstermen's Ass'n, Inc. v. Nat'l Marine Fisheries Serv.*,
626 F. Supp. 3d 46 (D.D.C. 2022) ........ 23

*Metroil, Inc. v. Exxonmobil Oil Corp.*,
672 F.3d 1108 (D.C. Cir. 2012) ........ 23

*Meza v. Livingston*,
607 F.3d 392 (5th Cir.) ........ 20

**Cases (cont.)**

*Montgomery v. McDonough*,
Civ. A. No. 22-1715 (RC), 2024 WL 1344443 (D.D.C. Mar. 29, 2024)....................................7

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
463 U.S. 29 (1983)....................................11, 24

*Myersville Citizens for a Rural Cmty., Inc. v. Fed. Energy Regul. Comm'n*,
783 F.3d 1301 (D.C. Cir. 2015)....................................15

*Nat'l Sec. Couns. v. CIA*,
960 F. Supp. 2d 101 (D.D.C. 2013)....................................24

*New Hampshire v. Maine*,
532 U.S. 742 (2001)....................................22, 23

*Oceana, Inc. v. Ross*,
290 F. Supp. 3d 73 (D.D.C. 2018)....................................10, 11

*Perry v. Gotbaum*,
766 F. Supp. 2d 151 (D.D.C. 2011)....................................7

*Porzecanski v. Azar*,
943 F.3d 472 (D.C. Cir. 2019)....................................6

*Price v. Unite Here Loc. 25*,
883 F. Supp. 2d 146 (D.D.C. 2012)....................................23

*Pyramid Secs. Ltd. v. IB Resol., Inc.*,
924 F.2d 1114 (D.C. Cir. 1991)....................................22

*Ramirez v. Immigr. & Customs Enf't*,
471 F. Supp. 3d 88 (D.D.C. 2020)....................................18

*Reiter v. Sonotone Corp.*,
442 U.S. 330 (1979)....................................6

*Robinson v. Shell Oil Co.*,
519 U.S. 337 (1997)....................................3

*Save Jobs USA v. Dep't of Homeland Sec.*,
111 F.4th 76 (D.C. Cir. 2024)....................................4, 21

*Schaerr v. Dep't of Just.*,
69 F.4th 924 (D.C. Cir. 2023)....................................14

**Cases (cont.)**

*Sturdza v. United Arab Emirates*,
562 F.3d 1186 (D.C. Cir. 2009) .......... 17

*Taylor Energy Co. LLC v. United States*,
Civ. A. No. 20-1086 (JDB), 2021 WL 538052 (D.D.C. Feb. 15, 2021) .......... 10

*Theodore Roosevelt Conservation P'ship v. Salazar*,
661 F.3d 66 (D.C. Cir. 2011) .......... 6, 7

*Twist v. Meese*,
854 F.2d 1421 (D.C. Cir. 1988) .......... 17

*United States v. Hassanshahi*,
195 F. Supp. 3d 35 (D.D.C. 2016) .......... 12

*Vanda Pharms., Inc. v. FDA*,
436 F. Supp. 3d 256 (D.D.C. 2020) .......... 10, 11

*Vantage Commodities Fin. Servs. I, LLC v. Willis Ltd.*,
531 F. Supp. 3d 153 (D.D.C. 2021) .......... 24

*Vitarelli v. Seaton*,
359 U.S. 535 (1959) .......... 2

*Ward v. Postal Serv.*,
634 F.3d 1274 (Fed. Cir. 2011) .......... 15

*Wayfield v. Town of Tisbury*,
925 F. Supp. 880 (D. Mass. 1996) .......... 19

*Wolff v. McDonnell*,
418 U.S. 539 (1974) .......... 19, 20

*Woodard v. Wainwright*,
556 F.2d 781 (5th Cir. 1977) .......... 19

**Statutes**

5 U.S.C. § 3131 .......... 1

18 U.S.C. § 1001 .......... 22

28 U.S.C. § 2111 .......... 15

38 U.S.C. § 512(a) .......... 5

**Statutes (cont.)**

38 U.S.C. § 713 ........ passim

38 U.S.C. § 713(a)(1) ........ 2

38 U.S.C. § 713(b)(5) ........ 3

Ohio Revised Code Annotated § 119.12 ........ 18

Ohio Revised Code Annotated § 124.34 ........ 17, 18

**Rules**

Federal Rule of Civil Procedure 61 ........ 15

Defendants Denis McDonough, Secretary of Veterans Affairs, and Department of Veterans Affairs ("Department"), by and through undersigned counsel, respectfully reply in support of their motion for summary judgment.

**ARGUMENT**

Plaintiff James Trinka told an obvious lie during an interview with the Office of Inspector General. He was caught red-handed—an audio recording of his interview captured his lie and puts to bed any notion that it was unintentional or innocent. Now over six years later, he still refuses to acknowledge or accept responsibility for his misconduct. To the contrary, his tone remains one of defiance, indignation, and unrepentance, which is out of line with his misconduct and incompatible with acceptance of responsibility. His dishonesty makes him unfit to serve in the Senior Executive Service, the highest echelon of the civil service whose members must be "of the highest quality." 5 U.S.C. § 3131. Trinka cannot be entrusted with responsibility for "the executive management of the Government of the United States," *id.*, when he still refuses to take responsibility for his own lie. Defendants properly removed him because of his lie, and nothing in the law requires this Court to undo that sound decision. Accordingly, this Court should grant Defendants summary judgment.

This reply proceeds as follows. Res judicata principles do not preclude any of Defendants' arguments. Defendants had legal authority to amend the removal action, and the amended removal action moots all challenges to the initial removal action. That would be true even if the amended removal action itself were erroneous, as Trinka disclaims any challenge to the amended removal action, but regardless, the amended removal action repeats none of the errors in the initial removal action. And even assuming that the amended removal action did not supersede and thus moot the challenges to the initial removal action—such as if Defendants lacked authority to take it—it still makes clear that all errors in the initial removal action were harmless, by showing that Defendants would have made the exact same decision even without these errors. Trinka also was not entitled

to a hearing where he could cross-examine witnesses, both because no such right exists in general and under the specific facts of this case, given that the interview recording eliminates any genuine dispute over the dispositive fact that he lied. Finally, he forfeited most of his remaining arguments by failing to raise them at any previous point, and regardless, all these arguments are meritless.

## I. Res Judicata Principles Do Not Preclude Any of Defendants' Arguments

Trinka's argument that res judicata principles preclude Defendants' arguments takes aim at a straw man. Contrary to his assertion, Defendants do not dispute that the initial removal action in 2020 did not provide due process. Their position is different—the amended removal action has superseded and thus moots any challenge to the initial removal action, or at a minimum, makes clear that any errors in the initial removal action were harmless because Defendants would have made the same decision even without such errors. Res judicata principles thus do not apply here.

## II. The Amended Removal Action Superseded the Initial Removal Action

As explained, the amended removal action superseded the initial removal action. Trinka argues that the amended removal decision is "legally meaningless," Pl.'s Resp. at 4, ECF No. 41, because (1) Defendants lacked authority to amend the removal action, (2) he did not receive due process prior to the initial removal action, (3) *Vitarelli v. Seaton*, 359 U.S. 535 (1959), precludes Defendants from correcting the initial removal action without first reinstating him, (4) the language of certain documents relating to the removal action do not use certain words, and (5) the Deciding Official lacked authority to amend the Secretary's decision. All five arguments are meritless.

*First*, as explained, two separate sources of authority enabled Defendants to amend the removal action—38 U.S.C. § 713 and Defendants' inherent authority. *See* Defs.' Resp. Mot. Set Aside ("Defs.' Resp.") at 12-18, ECF No. 43. The former authorizes the Secretary to take actions against a "covered individual," 38 U.S.C. § 713(a)(1), a term that is not limited only to "currently employed Senior Executives," as Trinka claims, Pl.'s Resp. at 4, ECF No. 40, but encompasses

former employees as well. *See* Defs.' Resp. at 12-18; *Robinson v. Shell Oil Co.*, 519 U.S. 337, 339 (1997); *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803 (1989); *DiBacco v. Dep't of Army*, 926 F.3d 827, 834 (D.C. Cir. 2019). Indeed, because the statute's judicial review provision provides a cause of action only to a "covered individual," 38 U.S.C. § 713(b)(5), if Trinka is correct that a former employee cannot be a "covered individual," then the statute provides no protection at all to employees who are fired, even as it protects employees against less serious personnel actions such as reprimands—an implausible and untenable conclusion. *See Robinson*, 519 U.S. at 345-46. And Trinka himself would lack a cause of action, as he filed suit after Defendants already had removed him, so this Court would need to dismiss on that basis. Either Trinka is a "covered employee," in which case the Secretary's authority under 38 U.S.C. § 713 reaches him, or he is not in which case he lacks a cause of action to seek judicial review in the first place. Trinka cannot have it both ways.

Moreover, even if 38 U.S.C. § 713 did not allow Defendants to amend the removal action, they had inherent authority to reconsider the initial removal action. *See* Defs.' Resp. at 19-25.

*Second*, Trinka's insistence that "the pre-deprivation procedural requirements" to remove an employee "cannot be substituted for after-the fact amendments of the reasons and evidence for an action previously effectuated against a former employee," Pl.'s Resp. at 4, fails to engage with Defendants' actual position. Again, Defendants' position is not that they can provide after-the-fact due process for the initial removal action taken back in 2020. Rather, their position is that the amended removal action superseded the initial removal action, so any errors in the initial removal action no longer are relevant. Much of Trinka's current argument depend on obfuscating this point.

*Third*, Trinka's reliance on *Vitarelli* fails for numerous reasons. *See* Defs.' Resp. at 37-41. In addition to all the reasons already noted, Trinka's response now makes clear that *Vitarelli* is inapposite for yet another reason that was not previously apparent: here, unlike in *Vitarelli*, Trinka

has disclaimed any challenge to the amended removal action, at least for purposes of this suit. *See* Pl.'s Resp. at 3 n.1, 20. Indeed, the D.C. Circuit repeatedly has rejected Trinka's interpretation of *Vitarelli*. *See* Defs.' Resp. at 41; *Save Jobs USA v. Dep't of Homeland Sec.*, 111 F.4th 76, 80 (D.C. Cir. 2024) ("the relationship between" a Supreme Court case and a D.C. Circuit case that "was decided after" the Supreme Court case "was [the prior D.C. Circuit panel's] legal issue, not ours").

*Fourth*, Trinka quibbles with the language of both (1) the Proposing Official's appointment paperwork and (2) the amended removal decision, but his quibbles are immaterial. Trinka argues that the Proposing Official's appointment paperwork "did not authorize [him] to 'amend' the 2020 action or the 2020 proposal," Pl.'s Resp. at 4, but it allowed him "to serve as the proposing official for any disciplinary or adverse action proposed under the authority of 38 U.S.C. § 713 for Mr. James Trinka." AR 1004. That language comfortably authorized the Proposing Official to amend the removal proposal—no other magic words were needed. *See Al Bahlul v. United States*, 967 F.3d 858, 874 (D.C. Cir. 2020) ("no magic words are required to grant [an official a] power").

Trinka also asserts that the amended removal decision "does not claim to amend, rescind, cancel or in any way replace the 2020 removal action" or "even mention the 2020 removal action," Pl.'s Resp. at 5, but that simply is inaccurate. The amended removal decision is styled as "an initial decision on the amended proposed removal letter dated February 29, 2024," stated that it was made only "[a]fter carefully reviewing the amended proposed removal," AR 994, stated point-blank that the Department "has inherent authority to amend the action," AR 998, and found "that the amended proposed removal is supported by a preponderance of the evidence," AR 999. Indeed, the amended removal decision used the word "amended" seventeen times. AR 994, 997-99. It thus is clear that the Deciding Official intended the amended removal decision to amend and supersede the initial removal decision. No additional magic words were necessary. *See Atl. Arts Found. v. Small Bus.*

*Admin.*, Civ. A. No. 22-2109 (DLF), 2023 WL 8101074, at *4 (D.D.C. Nov. 21, 2023) ("The Court will not upset the [agency action] based on the format, as opposed to the content, of [the action]").

*Fifth*, Trinka's argument that the Deciding Official "does not have the constitutional power to take an action that 'supersedes' a final decision by the Secretary," Pl.'s Resp. at 5, simply is a non-sequitur. As Defendants explained, the Secretary himself delegated authority for the Deciding Official to undertake the amended removal decision, *see* AR 1001; *see also* Defs.' Resp. at 43-44; 38 U.S.C. § 512(a) (Secretary can delegate his authority to Department officers and employees), so the amended removal decision cannot contravene the Secretary's will. Indeed, if the amended removal decision dissatisfied the Secretary, he could simply revoke his delegation of authority to the Deciding Official and countermand the decision. *See In re Grand Jury Investigation*, 916 F.3d 1047, 1052 (D.C. Cir. 2019) (regulations providing Special Counsel a measure of autonomy did not unduly limit power of Acting Attorney General, who could "rescind at any time the [relevant] regulations or otherwise render them inapplicable to the Special Counsel"). He has not done so.

## III. <u>The Amended Removal Action Moots All Challenges to the Initial Removal Action</u>

As Defendants have explained, the amended removal action superseded the initial removal action, and thus moots Trinka's challenges to the initial removal action. *See* Defs.' Mem. at 8-10. Notably, Trinka's challenges to the initial removal decision would be moot even assuming—solely for argument's sake—that the amended removal decision itself is erroneous in some way. That is because even if the amended removal action is erroneous, the initial removal action still no longer is in effect, having now been superseded. Trinka would of course be free to challenge the amended removal action, but any such challenge is beyond the scope of this suit because Trinka expressly disclaims any challenge to the amended removal action in this suit. *See* Pl.'s Resp. at 3 n.1, 20. Because the amended removal action moots Trinka's challenges to the initial removal action and Trinka does not challenge the amended removal action, the amended removal action ends this suit.

Trinka argues that his challenges to the initial removal action are not moot because he has "received none of the relief he seeks," Pl.'s Resp. at 10 (emphasis omitted), but that is immaterial. While a plaintiff's claim becomes moot if he has received all the relief that he seeks, that is just one way a claim can become moot, not the only way. "A case is moot [either] if intervening events make it impossible to grant any effectual relief, *or* if a party has already obtained all the relief that it has sought" *Porzecanski v. Azar*, 943 F.3d 472, 479 (D.C. Cir. 2019) (emphasis added). And "it becomes impossible for the court to grant any effectual relief whatever to a prevailing party on a particular claim" if a new agency action "superseded" the challenged action. *Theodore Roosevelt Conservation P'ship v. Salazar*, 661 F.3d 66, 79 (D.C. Cir. 2011) (cleaned up). That is so because "[t]he new agency action, not the old one, is what injures the plaintiff going forward," so "vacating the old agency action will not deliver the plaintiff any relief." *Anderson v. Dep't of Hous. & Urb. Dev.*, Civ. A. No. 23-1259 (DLF), 2024 WL 1701641, at *6 (D.D.C. Apr. 19, 2024). Because the amended removal action has superseded the initial removal action, Trinka's challenge to the initial removal action is moot even though Trinka has not received all or any of the relief that he seeks.

Trinka's argument that the amended removal action did not actually supersede the initial removal action, meanwhile, is meritless. Trinka argues that to "supersede"—as *Salazar* and similar cases use that word—means "to cause to be set aside," and stresses that the initial removal action "was not 'set aside.'" Pl.'s Resp. at 11. But even putting aside that "the language of an opinion is not always to be parsed as though we were dealing with language of a statute," *Reiter v. Sonotone Corp.*, 442 U.S. 330, 341 (1979), this argument fails for another reason: the term "supersede" also (and, if anything, more commonly) means "to take the place, room, or position of." or "displace in favor of another," Merriam Webster's Collegiate Dictionary 1183 (10th ed. 1996), which describes to a tee what the amended removal action did to the initial removal action. Indeed, it is unclear

whether the word "supersede" even connotes "to set aside" at all in the legal context—notably, a prominent legal dictionary defines "supersede" as "To annul, make void, or repeal by taking the place of" without mentioning the idea of "setting aside." Black's Law Dictionary (12th ed. 2024).

Importantly, this is how the D.C. Circuit itself uses the word "supersede"—as a synonym for taking the place of or displacing, not for setting aside in the administrative law sense. In both *Salazar*, 661 F.3d at 79, and *Freeport-McMoRan Oil & Gas Co. v. Federal Energy Regulatory Commission*, 962 F.2d 45, 46 (D.C. Cir. 1992), the agency did not "set aside" the challenged action—the new action simply replaced the challenged action—yet in both cases, the D.C. Circuit said the new action "superseded" the old action, without referring to the concept of "setting aside." The same happened in *Blue Water Baltimore v. Pruitt*, 266 F. Supp. 3d 174, 180 (D.D.C. 2017)—a new action replaced the old one, which the agency never "set aside." Trinka's preferred definition of "supersede" thus conflicts with how the D.C. Circuit and judges in this District uses that word.

Trinka attempts to distinguish on their facts the cases that Defendants cite, but his attempts are unpersuasive. He notes that in *Salazar*, 661 F.3d at 79, the challenged action was "superseded . . . in its entirety," but as explained above, the same is true here. Trinka also argues that in *Salazar*, the challenged action "no longer exist[ed]," *id.*, and asserts that here, the initial removal action "still exists and remains memorialized in [his] official personnel file," Pl.'s Resp. at 537—but this claim mischaracterizes the amended removal action and misstates the administrative record. The document he cites is an SF-50 Notice of Personnel Action, AR 537, which simply memorializes the fact that he was removed from federal service. *See Perry v. Gotbaum*, 766 F. Supp. 2d 151, 154 (D.D.C. 2011) ("The SF-50 is used to record personnel actions in an employee's Official Personnel Folder"); *Montgomery v. McDonough*, Civ. A. No. 22-1715 (RC), 2024 WL 1344443, at *4 n.12 (D.D.C. Mar. 29, 2024) ("An SF-50 is a federal employment form describing various

personnel actions"). No provision of law required Defendants to either issue a new SF-50 after amending the removal decision or remove the existing SF-50 from his personnel file, and he tellingly cites none. After all, his removal was not cancelled, and the amended removal action is not a new personnel action but an amendment to a preexisting personnel action. A removal decision itself does not go in an employee's personnel file—only the SF-50 documenting the removal. Defendants can file a declaration attesting to this fact. Amending the removal decision is analogous to a court amending its opinion while leaving its judgment in place because the change does not alter the bottom-line result. Accordingly, the fact that the SF-50 remains in Trinka's personnel file is consistent with the fact that the amended removal action superseded the initial removal action.

Trinka also tries to distinguish *Anderson*, 2024 WL 1701641, at *6, by arguing that there, "vacating the old agency action will not deliver the plaintiff any relief," whereas vacating the initial removal action "would deliver [him] all the relief he seeks." Pl.'s Resp. at 11. Not so—it would deliver him no relief whatsoever because the amended removal action still would remain in effect. He also disputes the idea that "[t]he new agency action, not the old one, is what injures the plaintiff going forward," *id.*, insisting that the initial removal action is what injures him, but this conclusory assertion is unpersuasive. The amended removal action superseded the initial removal action, so the amended removal action is what injures him now. *See Anderson*, 2024 WL 1701641, at *6.

Trinka's attempt to distinguish *Akiachak Native Community v. Department of Interior*, 827 F.3d 100, 113 (D.C. Cir. 2016), which recognized the "perfectly uncontroversial and well-settled principle of law" that "when an agency has rescinded and replaced a challenged [action], litigation over the legality of the original [action] becomes moot," is also unconvincing. He argues that the initial removal action was not "rescinded," *id.*, but the amended removal action superseded the initial removal action, and thus had all the practical effect of rescinding the initial removal action.

Trinka's reliance on Federal Circuit decisions also fails. *See* Pl.'s Resp. at 12-13. These cases are readily distinguishable—in each, the government argued that the case was moot because the plaintiff already received all the relief he sought. *Id.* (citing cases). But as explained, that is not Defendants' position here. Trinka's claims are moot not because he has received all or any of the relief he seeks, but for a different reason—because a new action has superseded the challenged action. It thus does not matter that he has not received all or any the relief he seeks. For the same reason, Defendants' position is consistent with their position in *Hawkins v. Department of Veterans Affairs*, Civ. A. No. 17-2575 (JMC) (D.D.C.). In *Hawkins*, the claims are moot because Defendants "already provided Plaintiff, a former employee, all of the relief that he could obtain if he prevailed on the employment-related claims in this suit." Mot. Dismiss at 1, ECF No. 60. But as explained, Trinka's claims are moot not because he has received all the relief sought, but because the initial removal action no longer remains in force. Thus, unlike in *Hawkins*, the fact that Trinka has not received all (or any) of the relief sought is not dispositive of the mootness inquiry.

## IV. The Amended Removal Actions Does Not Repeat the Initial Removal Action's Errors

As noted, Trinka disclaims any challenge to the amended removal decision, *see* Pl.'s Resp. at 3 n.1, 20, so his challenges to the initial removal action are moot even if the amended removal action itself is erroneous. Regardless, the amended removal action is not erroneous. Defendants (1) applied the preponderance of the evidence standard (and made clear from the start that they were doing so), (2) provided a recording of the interview, and (3) did not consider evidence that raises retroactivity concerns. *See* Defs.' Mem. at 9-10. Trinka's counterarguments are meritless.

### A. Defendants Provided Trinka a Recording of His Interview

Trinka does not dispute that Defendants provided him a recording of his interview after the amended removal proposal's issuance and before the amended removal decision's issuance. And as explained, the recording proves that he unambiguously lied, discrediting his previous denials.

Instead, Trinka argues only that providing him the recording of his interview in 2024 did not eliminate the defect in the initial removal decision made in 2020, but that argument misses the point, failing to engage with Defendants' position. The relevant question at this stage is not whether the initial removal action provided Trinka due process, but whether the amended removal action superseded the initial removal action, thus rendering moot all off Trinka's challenges to the initial removal action. Any error in the initial removal action became moot, and thus irrelevant, once Defendants replaced the initial removal action with the amended removal action.

**B. Defendants Did Not Rely on Any Facts That Would Raise Retroactivity Issues**

Trinka does not dispute that the amended removal proposal and amended removal decision do not mention events predating the current version of 38 U.S.C. § 713's enactment. But he argues that the amended removal action still has a retroactivity problem because the administrative record includes some documents that mention facts about events prior to the current version of 38 U.S.C. § 713's enactment—facts mentioned nowhere in either the amended removal proposal or amended removal decision themselves. This argument is borderline frivolous. The mere fact that a document appears somewhere in the administrative record does not mean the agency relied on that document in taking the challenged action. It is well-settled that an agency is not said to have relied on, or even considered, a document in taking an action just because the document is in the administrative record, absent any indication that the agency actually relied on or considered it. *See Taylor Energy Co. LLC v. United States*, Civ. A. No. 20-1086 (JDB), 2021 WL 538052, at *6 (D.D.C. Feb. 15, 2021) ("the mere mention of a document in the record does not always mean, ipso facto, that the agency considered the document" (cleaned up)); *Vanda Pharms., Inc. v. FDA*, 436 F. Supp. 3d 256, 276 (D.D.C. 2020) (same); *Oceana, Inc. v. Ross*, 290 F. Supp. 3d 73, 79 (D.D.C. 2018) (same); *Banner Health v. Sebelius*, 945 F. Supp. 2d 1, 36 (D.D.C. 2013) ("as several courts in this

district have held, reference to a document in the administrative record does not itself constitute concrete evidence that the document was considered by the agency" (quotation marks omitted)).

Courts may of course assume that an agency relied on a document that it expressly cited in the challenged action "to justify an assertion or proposition," as this "indicates that the [agency] consulted and thought about—and therefore considered—that document directly when issuing" the action. *Oceana*, 290 F. Supp. 3d at 80. But that "is different from [the agency's] mere mention of a document's existence" and a court "distinguishes a situation where an agency merely mentions a document from one where the agency cites a document for a substantive proposition." *Id.*; *accord Vanda Pharms.*, 436 F. Supp. 3d at 276 (same). Here, the Proposing and Deciding Officials did not even mention facts predating the current version of 38 U.S.C. § 713's enactment, or documents that contain such facts, in the amended removal proposal or amended removal decision at all. The mere fact that such facts appear somewhere in the lengthy administrative record does not mean the Proposing or Deciding Officials relied on, or even considered, such facts in taking their actions.

Indeed, any contrary rule would be unworkable. Agency action is "arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Administrative records spanning tens or hundreds of thousands of pages are common. *See, e.g.*, *Ctr. for Biological Diversity v. EPA*, 861 F.3d 174, 187 (D.C. Cir. 2017) (agency "amassed an administrative record totaling more than 113,000 pages"); *Georgia ex. rel. Olens v. McCarthy*, 833 F.3d 1317, 1320 (11th Cir. 2016) (administrative record "is more than a million pages long"). As Trinka sees it, if any of these pages mention information that "Congress has not intended [the agency] to consider," *State Farm*, 463 U.S. at 43, the agency is deemed to have relied on that forbidden information, rendering the challenged action arbitrary or capricious. Such a rule would transform administrative

records into minefields that few agency actions could survive. Tellingly, Trinka cites no authority for the notion that such a rule is the law. That is unsurprising because it is not the law.

Last, Trinka's claim that the amended removal decision expressly relies on facts predating the current version of 38 U.S.C. § 713's enactment depends on "selectively quoting" the decision "out of context." *Grunewald v. Jarvis*, 776 F.3d 893, 902 (D.C. Cir. 2015). What the decision says is: "The reasoning for both the 2020 proposed removal and the present amended proposed removal are the same; *you provided inaccurate or misleading information to* [*the Department's*] *Office of Inspector General Investigators*." AR 998 (emphasis added). But Trinka strategically truncates the sentence by omitting all the italicized words as if to suggest that the Deciding Official considered all the facts underlying the initial removal decision, including those facts that predate the current version of 38 U.S.C. § 713's enactment. The full sentence shows that the Deciding Official was referring only to conduct that occurred in 2018. This Court has criticized "selective quotation [that] omits the very next sentence of the" document being quoted, *United States v. Hassanshahi*, 195 F. Supp. 3d 35, 43 n.5 (D.D.C. 2016), and such a tactic is no more appropriate in this case.

The Deciding Official's remark that "the file delivered with the amended proposed removal consists of the same documentary evidence provided to you with the 2020 proposed removal letter," AR 998 (emphasis omitted), likewise is immaterial. All this means is that the evidence file contained some information predating the current version of 38 U.S.C. § 713's enactment—not that the Proposing Official or Deciding Official actually considered this information. As explained above, the mere fact that a piece of information appears somewhere in the administrative record does not mean the agency actually relied on, or even considered, it in taking the challenged action.

### C. Defendants Applied the Preponderance of the Evidence Standard of Proof

Finally, Trinka does not dispute that the amended removal proposal and amended removal decision both expressly state that they are applying the preponderance of the evidence standard of

proof. Nothing in the administrative record suggests that the Proposing and Deciding Officials secretly applied a different standard, even as they recited the correct standard. Trinka argues that applying the correct standard of proof this time around does not cure the failure to apply the correct standard of proof in taking the initial removal action in 2020, but as explained, this argument fails to engage with Defendants' position. Any errors in the initial removal action are moot because the amended removal action superseded the initial removal action. And even if the challenges to the errors in the initial removal action were not moot, the amended removal action shows that these errors were harmless, as Defendants would have taken the same action even absent such errors.

Trinka argues that the Proposing and Deciding Official's "assertions about what standard of proof they applied do not deserve the presumption of good faith," Pl.'s Resp. at 8, but this fails for two reasons. First, even setting the presumption of good faith aside, he simply offers no reason to think that the Proposing and Deciding Officials applied anything other than the preponderance of the evidence standard. Both officials stated that they applied the preponderance of the evidence standard, AR 764, 994, and Trinka cites nothing in the administrative record to suggest otherwise.

Second, and moreover, Trinka does not come close to overcoming the "presumption of administrative regularity and good faith" to which "agencies are entitled." *FTC v. Owens-Corning Fiberglas Corp.*, 626 F.2d 966, 975 (D.C. Cir. 1980). Trinka's only ostensible evidence is that the Proposing Official drafted a new removal proposal over a month before he was formally appointed, and signed the amended removal proposal just one day after his formal appointment. Trinka argues that "[t]his timeline rebuts any presumption of good faith" because "[i]t is unworthy of belief that [the Proposing Official] meaningfully reviewed the voluminous evidence file, engaged in reasoned analysis, applied the appropriate burden of proof, made a good faith decision, and then worked with [other components] to prepare the 'amended proposal' in just one day." Pl.'s Resp. at 8.

Of course that is not what happened, and there is a sensible explanation for what did. The Proposing and Deciding Officials were notified months earlier that they were being tapped for the positions, and the Proposing Official set to work, but the paperwork formalizing the Secretary's delegation of authority was not finalized until February 2024. That is unsurprising—the delegation of authority came directly from the Secretary himself, who has many competing demands on his attention. Only once the Secretary finalized the paperwork formalizing the delegation of authority could the Proposing Official at last issue the drafted amended removal proposal. Should the Court desire a declaration attesting to these facts, *cf.* Mem. Op. at 26, ECF No. 24 (accepting Defendants' "aver[ment] that no recording or transcript of the interviews [of Trinka's supervisors] even exist" where the administrative record itself did not make this clear), Defendants will file one. Given this reasonable explanation of the timeline concerning the amended removal proposal's issuance, Trinka's "purely speculative claims of agency malfeasance" cannot overcome the "presumption of good faith" Defendants are due. *Schaerr v. Dep't of Just.*, 69 F.4th 924, 931 (D.C. Cir. 2023) (quotation marks omitted); *cf. Huthnance v. District of Columbia*, 722 F.3d 371, 378 (D.C. Cir. 2013) (adverse inference improper "when there are innocuous explanations for the party's" action).

## V. The Amended Removal Action Makes Clear That Any Errors in the Initial Removal Action Were Harmless

As explained, the amended removal action makes clear that any errors in the initial removal action were harmless, by showing that Defendants would have made the same decision even absent those errors. Trinka offers two counterarguments—that (1) constitutional errors are not subject to harmless error analysis and (2) no statute authorizes harmless error review here. Both are incorrect.

*First*, as Defendants explained, it is black-letter law that constitutional errors usually—and due process errors in agency actions more specifically—are subject to harmless error analysis. *See* Defs.' Resp. at 26-27 (collecting cases); *see also, e.g.*, *Arizona v. Fulminante*, 499 U.S. 279, 306

(1991) (the Supreme Court "has applied harmless error analysis to a wide range of errors, and has recognized that most constitutional errors can be harmless"); *Myersville Citizens for a Rural Cmty., Inc. v. Fed. Energy Regul. Comm'n*, 783 F.3d 1301, 1327 (D.C. Cir. 2015) ("Due process challenges to agency action are subject to the general prejudicial error rule."). Trinka's argument that harmless error review does not apply to constitutional errors simply ignores this settled law.

Trinka cites Federal Circuit decisions, *see* Pl.'s Resp. at 7, but this reliance is misplaced—Federal Circuit decisions cannot overcome D.C. Circuit precedent. *See* Defs.' Resp. at 27. Thus, to the extent the Federal Circuit cases Trinka cites would require this Court to eschew harmless error analysis of the due process errors in the initial removal action, D.C. Circuit precedent requires a court to disregard those Federal Circuit cases. Regardless, the Federal Circuit cases Trinka cites are inapposite, as they apply only to one specific kind of due process error that is not present here—introducing impermissible ex parte communications during agency proceedings, and even then, only if those communications are "so substantial and so likely to cause prejudice that no employee can fairly be required to be subjected to a deprivation of property under such circumstances." *Johnson v. Dep't of Air Force*, 50 F.4th 110, 115 (Fed. Cir. 2022); *accord Ward v. Postal Serv.*, 634 F.3d 1274, 1279 (Fed. Cir. 2011) (same); *see also* Defs.' Resp. at 27 (explaining that Trinka mischaracterizes Federal Circuit law). But there was no impermissible ex parte communication here, as the Court already has concluded. *See* Mem. Op. at 36-38. Thus, even if the Federal Circuit cases Trinka cites were binding, they do not apply here, and the harmless error rule applies instead.

*Second*, as Defendants have explained, three separate provisions of law require Trinka to satisfy the harmless error rule to obtain relief—(1) 38 U.S.C. § 713 itself, (2) Federal Rule of Civil Procedure 61, and (3) 28 U.S.C. § 2111. *See* Defs.' Resp. at 27-35. Accordingly, Trinka's assertion that no provision of law requires him to satisfy the harmless error rule to obtain relief is incorrect.

## VI. <u>Trinka Was Not Entitled to a Hearing Where He Could Cross-Examine Witnesses</u>

Trinka was not entitled, at any stage of the removal process, to a hearing in which he could cross-examine witnesses. The D.C. Circuit repeatedly has held that due process principles do not entitle a public employee to cross-examine witnesses at any point in his removal process. Trinka's attempts to distinguish this body of precedent is unpersuasive. He cites three Supreme Court cases, but these cases do not establish that he had a right to a hearing to cross-examine witnesses. Indeed, one of the cases that he cites, *Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985), in fact undercuts the idea that a public employee has such a right. And even putting all that aside, Trinka was not entitled to cross-examine witnesses under the specific facts of this case because there is no genuine dispute, in light of the audio recording, about the dispositive fact that he lied during his interview. Due process principles thus did not entitle Trinka to cross-examine witnesses.

### A. Public Employees, Even Those With Protected Interests In Their Jobs, Are Not Entitled to Cross-Examine Witnesses at Any Point in the Removal Process

In moving for summary judgment, Defendants explained that under a long line of D.C. Circuit decisions, due process principles do not entitle public employees, even those with protected interests in their jobs, to cross-examine witnesses at any point in the removal process. Trinka's attempts to distinguish these decisions are unpersuasive. Trinka asserts that *Harrison v. Bowen*, 815 F.2d 1505 (D.C. Cir. 1987), "did not address whether the terminated employee had a right to a hearing at which she could confront adverse witnesses—the employee apparently did not assert such a right." Pl.'s Resp. at 16. That is inaccurate. At the threshold, nothing in *Harrison* suggests that the employee did not assert a right to confront witnesses—that is just Trinka's speculation, supported by nothing in the decision itself. More importantly, *Harrison* held point-blank that the procedures the employee did receive, which did not include the ability to cross-examine witnesses, satisfied due process requirements—the employee "received at least as much process as she was

due as a matter of constitutional right." *Id.* at 1519. It follows from this that due process principles do not entitle an employee to cross-examine witnesses, and any contrary argument is precluded.

As to *Twist v. Meese*, 854 F.2d 1421 (D.C. Cir. 1988), *McCormick v. District of Columbia*, 752 F.3d 980 (D.C. Cir. 2014) and *Ashbourne v. Hansberry*, 703 F. App'x 3 (D.C. Cir. 2017), Trinka's claim that "none of these three cases involved a public employee with a property interest," Pl.'s Resp. at 16, is inaccurate. In all three cases, the D.C. Circuit held that even assuming that the employee had a protected interest, the procedures that he or she received—which did not include an opportunity to cross-examine witnesses—satisfied the requirements of due process. *See Twist*, 854 F.2d at 1428; *McCormick*, 752 F.3d at 989-90; *Ashbourne*, 703 F. App'x at 4-5.

Trinka's efforts to minimize *In re Sibley*, 564 F.3d 1335 (D.C. Cir. 2009), *Sturdza v. United Arab Emirates*, 562 F.3d 1186 (D.C. Cir. 2009), and *Holy Land Foundation for Relief & Development v. Ashcroft*, 333 F.3d 156 (D.C. Cir. 2003), lack merit for the same reasons. The D.C. Circuit held not that the litigants there lacked protected interests, but that even if they had protected interests, they received all the process they were due, which did not include cross-examination. *See Sibley*, 564 F.3d at 1341; *Sturdza*, 562 F.3d at 1188; *Holy Land Found.*, 333 F.3d at 164.

*Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985), meanwhile, does not support Trinka's position, and if anything undermines it. *Loudermill* held that due process did not entitle a public employee to cross-examine witnesses prior to his removal—only to an "opportunity to present reasons, either in person or in writing, why [the] proposed action should not be taken," i.e., "to present his side of the story." *Id.* at 546. And while *Loudermill*'s holding "rest[ed] in part on the provisions in Ohio law for a full post-termination hearing," nothing in *Loudermill* indicates that this "hearing" entailed an opportunity to cross-examine witnesses. *Id.* Indeed, the only relevant state statute that *Loudermill* cited, Ohio Revised Code Annotated § 124.34 (1984), did not entitle

a removed employee to an opportunity to cross-examine witnesses. And while this statute allowed a removed employee to "appeal" an adverse decision to the Court of Common Pleas, *id.* § 124.34(B), such an appeal entailed only review of the administrative record under the substantial evidence standard—not an opportunity for cross-examination, *id.* § 119.12 (1984).

Indeed, *Loudermill* did not mention the idea of cross-examination. Nor does the term "full post-termination hearing," *Loudermill*, 470 U.S. at 546, inherently imply an opportunity for cross-examination. Rather, as explained, the term "hearing" implies only notice and opportunity to be heard, which Trinka undoubtedly received—not an opportunity for cross-examination. *See* Defs.' Mem. at 10-11 (citing authorities); *see also Cellular Mobile Sys. of Pa., Inc. v. FCC*, 782 F.2d 182, 197 (D.C. Cir. 1985) ("'Full hearing,' however, does not vouchsafe an inalienable right to cross-examination"). Trinka's assumption that the "full post-termination hearing," *Loudermill*, 470 U.S. at 546, must entail cross-examination is just that—an assumption, and an unfounded one.

If anything, *Loudermill* undermines Trinka's position by rejecting a due process challenge to a public employee removal process that did not entail cross-examination. *See Doe v. Lieberman*, Civ. A. No. 20-2148, 2022 WL 3576211, at *10 (D.D.C. Aug. 11, 2022), *aff'd*, 103 F.4th 794 (D.C. Cir. 2024) (concluding that plaintiff received all the process due under *Loudermill*, and that "due process does not necessarily mandate" an opportunity "to cross-examine the [ ] witnesses").

Finally, even assuming the "full post-termination hearing" available in *Loudermill* entailed an opportunity for cross-examination, the Court determined only that such a hearing was "a sufficient condition" for satisfying due process, "not a necessary one," *Clark v. Arizona*, 548 U.S. 735, 753 (2006); *see also Ramirez v. Immigr. & Customs Enf't*, 471 F. Supp. 3d 88, 183 n.46 (D.D.C. 2020) ("Defendants incorrectly suggest that a sufficient condition is a necessary one").

Because *Loudermill* does not support Trinka's position, *Gilbert v. Homar*, 520 U.S. 924

(1997), does not do so either. *Gilbert* merely observed that *Loudermill* had "concluded that a public employee dismissible only for cause was entitled to a very limited hearing prior to his termination, to be followed by a more comprehensive post-termination hearing." *Id.* at 929. Because *Loudermill* did not hold that public employees facing removal may cross-examine witnesses, nor does *Gilbert*.

*Goldberg v. Kelly*, 397 U.S. 254 (1970), is even further afield, as it involved the termination of welfare benefits, not public employment. The Supreme Court long ago limited *Goldberg* to its facts, replacing its sweeping dicta that "[i]n almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses," *id.* at 269, with a "flexible" test based on what "the particular situation demands" and limiting *Goldberg* to deprivations of "welfare assistance" at the "margin of subsistence." *Mathews v. Eldridge*, 424 U.S. 319, 334, 340 (1976); *see also Woodard v. Wainwright*, 556 F.2d 781, 785 (5th Cir. 1977) (*Mathews* "retreated somewhat from" *Goldberg*); *Wayfield v. Town of Tisbury*, 925 F. Supp. 880, 885 (D. Mass. 1996) (*Mathews* "retreat[ed] from the high-water mark of *Goldberg*").

Finally, *Wolff v. McDonnell*, 418 U.S. 539 (1974), did not hold that due process entitles a public employee to cross-examine witnesses during the removal process. *Wolff* held only that due process does not entitle "inmates facing disciplinary proceedings" to cross-examine witnesses. *Id.* at 566. *Wolff*'s only link to public employment is a stray remark, arguably dicta, that "confrontation and cross-examination . . . are essential . . . where a person may lose his job in society," *id.* at 567, but this referred to the loss of the ability to practice an entire particular profession, not just a single job. This is evident in both *Wolff*'s use of the phrase "in society," *id.*, which makes sense only if it is referring to the ability to practice an entire profession, not just one job, and the citation that *Wolff* offered to support this point—*Greene v. McElroy*, 360 U.S. 474, 492 (1959), in which an employee faced the loss of not just one job but his "freedom to practice his chosen profession" altogether.

Tellingly, the Supreme Court has never treated *Wolff* as if it implicated public employees' due process rights. The Court's subsequent holding in *Loudermill*, 470 U.S. at 545-46—that due process entitles public employees to only minimal procedures prior to termination—would conflict with the notion that a public employee is entitled to cross-examination whenever he "may lose his job," i.e., before he loses his job, *Wolff*, 418 U.S. at 567, yet *Loudermill* did not even cite *Wolff*. Either this was a glaring oversight or else *Loudermill* did not perceive *Wolff* as relevant to the issue at hand. Indeed, neither the Supreme Court, the D.C. Circuit, nor any other Circuit has ever cited *Wolff*'s "where a person may lose his job in society" language in any case about public employees' due process rights in the fifty years since *Wolff* was decided, another large oversight if *Wolff* truly held what Trinka says it held.[1] In fact, as far as Defendants can tell, only one single case has ever cited this language in the public employment context—*Osuagwu v. Gila Regional Medical Center*, 850 F. Supp. 2d 1216, 1235 (D.N.M. 2012). For the reasons discussed herein, *Osuagwu* simply erred in deeming *Wolff* to be applicable. But more importantly, if *Wolff* truly stood for the sweeping and consequential proposition that a public employee is entitled to cross-examine witnesses during the removal process, more than one court would have cited it for this point over the last fifty years.

Last, even were there uncertainty about whether *Loudermill*, *Goldberg*, or *Wolff* recognized a due process right to cross-examine witnesses during a public employee's removal process, the D.C. Circuit's subsequent decisions in *Harrison*, *Twist*, *McCormick*, and *Ashbourne* resolved this uncertainty, conclusively establishing that the Supreme Court has not recognized any such right. *See Save Jobs*, 111 F.4th at 80 (a D.C. Circuit case "was decided after" a Supreme Court case "[s]o the relationship between those two cases was [prior D.C. Circuit case's] legal issue, not ours").

---

[1] Only a single Circuit has cited this language at all, and only in a single case that involved prisoners' rights—not public employment. *See Meza v. Livingston*, 607 F.3d 392, 395 (5th Cir.), *clarified on denial of reh'g*, No. 09-50367, 2010 WL 6511727 (5th Cir. Oct. 19, 2010).

### B. There is No Genuine Dispute About the Dispositive Fact That Trinka Lied

"No constitutional right to a hearing arises where the dispositive facts are not in dispute." *Beth Rochel Seminary v. Bennett*, 825 F.2d 478, 482 (D.C. Cir. 1987). The interview recording eliminates any genuine dispute about the dispositive fact that Trinka lied, thus precluding any due process right to a hearing where he could cross-examine witnesses. *See* Defs.' Mem. at 15-16.

Trinka's response—i.e., that "[t]he recording is not probative of" his interview statement's "veracity" because his statement may actually be "true," Pl.'s Resp. at 16—is audacious. For years, Trinka insisted that the recording "would exonerate him from the allegations of misconduct" by proving that he did not make the statement that he was "alleged" to have made—i.e., proving he never claimed that he told his supervisors about his wife's legal status. Compl. ¶¶ 230, 331, ECF No. 1. He disputed "the soundness and reliability of the . . . summary of his interview"—which reported that he claimed to have told his supervisors about his wife's status—and said the recording would show that the summary is inaccurate. *Id.* ¶ 222. He "argued" the recording "would exonerate him"—"would," not "could"—and "that he could prove his innocence if [Defendants] would allow him to inspect the 'exculpatory' recording of his interview." Pl.'s Mem. at 19, 24, ECF No. 15; *see also* AR 359, 545 (claiming the recording would be "exculpatory" and admitting the interview summary would be "inculpatory" if accurate). At a minimum, he said, the recording would show "the statements' context or precise wording," which "might render them true." Pl.'s Reply at 12, ECF No. 21. The premise of his position was that the statement he was alleged to have made was indeed false—he simply denied making it. Now that the recording proves that he made that exact statement, Trinka changes his tune, suddenly arguing that perhaps the statement is true after all.

Trinka cannot walk back his previous representations to this Court and the agency so easily. He cannot create a genuine dispute by simply "contradicting" his prior position. *Galvin v. Eli Lilly & Co.*, 488 F.3d 1026, 1030 (D.C. Cir. 2007); *Pyramid Secs. Ltd. v. IB Resol., Inc.*, 924 F.2d 1114,

1123 (D.C. Cir. 1991). After all, he expressed it in his submissions to the agency, which are subject to 18 U.S.C. § 1001; in his pleadings, *see El Paso Nat. Gas Co. v. United States*, 750 F.3d 863, 876 (D.C. Cir. 2014) ("factual allegations in operative pleadings are judicial admissions of fact"); *Frank R. Jelleff, Inc. v. Braden*, 233 F.2d 671, 681 n.3 (D.C. Cir. 1956) (a litigant is "bound by statements made in formal pleadings, even if they are not sworn to"); and in court filings by his counsel, *see Holloway v. Arkansas*, 435 U.S. 475, 486 (1978) ("attorneys are officers of the court, and when they address the judge solemnly upon a matter before the court, their declarations are virtually made under oath" (cleaned up)); *Irwin v. Dep't of Veterans Affs.*, 498 U.S. 89, 92 (1990) (a "party is deemed bound by the acts of his lawyer-agent"). Trinka thus remains bound by his prior position—i.e., that the statement that (the recording now proves) he made was false.

Judicial estoppel also precludes Trinka from denying that his statement was false. Judicial estoppel "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001). Trinka's new, situationally driven position that his interview statement may actually be true is "clearly inconsistent with [his] earlier position." *Id.* at 750 (quotation marks omitted). Trinka "succeeded in persuading [this] [C]ourt to accept [his] earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that" this "[C]ourt was misled." *Id.* (quotation marks omitted). This Court granted Trinka summary judgment based on his claim that the recording would show he had not actually made the statement he was alleged to have made. Mem. Op. at 22-27. And Trinka "would derive an unfair advantage or impose an unfair detriment on [Defendants] if not estopped," *New Hampshire*, 532 U.S. at 749, by making conflicting claims about what he said during the interview to obtain successive rulings

in his favor. For these reasons, judicial estoppel binds Trinka to his prior position that the statement that he was alleged to have made—and which the recording now proves he made—is false.

## VII. Trinka's Remaining Challenges to the Amended Removal Action Are Meritless

In addition to all the arguments discussed already, Trinka raises three final challenges to the amended removal action—i.e., that it (1) violates Letter No. 006-17-1, (2) fails to explain why Defendants accepted his supervisors' account of the facts instead of his own account, and (3) states that he had said that the interview recording would be exculpatory, when in fact, he claims, nothing in the evidence file shows that he ever said that. *See* Pl.'s Resp. at 17-20. But this Court should consider only the first of these arguments because Trinka never raised the other two arguments during administrative proceedings, in his complaint, or even during the previous round of summary judgment briefing. *See Eagle Cnty. v. Surface Transp. Bd.*, 82 F.4th 1152, 1194 (D.C. Cir. 2023) ("Generally, reviewing courts will not consider an argument that was not raised before the agency at the time appropriate under its practice." (cleaned up)); *Metroil, Inc. v. Exxonmobil Oil Corp.*, 672 F.3d 1108, 1117 (D.C. Cir. 2012) (a party "did not assert [a] claim in its complaint, and we therefore do not consider it"); *Me. Lobstermen's Ass'n, Inc. v. Nat'l Marine Fisheries Serv.*, 626 F. Supp. 3d 46, 57 (D.D.C. 2022) ("a plaintiff may not assert new claims in a motion for summary judgment"); *Does v. District of Columbia*, 593 F. Supp. 2d 115, 124 n.5 (D.D.C. 2009) (rejecting argument that plaintiffs raised for first time in opposition to defendant's second summary judgment motion because "[p]laintiffs may not raise a new argument at this stage of the litigation").

While this Court previously excused Trinka's failure to raise certain arguments below or in his complaint, it should not do so for a second time at this late stage of the case. *See Price v. Unite Here Loc. 25*, 883 F. Supp. 2d 146, 154 (D.D.C. 2012) ("plaintiff cannot keep this case alive indefinitely by shifting [its] legal theories at the last minute."); *Vantage Commodities Fin. Servs. I, LLC v. Willis Ltd.*, 531 F. Supp. 3d 153, 174-75 (D.D.C. 2021) ("Courts rarely allow plaintiffs

to change their legal theories once briefing is underway, especially when new theories depart from what appears in the operative complaint"); *Nat'l Sec. Couns. v. CIA*, 960 F. Supp. 2d 101, 135 (D.D.C. 2013) (plaintiff cannot "make the complaint a moving target, to salvage a lost case by untimely suggestion of new theories of recovery"). Regardless, all three arguments are meritless.

*First*, Defendants have offered three reasons why Trinka's Letter 006-17-1 argument fails: (1) Letter 006-17-1 lacks force of law, (2) it does not prohibit the Office of Accountability and Whistleblower Protection from recommending specific discipline, and (3) any error was harmless. *See* Defs.' Mem. at 18-20. Trinka does not respond to any of these points, instead just insisting in barebones fashion that the amended removal action violates Letter 006-17-1, and thus forfeits the issue. *See Gov't of Manitoba v. Bernhardt*, 923 F.3d 173, 179 (D.C. Cir. 2019) ("A party forfeits an argument by mentioning it only in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones." (quotation marks omitted)).

*Second*, it is clear why Defendants accepted the three supervisors' accounts of the facts rather than Trinka's own contrary, self-serving account, so Defendants did not need to spell it out explicitly. A court will "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *State Farm*, 463 U.S. at 43, and an agency action "need not be a model of analytic precision to survive a challenge." *In re NTE Conn., LLC*, 26 F.4th 980, 993 (D.C. Cir. 2022) (quotation marks omitted). It is self-evident why Defendants accepted the three supervisors' account of the facts rather than Trinka's own account. There were three of them and only one of him; their accounts were all similar to and consistent with each other's; and they had no motive to be untruthful, while Trinka had ample motive to be untruthful. No further explanation was needed.

*Third*, the administrative record shows that Trinka repeatedly claimed, in both his reply to the initial removal proposal and his grievance of the initial removal decision, that the interview

recording would be "exculpatory." AR 359, 545. And as noted earlier, he made the same claims in his submissions to the Court. *See supra* § VI.B. To the extent that Trinka faults Defendants for not including these materials in the evidence file supporting the amended removal proposal, any such error was harmless for three separate reasons. Trinka plainly had access to these materials, as he himself had submitted them, so he was not deprived of them. There is no dispute that he really had claimed that the recording would be exculpatory. And the Deciding Official's conclusion that Trinka had been untruthful did not depend at all on Trinka's claim that the recording would be exculpatory. Indeed, the Deciding Official did not even mention Trinka's claim that the recording would be exculpatory in finding that Trinka had been untruthful, mentioning it only later. AR 998.

## CONCLUSION

This Court should grant Defendants summary judgment.[2]

Dated: October 23, 2024
Washington, DC

Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

By: *\/s/ Bradley G. Silverman*
BRADLEY G. SILVERMAN
D.C. Bar #1531664
Assistant United States Attorney
601 D Street NW
Washington, DC 20530
(202) 252-2575
bradley.silverman@usdoj.gov

*Attorneys for the United States of America*

[2] Should Trinka purport to raise new arguments in his reply, this Court should not consider them. *See In re Sealed Case*, 77 F.4th 815, 829 (D.C. Cir. 2023) ("It is well established that an argument first presented in a reply brief before the district court is forfeited.").