**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| JAMES TRINKA, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 21-2904 (RC) |
| | : | | |
| v. | : | Re Document Nos.: | 39, 40 |
| | : | | |
| DOUGLAS A. COLLINS, | : | | |
| Secretary of Veterans Affairs, *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

<u>**MEMORANDUM OPINION**</u>

**DENYING PLAINTIFF'S MOTION TO SET ASIDE UNCONSTITUTIONAL AND UNLAWFUL AGENCY ACTION; AND GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

In November 2021, Plaintiff James Trinka sued the United States Department of Veterans Affairs ("VA") and Secretary of Veterans Affairs Denis McDonough[1] (the "Secretary") (collectively, "Defendants" or "Department") to challenge his termination from the Senior Executive Service ("SES") at the VA. In 2020, the VA removed Trinka from his career appointee position for conduct unbecoming a federal supervisor because, according to the VA's Office of Accountability and Whistleblower Protection ("OAWP"), Trinka provided false or inaccurate information to the VA Office of Inspector General ("OIG") when he stated during an interview that he had disclosed his wife's undocumented immigration status to three supervisors. Trinka alleges that he was terminated without adequate procedures as required by the Fifth Amendment's Due Process Clause; the Department of Veterans Affairs Accountability and

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), former Secretary McDonough has been substituted for his successor.

Whistleblower Protection Act of 2017, Pub. L. No. 115-41, 131 Stat. 862, 38 U.S.C. § 713; and

VA procedures as articulated in its Corporate Senior Executive Management Office Letter

No. 006-17-1 – Senior Executive Accountability and Grievance Procedures ("CSEMO Letter").

This Court previously remanded the action back to the Department because it terminated Trinka

without procedures adequate to satisfy due process. The Department has since amended its

removal decision, and the parties are back before this Court. Trinka requests that the Court set

aside the Department's removal action, and Defendants move for summary judgment. For the

reasons stated below, Trinka's motion to set aside is denied, and Defendants' motion for

summary judgment is granted.

## II.  BACKGROUND

Because this is the parties' second round of summary judgment briefing, the Court

assumes the parties' familiarity with the facts underlying this dispute, including as discussed in

the Court's September 21, 2023 Memorandum Opinion (ECF No. 24). *Trinka v. McDonough*,

No. 21-cv-2904, 2023 WL 6160053 (D.D.C. Sept. 21, 2023). The Court recounts the relevant

facts for convenience and to describe developments since its initial remand order.

### A.  Statutory and Regulatory Background

"The Civil Service Reform Act of 1978 ('CSRA') 'established a comprehensive system

for reviewing personnel action[s] taken against federal employees.'" *Esparraguera v. Dep't of

the Army*, 101 F.4th 28, 31 (D.C. Cir. 2024) (quoting *United States v. Fausto*, 484 U.S. 439, 455

(1988)). The CSRA created the SES, "a class of managerial employees including career and

political appointees," to "'ensure that the executive management' of the federal government 'is

responsive to the needs, policies, and goals of the Nation and otherwise is of the highest

quality.'" *Id.* (quoting 5 U.S.C. § 3131).

In August 2014, Congress enacted the Veterans Access, Choice, and Accountability Act, which provided for removal of senior executives within the VA based on performance or misconduct. Pub. L. No. 113-146, § 707, 128 Stat. 1754, 1798 (codified in 38 U.S.C. § 713). In June 2017, Congress amended 38 U.S.C. § 713 and established the VA Office of Accountability and Whistleblower Protection to "improve accountability of senior executives." Department of Veterans Affairs Accountability and Whistleblower Protection Act of 2017, Pub. L. No. 115-41, §§ 101, 213, 131 Stat. 862, 863, 868.

Pursuant to § 713, the Secretary of Veterans Affairs may "reprimand or suspend, involuntarily reassign, demote, or remove a covered individual from a senior executive position at the Department if the Secretary determines that the misconduct or performance of the covered individual warrants such action." 38 U.S.C. § 713(a)(1). A Senior Executive subject to such action is entitled to:

> (A) advance notice of the action and a file containing all evidence in support of the proposed action;
> (B) be represented by an attorney or other representative of the covered individual's choice; and
> (C) grieve the action in accordance with an internal grievance process that the Secretary, in consultation with the Assistant Secretary for Accountability and Whistleblower Protection, shall establish for purposes of this subsection.

*Id.* § 713(b)(1). "The aggregate period for notice, response, and decision" on the action "may not exceed 15 business days." *Id.* § 713(b)(2)(A). The Senior Executive is accorded seven business days to respond to the advance notice, *id.* § 713(b)(2)(B); the decision must then be issued no later than 15 business days after notice of the action is provided to the Senior Executive, *id.* § 713(b)(2)(C); and the grievance process established by the Secretary must "take[] fewer than 21 days," *id.* § 713(b)(3).

The statute then provides for judicial review to any "covered individual adversely affected by a decision . . . that is not grieved, or by a grievance decision." *Id.* § 713(b)(5). The court conducting the judicial review "shall review the record and may set aside any Department action" that is:

> (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with a provision of law;
> (B) obtained without procedures required by a provision of law having been followed; or
> (C) unsupported by substantial evidence.

*Id.* § 713(b)(6).

In July 2017, the VA issued the CSEMO Letter, which provided procedures for implementing, among other statutory provisions, § 713. CSEMO Letter § 1, AR 584. Allegations of misconduct, poor performance, or whistleblower retaliation involving senior executives are referred to the OAWP. *Id.* § 7.a.i, AR 589. "OAWP will refer matters involving actual or possible violations of criminal laws to the OIG . . . ." *Id.* § 7.a.ii, AR 589. Upon conclusion of the OAWP's investigation, OAWP and the VA Office of General Counsel ("OGC") must brief the Secretary or his or her designee "on the results of the investigation and whether disciplinary action is recommended," with the recommendation being "limited to whether disciplinary action should be pursued." *Id.* § 7.a.iii.3, AR 590.

Should the Secretary or the designee concur with the recommendation, a Proposing Official must be "briefed regarding the results of the investigation and the evidence gathered." *Id.* § 7.a.iii.4, AR 590. This Proposing Official will then "review the available evidence to determine whether a Reprimand, Suspension, Demotion, or Removal should be proposed; or whether no action is warranted." *Id.* § 7.b.i, AR 590. "The Proposing Official will consult with the OGC, OAWP, and [the VA Office of Human Resources and Administration.]" *Id.* The

Proposing Official will provide a copy of the Proposal to the Senior Executive, who then has seven business days after receiving the Proposal to respond, in writing, to the Deciding Official. *Id.* § 7.d.i., ii, AR 591. Within 15 business days of the date of the Proposal, the Deciding Official must "issue an Initial Decision, after independently reviewing the Proposal, the evidence being relied upon, and considering the Senior Executive's reply." *Id.* § 7.d.v, AR 592. In total, "[t]he aggregate period for notice, reply, and Initial Decision on a proposed action may not exceed 15 business days." *Id.* § 7.d.vi, AR 592.

A Senior Executive who receives an Initial Decision is entitled to grieve the Initial Decision to a Grievance Official and must submit such a grievance within seven business days from the date of receipt of the Initial Decision. *Id.* § 8.a.iii.2, AR 592. The grievance must contain "[t]he reasons for which the individual believes that the action was not supported by Substantial Evidence; is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with a provision of law; or obtained without procedures required by a provision of law having been followed." *Id.* § 8.a.ii, AR 592. Within 20 calendar days of receiving the grievance, the Grievance Official will issue a recommendation to the Secretary through OAWP on the grievance. *Id.* § 8.a.iii.4, AR 593. After reviewing the record, the Secretary will then issue a Final Decision. *Id.* § 8.a.iii.5, AR 593. The Final Decision "will not uphold an Initial Decision" if the Secretary determines that the action was not supported by Substantial Evidence; arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with a provision of law; or obtained without procedures required by a provision of law having been followed. *Id.* § 8.a.iii.6, AR 593. The Final Decision is then subject to judicial review under 38 U.S.C. § 713(b)(4)–(6). *Id.* § 8.a.iii.7, AR 593.

### B. Factual and Procedural Background

After serving as the Director of Leadership and Organizational Effectiveness at the Internal Revenue Service ("IRS"), Trinka first joined the VA in a career SES position in January 2012. Compl. ¶¶ 79–80, ECF No. 1. In June 2014, he was assigned to serve as Chief Learning Officer for the VA's Office of Information and Technology. *Id.* ¶ 81. Trinka was later promoted to Chief Talent Management Officer of the Office of Information and Technology in July 2017. *Id.* ¶ 82.

Around May 2014, OIG began an investigation involving Trinka "based on information received from a special agent with [the Department of Homeland Security]," which "alerted OIG that an email sent to [Trinka]'s VA email account was from an individual believed to be involved in a sex trafficking organization." AR 327; Compl. ¶ 100. In August 2014, Trinka submitted an Electronic Questionnaire for Investigations Processing ("e-QIP") form that stated incorrectly on one page that his wife, Piyaporn Trinka, had been born in the United States and was a United States citizen. Compl. ¶¶ 95–96. On another page of the e-QIP form, however, Trinka stated correctly that his wife's place and country of birth was Chiang Rai, Thailand. *Id.* ¶ 96. During a supplemental interview with the Office of Personnel Management's Federal Investigative Services, Trinka told investigators that he had, among other errors included on his e-QIP form, mistakenly listed his spouse as a U.S. citizen. *Id.* ¶¶ 97–98. Trinka allegedly did not, however, disclose to the investigators that his wife had been in the United States illegally. AR 3.

In December 2018, OIG asked John Oswalt, one of Trinka's supervisor, to escort Trinka to OIG for an interview. Compl. ¶ 103. During this walk, Trinka told Oswalt that "he believed the interview may be regarding his wife's immigration and/or citizenship status," and that "his wife had no legal immigration status." *Id.* When Trinka arrived at the OIG, he requested that his

attorney be present, so the interview with OIG was then delayed until later that month. *Id.*
¶¶ 104–05. OIG conducted an interview with Trinka via telephone on December 21, 2018, and
recorded the interview. *Id.* ¶¶ 105–06; AR 303.

According to the OIG's Memorandum of Interview dated April 24, 2019, Trinka "first
met his wife in the summer of 2010 through an escort service." AR 303; *accord* AR 991
at 6:35–7:50. He learned in 2011 that his future spouse was in the country illegally. AR 303;
*accord* AR 991 at 9:20–55. They married in December 2013. AR 303; *accord* AR 991 at 6:20–
33. OIG's Memorandum of Interview stated further that Trinka "said he verbally disclosed his
wife's undocumented immigration status to three different supervisors who managed him during
his tenure in the VA Office of Information Technology," and that "none of his supervisors had
an issue with his wife's immigration status." AR 304; *accord* AR 991 at 20:25–21:48.

Trinka's supervisors, Oswalt, Richard Chandler, and Martha Orr, all denied Trinka's
version of events in their OIG interviews. Compl. ¶ 112. Oswalt told OIG that when he escorted
Trinka to OIG in December 2018, Trinka admitted that his wife was in the country illegally.
AR 306. Oswalt also told OIG that he did not know about the immigration status of Trinka's
wife prior to that conversation. *Id.* Both Chandler and Orr said that Trinka had not informed
them about his wife's immigration status. *Id.* at 308, 310. Trinka's Complaint does not allege
that, other than in his conversation with Oswalt on the way to Trinka's OIG interview, Trinka
ever told his supervisors about his wife's immigration status. *See* Compl. Nor does his
Complaint allege he ever told any other supervisor about his wife's immigration status. *See id.*

In January 2020, OIG referred the matter to OAWP "for further action as appropriate,"
noting that OIG had developed evidence that Trinka made false statements in official
government records. AR 324–25. On July 16, 2020, OAWP provided a memorandum to

Dominic Cussatt, Principal Deputy Assistant Secretary of the Office of Information and Technology, that stated that OAWP had concluded that Trinka "made false or inaccurate statements or provided false or inaccurate information to the government on at least two occasions: when completing his [e-QIP] and when he stated to OIG investigators that he had informed three supervisors about his wife's immigration status."  AR 1.  OAWP recommended that Trinka be removed from federal service.  *Id.*  Citing 38 U.S.C. § 323(f)(2), the recommendation noted that, should Cussatt or his designee "fail to propose the disciplinary action recommended in this paragraph within 60 calendar days from the date of this memorandum," he must then "provide OAWP with a detailed justification why the recommended action was not proposed," and the justification "will be provided to Congress." *Id.* at 1–2.

Paul Cunningham, Deputy Assistant Secretary and Chief Information Officer of the Office of Information and Technology, was designated as the Proposing Official.  Compl. ¶ 134. On September 11, 2020, Cunningham proposed to remove Trinka from the SES and federal service on the charge of Conduct Unbecoming a Federal Supervisor, *see* AR 3, 5, with the specification that Trinka had provided "false or inaccurate information" to OIG investigators on December 21, 2018 "when [he] stated that [he] informed three supervisors about [his] wife's immigration status," *id.* at 3.  But as background, the memorandum also highlighted other allegedly false statements identified by OIG, including that Trinka had erroneously listed his wife as a U.S. citizen on Trinka's e-QIP and his failure to disclose that his wife was in the United States illegally, as well as his failure to disclose her immigration status when adding her as a dependent for life and health insurance benefits and the use of her tax ID, rather than a social security number, to obtain a military dependent identification card.  AR 4.  As aggravating

factors, Cunningham noted that "[t]he evidence demonstrate[d] that [Plaintiff had] a propensity to misinform, mislead or otherwise provide false answers and narratives" because "[o]n numerous occasions, it seems clear that you have willfully misinformed federal financial, insurance, medical, and security programs on the citizenship status of your spouse." *Id.* He further added that Trinka's "failure to disclose information seemed to be intentional." *Id.* Although "the investigation did not specifically state that [Trinka] or [his] spouse [were] currently engaged in or affiliated with" criminal activities, it had "documented an ongoing association with several individuals involved in known or suspected criminal activities." AR 5. "[C]oupled with [his] lack of candor and [his] spouse's past affiliation with illegal activity," Cunningham stated, "the preponderance of evidence provide[d] and support[ed] a narrative of high-risk behaviors unbecoming of the position" Trinka held. *Id.*

On September 22, 2020, in response to the proposed removal, Trinka submitted a reply that in part emphasized that the VA had "provide[d] no evidence for its charge save hearsay" given that it had not provided him with a transcript or recording of his interview with the VA OIG, in violation of his constitutional due process rights. *Id.* at 353, 360–61. Trinka further contended that he was not provided access to certain evidence, even though the evidence was purportedly made available to Cussatt. *See id.* at 361. More broadly, Trinka alleged that § 713 unconstitutionally limited his opportunities to contest his removal, *see id.* at 355–57, and that the agency violated its own internal procedures in terminating him, *see id.* at 357–60.

On October 2, 2020, Cussatt issued an Initial Decision that found that "substantial evidence support[ed] the proposed charge" and upheld the charge, specification, and penalty of removal. *Id.* at 529. The Initial Decision stated that Trinka had "engaged in conduct unbecoming a Federal Supervisor when [he] provided false and inaccurate information to [OIG]

investigators." *Id.*  The Initial Decision rejected the various arguments that Trinka had raised in his reply to the Proposal.  *See id.* at 529–34.  Cussatt denied that § 713 was unconstitutional because it limited the window for Trinka's response and removed the post-termination hearing at the Merit Systems Protection Board ("MSPB"), stating that due process required only that the agency provide Plaintiff with "notice of the charges, and explanation of the employer's evidence, and an opportunity to present his side of the story."  *Id.* at 531–32 (quoting *Young v. Dep't of Hous. & Urb. Dev.*, 706 F.3d 1372, 1376 (Fed. Cir. 2013)).  According to Cussatt, not only could the agency rely on hearsay evidence, *see id.* at 529, but it had provided Trinka with the evidence file in support of the proposed action; and given that the Proposing Official did not rely on a transcript or recording of his interview with the VA OIG, the agency was not required to furnish this evidence to Trinka*, see id.* at 530.  He further denied that the agency had engaged in *ex parte* communications or violated its internal policies.  *See id.* at 532, 534.  Cussatt concluded "that substantial evidence support[ed] the charge and removal [was] warranted for such action."  *Id.* at 530.

Trinka's grievance of October 14, 2020, again demanded reversal of the proposed removal.  *See id.* at 538.  According to Trinka, not only had the agency initially informed Trinka that it was applying a preponderance of the evidence standard to later reverse course and apply a substantial evidence standard of proof, but hearsay evidence also could not be used to meet the agency's burden of proof where Trinka would not be provided a post-termination hearing.  *See id.* at 543.  Though Trinka demanded both a post-termination name-clearing hearing and a post-termination evidentiary hearing, he also claimed that VA officials such as the Secretary could not serve as an independent decisionmaker as required for due process.  *See id.* at 539–42.

James Gfrerer, the Assistant Secretary for Information and Technology, served as the Grievance Official. Compl. ¶ 197. Gfrerer reiterated the agency's positions as to Trinka's other arguments, denying that the agency had violated Trinka's due process rights or denied him access to evidence. AR 743–45. Gfrerer's grievance recommendation letter concluded, "contrary to [Plaintiff]'s assertions to the opposite, that the charge [was] supported by substantial evidence and removal [was] an appropriate penalty." *Id.* at 749.

On November 3, 2020, the Secretary sustained the penalty of removal. *Id.* at 751. In his Grievance Decision, the Secretary rejected the contention that the agency had violated Trinka's due process rights, that Trinka was entitled to a post-determination evidentiary hearing and a post-termination name-clearing hearing, and that he had been denied access to evidence and an opportunity to confront witnesses. *See id.* at 752–53. The Secretary stated that "the Deciding Official found that substantial evidence supported the proposed charge," and that the "Deciding Official also found that even if preponderant evidence were required to support the charge, preponderant evidence supported the charge as well." *Id.* at 750.

On November 3, 2021, Trinka filed a Complaint in this Court against Defendants to raise various challenges to his removal. *See* Compl. First, according to Trinka, his termination violated the Due Process Clause of the Fifth Amendment because Defendants denied him access to certain evidence, an evidentiary hearing, and a meaningful opportunity to be heard; relied improperly on *ex parte* communications; applied an unconstitutional evidentiary standard; and unlawfully applied § 713 retroactively. Compl. ¶¶ 208–62. Second, Trinka alleges that his removal was not in accordance with the law because it violated Due Process, 38 U.S.C. § 713, and the VA's policies and procedures as set out in the CSEMO Letter. *Id.* ¶¶ 263–89. Third, Trinka alleges that his termination was arbitrary, capricious, and an abuse of discretion. *Id.*

¶¶ 290–307.  Fourth, and finally, Trinka alleges that his termination was not supported by substantial evidence.  *Id.* ¶¶ 308–19.  Among other relief, Trinka requests that the Court set aside his removal from the SES, expunge his removal and any documents memorializing his removal from his official personnel file, retroactively reinstate him to his prior SES appointment and position, award him all back pay and benefits with interest, and award Plaintiff his costs and attorney's fees.  *Id.* at 50–51.

Defendants filed their Answer to Trinka's Complaint on January 28, 2022.  Answer to Pl.'s Compl., ECF No. 11.  In relevant part, Defendants' Answer averred that, although the VA OIG possessed a recording of its interview with Trinka, OAWP never obtained a copy of that recording; it further denied that a transcript of that interview, or recordings or transcripts of the VA OIG's interviews with Trinka's supervisors, were ever made.  *Id.* ¶¶ 117, 224–25; Mem. P. & A. Supp. Defs.' Mot. Summ. J. at 11, ECF No. 14-1 ("[W]hile OIG recorded Trinka's interview, it never transcribed this interview, and never recorded or transcribed his supervisors' interviews.  Except for the recording of Trinka's interview, the transcripts and recordings to which Trinka claims he was entitled do not, as a matter of fact, exist." (internal citation omitted)).

In March 2022, Defendants filed a Motion for Summary Judgment, *see* ECF No. 14, and the next month, Trinka filed a Cross-Motion for Summary Judgment, *see* ECF No. 15.  In September 2023, the Court granted both motions in part, and denied both motions in part without prejudice.  Order, ECF No. 23.  In its Memorandum Opinion, the Court concluded that Defendants' removal of Plaintiff from his employment "suffered from various deficiencies that deprived Plaintiff of procedural due process, necessitating that the Court first remand the matter to the VA for further consideration consistent with [its] Opinion."  Mem. Op. at 15, ECF No. 24.

Specifically, the Court found that Defendants violated Trinka's due process rights by impermissibly applying § 713 retroactively, depriving Trinka of the audio recording of his OIG interview, and applying "an unconstitutional evidentiary standard by removing Plaintiff from federal service" based on a substantial evidence standard. *Id.* at 16. The Court found that Defendants provided "inadequate notice to Trinka of the proper standard"—a preponderance of the evidence standard—"such that he did not have a meaningful opportunity to respond to Defendants' findings." *Id.* at 28–29. The Court agreed with Defendants, however, that the Grievance Official's recommendation to the Secretary, which was not provided to Trinka, did not constitute an *ex parte* communication because it "did not introduce any new and material information, but instead presented the evidence to which Trinka already had the opportunity to respond during prior steps of the removal process and offered the agency's rebuttal to Trinka's arguments." *Id.* at 36–38. Based on these findings, the Court remanded the "entire matter as a whole . . . to the agency." *Id.* at 39. The Court also instructed that "[f]ollowing the agency's arriving at a new decision, if necessary, the parties may file renewed cross-motions for summary judgment that may, as appropriate, re-assert the arguments raised in this round of briefing, including those that the Court has yet to address." *Id.*

In the months following the Court's decision, Defendants informed the Court that they were "carefully reviewing [the] ruling, and evaluating their options in light of it," Defs.' Status Rep., ECF No. 25, had "drafted a new agency action" by January 2024, Defs.' Status Rep., ECF No. 26, and were "merely waiting for final delegations of authority" to issue that new agency action as of February 22, 2024, Defs.' Status Rep., ECF No. 27. The following day, Trinka responded by asking the Court "to reconsider its prior order to remand, and instead to exercise its authority to 'set aside' the unlawful and unconstitutional removal action." Pl.'s Resp. to Defs.'

Third Status Rep. and Request to Set Aside Agency Action at 2, ECF No. 28 (quoting 38 U.S.C. § 713(b)(6)).

On February 29, 2024, the Department sent Trinka a letter that purported to amend the proposed removal letter issued to him on September 11, 2020. AR 763–70. The letter made clear that the Proposing Official, Nathan Tierney, was applying a preponderance of the evidence standard, AR 764, and relied on conduct occurring after § 713 was amended in June 2017, *see* AR 764–69. The Department also provided Trinka with an evidence file, which included the audio recording of his OIG interview, and which has been provided to the Court. *See* AR 769–70, 991. Trinka, through counsel, submitted a written response to the letter. AR 992–93. On March 21, 2024, the Deciding Official, Dewaine Beard, sustained the amended proposed removal letter and the penalty of removal. AR 994–99. This letter similarly applied a preponderance standard, AR 994, and did not rely on conduct occurring before June 2017, *see* AR 994–98. Trinka did not grieve the amended decision.

In May 2024, the Court denied Trinka's "motion" to set aside agency action without prejudice, Order, ECF No. 34, and in July 2024, entered a scheduling order for Trinka to "file a motion to re-assert his prevailing arguments and his request for this Court to 'set aside' and to cancel the 2020 removal action" and for Defendants to move for summary judgment, Scheduling Order, ECF No. 36. Because Trinka's motion essentially seeks judgment as a matter of law based on the Administrative Record in this case, *see, e.g.*, Pl.'s Proposed Order, ECF No. 39-2, the Court will construe these pending motions as cross-motions for summary judgment. The motions are now fully briefed and ready for this Court's consideration.

### III.  LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  But generally, "when a party seeks review of agency action under the APA, the district judge sits as an appellate tribunal" and assesses the entire case as "a question of law."  *See Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001); *Marshall Cnty. Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 (D.C. Cir. 1993) ("[T]he district court can consult the record to answer the legal question before the court—in this case whether the agency adhered to the standards of decisionmaking required by the APA."); *Univ. Med. Ctr. of S. Nev. v. Shalala*, 173 F.3d 438, 440 n.3 (D.C. Cir. 1999).  Though this case is not brought under the APA, the Court sees no reason why the same principles should not apply, especially because the statute under which Trinka brings his claims specifically instructs courts to review the record before the Department.  *See* 38 U.S.C. § 713(b)(6) ("In any case in which judicial review is sought under paragraph (5), the court shall review the record . . . .").

Under 38 U.S.C. § 713(b)(6), courts "may set aside any Department action found to be— (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with a provision of law; (B) obtained without procedures required by a provision of law having been followed; or (C) unsupported by substantial evidence."  To determine whether government procedures satisfied due process, courts consider three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). And as this Court previously recognized, "one 'relatively immutable' principle of due process is that 'where governmental action seriously injures an individual, and the reasonableness of the action depends on fact findings, the evidence used to prove the Government's case must be disclosed to the individual so that he has an opportunity to show that it is untrue.'" Mem. Op. at 22 (quoting *Ramirez v. Dep't of Homeland Sec.*, 975 F.3d 1342, 1350 (Fed. Cir. 2020)).

## IV.  ANALYSIS

Trinka has explicitly and repeatedly disavowed any challenge to the substance of the Department's 2024 amended removal action, *see* Pl.'s Mem. P. & A. Supp. Mot. Set Aside Agency Action ("Pl.'s Mot.") at 8 & n.6, ECF No. 39-1; Pl.'s Opp'n Defs.' Second Mot. Summ. J. ("Pl.'s Opp'n") at 3 & n.1, ECF No. 41, so the central issue before the Court is whether that amended action has superseded the 2020 removal action. The Court concludes it has. To reach that conclusion, the Court first considers the procedural posture of this case after remand to the Department. After concluding that review of the Department's amended action is properly before the Court, it then proceeds to analyze whether the Department followed adequate procedures to amend its previous removal action and concludes that the amended action is operative. Because Trinka's arguments regarding the initial action are now moot, and because he has not substantively challenged the operative action, the Court grants Defendants' motion for summary judgment.

### A.  Procedural Posture After Amended Removal Action

Many of the parties' arguments are intertwined with circumstances resulting from the procedural history of this case. To level set, the Court begins its analysis by discussing these issues separately, considering (1) whether the Court had the authority to remand to the

Department without vacating the 2020 removal action, (2) whether the Department had the authority to amend its previous removal decision, and (3) the scope of the Court's review.

### 1. Remand Without Vacatur

As Defendants note, "Trinka seems to argue that an agency cannot cure a defective removal action without first reinstating an employee." Defs.' Opp'n to Pl.'s Mot. Set Aside Agency Action ("Defs.' Opp'n") at 8, ECF No. 43. Trinka also seemingly argues that this Court was without authority to remand to the Department without vacating the 2020 removal action because "the necessary remedy for a constitutional violation is to return the employee to the rolls of the employing agency and provide him full pay and benefits until he receives a constitutionally correct termination process." Pl.'s Mot. at 4. He further argues that "[a]llowing Defendants to 'amend' the reasons for Trinka's removal, provide access to the evidence of his alleged conduct, and inform him of the appropriate standard of proof *years after* his removal would demolish the Fifth Amendment guarantee of pre-deprivation due process." Pl.'s Mot. at 3. But that was the entire purpose of remand to the Department while this case was still pending. The Court is not convinced that vacatur was required.

First, the relevant statute affords the Court discretion when construing the proper remedy upon judicial review. Even though the Administrative Procedure Act ("APA") provides that courts "*shall* . . . hold unlawful and set aside agency action" that violates the APA, 5 U.S.C. § 706(2)(A) (emphasis added), the D.C. Circuit has recognized that courts "can remand to the agency without vacatur in certain circumstances," *Cboe Futures Exch., LLC v. SEC*, 77 F.4th 971, 982 (D.C. Cir. 2023). Here, § 713 provides that reviewing courts "*may* set aside any Department action found to be" unlawful. *See* 38 U.S.C. § 713(b)(6) (emphasis added). The Court agrees with Defendants that "[i]t would be odd if a court had authority to remand without

vacatur under the APA, which uses the mandatory term 'shall,' 5 U.S.C. § 706, but lacked any authority to remand without vacatur under 38 U.S.C. § 713(b)(6), which uses the permissive, discretion-conferring term 'may.'" Defs.' Opp'n at 37.

Rather, the D.C. Circuit has instructed that when a court orders an action remanded to an agency, "[t]he decision whether to vacate depends on 'the seriousness of the order's deficiencies (and thus the extent of doubt whether the agency chose correctly) and the disruptive consequences of an interim change that may itself be changed.'" *Allied-Signal, Inc. v. U.S. Nuclear Regul. Comm'n*, 988 F.2d 146, 150–51 (D.C. Cir. 1993) (quoting *Int'l Union, UMW v. Fed. Mine Safety & Health Ass'n*, 920 F.2d 960, 967 (D.C. Cir. 1990)). "When an agency may be able readily to cure a defect in its explanation of a decision, the first factor in *Allied–Signal* counsels remand without vacatur." *Heartland Reg'l Med. Ctr. v. Sebelius*, 566 F.3d 193, 198 (D.C. Cir. 2009). Here, the Court found that remand to the agency was appropriate, but it did not vacate the Department's 2020 removal action. *See* Mem. Op. at 39. Though the Court appreciated that several procedural errors plagued the initial action and the pre-deprivation process Trinka had been afforded, many of those errors would be straightforward to remedy. In contrast, vacating the removal action and requiring the Department to reinstate a Senior Executive to his former position, effectively granting interim reinstatement—equitable relief that is not available as a matter of right—would be disruptive to the senior management of the Department, particularly if Trinka was again removed based on the same underlying conduct. *See Mazaleski v. Treusdell*, 562 F.2d 701, 721 n.47, 722 (D.C. Cir. 1977). The D.C. Circuit has previously rejected the argument that agencies are barred from rectifying errors in their initial decisions on remand. *See Schacht v. Lieberman*, 103 F.4th 794, 797 (D.C. Cir. 2024); *see also Muwekma Ohlone Tribe v. Salazar*, 708 F.3d 209, 217 (D.C. Cir. 2013) (explaining that "it is

entirely proper for an agency to provide an explanation if directed to do so on remand"). Thus, the Court had the authority to remand to allow the Department to correct its errors without restarting the entire process. *Accord Rodriguez v. Dep't of Veterans Affairs*, 8 F.4th 1290, 1301 (Fed. Cir. 2021) (remanding but not vacating administrative judge's ruling on the applicable burden of proof in § 714 removal action).

Trinka reads the Court's prior Opinion too broadly to argue that vacatur was required. He argues that "'[C]ertain substantive rights—including the property interest established by certain kinds of federal employment—cannot be deprived unless constitutionally adequate procedures are followed' and afforded 'before termination.'" Pl.'s Mot. at 2 (alteration in original) (quoting Mem. Op. at 34). But those quotes do not support his position that the Department was required to begin the entire process anew; they come after the Court concluded it was "necessary to first remand this matter to the VA for the agency to engage in further consideration." Mem. Op. at 34. Though the Court identified a due process violation in Trinka's initial termination, the remedy for that violation is a distinct question within the Court's discretion.

Further, the caselaw Trinka cites does not limit this Court's discretion to decline to order vacatur of the 2020 removal action. To argue that vacatur was required, Trinka cites to *Stone v. FDIC*, 179 F.3d 1368, 1377 (Fed. Cir. 1999) and its progeny, a series of cases in which the Federal Circuit declined to apply a harmless error test when the federal official's removal involved *ex parte* communications, instead concluding that "the former employee is entitled to a new constitutionally correct removal procedure." *See also Ward v. U.S. Postal Serv.*, 634 F.3d 1274, 1278-79 (Fed. Cir. 2011); *Johnson v. Dep't of Air Force*, 50 F.4th 110, 117 (Fed. Cir. 2022). But here, the Court concluded that no *ex parte* communications had tainted the initial

removal proceedings, Mem. Op. at 36–38, and Trinka provides no persuasive reason why the due process violations the Court previously identified are analogous to the consideration of *ex parte* communications, such that the rule from *Stone* should extend to these circumstances. And to the extent Trinka thinks his "amended" notice should have been styled as a new notice, he puts form over substance as the Department again gave him the opportunity to respond before issuing an amended Initial Decision. AR 992–93. Regardless, those cases did not require this Court to vacate the 2020 removal decision when remanding to the Department.

### 2. Department's Authority to Amend

The parties spill much ink over whether the Department had the authority to amend its removal action. *See* Defs.' Opp'n at 11–25; Pl.'s Mot. at 7–8. The pertinent question, however, is not whether the statute permitted Defendants to amend the removal action or whether the Department has implicit authority to reconsider its previous decisions absent judicial intervention. *See Ivy Sports Med., LLC v. Burwell*, 767 F.3d 81, 86 (D.C. Cir. 2014) (discussing whether an agency has inherent authority to act, not whether a court has the power to compel an agency to act). The pertinent question is whether any law precluded this Court's authority to order appropriate equitable relief by remanding the action to the Department "for further consideration." Mem. Op. at 39. "[C]ourts are presumed to possess the full range of remedial power—legal as well as equitable—unless Congress has expressly restricted their exercise." *Cobell v. Norton*, 240 F.3d 1081, 1108 (D.C. Cir. 2001) (quoting *Crocker v. Piedmont Aviation, Inc.*, 49 F.3d 735, 748 (D.C. Cir. 1995)); *see also Franklin v. Gwinnet Cnty. Pub. Schs.*, 503 U.S. 60, 69 (1992) ("[I]f a right of action exists to enforce a federal right and Congress is silent on the question of remedies, a federal court may order any appropriate relief."). "If Congress does seek to restrict courts' equitable powers, it must do so by 'the clearest command.'" *Cntr. Biological*

*Diversity v. EPA*, 56 F.4th 55, 71 (D.C. Cir. 2022) (citing *McQuiggin v. Perkins*, 569 U.S. 383, 397 (2013)).  The statute makes no express restriction on the Court's authority to shape equitable relief, *see* 38 U.S.C. § 713, the Department had the authority to perform the Court-ordered action had it done so initially, *see id.*, and Trinka has provided no authority to the contrary.  As such, the Court concludes that the Department had the legal authority to implement the Court's Memorandum Opinion and Order by amending the 2020 removal action, thus the 2024 removal action is the operative action.  *See Verizon Tel. Cos. v. FCC*, 269 F.3d 1098, 1111 (D.C. Cir. 2001) (rejecting the "assertion that the agency may not retroactively correct its own legal mistakes, even when those missteps have been highlighted by the federal judiciary").  The Department's implementation of this Court's prior Memorandum Opinion and Order, including the Department's reasoning consistent with this Court's Memorandum Opinion, was not an unlawful "*post hoc*" rationalization.  *See Schacht*, 103 F.4th at 797 (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943)).  Rather, the Department was acting in accordance with this Court's Order.

Trinka argues that § 713 precluded the Department from amending the removal action because that statute applies only to individuals "who are currently employed Senior Executives." Pl.'s Opp'n at 4 (citing 38 U.S.C. § 713(d)(1)).  But he simultaneously invokes the judicial review provision of § 713 in this Court, despite Trinka inarguably not being a currently employed Senior Executive.  *See* Defs.' Opp'n at 17.  Thus, § 713 did not prevent this Court from remanding to the Department for it to correct its previous legal errors.

Trinka also argues that Supreme Court and Circuit precedent preclude the Department from amending its action to "whitewash their constitutional violations," Pl.'s Mot. at 7, but the authority he cites does not go so far.  Trinka relies on *Vitarelli v. Seaton*, 359 U.S. 535 (1959), in

which he claims "the Supreme Court denied the government's attempt to cure a due process violation with a meaningless paper process years after-the-fact without reinstating the employee." Pl.'s Mot. at 7. To begin, *Vitarelli* does not mention due process and specifically declined "to reach the constitutional issues." *See* 359 U.S. at 540. Rather, the Court based its reasoning on its conclusion that the dismissal from government service "fell substantially short of the requirements of the applicable departmental regulations," such that the dismissal had no legal effect. *Id.* at 545. And the paper process in *Vitarelli* was a second notification of personnel action that relied on different legal authority—summary dismissal power—but otherwise contained the same date as the previous notice and "was evidently filed in the District Court before its delivery to petitioner . . . to moot petitioner's suit in the District Court." *Id.* at 545–46. Unlike in *Vitarelli*, before this round of briefing, Trinka received his amended action and had an additional opportunity to present arguments and evidence on remand before the Department issued its amended decision. *See* Defs.' Opp'n at 40. In context, the Department's amendment pursuant to this Court's Memorandum Opinion bears little resemblance to the "charade" in *Vitarelli*. *See* Pl.'s Mot. at 7. And to the extent Trinka extends *Vitarelli* to stand for the proposition that all imperfectly executed terminations require reinstatement, Circuit precedent is to the contrary. *See, e.g.*, *Mazaleski*, 562 F.2d at 722 ("[W]e conclude that reinstatement before a decision on the merits of appellant's appeal is not justified by the circumstances . . . .").

Trinka also relies on *Greene v. United States*, 376 U.S. 149, 150, 156 (1964), but in that case, the regulation at issue specifically provided for reimbursement if a contractor employee lost earnings due to his security clearance being suspended. Further, in *Esparraguera v. Dep't of Army*, 101 F.4th 28, 40 (D.C. Cir. 2024), the D.C. Circuit recognized a property interest in a career SES position, a question not at issue in this case, and there, the removed employee alleged

that "the only opportunity she had to respond was at the informal MSPB hearing, which occurred over six months after her removal decision took effect." Again, these cases do not support that once this Court determined that the Department had provided inadequate procedures, the Department had no choice but to reinstate Trinka and start from scratch. Rather, on remand, the Department had the legal authority to amend its prior action, so that amended action is operative. *See Anderson v. U.S. Dep't of Hous. & Urb. Dev.*, 731 F. Supp. 3d 19, 31 (D.D.C. 2024) ("[W]hen one agency action supersedes another, prospective challenges to the superseded agency action generally become moot.").

### 3. Scope of Judicial Review

The parties both posit reasons why this Court should not review aspects of the 2024 amended action in full or in part. Trinka argues that he has not sought review of the amended action, such that it is "not even the subject to this suit or this Court's jurisdiction." Pl.'s Mot. at 8 & n.6; Pl.'s Opp'n at 3 n.1. The Department argues that the amended action "mooted Trinka's interview recording, retroactivity, and standard of proof arguments" by correcting those errors. Defs.' MSJ at 8–10. The Court takes this opportunity to clarify the scope of its review.

Since this Court remanded the case to the Department, Trinka has doubled down on the defects in the initial decision, which this Court previously addressed, and in this round of briefing expressly disavowed that he is challenging the amended decision. Pl.'s Mot. at 8 & n.6; Pl.'s Opp'n at 3 & n.1. He argues that Defendants agree that the amended decision is not before this Court because the Department's amended decision stated that Trinka "may seek judicial review of this action." Pl.'s Mot. at 8 n.6 (quoting AR 999). But he misses the point; that letter reiterated the availability of judicial review under § 713(b)(6), including this Court's review. If Trinka were satisfied with the amended decision, he could have sought to dismiss this case. *See*

Mem. Op. at 39.  And if he were not, he could have moved to amend or supplement his Complaint to challenge the amended decision.  Instead, Trinka hangs his hat on the purported illegality of the Department's amendment, rather than its substance.  *See* Pl.'s Mot. at 8 & n.6; Pl.'s Opp'n at 3 & n.1.  If the amendment was proper, then the Department's amended action is operative, and Trinka's challenges to the initial decision are moot.  *See Anderson*, 731 F. Supp. 3d at 31.  Because Trinka has not amended his Complaint and has disavowed that the present suit challenges the substance of the amended action, the Court will address only the legality of the process undertaken by the Department to amend its removal action.

As for the Department's point about mootness, the Court has maintained jurisdiction over this case, including jurisdiction to determine whether the amended action conforms with this Court's previous Memorandum Opinion.  Mem. Op. at 39 ("Following the agency's arriving at a new decision, if necessary, the parties may file renewed cross-motions for summary judgment that may, as appropriate, re-assert the arguments raised in this round of briefing, including those that the Court has yet to address.")  Were the Department's amendments legally insufficient to rectify an error, the issue would not be moot merely because the Department is satisfied that it has complied with the Court's instructions.  The Court agrees, however, that to the extent Trinka challenges only the 2020 removal decision, those challenges are moot if the Department effectively superseded that action with the 2024 amended removal action.  Defs.' MSJ at 8–10; *see Nat. Res. Def. Council, Inc. v. U.S. Nuclear Regul. Comm'n*, 680 F.2d 810, 814 (D.C. Cir. 1982) ("Corrective action by an agency is one type of subsequent development that can moot a previously justiciable issue.").  Thus, as mentioned, the Court's scope of review is limited to the legality of the Department's amendment on remand and the procedures it took to do so.

### B. Legality of Department's Amended Removal Action

To determine whether the Department lawfully exercised its authority to amend its previous removal action, the Court analyzes (1) whether the officials who effectuated the amended removal were properly delegated that authority, (2) whether the procedures afforded to Trinka satisfy due process, and (3) whether the procedures violated the Department's CSEMO Letter. In doing so, the Court does not pass upon the substance of the amended removal action because Trinka has expressly disavowed that he is presently challenging that action. Pl.'s Mot. at 8 ("The . . . 2024 amendment to the 2020 removal is not even subject to this suit . . . ."); *id.* at 8 n.6 (stating that Trinka "has not" filed suit "to seek judicial review" of the amended action). Upon consideration of all these issues, the Court concludes that the Department lawfully amended its previous action, such that the amended decision is now operative and Trinka's arguments based on the initial action are moot.

#### 1. Delegation of Authority

Trinka argues that the inferior officers who effectuated the amended action "are not constitutionally authorized to overrule a prior, final decision made by the Presidential-appointed and Senate-confirmed Secretary." Pl.'s Mot. at 8. This argument fails, however, if the Secretary lawfully delegated the authority to take the amended actions on his behalf, as occurred here.

First, the Constitution's Appointments Clause, U.S. Const. art. II, § 2, cl. 2, does not prohibit the Secretary from delegating the authority vested in him by 38 U.S.C. § 713. Unlike the cases Trinka cites, *see* Pl.'s Mot. at 8; Pl.'s Opp'n at 5, the statutory scheme at issue here does not provide "final" decision making authority to an inferior officer—that authority belongs to the Secretary. *Contra United States v. Arthrex*, 594 U.S. 1, 26 (2021) (holding that "35 U.S.C. § 6(c) is unenforceable as applied to the Director insofar as it prevents the Director from

reviewing the decisions of the PTAB on his own"); *Helman v. Dep't of Veterans Affs.*, 856 F.3d 920, 929 (Fed. Cir. 2017) (finding that a previous version of § 713 "prohibit[ed] any review of the administrative judge's decision, thereby vesting [the authority to render a final decision] entirely in an administrative judge"). And the Constitution does not prohibit the Secretary from exercising his authority to delegate, as provided by 38 U.S.C. § 512(a).[2]

That is what the Secretary did here. Trinka quibbles with the delegation that designated Nathan Tierney as the Proposing Official because it was signed by the Deputy Secretary, Pl.'s Reply at 10, but Trinka's gripe is unwarranted. On February 8, 2024, the Secretary delegated to the Deputy Secretary the authority "to designate other individuals in writing as Proposing or Deciding Officials" concurrently with the Secretary for actions under 38 U.S.C. § 713. Delegations of Authority, § 1.d, AR 1002. On February 28, 2024, the Deputy Secretary delegated to Tierney the authority to serve as the Proposing Official for any § 713 action against Trinka, including in this pending action. AR 1004. At that point, Tierney had the authority to act on the Secretary's behalf in this matter, including by amending the action consistent with this Court's Memorandum Opinion and Order.

Trinka also raises that the 2024 letter failed to "claim to amend, rescind, cancel or in any way replace the 2020 removal action," which Trinka argues shows that the official "himself does not believe that his 'amended decision' 'supersedes' the 2020 removal action." Pl.'s Opp'n at 5.

---

[2] 38 U.S.C. § 512(a) provides in full:

Except as otherwise provided by law, the Secretary may assign functions and duties, and delegate, or authorize successive redelegation of, authority to act and to render decisions, with respect to all laws administered by the Department, to such officers and employees as the Secretary may find necessary. Within the limitations of such delegations, redelegations, or assignments, all official acts and decisions of such officers and employees shall have the same force and effect as though performed or rendered by the Secretary.

But if not the 2020 removal action, what else could the 2024 decision be amending?  The Department was not required to use magic words to amend its decision.  That amended decision is the operative one, by virtue of the lawful exercise of those officials' authority, which flowed from the Secretary's constitutional delegation of his authority under § 713.

### 2.  Due Process

On remand, the Department issued an amended proposed removal letter, to which Trinka responded, before the Department upheld the charge and recommended penalty.  AR 994.  The Court will now consider whether the Department afforded Trinka due process in amending its removal action.

As mentioned above, this Court previously faulted the Department for impermissibly applying § 713 retroactively, depriving Trinka of the audio recording of his OIG interview, and unclearly applying its evidentiary standard.  Mem. Op. at 16, 28–29.  The Court is satisfied that these errors have been cured.  First, the amended decisions rely on conduct that occurred only after § 713 was amended in June 2017.  AR 763–70; 994–1000.  Trinka's best argument to the contrary was the Department's explanation that the "reasoning for both the 2020 proposed removal and the present amended removal are the same," *see* Pl.'s Opp'n at 6 (quoting AR 998), but that clause was in response to Trinka's assertion that the amended decision relied on "after-the-fact reasons," AR 998.  The Department was permitted to respond that its core reasons for Trinka's removal had not changed, though the relevant time period has.  *See id.*  To hold otherwise would force the Department into a Catch-22—if the Department relies on a new reason, it is a *post hoc* rationalization, but if it relies on the same reason, it is repeating its error.  That is a false binary.  That the Department's "rationale is consistent" and "unchanged" does not mean it necessarily relied on conduct that predated June 2017.  *See id.*  The Department was

permitted to terminate Trinka for the same reason, "provid[ing] inaccurate or misleading information to VA Office of Inspector General Investigators" in 2018. *See id.* Further, Trinka's argument that the inclusion of evidence in Trinka's file predating 2017 somehow renders the entire decision impermissibly retroactive finds no support in this Court's prior Memorandum Opinion or the law. *See* Pl.'s Opp'n at 6. As the Department notes, the mere appearance of a fact predating the amended § 713 "somewhere in the lengthy administrative record does not mean the Proposing or Deciding Officials relied on, or even considered, such facts in taking their actions." Defs.' Reply at 11. The Court agrees, and Trinka identifies no reason to find to the contrary.

Second, Trinka has been provided with the recording of his OIG interview. *See* AR 991. Thus, the withholding of that evidence is no longer an issue.

Third, the officials clearly and consistently applied a preponderance of the evidence standard, *see* AR 763–70; 994–1000, so that error no longer persists. Trinka's argument that Tierney and Beard failed to fulfill their duties because Tierney's amended proposal was sent one day after his delegation was signed is without merit. *See* Pl.'s Opp'n at 8. Consistent with Defendants' representations in their status reports, "[t]he Proposing and Deciding Officials were notified months earlier that they were being tapped for the positions, and the Proposing Official set to work, but the paperwork formalizing the Secretary's delegation of authority was not finalized until February 2024." Defs.' Reply at 14. Thus, the speed with which Tierney completed the letter was not evidence of dereliction, but fulfillment of his duties.

Having corrected the three procedural due process defects the Court previously identified, the Court now considers Trinka's other theory for why the Department has not satisfied due

process, primarily that he was entitled to a hearing at which he could cross-examine adverse witnesses.  The Court concludes that Trinka has now received the process he was due.

As discussed above, to determine whether process was sufficient, courts must balance (1) the private interest affected, (2) the risk of erroneous deprivation and the probable value of procedural safeguards, and (3) the Government's interest.  *Mathews*, 424 U.S. at 335.  But an evidentiary hearing is not required where the party fails "to identify any meaningful factual dispute."  *Orion Rsrvs. Ltd. P'ship v. Salazar*, 553 F.3d 697, 708 (D.C. Cir. 2009); *see also Codd v. Velger*, 429 U.S. 624, 627 (1977) (per curiam) (holding that if a "hearing mandated by the Due Process Clause is to serve any useful purpose, there must be some factual dispute").

Trinka faults the Department's analysis for dodging the "ultimate question of whether Trinka's OIG testimony is more likely true than what the two supervisors reportedly told the OIG."  Pl.'s Opp'n at 15.  This is the "question of fact" that Trinka argues requires "confrontation and questioning of Trinka's accusers in a comprehensive post-termination hearing before a neutral adjudicator."  *Id.*  Trinka's attempted sleight of hand with this argument is not only perceptible, but blatantly so.

Trinka previously explained to this Court, over three years ago, that the "recording was the best and only direct evidence that Trinka made the statements that led to his removal."  Pl.'s Reply Supp. Cross-Mot. Summ. J. at 3, ECF No. 21.  He told the Department a similar story when he "insisted below that the recording was 'exculpatory' and specifically denied providing inaccurate information to investigators" and argued that "even if he did make the statements attributed to him, the statements' context or precise wording might render them true."  *Id.* at 6.  The Court took these statements at face value when it granted Trinka summary judgment on this ground and remanded to the Department, explaining that "the serious risk that Trinka may have

been removed from his employment because of an erroneous summary of his statements, when weighed against the agency's minimal burden in providing him with the recording, counsels in favor of concluding that Trinka was entitled to the recording prior to his termination as a matter of due process."  Mem. Op. at 27; *see also id.* at 26 ("Without the recording, Trinka can neither verify nor challenge the VA OIG's assertion that he made a false or inaccurate statement by claiming to have told his supervisors about his wife's immigration status.").  The parties and the Court have now all listened to the recording, which appears consistent with the memorandum summary on which the Department previously relied.  Trinka told the OIG that he had told his three supervisors about his wife's immigration status, and nothing about the context of the statement calls that into question.  AR 991 at 20:26–22:20.  The only hesitation he expressed was as to the number of supervisors he had.  *Id.* at 20:50–21:07 ("I've had, if I recall correctly, I've had three supervisors during my time in the Office of Information and Technology, and all three I disclosed that information to.").

Now, Trinka's tune has changed—whereas he first argued he either did not make the statement, or context would show he hedged, he now argues that his statement was accurate and that his supervisors should not be believed.  *See* Pl.'s Opp'n at 15.  But Trinka has not even alleged in his Complaint facts that would call into doubt his supervisors' renditions of the events. *See* Compl. ¶¶ 72–207.  He does not allege in his Complaint that he ever told supervisors Orr or Chandler about his wife's immigration status, and his Complaint is entirely consistent with Oswalt's statement that Trinka first told Oswalt of his wife's immigration status on the way to the OIG interview.  *Compare* Compl. ¶ 103 ("While Trinka and Oswalt walked to VA OIG . . . Trinka told Oswalt that his wife had no legal immigration status."), *with* AR 952 ("While walking together . . . TRINKA also admitted to Oswalt his wife was illegally in the

country . . . .").  Trinka does not allege in his Complaint that he told supervisors other than the three that have been identified.  *See* Compl. ¶¶ 72–207.  He simply has not even alleged, let alone found support in the record, that his statement to the investigators was not a lie.  *See id.* Absent a factual dispute on this point, it is not hard to conclude that the risk of erroneous deprivation and likely value of an additional hearing and cross-examination were negligible, such that even assuming Trinka's interest and the Government's interest were similar, Trinka has not shown he was entitled to additional process.  *See Mathews*, 424 U.S. at 335.

Trinka's arguments to the contrary are unavailing.  In a case involving prisoners' due process rights, the Supreme Court opined that confrontation and cross-examination "are essential in criminal trials where the accused, if found guilty, may be subjected to the most serious deprivations, *Pointer v. Texas*, 380 U.S. 400 (1965), or where a person may lose his job in society, *Greene v. McElroy*, 360 U.S. 474, 496–497 (1959)."  *Wolff v. McDonnell*, 418 U.S. 539, 567 (1974).  Trinka likens this situation to the latter case.  *See* Pl.'s Opp'n at 14–15.  But the issue in *Greene* was "whether the Department of Defense ha[d] been authorized to create an industrial security clearance program under which affected persons may lose their jobs and may be restrained in following their chosen professions on the basis of fact determinations concerning their fitness for clearance made in proceedings in which they are denied the traditional procedural safeguards of confrontation and cross-examination."  360 U.S. at 493.  Thus, the passing reference in *Wolff* to losing a "job in society" does not extend to losing *any* job.  *See* 418 U.S. at 567.

The Department cites Circuit precedent where courts concluded that due process was satisfied despite federal employees being fired without an opportunity to cross-examine witnesses.  *See* Defs.' MSJ at 12–13 (discussing *Harrison v. Bowen*, 815 F.2d 1505 (D.C. Cir.

1987), and *Twist v. Meese*, 854 F.2d 1421 (D.C. Cir. 1988)).  Trinka argues that *Harrison* does not hold that the employee was not entitled to a hearing to confront an adverse witness, but that holding is implicit in the court's finding that due process had been satisfied without that procedure.  *See* Pl.'s Opp'n at 16; *Harrison*, 815 F.2d at 1518–19.  And though Trinka is correct that the court in *Twist* concluded the plaintiff did not have a property interest in his employment, the court also stated that "even if Twist had a property right to his continued employment, which we have held he does not, he has received all the process to which he would be due."  *Twist*, 854 F.2d at 1428.  That process did not include a hearing with confrontation and cross-examination of witnesses.  *Id.* (concluding that "advance notice, an on-the-record hearing, and an opportunity to submit a written answer to the charges against him" would have satisfied due process).

In contrast, Trinka seeks a bright line rule that he must be able to confront and cross-examine witnesses to be deprived of his property interest in his employment, but neither *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985), nor *Gilbert v. Homar*, 520 U.S. 924 (1997), announce such a rule.  In fact, neither discusses confrontation or cross-examination.  Such a bright line rule would also run counter to *Gilbert*'s explanation that "[d]ue process is flexible and calls for such procedural protections as the particular situation demands."  520 U.S. at 930 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)).  Because there is no serious factual matter at dispute, and Trinka has had two opportunities to respond to the Department's removal actions with the assistance of counsel, due process did not require an additional hearing for the Department to amend its removal decision.

### 3.  The Department's CSEMO Letter

Under 38 U.S.C. § 713(b)(6)(B), "the court . . . may set aside any Department action [against a covered individual] found to be obtained without procedures required by a provision of

law having been followed." Trinka argues that "[f]ederal agencies are required to conform with their own self-regulatory measures and follow their own rules," invoking the *Accardi* principle. Pl.'s Opp'n at 17 (citing *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 266–67 (1954)). "The Supreme Court has explained that the application of this principle is not limited to instances like *Accardi* where an agency 'fail[s] to exercise it[s] own discretion, contrary to existing valid regulations,' but it also applies where dismissal from federal employment falls 'substantially short of the requirements of the applicable departmental regulations.'" *Battle v. FAA*, 393 F.3d 1330, 1336 (D.C. Cir. 2005) (first alteration in original) (first quoting *Accardi*, 347 U.S. at 268; then quoting *Vitarelli v. Seaton*, 359 U.S. 535, 545 (1959)).

Trinka has previously argued that the OAWP violated the CSEMO Letter by (1) withholding the recording of his OIG interview, (2) denying him an opportunity to respond or provide evidence during the investigation, and (3) recommending a specific disciplinary action. *See* Pl.'s Cross-Mot. Summ. J. ("Pl.'s MSJ") at 34–38, ECF No. 15-1. This Court pointed out that Trinka appeared to "assume that the CSEMO Letter has the force and effect of law," without supporting that premise. Mem. Op. at 16 n.3. Trinka has not meaningfully engaged on this point or tried to explain why the Letter has the force and effect of law. *See* Pl.'s Opp'n at 17–18. The closest he comes to doing so suggests that *any* document setting forth an agency procedure has the force of law. *See id.* at 18 ("After all, '[p]ublic employees are, of course, entitled to whatever other procedural protections are afforded them by statute, regulation, or agency procedure which is in addition to the protections afforded by the Constitution.'" (alteration in original) (quoting *Stone v. FDIC*, 179 F.3d 1368, 1378 (Fed. Cir. 1999))). The Department maintains that the Letter lacks the force of law and analogizes it to a policy statement, manual, or enforcement guideline. Defs.' MSJ at 18.

Even assuming the Letter has the force of law, the Court concludes that the Department substantially complied with the Letter's procedural obligations. Trinka has now received the recording, so any argument based on that ground is moot.

And Trinka's claim that he was denied the opportunity to respond or provide evidence during the OAWP investigation is meritless considering that he had the opportunity to explain himself at his interview, which was postponed so that he could have counsel present, and at which he was asked whether he had told any of his supervisors in writing about his wife's immigration status. *See* AR 991 at 20:34–21:18, 21:48–22:35. Presumably no written evidence of that kind exists, or Trinka's counsel would have introduced it in these proceedings, and no party suggests that the OAWP would not have accepted an evidentiary submission from Trinka. Nothing in the record suggests that Trinka did not have "an opportunity to respond to and provide evidence relating to the matters under investigation" at or after his interview. *See* AR 590.

Trinka's third theory faults the OAWP for recommending that Trinka be removed from federal service, rather than recommending disciplinary action generally, and for warning the Proposing Official that he would have to justify his decision in writing to Congress if he did not follow OAWP's recommendation. Pl.'s MSJ at 37. Neither of these arguments has merit.

First, the Letter did not prohibit the OAWP from recommending a specific penalty. The relevant provision of the Letter states:

> Upon conclusion of the OAWP investigation, OAWP and OGC shall brief the Secretary or his or her designee on the results of the investigation and whether disciplinary action is recommended. The recommendation will be limited to whether disciplinary action should be pursued.

CSEMO Letter § 7.a.iii.3, AR 590. Trinka reads the second sentence to argue that "the CSEMO Letter expressly prohibits OAWP from recommending what penalty to propose or impose." Pl.'s

MSJ at 37. By his reading, the OAWP could merely give a thumbs up or down for disciplinary action generally. The Department argues that this sentence is meant to distinguish disciplinary actions from potential criminal actions, which must be referred to the OIG, per the preceding subsection of the Letter. Defs.' MSJ at 19; CSEMO Letter § 7.a.ii, AR 589. This makes sense, as the VA's own OIG found in 2019 that the OAWP had at times "investigated criminal matters involving possible felonies that it was required to refer to the OIG." AR 398. And as a practical matter, the Court agrees that "[t]here is no sound reason to permit the Office to recommend that some sort of disciplinary action be taken against a Senior Executive but not a specific disciplinary action to take." Defs.' MSJ at 19.

Second, OAWP's notice to the Proposing Official that if he did not propose the disciplinary action, he would have to provide his reasoning to Congress was consistent with the statutory scheme. Trinka argues that 38 U.S.C. § 323(f)(2) requires the *Secretary* to submit such report to Congress. *See* Pl.'s MSJ at 37. But the Proposing Official was acting pursuant to the Secretary's delegation of authority, *see* Delegations of Authority, § 1.d, AR 1002; AR 1004, so it was entirely consistent for the Secretary's delegate to be required to provide a justification suitable for Congress were the Proposing Official to end the investigation, consistent with the statutory scheme. Because the Department did not violate the CSEMO Letter in any substantial way, the Court will not set aside the removal action on this ground.

*     *     *

In sum, the Court concludes that the Department lawfully amended its removal decision in 2024, and that the amended decision is now operative. Trinka's challenges to the initial 2020 removal decision have therefore been rendered moot. Because Trinka does not substantively challenge the 2024 amended removal decision, Defendants are entitled to summary judgment. In

35

case Trinka would like to challenge the amended removal decision in this action, the Court will grant Plaintiff leave to amend or supplement his Complaint to do so. Should another round of summary judgment briefing be necessary, the parties may raise any arguments the Court has not previously addressed, but should do so in their briefs and not by reference to prior briefs.

## V.  CONCLUSION

For the foregoing reasons, Plaintiff's "Motion to Set Aside Unconstitutional and Unlawful Agency Action" (ECF No. 39) is **DENIED**; and Defendants' Motion for Summary Judgment (ECF No. 40) is **GRANTED**. The Court will grant Plaintiff leave to amend or supplement his Complaint on or before August 25, 2025. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  July 25, 2025                                          RUDOLPH CONTRERAS
                                                             United States District Judge